ORIGINAL

1 | KURT OSENBAUGH (State Bar No. 106132)
DEBORAH YOON JONES (State Bar No. 178127)
2 | MacKENZIE E. HUNT (State Bar No. 251127)
**WESTON, BENSHOOF, ROCHEFORT,**
3 | **  RUBALCAVA & MacCUISH LLP**
333 South Hope Street
4 | Sixteenth Floor
Los Angeles, California 90071
5 | Telephone: (213) 576-1000
Facsimile: (213) 576-1100
6 |
Attorneys for Defendant
7 | BP WEST COAST PRODUCTS LLC

ADR **E-FILING**

*Filed*

MAY 3 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA**

11 | OMER KASSA individually; OMER
KASSA dba H & O, INC., and H & O,
12 | INC.,

13 |       Plaintiffs,

14 |   v.

15 | BP WEST COAST PRODUCTS, LLC, dba
ARCO PRODUCTS COMPANY and
16 | DOES 1 to 50,

17 |       Defendants.

Case No. **C08 02725 PVT**

**NOTICE OF REMOVAL OF
ACTION UNDER 28 U.S.C. §1441
[FEDERAL QUESTION
JURISDICTION]**

**[Filed concurrently with Declaration
of MacKenzie E. Hunt In Support of
Removal of Action Under 28 U.S.C. §
1441(b); Appendix of Non-Federal
Authorities; Appendix of State Court
Pleadings of Papers; Notice of
Interested Parties; and Certificate of
Service.]**

Filing Date:          March 12, 2008
Complaint Served:     March 20, 2008
FAC Served:           May 14, 2008
Sup. Ct. Case No:     108CV107979

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL

PARTIES AND THEIR COUNSEL OF RECORD HEREIN:

PLEASE TAKE NOTICE that Defendant BP West Coast Products LLC

("BPWCP") hereby removes to this Court the state court action described herein

pursuant to 28 USC §1446. As grounds for removal, BPWCP states as follows:

1

NOTICE OF REMOVAL OF ACTION

## I.   NOTICE OF REMOVAL IS TIMELY

### A.   Kassa's Complaint

1.   On March 12, 2008, Plaintiffs Omer Kassa and H&O, Inc. (collectively "Kassa") commenced an action entitled *Omer Kassa, Omer Kassa dba H & O, Inc., and H & O, Inc., v. BP West Coast Products, LLC, dba ARCO Products Company* as Case No. 108CV107979 ("Action") in the Superior Court for the State of California for the County of Santa Clara ("Superior Court"). A true and correct copy of the original Complaint filed in this Action is attached hereto as Exhibit A.

2.   BPWCP first received a copy of the Complaint on March 20, 2008, when it was delivered to C T Corporation System with a summons from the said Superior Court. A true and correct copy of the summons is attached hereto and marked as Exhibit B. Also served with the Complaint and summons was a statement of damages, as well as a civil lawsuit notice and alternative dispute resolution information sheet/civil division. True and correct copies of each of these documents are attached hereto as Exhibits C and D, respectively. BPWCP hereby reserves any and all rights to assert lack of personal jurisdiction, insufficiency of process, and/or insufficiency of service of process as defenses to Plaintiffs' Complaint.

3.   The Complaint was filed in the Superior Court of the State of California for the County of Santa Clara, which is within this judicial district. See 28 U.S.C. § 84(a). On April 18, 2008, BPWCP filed a demurrer to Kassa's Complaint. The Demurrer is attached hereto as Exhibit E.

### B.   Kassa's Failure to Serve the Amended Complaint on BPWCP

4.   On April 11, 2008, Kassa apparently filed a First Amended Complaint, which added a cause of action arising under federal law, citing the Petroleum Marketing Practices Act ("PMPA") 15 U.S.C. §§ 2801-2806 ("Amended Complaint"). Kassa's Amended Complaint is the first pleading in this action upon which removal could be based. A true and correct copy of the Amended Complaint is attached hereto and marked as Exhibit F.

2

1    5.    Although the proof of service filed with the Superior Court
2  indicates the Amended Complaint was mailed to BPWCP's counsel of record,
3  BPWCP did not receive the Amended Complaint or notice of such pleading until May
4  13, 2008, when BPWCP's counsel received a call from the Superior Court inquiring
5  whether BPWCP's Demurrer to Kassa's Complaint was moot, given that an Amended
6  Complaint had been filed.  Accordingly, BPWCP requested a copy of the Amended
7  Complaint from Kassa, which it received for the first time via facsimile, on the
8  evening of May 14, 2008.  (See Declaration of MacKenzie Hunt ("Hunt Decl.") ¶ 3
9  and Exhibit A thereto, filed concurrently herewith.)   BPWCP has confirmed its
10  position with Kassa.  (See Exhibit B to Hunt Decl.)

11    6.    This failure to properly serve BPWCP with Kassa's Amended
12  Complaint is the same gamesmanship as was seen with respect to Kassa's *Ex Parte*
13  Application for Temporary Restraining Order ("Application for TRO," attached hereto
14  as Exhibit G), which was similarly improperly served on BPWCP.  (See Hunt Decl., ¶
15  5.)  With regard to the Application for TRO, Kassa misrepresented to the Superior
16  Court that service was made on two of BPWCP's employees, when in fact: (1) the
17  documents were faxed to incorrect fax numbers; and (2) neither one of these
18  employees was authorized to accept service on behalf of BPWCP.  In fact, Kassa's
19  failure to properly notice BPWCP with respect to his Application for TRO was the
20  subject of a motion by BPWCP seeking to dissolve the granting of Kassa's TRO
21  ("Motion to Dissolve," attached hereto as Exhibit H).  Ultimately, of course, the
22  Superior Court granted BPWCP's Motion to Dissolve the TRO on March 24, 2008.

23    7.    Since service of the Amended Complaint was not effectuated until
24  May 14, 2008 (at the earliest), this Notice of Removal is timely filed pursuant to 28
25  U.S.C. §1446(b), because it is filed within 30 days of BPWCP obtaining service of the
26  Amended Complaint.

27

28

3

1144511.1

## II.    FEDERAL JURISDICTION

8.    This lawsuit is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1331, and is one which may be removed to this Court by BPWCP pursuant to the provisions of 28 U.S.C. §1441(b) in that it is a civil action over which this Court has original jurisdiction because the claims asserted arise under the laws of the United States.

9.    Kassa has asserted claims arising under the Petroleum Marketing Practices Act, 15 U.S.C. §2800, et. seq., (the "PMPA") a Federal law over which this Court has original jurisdiction. Accordingly, it is evident from the face of Kassa's Amended Complaint that his claims are subject to removal to this Court. *See* 15 U.S.C. §2805(a); 28 U.S.C. § 1441(b).

10.    Furthermore, the PMPA specifically governs gasoline franchise nonrenewal claims and preempts Kassa's state law claims. In addition to the PMPA claim, Kassa also asserts causes of action for breach of contract, conversion, fraud and deceit, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, negligence, negligent hiring and supervision, intentional infliction of emotional distress, temporary restraining order, preliminary injunction and permanent injunction, conspiracy, unfair and deceptive business practices, unfair business practices pursuant to California Business and Professions Code §21200, and violations of the Unruh Civil Rights Act.    Both California and Federal Courts recognize the preemptive effect of PMPA claims upon such state tort claims. See 15 U.S.C. §§ 2801 *et seq.*; see also *Niakan, et al. v. Samaan and Union Oil Company of California* (1988) 199 Cal.App.3d 716 (state court lacked subject matter jurisdiction where claims of wrongful nonrenewal of gasoline franchise preempted by PMPA; claims of unfair trade practices, breach of implied covenant of good faith and fair dealing, breach of written contract, and misrepresentation often stem from franchisor's failure to renew and such claims held to be preempted by PMPA); *Pride v. Exxon Corp.* (9th Cir. 1990) 911 F.2d 251, 257 (PMPA preempts state law causes of action

4

1144511 1

that would have effect of limiting permissible reason for terminating or nonrenewing a petroleum franchise); *Consumers Petroleum Co. v. Texaco* (6th Cir. 1986) 804 F.2d 907 (state law claims alleging misrepresentations relating to the termination or nonrenewal of a franchise are preempted); *Mobil Oil Corp. v. Superior Court* (1987) 189 Cal.App.3d 485 (all state law claims arising out of termination of station lease, including claim for breach of covenant of good faith and fair dealing, are preempted); and *California ARCO Distributors, Inc. v. Atlantic Richfield Co.* (1984) 158 Cal.App.3d 349 (a service station franchise nonrenewal may not be enjoined absent a claim brought under the governing PMPA). (Copies of Non-Federal Authorities are filed concurrently herewith.)

**III.    VENUE**

   **A.    <u>Removal to this District is Appropriate</u>**

   11.    Pursuant to 28 U.S.C. §1331, 1441 and 1446, removal of the above-referenced Superior Court Action to this Court is appropriate. No prior Notice of Removal has been filed for the relief sought here.

   **B.    <u>Intradistrict Assignment</u>**

   12.    Pursuant to 28 U.S.C. §1441(a), removal is made to this Court as the district embracing the place where the state action is pending. See 28 U.S.C. §84(a); Local Rule 3-2(e).

   13.    Notice to Superior Court and Adverse Party of Removal to Untied States District Court will be filed in the Superior court for the State of California for the County of Santa Clara and will be served on Kassa in accordance with 28 U.S.C. §1446(d).

1144511.1

NOTICE OF REMOVAL OF ACTION

1         14.   BPWCP hereby reserves the right to amend or supplement this

2    Notice of Removal.

3

4    DATED: May 29, 2008         Respectfully submitted,

5                        KURT OSENBAUGH
                    DEBORAH YOON JONES

6                        MacKENZIE E. HUNT
                    **WESTON, BENSHOOF, ROCHEFORT,**

7                          **RUBALCAVA & MacCUISH LLP**

8

9                        Deborah Yoon Jones

10                        Attorneys for Defendant
                    BP WEST COAST PRODUCTS LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF ACTION

1   GEORGE HOLLAND, ESQ., State Bar No. 55740
    **LAW OFFICES OF GEORGE HOLLAND**
2   1970 Broadway, Suite 1030
    Oakland, California 94612
3   Telephone: (510) 465-4100

4   Attorneys for Plaintiffs
    OMER KASSA, OMER KASSA dba H & O, INC.    **UCS**
5   and H & O, INC.

6                              FILED Santa Clara Co
                             03/12/08  2:38Pm
7                              Kiri Torre
                             Chief Executive Offic
8                              By: jcaonguyen DTSCIV
           SUPERIOR COURT OF CALIFORNIA R#200800026161
                             CK          $320.00
9               COUNTY OF SANTA CLARA    TL         $320.00
10                              Case: 1-08-CV-107979
                UNLIMITED JURISDICTION
11                                J. Cao-Nguyen

12   OMER  KASSA  individually;  OMER)   No. **108CV107979**
    KASSA dba H & O, INC., and H & O,)
13   INC.,                         )   **COMPLAINT FOR BREACH OF**
                               )   **CONTRACT, FRAUD,**
14                                )   **MISREPRESENTATION,**
            Plaintiffs,         )   **NEGLIGENCE, RESTRAINING**
15                                )   **ORDER, INTENTIONAL INFLICTION**
    vs.                            )   **OF EMOTIONAL DISTRESS AND**
16                                )   **DAMAGES**
    BP WEST COAST PRODUCTS, LLC, dba)
17   ARCO PRODUCTS COMPANY and  DOES 1)   Demand for Jury Trial
    to 50,                       )
18                                )
           Defendants.
19

20      Plaintiffs OMER KASSA individually; OMER KASSA dba H & O,

21 INC., and H & O, INC., allege:

22        **FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS**

23                 (BREACH OF CONTRACT)

24     1.    Plaintiff H & O, INC., is at all times herein mentioned a

25 duly licensed corporation in the State of California and was present

26 and doing business in the City of Campbell, Santa Clara County,

27 California. Plaintiff OMER KASSA is the president of H & O, INC., and

28 is doing business as H & O, INC.

                              7

COMPLAINT FOR DAMAGES                 1

1     2.    Defendants BP WEST COAST PRODUCTS, LLC dba ARCO PRODUCTS

2  COMPANY and DOES 1 to 50, ("ARCO PRODUCTS COMPANY was subsequently

3  purchased by BP WEST COAST PRODUCTS, LLC") at all times herein

4  mentioned were, present and doing business in the City of Campbell,

5  Santa Clara County, California.

6     3.    Plaintiffs are the owners, operators and franchisees of an

7  ARCO AM/PM gasoline station and mini-market located at 2015 South

8  Winchester Boulevard, Campbell, California.  Defendants and each of

9  them is the franchisor of the Arco AM/PM Mini-market and the supplier

10  of motor vehicle fuel or oils of like grade and quality, food and

11  other products to plaintiffs.

12     4.    At all times herein mentioned each defendant was an agent,

13  servant, employee, partner, joint venturer of the other defendants

14  and each of them and all times herein mentioned, each defendant was

15  acting within the course and scope of this relationship as an agent,

16  servant, employee, partner or joint venturer of the other defendants,

17  and each of them.

18     5.    Plaintiffs are ignorant of the true names and capacities of

19  each of the defendants sued herein as DOES 1 to 50 inclusive and

20  therefore, sues said defendants by such fictitious names.  Plaintiffs

21  will seek leave to amend the complaint to allege their true names and

22  capacities when the same has been ascertained.

23     6.    Plaintiffs are informed and believes and based upon such

24  information and belief allege that each of the defendants named herein

25  or as a DOE is intentionally and negligently responsible in some

26  manner for the occurrences herein alleged and Plaintiffs' injuries and

27  damages as herein alleged were proximately caused by defendants'

28  conduct.

7.   On or about March 1, 2002 , in the City of Campbell, Santa Clara County, plaintiffs and defendants and each of them, entered into an agreement for the use, operation, possession and control of the ARCO AM/PM Mini-market located at 2015  South Winchester Boulevard, Campbell, California (hereinafter "ARCO").  According to the terms of the agreement, Plaintiffs were required to pay an initial franchisee fee of $35,000, lease the property for $2,000 per month and pay defendants 15% of his gross sales per month to operate an AM/PM Mini Market, a retail convenience store identified by the service mark and service name of AM/PM for the sale of prepackaged foods, fast foods, beverages, sundries and convenience store goods and services. Plaintiffs paid $500,000 for this franchise and defendants promised at that time not to discriminate in price between plaintiffs and different purchasers of vehicle motor fuels, gasoline or oils of like grade and quality where the effect of such discrimination would lessen competition or to injure, destroy or prevent competition. Defendants also promised to timely deliver vehicle motor fuels or oils of like grade and quality to plaintiffs and to charge plaintiffs account via electronic funds payment only for those deliveries that actually had occurred.  In exchange, defendants and each of them, were required to provide Plaintiffs the equipment necessary to run the AM/PM, convenience store; timely supply plaintiffs with of motor vehicle fuels or oils of like grade and quality and not to discriminate against plaintiffs by charging others lower prices than plaintiffs either directly or indirectly for gasoline products.

9.   At all times herein mentioned, the contract was renewed by the parties on or about March 1, 2005 for another three year period under the same terms and conditions.  In or about March 2004 and

9

1   continuing to March 4, 2008, defendants, and each of them, failed to
2   deliver motor vehicle fuels or oils of like grade and quality
3   (hereinafter "gasoline products"), electronically charged funds from
4   plaintiffs bank account for undelivered gasoline products and
5   discriminated against plaintiffs either directly or indirectly by
6   charging them higher prices for gasoline products than it charged
7   others franchisees' located in close proximity to plaintiffs' AM/PM
8   to lessen competition, to injure and to cause plaintiffs to lose their
9   business.

10       10.   At all times herein mentioned, Defendants submitted a
11  renewal of the contract to plaintiffs on or about January 19, 2008,
12  and gave plaintiffs a certain number of days to sign the renewal
13  contract.   Plaintiffs complained to defendants both orally and in
14  writing about these problems as well as other accounting issues on
15  several occasions including on February 27, 2008 during a meeting.
16  Plaintiffs tried to discuss the renewal of the contract because issues
17  in the old contract were unresolved. However, defendants have refused
18  and continue their refusal to discuss these problems or take any
19  corrective action.  On each occasion, defendants refused to answer any
20  of plaintiffs' questions regarding requirements in the renewal
21  contract including the initial deposit fee, monthly rent increases and
22  royalties from gross sales.  However, defendants insisted orally that
23  after  plaintiffs signed the contract renewal, these issues would be
24  addressed.

25       11.   On or about March 1, 2008, the contract between Plaintiffs
26  and defendants expired and defendants demanded that plaintiffs renew
27  the contract without addressing any of the ongoing problems that
28  plaintiffs had identified such as increased rent, increased costs of

10

COMPLAINT FOR DAMAGES                    4

1 | gasoline products and why other dealers were charged less prices for
2 | deliveries and products; and why did defendants charge plaintiffs and
3 | electronically take money for their account to pay for deliveries that
4 | were never made.

5 |     12.  At all times herein mentioned, Plaintiffs have performed
6 | all conditions, covenants, and promises required on their part to be
7 | performed in accordance with the terms and conditions of the contract.

8 |     12.  Defendants breached the Agreement by failing to deliver
9 | gasoline products after being timely requested to do so; by charging
10 | Plaintiffs unreasonably high costs for its gasoline products and by
11 | wrongfully electronically withdrawing funds from plaintiffs' banking
12 | account for gasoline products that were never delivered and refusing
13 | to return the funds after being requested to do so.

14 |     13.  Defendants have wholly failed and refused to perform under
15 | the terms of the contract and have seized plaintiffs's business and
16 | real property preventing plaintiffs from the use, operation and
17 | possession of their business as well as lost profits.

18 |     14.  As a direct and proximate results of these acts, omissions
19 | or breaches by defendants, plaintiffs have sustained damages according
20 | to proof.

21 | **SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS**
22 | (CONVERSION)

23 |     1.  Plaintiffs incorporates by referenced the First Cause of
24 | Action herein and alleges as follows.

25 |     2.  Plaintiffs have performed all the conditions of the
26 | contract that are required to be performed.  Plaintiffs remains ready
27 | and willing to perform all of the terms of the contract applicable to
28 | Plaintiffs and receive title to the property as promised by

11

1  defendants.

2      3.   Plaintiffs have no adequate remedy at law because the
3  contract is for an interest in real property, and pursuant to Civil
4  Code Section 3387 money damages are presumed inadequate for the
5  breach. Further, Plaintiffs have already invested $500,000 and a
6  substantial amount of time regarding the property with defendants.

7      4.   The aforementioned acts of defendants, were willful and
8  intentional and done with malice, oppression and fraud and Plaintiffs
9  is therefore entitled to exemplary and punitive damages.

10           **THIRD CAUSE OF ACTION AS TO ALL DEFENDANTS**

11                    (FRAUD and DECEIT)

12     1.   Plaintiffs incorporate by referenced the First and Second
13  Causes of Action, herein and alleges as follows.

14     2.   On or about March 1, 2005, defendants entered into
15  an extension of the original contract for a period of three years for
16  the purchase of an ARCO AM/PM Mini Market franchise and lease the real
17  property located at 2015 South Winchester Boulevard, Campbell,
18  California defendants required plaintiffs to authorize electronic
19  funds payments to defendants from plaintiffs' banking account.
20  Defendants promised to deliver to plaintiffs gasoline products timely
21  upon request and at reasonable prices as others they charge as well
22  as to deduct only money owed from plaintiffs' banking account from
23  deliveries that were actually made and to correct any amounts
24  wrongfully deducted from Plaintiffs' banking account upon notice.
25  Defendants falsely and fraudulently represented to plaintiffs that
26  defendants would credit plaintiffs' account for amounts wrongfully
27  taken but have failed and continue not to do so.

28     3.   At the time defendants and each of them, made the promises

                              12

1  defendants had no intention of performing them.  Defendants and each
2  of them, made intentional misrepresentations of material facts to
3  Plaintiffs, knowing such statements were untrue with the intent to
4  induct Plaintiffs to entering into the contract, continuing with the
5  contract and not terminating it all to their detriment.

6    4.    Plaintiffs are informed and believes that the promises were
7  made by defendants were false and done with the intent to
8  defraud Plaintiffs and that said promises and acts were done
9  maliciously and oppressively.

10    5.    Plaintiffs at the time these promises were made and at all
11  times herein mentioned took the actions alleged and was ignorant of
12  defendants' secret intentions not to perform and Plaintiffs could not
13  in the exercise of reasonable diligence have discovered defendants'
14  secret intention. In reliance on the promise of defendants, Plaintiffs
15  entered into the contract and continued with the contract after
16  defendants made misrepresentations of material facts that they would
17  correct the problems.  If Plaintiffs had known of the actual intention
18  of defendants and each of them, he would not have taken such action.

19    6.    Defendants failed to abide by their promises on March 1,
20  2005, by, among other things, such as failing to deliver gasoline
21  products after timely requests were made; failing to charge Plaintiffs
22  a reasonable costs for gasoline products as compared to other gasoline
23  stations in the area; wrongfully deducting money from Plaintiffs' bank
24  account for money not owed.   As a result of defendants acts and/or
25  conduct, Plaintiffs is entitled to damages according to proof.

26    7.    The aforementioned acts of defendants, were willful and
27  intentional and done with malice, oppression and fraud and Plaintiffs
28  is therefore entitled to exemplary and punitive damages.

13

COMPLAINT FOR DAMAGES                7

1          **FOURTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

2      (Breach of the Implied Covenant of Good Faith and Fair Dealing)

3          1.    Plaintiffs incorporates by reference the First through

4      Third Causes of Action, herein and allege as follows:

5          2.    On or about March 1, 2005, Plaintiffs and defendants

6      entered into a written agreement for an ARCO AM/PM Mini Market

7      Franchise.

8          3.    By the terms of the agreement, plaintiffs paid $500,000

9      along with a renewal fee of $20,000 and other money to defendants for

10     the ARCO AM/PM Mini Market.  Defendants promised to deliver gasoline

11     products to Plaintiffs in a timely manner,  lease real property to

12     Plaintiffs; charge Plaintiffs reasonable prices for gasoline products

13     and not charge others in the area less for gasoline products and only

14     transfer money from plaintiffs's banking account for deliveries that

15     actually occurred.  Implied in the contract was a covenant by

16     defendants that they would act in good faith and deal fairly with

17     Plaintiffs and that they would do nothing to deprive Plaintiffs of the

18     benefits of the agreement.

19         4.    Plaintiffs and defendants had a special relationship in

20     that Plaintiffs were in a vulnerable position because they were

21     unsophisticated with the complexities of the transaction.  Plaintiffs

22     relied upon the defendants and each of them and defendants were aware

23     of Plaintiffs' vulnerability and the usual measure of contract damages

24     provide no incentive for its continued performance under the contract.

25         5.    Plaintiffs performed their obligations under the contract

26     and defendants breached their obligations under the contact

27     by failing to deliver gasoline products to Plaintiffs at all; by also

28     failing to timely deliver gasoline products; by electronically

14

1  transferring money from Plaintiffs' banking account for deliveries
2  that never occurred and by failing to charge Plaintiffs reasonable
3  prices for gasoline products as compared to other gasoline stations
4  in close proximity as agreed on or about March 1, 2005.  These bad
5  faith breaches were a violation of the implied covenant of good faith
6  and fair dealing in that defendants were in a superior position,
7  because Plaintiffs were especially vulnerable.  Plaintiffs had an
8  immediate need for the real property which were set forth in the
9  contract.

10      7.   As a proximate result of the bad faith breach, by
11  defendants and each of them, of their obligations under the contract
12  as herein alleged, Plaintiffs have suffered damages in an amount
13  according to proof.

14      8.   As a further proximate result of the tortious breach of
15  the implied covenant of good faith and fair dealing by defendants and
16  each of them, as herein alleged, Plaintiffs sustained emotional and
17  mental distress, anguish, anxiety, sleeplessness and indignity all to
18  their general damage in an additional sum according to proof.

19      9.   As a further proximate result of the tortious breach of the
20  implied covenant of good faith and fair dealing, by defendants and
21  each of them, Plaintiffs have incurred and will continue to incur,
22  medical and related expenses.  The full amount of such expenses is not
23  known to Plaintiffs at this time, and Plaintiffs will move to amend
24  this complaint to state such amount when the same becomes known to
25  their according to proof.

26      10.  The aforementioned acts of defendants, were willful and
27  intentional and done with malice, oppression and fraud and Plaintiffs
28  is therefore entitled to exemplary and punitive damages.

15

1

**FIFTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

2

(Negligent Misrepresentation)

3      1.    Plaintiffs incorporates the First through Fourth Causes of

4   Action and hereby allege as follows.

5      2.    Defendants and each of them, made the promises

6   and representations under the contract with no reasonable grounds for

7   believing them to be true, in that Plaintiffs are informed and

8   believes that defendants never intended to proceed with the contract,

9   charge plaintiffs gasoline products at an higher price than others in

10  order to lessen competition and discriminate against plaintiffs with

11  the intent to injure; wrongfully electronically transfer funds from

12  plaintiffs' bank account and charge them for deliveries that never

13  occurred.

14      3.    At all times herein mentioned, these representations were

15  made with the intent to defraud Plaintiffs in the manner herein

16  alleged.

17      4.    Plaintiffs, at the time of these representations were made

18  by defendants, and at the time Plaintiffs took the actions herein

19  alleged, were ignorant of the falsity of defendants' representation

20  and believed them to be true.  In reliance on these representations,

21  Plaintiffs were induced to enter into the contract and relied on

22  defendants' statements and were justified because of the promises and

23  representations.

24      5.    As a proximate result of defendants' conduct, Plaintiffs

25  have suffered damages in a sum according to proof.

26

**SIXTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

27

(Negligence)

28      1.    Plaintiffs incorporates by reference the First through

16

1  Fifth Causes of Action herein and alleges.

2      2.   At all times herein mentioned, defendants and each of them,
3  owed a duty to Plaintiffs to perform under the contract on the agreed
4  upon date in a timely manner.

5      3.   Defendants and each of them, negligently, recklessly or
6  carelessly knew or should have known that the defendants never
7  intended to proceed with the promises, terms and conditions of the
8  contract and that their conduct would create an unreasonable risk of
9  harm and danger to persons and property.

10     4.   As a proximate cause of the negligence of defendants, and
11 each of them, and the resulting harm, Plaintiffs were injured in their
12 health, strength and activity, sustaining injuries to their body and
13 shock and injury to their nervous system and person, all of which
14 injuries and damages have caused, and continue to cause Plaintiffs
15 great physical, mental and nervous pain and suffering, loss of use,
16 enjoyment and profits all to Plaintiffs' general damage.

17     5.   As a further proximate result of the negligence of
18 defendants, and each of them, Plaintiffs were required to, and did
19 employ physicians and surgeons for medical examination and treatment
20 and incurred medical and hospital expenses. Plaintiffs will be obliged
21 to incur further medical and hospital expenses in an amount presently
22 unknown.

23     6.   As a further proximate result of the negligence of
24 defendants, Plaintiffs were prevented from attending to their business
25 and lost profits and business and opportunities.

26          **SEVENTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

27               (Negligent Hiring and Supervision)

28     1.   Plaintiffs incorporate by reference the First through

17

1 Sixth Causes of Action, as though set forth here in full.

2       2.    Defendants and each of them, knew or should have known that
3 the named defendants and DOES 1 to 50, were unfit for the positions
4 which they were hired.   Defendants and each of them, failed to
5 properly supervise and train defendants and each of them and were
6 directly responsible for the harm to plaintiffs and as a result of
7 said lack of training and supervision, for the acts of these named and
8 unnamed defendants.   The acts include the aforementioned.

9       3.    Defendants and each of them, ratified the acts of said
10 defendants and at all times herein mentioned, defendants were acting
11 within the course and scope of their employment or agency with the
12 other defendants.

13       4.    As a proximate result of the acts of defendants, and each
14 of them, Plaintiffs suffered extreme and severe mental anguish,
15 emotional and physical pain and have been injured in their bodies and
16 minds.

17       5.    As a proximate result of defendants' negligent conduct,
18 Plaintiffs have suffered severe and extreme physical injuries, mental
19 and emotional distress all to their general damage.

20       6.    As a proximate result of defendants negligent conduct
21 Plaintiffs were unable for period of time, to attend operate its
22 business, lost profits and good will in a sum according to proof.

23              **EIGHTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

24              (Intentional Infliction of Emotional Distress)

25       1.    Plaintiffs incorporate by referenced the First through
26 Seven Causes of Action, as though set forth here in full.

27       2.    As a result of the wrongful, intentional and malicious
28 acts of defendants and each of them and the fright thereby caused to

18

COMPLAINT FOR DAMAGES                    12

1  Plaintiffs, he have suffered extreme and severe mental anguish,
2  emotional distress and physical pain and have been injured to their
3  minds and bodies.

4      3.    As a proximate result of the acts of defendant, Plaintiffs
5  were unable for a period of time, to attend to their work and lost
6  earnings in a sum according to proof.  Plaintiffs also lost the use,
7  possession, good will and profits.

8      4.    As a proximate result of defendants willful, wanton and
9  malicious conduct, Plaintiffs became terrified and suffered severe and
10  extreme mental and emotional distress, to Plaintiffs' general damages
11  according to proof.

12      5.    The aforementioned acts of defendants, were willful and
13  intentional and done with malice, oppression and fraud and Plaintiffs
14  are therefore entitled to exemplary and punitive damages.

15              **NINTH CAUSE OF ACTION AS TO ALL DEFENDANTS**
16          (Temporary Restraining Order, Preliminary Injunction,
17                      Permanent Injunction)
18      1.    Plaintiffs incorporate their First through Eighth Causes of
19  Action as though set forth here in full.

20      2.    Defendants have seized Plaintiffs' franchise and real
21  property preventing their use, operation and possession. Unless
22  restrained, defendants will continue to wrongfully possess Plaintiffs'
23  business and property and prevent it from operating as a business
24  earning income, profits, use, possession and control of the premises.
25  Their would be to Plaintiffs's great and irreparable injury, for which
26  pecuniary compensation would not afford adequate relief, in that
27  Plaintiffs is legally the owner of the Property.

28      3.    An actual controversy have arisen and now exists between

19

COMPLAINT FOR DAMAGES                    13

1  Plaintiffs and defendants regarding their respective rights and
2  duties.

3  Plaintiffs contends he is the legal owner and a Judicial Declaration
4  is necessary and appropriate at their time under all the circumstances
5  so that Plaintiffs may determine their rights.

6  ## TENTH CAUSE OF ACTION AS TO ALL DEFENDANTS
7  ### (Conspiracy)

8      1.    Plaintiffs incorporate by reference the First through
9  Ninth Causes of Action herein and allege.

10     2.    Defendants and each of them, conspired to participate in
11 charging Plaintiffs unreasonable higher prices for gasoline products
12 as compared to lower prices they charged others in close proximity to
13 plaintiffs' gasoline station, the failure to deliver gasoline products
14 and wrongfully deducting money from Plaintiffs' bank account based
15 upon undelivered gasoline products in a fraudulent scheme to close
16 Plaintiffs' business in order to acquire their franchise and real
17 property to generate money and other benefits to them, financial and
18 otherwise, to the total disregard of Plaintiffs' rights causing severe
19 emotional distress and losses to Plaintiffs.

20     3.    None of the transactions could be consummated without
21 Plaintiffs' authority unless each of the Defendants breached their
22 duties and/or acted in a knowing or grossly negligent manner to the
23 detriment of Plaintiffs, and thus foil a system of checks and balances
24 consisting of the normal and standard custom in a franchisee and
25 franchisor gasoline transaction.  Completion of the transactions
26 herein require simultaneous failures of all Defendants which
27 Plaintiffs are informed and believe, that defendants herein intended
28 to and so orchestrated so as to defraud Plaintiffs, with the express

20

1  and/or implicit knowledge and concurrence of each of the defendants.

2      4.   As a consequence of defendants' misconduct, Plaintiffs have

3  been damaged in an amount yet to be ascertained, including suffering

4  mental and physical distress, plus special damages in an amount to be

5  determined.

6      5.   Plaintiffs are also entitled to restitution from Defendants

7  for all losses stemming from their unlawful conduct.   Defendants

8  committed such offenses and engaged in such despicable conduct,

9  including fraud and conscious disregard of the rights of Plaintiffs,

10 such that punitive damages should be assessed against them.

11                **ELEVENTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

12                   (Unfair and Deceptive Business Practices)

13     1.   Plaintiffs incorporate by reference the First through

14 Tenth Causes of Action herein and allege.

15     2.   Defendants and each of them, engaged in unfair and

16 deceptive business practices in providing services to Plaintiffs

17 herein. Defendants misrepresented their authority, misrepresented the

18 contract provisions, and process for correcting problems by

19 defendants, and engaged in an overall pattern and scheme of defrauding

20 members of the public including Plaintiffs, into relying upon their

21 professional expertise while in fact Defendants completely disregarded

22 the rights of Plaintiffs and put together and continue to operate the

23 contract and/or transactions solely for their own benefit and self-

24 interest despite their roles as fiduciaries and/or professionals with

25 duties of due care and loyalty to Plaintiffs who justifiably relied

26 upon defendants.

27     3.   As a consequence of defendants' misconduct, Plaintiffs have

28 been damaged in an amount yet to be ascertained, including suffering

1  mental and physical distress, plus special damages in an amount to be
2  determined.

3      4.    Plaintiffs are also entitled to restitution from Defendants
4  for all losses stemming from their unlawful conduct.    Defendants
5  committed such offenses and engaged in such despicable conduct,
6  including fraud and conscious disregard of the rights of Plaintiffs,
7  such that punitive damages should be assessed against them.

8          **TWELFTH CAUSE OF ACTION AS TO ALL DEFENDANTS**
9    (Unfair Business Practices Pursuant to Business & Profession Code
10  Section 21200)

11      1.    Plaintiffs incorporate by reference the First through
12  Tenth Causes of Action herein and allege.

13      2.    At all times herein mentioned, defendants and each of them,
14  were the agents, partners, servants and employees of the other
15  defendants and doing the things hereinafter alleged were acting within
16  the course and scope of the agency, agreement or services and with the
17  permission and consent of defendants and each of them.

18      3.    At all times herein mentioned, defendants and each of them,
19  engaged in a pattern of conduct with the intent to either directly or
20  indirectly to discriminate against plaintiffs in the higher price they
21  charged to plaintiffs than to different purchasers of motor vehicle
22  fuels or oils of like grade and quality to lessen competition and to
23  injury and/or destroy plaintiffs' business within the meaning of
24  Business and Professions Code Section  21200.

25      4.    As a proximate result of the acts of defendants and each of
26  them, as herein alleged, plaintiffs were required to and did employ
27  physicians and surgeons for medical examination, treatment and care
28  for their injuries and did incur medical and incidental expense, loss

22

1  of business, loss of use, loss profits and other damages.

2      5.    As a further proximate result of the acts of defendants and

3  each of them, as herein alleged, plaintiffs have incurred and will

4  incur, further medical and incidental expenses for the care and

5  treatment of these injuries as well as lost business, goodwill, lost

6  of use and lost profits and other damages, the exact amount of which

7  is unknown at the present time.

8      6.    The acts and conduct of defendants and each of them as

9  herein alleged were willful, wanton, malicious and oppressive and

10  justify the awarding of punitive damages.

11                    **THIRTEENTH CAUSE OF ACTION**

12      (Unruh Civil Rights Violation Civil Code Sections 51 & 52)

13      1.    Plaintiffs incorporate by reference the First through

14  Tenth Causes of Action herein and allege.

15      2.    At all times herein mentioned, defendants and each of them,

16  were the agents, partners, servants and employees of the other

17  defendants and doing the things hereinafter alleged were acting within

18  the course and scope of the agency, agreement or services and with the

19  permission and consent of defendants and each of them.

20      3.    At all times herein mentioned, defendants and each of them,

21  were the owners or proprietors or distributors of a business

22  establishment engaged is the business of manufacturing, selling or

23  distributing gasoline products commonly known as BP WEST COAST

24  PRODUCTS, LLC dba ARCO PRODUCTS COMPANY, situated in the City of San

25  Jose, Santa Clara, County California.

26      4.    Plaintiff OMER KASSA at all times herein mentioned is of

27  Ethiopian descent and a member of the black race.

28      5.    Plaintiffs are informed and believe and thereon alleges

23

1   that defendants and each of them, denied to plaintiffs services,
2   advantages and privileges provided to other persons as alleged above,
3   on account of plaintiffs' race, ancestry or national origin in that
4   defendants discriminated against plaintiffs by charging them higher
5   prices for gasoline products than others in the area, through
6   electronic transfer for gasoline deliveries that never occurred; by
7   charging plaintiffs a higher price for gasoline products than others
8   in the area and by refusing to discuss these and other problems and by
9   seizing and taking possession of plaintiffs' business.

10      6.    Defendants' conduct is wrongful and continues in that
11  defendants remain in possession of plaintiffs' business. Defendants
12  continue to deny plaintiffs request to return the money back into
13  their bank account and to charge plaintiffs' the same amount for
14  gasoline products as others in the area which denies plaintiffs,
15  because of their race, ancestry or national origin the full and equal
16  advantages, privileges and services of the aforementioned business.

17      7.    Unless defendants and each of them are restrained by a
18  preliminary and permanent injunction by this Court, plaintiffs'
19  injuries will be great and irreparable. Plaintiffs have no plain,
20  speedy and adequate remedy at law because of the loss and potential
21  destruction of their business and it would be difficult if not
22  impossible for plaintiffs to determine the precise amount of damage
23  which they will suffer if defendants' conduct is not restrained.

24      8.    As a proximate result of the wrongful acts of defendants,
25  plaintiffs are entitled to recovery statutory damages up to a maximum
26  of three times the amount of actual damages, but not less than $250,
27  plus attorney's fees, as provided by Section 52 of the Civil
28  Code.

1    WHEREFORE, Plaintiffs pray for judgment as follows:

2      1.   For general damages;

3      2.   For compensatory damages;

4      3.   For special damages according to proof;

5      4    For an Order that defendants specifically perform the

6    requirements of the Contract between plaintiffs and defendants entered

7    into on or about March 1, 2005.

8      5.   For exemplary and punitive damages according to proof;

9      6.   For loss of use and enjoyment according to proof;

10     7.   For a temporary restraining order, a preliminary injunction,

11   a permanent injunction all enjoining defendants, their agents,

12   attorneys and representatives, and all other persons acting in concert

13   or participating with them, from selling or transferring the Property

14     8.   For costs of suit herein incurred;

15     9.   For a reasonable attorney's fee in a sum according to

16   proof;

17     10.  For interest at the legal rate on the foregoing sum

18   pursuant to Section 3336 of the Civil Code, from March 1, 2008;

19     11.  For such other and further relief as the court may deem

20   proper.

21   DATED:  March 12, 2008

22                              _____
                                GEORGE HOLLAND, ESQ.
23                              Attorneys for Plaintiffs

24

25   kassa-complaint

26

27

28

COMPLAINT FOR DAMAGES

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
03/20/2008
CT Log Number 513219429

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

**TO:**    John Everhardus
BP America Inc.
4101 Winfield Road, Mail Code 5 West
Warrenville, IL 60555

**RE:**    **Process Served in California**

**FOR:**    BP West Coast Products LLC (Domestic State: DE)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | Omer Kassa, etc., et al., Pltfs. vs. BP West Coast Products, LLC, etc., et al., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Statement of Damages, Notice, Attachment(s), Ex Parte Application, Proof of Service, Memorandum, Declaration(s), Verification, Order |
| **COURT/AGENCY:** | Santa Clara County- San Jose, Superior Court, CA Case # 108CV107979 |
| **NATURE OF ACTION:** | Dfts. are restrained from any further seizure and possession of Arco AM/PM Mini Market at 2015 Winchester Blvd., Campbell, California |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/20/2008 at 12:17 |
| **APPEARANCE OR ANSWER DUE:** | Restraining Order - Immediate // 4/1/2008 - Response // 4/4/2008 at 10:30 a.m. - Hearing // Within 30 days after service - file written response // 9/2/2008 at 8:30 a.m. - Case Management Conference |
| **ATTORNEY(S) / SENDER(S):** | George Holland Law Offices of George Holland 1970 Broadway Ste 1030 Oakland, CA 94612 510-465-4100 |
| **ACTION ITEMS:** | Telephone, John Everhardus , 630-821-2262 *Left voicemail message* SOP Papers with Transmittal, via  Fed Ex 2 Day , 790474556051 Image SOP - Page(s): 38 Email Notification, Katherine Johnson katherine.johnson@bp.com Email Notification, John Everhardus John.Everhardus@bp.com Email Notification, Jennifer Iraci jennifer.iraci@bp.com |
| **SIGNED:** **PER:** **ADDRESS:** **TELEPHONE:** | C T Corporation System Nancy Flores 818 West Seventh Street Los Angeles, CA 90017 213-337-4615 |

Page 1 of  1 / JK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

26

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BP West Coast Products, LLC dba Arco Products Company and Does 1
to 50,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Omer Kassa individually; Omer Kassa dba H & O, Inc., and H & O, Inc.



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*
ENDORSED
FILED
MAR 12 '08
KIRI TORRE/CLERK
CHIEF EXEC. OFFICER/CLERK
SUPERIOR COURT OF SANTA CLARA
COUNTY OF SANTA CLARA
DEPUTY

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California/Santa Clara County<br>191 N. First Street<br>San Jose, CA 95113 | **CASE NUMBER:**<br>*(Número del Caso):*<br>**1 08 CV 107979** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
George Holland, Esq., (55740)/Law Offices of George Holland
1970 Broadway, Suite 1030, Oakland, CA 94612, (510) 465-4100

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* MAR 12 2008 | KIRI TORRE<br>Chief Executive Officer/Clerk<br>Clerk, by *(Secretario)* | J. Cao-Nguyen | , Deputy<br>*(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* BP Westcoast Products, LLC
   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

American LegalNet, Inc. | www.USCourtForms.com

27

CIV-050

**- DO NOT FILE WITH THE COURT-**
**-UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):*<br>George Holland, Esq., SBN 55740<br>Law Offices of George Holland<br>1970 Broadway, Suite 1030<br>Oakland, CA 94612<br>TELEPHONE NO.: - 510-465-4100<br>ATTORNEY FOR *(name):* Plaintiffs | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 N. FIRST STREET
MAILING ADDRESS:
CITY AND ZIP CODE: SAN JOSE 95113
BRANCH NAME: UNLIMITED JURISDICTION

PLAINTIFF: OMER KASSA, et al.
DEFENDANT: BP WEST COAST PRODUCTS, LLC, et al.

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>108CV107979 |
|---|---|

To *(name of one defendant only):* BP WEST COAST PRODUCTS
Plaintiff *(name of one plaintiff only):* OMER KASSA
seeks damages in the above-entitled action, as follows:

AMOUNT

**1. General damages**
   a. [✓] Pain, suffering, and inconvenience ..................................................... $ 500,000
   b. [✓] Emotional distress. ............................................................................. $ 500,000
   c. [ ] Loss of consortium .............................................................................. $ _____
   d. [ ] Loss of society and companionship *(wrongful death actions only)* .......... $ _____
   e. [✓] Other *(specify)* Loss profits ............................................................. $ 1,000,000.00
   f. [✓] Other *(specify)* Goodwill .................................................................. $ 500,000
   g. [ ] Continued on Attachment 1.g.

**2. Special damages**
   a. [ ] Medical expenses *(to date)* ............................................................... $ _____
   b. [ ] Future medical expenses *(present value)* ........................................... $ _____
   c. [ ] Loss of earnings *(to date)* ................................................................ $ _____
   d. [ ] Loss of future earning capacity *(present value)* .................................. $ _____
   e. [✓] Property damage ............................................................................... $ 10,000
   f. [ ] Funeral expenses *(wrongful death actions only)* .................................. $ _____
   g. [ ] Future contributions *(present value) (wrongful death actions only)* ....... $ _____
   h. [ ] Value of personal service, advice, or training *(wrongful death actions only)* .. $ _____
   i. [ ] Other *(specify)* ................................................................................ $ _____
   j. [ ] Other *(specify)* ................................................................................ $ _____
   k. [ ] Continued on Attachment 2.k.

**3.** [✓] **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)*.. $ 5,000,000.00
   when pursuing a judgment in the suit filed against you.

Date: March 19, 2008

George Holland
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-050 [Rev. January 1, 2007]

STATEMENT OF DAMAGES
(Personal Injury or Wrongful Death)

Code of Civil Procedure, §§ 425.11, 425.115<br>www.courtinfo.ca.gov<br><br>American LegalNet, Inc.<br>www.FormsWorkflow.com

28

ATTACHMENT CV-5012

## CIVIL LAWSUIT NOTICE

CASE NUMBER: **1 0 8 C V 1 0 7 9 7 9**

*Superior Court of California, County of Santa Clara*
*191 N. First St., San Jose, CA 95113*

---

### READ THIS ENTIRE FORM

---

*PLAINTIFFS* (the person(s) suing): Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

> *DEFENDANTS* (The person(s) being sued): You must do each of the following to protect your rights:
>
> 1. You must file a written response to the *Complaint,* in the Clerk's Office of the Court, within 30 days of the date the *Summons* and *Complaint* were served on you;
> 2. You must send a copy of your written response to the plaintiff; and
> 3. You must attend the first Case Management Conference.
>
> **Warning: If you do not do these three things, you may automatically lose this case.**

*RULES AND FORMS:* You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.scsuperiorcourt.org/civil/rule1toc.htm
- Rose Printing: 408-293-8177 or beckv@rose-printing.com (there is a charge for forms)

For other local legal information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

| | | | |
|---|---|---|---|
| Your Case Management Judge is: **Kevin J Murphy** | | Department: **22** |

The 1st CMC is scheduled for: (Completed by Clerk of Court)
  Date: **AUG - 5 2008**  Time: **3:00 PM**, in Department **22**

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)
  Date: _____ Time: _____ in Department _____

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed ADR *Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.scsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

**What is ADR?**

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

**What are the advantages of choosing ADR instead of litigation?**

ADR can have a number of advantages over litigation:

< **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

**What are the main forms of ADR offered by the Court?**

< **Mediation** is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

< Mediation may be appropriate when:
  < The parties want a non-adversary procedure
  < The parties have a continuing business or personal relationship
  < Communication problems are interfering with a resolution
  < There is an emotional element involved
  < The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

KURT OSENBAUGH (State Bar No. 106132)
DEBORAH YOON JONES (State Bar No. 178127)
MacKENZIE E. HUNT (State Bar No. 251127)
**WESTON, BENSHOOF, ROCHEFORT,**
   **RUBALCAVA & MacCUISH LLP**
333 South Hope Street
Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

Attorneys for Defendant
BP WEST COAST PRODUCTS LLC

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| OMER KASSA individually; OMER KASSA dba H & O, INC., and H & O, INC.,<br><br>        Plaintiffs,<br><br>v.<br><br>BP WEST COAST PRODUCTS, LLC, dba ARCO PRODUCTS COMPANY and DOES 1 to 50,<br><br>        Defendants. | Case No.: 108CV107979<br><br>**DEMURRER OF BP WEST COAST PRODUCTS LLC TO COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed Concurrently with Notice of Demurrer; Notice of Motion and Motion to Strike; and Appendix of Federal Authorities.]<br><br>Date: June 5, 2008<br>Time: 9:00 a.m.<br>Dept.: 22<br><br>        Honorable Kevin J. Murphy<br><br>Filing Date:  March 12, 2008 |

COPY

VIA FAX

31

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................ 1

II.  FACTUAL ALLEGATIONS ...................................................................... 2

III. THE COMPLAINT FAILS TO STATE FACTS SUFFICIENT TO CONSTITUTE ANY CAUSE OF ACTION AGAINST BPWCP ................................. 4

    A.   Kassa Failed to Allege the Material Contract Provisions to Support the Breach of Contract Cause of Action .................................................. 4

    B.   Kassa's Claim for Conversion Lacks the Requisite Elements. .......................... 5

    C.   Kassa's Fraud Claim is Inadequate Because He Alleges No Facts to Support the Imposition of Tort Liability. ................................................ 5

    D.   Kassa's Implied Covenant of Good Faith and Fair Dealing Claim is Improperly Duplicative of the Breach of Contract Claim. ......................... 6

    E.   Kassa's Negligent Misrepresentation Claim Lacks the Requisite Specificity. ........................................................................................ 8

    F.   Kassa's Negligence Claim is Also Improperly Duplicative of His Claim for Breach of Contract. ...................................................................... 9

    G.   Kassa's Negligent Hiring and Supervision Claim Lacks Required Elements. ........................................................................................ 10

    H.   Kassa's Intentional Infliction of Emotional Distress Claim Lacks Sufficient Facts to Support a Viable Cause of Action. ..................................... 10

    I.   Kassa's Claim for Injunctive Relief is Subject to Demurrer Because it is Preempted by the PMPA. .................................................................. 12

    J.   Kassa's Conspiracy Claim Lacks the Necessary Elements Required to State a Cause of Action. ..................................................................... 13

    K.   Kassa's Claim for Unfair and Deceptive Business Practices is Uncertain and Ambiguous. ................................................................................ 14

IV.  CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

Page

## CASES

*117 Sales Corporation v. Olsen*
    (1978) 80 Cal.App.3d 645 ................................................................................................13

*Aas v. Superior Court*
    (2000) 24 Cal.App.4th 627 ..........................................................................................9, 12

*Ann M. v. Pacific Plaza Shopping Center*
    (1993) 6 Cal.4th 666 .........................................................................................................9

*Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*
    (1994) 7 Cal.4th 502 .......................................................................................................14

*Bank of America v. Pendergrass*
    (1935) 4 Cal.2d 258, 48 P.2d 659 ....................................................................................6

*Benton v. Hofmann Plastering Company*
    (1962) 207 Cal.App.2d 61, 24 Cal.Rptr 268 ...................................................................7

*California ARCO Distributors, Inc. v. Atlantic Richfield Co.*
    (1984) 158 Cal.App.3d 349 ....................................................................................... 12-13

*Canta v. Resolution Trust Corp.*
    (1992) 4 Cal.App.4th 857 ........................................................................................... 11-12

*Careau & Co. v. Security Pacific Business Credit, Inc.*
    (1990) 222 Cal.App.3d 1371 .............................................................................................7

*Celador Int'l Ltd. V. Walt Disney Co.*
    (C.D. Cal., 2004) 347 F.Supp.2d 846 ..............................................................................7

*Cervantez v. J.C. Penny Co.*
    (1979) 24 Cal.3d 578 ......................................................................................................11

*Consumers Petroleum Co. v. Texaco*
    (6th Cir. 1986) 804 F.2d 907 ..........................................................................................13

*Davidson v. City of Westminster*
    (1982) 32 Cal.3d 197 ......................................................................................................11

*Delfino v. Agilent Technologies, Inc.*
    (2006) 145 Cal.App.4th 790 ............................................................................................10

*Erlich v. Mendezes*
    (1999) 21 Cal.4th 543 ...................................................................................................6, 8

33  ii

# TABLE OF AUTHORITIES
(continued)

**Page**

*Foley v. Interactive Data Corp.*
  (1988) 47 Cal.3d 654 ............................................................................................................. 7-8

*Gray v. Don Miller & Associates, Inc.*
  (1984) 35 Cal.3d 498 ............................................................................................................. 8

*Guz v. Bechtel Nat'l, Inc.*
  (2000) 24 Cal.4th 317 ............................................................................................................. 7

*Hailey v. California Physicians' Service,*
  158 Cal.App.4th 452 ............................................................................................................. 11

*In re Napster, Inc. Copyright Litigation*
  (9th Cir. 2007) 479 F.3d 1078 ............................................................................................... 6

*Kiseskey v. Carpenter Trust for Southern California*
  (1983) 144 Cal.App.3d 222 .................................................................................................. 6

*Lesperance v. North American Aviation, Inc.*
  (1963) 217 Cal.App.2d 336 .................................................................................................. 13

*McCann v. Lucky Money, Inc.*
  (2005) 129 Cal.App.4th 1382 ............................................................................................... 15

*Mobil Oil Corp. v. Superior Court*
  (1987) 189 Cal.App.3d 485 .................................................................................................. 13

*Niakan, et al. v. Samaan and Union Oil Company of California*
  (1988) 199 Cal.App.3d 716 .................................................................................................. 13

*Orloff v. Metropolitan Trust Co.*
  (1941) 17 Cal.2d 484 ............................................................................................................. 13

*Otworth v. So. Pacific Railway Trans. Co.*
  (1985) 166 Cal.App.3d 452 .................................................................................................. 4

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*
  (2007) 150 Cal.App.4th 384 ................................................................................................. 5

*Perry v. Robertson*
  (1988) 201 Cal.App.3d 333 .................................................................................................. 4

*Pride v. Exxon Corp.*
  (9th Cir. 1990) 911 F.2d 251 ............................................................................................... 13

*Reichert v. General Insurance Co.*
  (1968) 68 Cal.2d 822 ............................................................................................................. 4

34

iii

## TABLE OF AUTHORITIES
(continued)

Page

*Roman Catholic Bishop v. Superior Court*
    (1996) 42 Cal.App.4th 1556 ........................................................................................ 10

*Rosen v. State Farm General Ins. Co.*
    (2003) 30 Cal.4th 1070 ................................................................................................ 9

*Taylor v. Forte Hotels International*
    (1991) 235 Cal.App.3d 1119 ...................................................................................... 5

*Underwriters Ins. Co. v. Purdie*
    (1983) 145 Cal.App.3d 57 .......................................................................................... 10

*Walters v. Marler*
    (1978) 83 Cal.App.3d 1 .............................................................................................. 8

*Wolf v. Superior Court*
    (2003) 107 Cal.App.4th 25 ........................................................................................ 15

## STATUTES

Business and Professions Code section 21200 .................................................................... 3

Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* ...................................... 1, 12

1

## DEMURRER

2    Defendant BP West Coast Products LLC ("BPWCP") demurs to the Complaint

3  of plaintiffs Omer Kassa, individually and dba H&O, Inc., and H&O, Inc. (collectively,

4  "Kassa") on the following grounds:

5

6

## DEMURRER TO FIRST CAUSE OF ACTION

7    Kassa's Complaint fails to state facts sufficient to constitute a cause of action

8  for breach of contract as against BPWCP pursuant to Code of Civil Procedure § 430.10(e).

9  Furthermore, Kassa's Complaint is uncertain pursuant to Code of Civil Procedure

10  § 430.10(f) in that it cannot be ascertained from review of the first cause of action, how, in

11  what manner, or upon what basis Kassa can claim that he has adequately pled a binding

12  contract between Kassa and BPWCP.  Specifically, the first cause of action is ambiguous in

13  that Kassa has not properly pled verbatim the material terms of the contract (or attached a

14  copy of the contract) upon which the cause of action against BPWCP is based.

15

16

## DEMURRER TO SECOND CAUSE OF ACTION

17    Kassa's Complaint fails to state facts sufficient to constitute a cause of action

18  for conversion pursuant to Code of Civil Procedure § 430.10(e) in that Kassa has failed to

19  allege which property BPWCP allegedly converted, or that he had a right to possess that

20  property in the first instance.  Furthermore, a breach of contract does not constitute a

21  conversion. *Taylor v. Forte Hotels International* (1991) 235 Cal.App.3d 1119, 1124.

22

23

## DEMURRER TO THIRD CAUSE OF ACTION

24    Kassa's Complaint fails to state facts sufficient to constitute a cause of action

25  for fraud and deceit pursuant to Code of Civil Procedure § 430.10(e) in that he has alleged

26  only facts supporting a claim for breach of contract.  Where there is a breach of contract

27  alleged, the law will not find tort liability as well as contractual liability unless there is a

28  breach of some independent duty imposed by law. *Elrich v. Menezes* (1999) 21 Cal.4[th] 543,

36  1

1   553-554. Kassa cannot withstand a demurrer on a fraud cause of action by merely reciting
2   the facts supporting his claim for breach of contract.

3

4                        **DEMURRER TO FOURTH CAUSE OF ACTION**

5                  Kassa's Complaint fails to state facts sufficient to constitute a cause of action
6   for breach of the implied covenant of good faith and fair dealing pursuant to Code of Civil
7   Procedure § 430.10(e) in that he has alleged only facts supporting a claim for breach of
8   contract.   Where a claim for breach of the implied covenant does not go beyond the
9   statement of a breach of express contractual terms and seeks the same relief sought in a
10  breach of contract claim, it is simply superfluous to the contract claim. *Celador Int'l Ltd. V.*
11  *Walt Disney Co.* (C.D. Cal., 2004) 347 F.Supp.2d 846, 852; *Guz v. Bechtel Nat'l, Inc.* (2000)
12  24 Cal.4th 317, 353, n. 18.  Kassa cannot withstand a demurrer on a cause of action for
13  breach of the covenant by merely reciting the facts supporting his claim for a purported
14  breach of contract. Furthermore, California does not recognize a tortuous breach of contract
15  claim outside of the insurance context.

16

17                        **DEMURRER TO FIFTH CAUSE OF ACTION**

18                 Kassa's Complaint fails to state facts sufficient to constitute a cause of action
19  for negligent misrepresentation pursuant to Code of Civil Procedure § 430.10(e) in that
20  Kassa has not alleged the precise misrepresentations at issue, or any facts tending to show
21  that BPWCP intended to induce reliance on the part of Kassa.  Kassa's Complaint is also
22  uncertain pursuant to Code of Civil Procedure § 430.10(f) in that it cannot be ascertained
23  from reviewing the Fifth Cause of Action how, when, in what manner, or upon what basis
24  Kassa can claim that BPWCP made a negligent misrepresentation.   Furthermore, Kassa
25  should not be allowed to recover in tort for the breach of duties that merely restate
26  contractual obligations.

27

28

                                    37  2

1

### DEMURRER TO SIXTH CAUSE OF ACTION

2      Kassa's Complaint fails to state facts sufficient to constitute a cause of action for

3   negligence pursuant to Code of Civil Procedure § 430.10(e) in that Kassa has alleged only

4   those facts supporting his claim for breach of contract. Where there is a breach of contract

5   alleged, the law will not find tort liability as well as contractual liability unless there is a

6   breach of some independent duty imposed by law. *Elrich v. Menezes* (1999) 21 Cal.4th 543,

7   553-4. Kassa cannot withstand a demurrer on a cause of action for negligence by merely

8   reciting the facts supporting his claim for breach of contract, and making the conclusory

9   assertion that the alleged breach was done "negligently." Furthermore, Kassa should not be

10  allowed to recover in tort for the breach of duties that merely restate contractual obligations.

11

12

### DEMURRER TO SEVENTH CAUSE OF ACTION

13      Kassa's Complaint fails to state facts sufficient to constitute a cause of action

14  for negligent hiring and supervision pursuant to Code of Civil Procedure § 430.10(e) in that

15  Kassa has failed to allege any duty with respect to supervision of a particular employee, or

16  that such duty was breached. Kassa's Complaint is also uncertain pursuant to Code of Civil

17  Procedure § 430.10(f) in that it cannot be ascertained from reviewing the Sixth Cause of

18  Action how, when, in what manner, or upon what basis Kassa can claim that BPWCP

19  breached a duty owed to Kassa.

20

21

### DEMURRER TO EIGHTH CAUSE OF ACTION

22      Kassa's Complaint fails to state facts sufficient to constitute a cause of action

23  for intentional infliction of emotional distress pursuant to Code of Civil Procedure

24  § 430.10(e) in that Kassa has failed to allege any facts establishing the necessary element of

25  extreme or outrageous conduct on the part of BPWCP.

26

27

28

DEMURRER OF BPWCP TO COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
1174236.1

1

## DEMURRER TO NINTH CAUSE OF ACTION

2   Kassa's Complaint fails to state facts sufficient to constitute a cause of action

3 for injunctive relief pursuant to Code of Civil Procedure § 430.10(e) in that Kassa's request

4 for injunctive relief is preempted by the Petroleum Marketing Practices Act, 15 U.S.C. §

5 2802, *et seq.* Furthermore, the Court has already denied Kassa's request for a temporary

6 restraining order and preliminary injunctive relief.

7

8

## DEMURRER TO TENTH CAUSE OF ACTION

9   Kassa's Complaint fails to state facts sufficient to constitute a cause of action

10 for conspiracy pursuant to Code of Civil Procedure § 430.10(e) in that Kassa has failed to

11 allege any facts establishing the formation and operation of a conspiracy. Kassa has further

12 failed to allege any facts that damage resulted from an act or acts done in furtherance of the

13 purported plan. The conspiracy claim also fails, as a matter of law, because agents and

14 employees of a corporation cannot conspire with their employer/corporate principal if they

15 are acting in their official capacities on behalf of the corporation. *Applied Equip. Corp. v.*

16 *Litton Saudi Arabia, Ltd.* (1994) 7 Cal.4[th] 502, 512, n. 12.

17

18

## DEMURRER TO ELEVENTH CAUSE OF ACTION

19   Kassa's Complaint and cause of action for unfair and deceptive business

20 practices is uncertain pursuant to Code of Civil Procedure § 430.10(f) in that it is impossible

21 to determine whether Kassa is seeking recovery under statutory authority (i.e., Business &

22 Professions Code § 17200) or whether Kassa seeks to recover under a common law claim

23 (i.e., unfair competition). The uncertainty is such that BPWCP is unable to intelligently

24 respond to the allegations and purported cause of action.

25

26

27

28

*39* 4

---

1           BPWCP prays that its Demurrer be sustained without leave to amend, for costs,

2    and for such other and further and additional relief as this court may deem just and proper.

3

4    DATED:  April 18, 2008        Respectfully submitted,

5                           KURT OSENBAUGH
                            DEBORAH YOON JONES

6                           MacKENZIE E. HUNT
                            **WESTON, BENSHOOF, ROCHEFORT,**

7                              **RUBALCAVA & MacCUISH LLP**

8

9                                     Deborah Yoon Jones

10                          Attorneys for Defendant
                            BP WEST COAST PRODUCTS LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

40  5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In order to survive an attack by demurrer, a plaintiff must adequately plead sufficient facts to establish all necessary elements for each of the claims asserted. Here, plaintiff Omer Kassa (representing himself and H&O, Inc., collectively "Kassa") has essentially thrown all the facts he could possibly concoct onto his Complaint to see if any of the claims will stick. In doing so, Kassa uses the same set of facts to assert a breach of contract claim, eleven tort claims, and an injunctive relief claim. Indeed, Kassa attempts to convert a straightforward commercial contract dispute into a variety of inapplicable tort and statutory violations. The gravaman of this dispute, however, is straightforward and involves a gasoline station franchisee (Kassa) who disagreed with proposed lease and franchise terms when the agreements came up for renewal. Kassa refused to sign the renewal agreements and the lease and franchise relationship expired. This is a contract case and the tort claims are superfluous, inadequately pled, and unsustainable as a matter of law.

Indeed, close scrutiny of each of the causes of action in Kassa's Complaint reveals them to be flawed and subject to demurrer. For example, the breach of contract claim fails to set forth, verbatim, the material terms of the contract at issue or attach a copy of the contract. Also, Kassa improperly seeks tort damages for what are, in fact, contract claims (see 3rd, 4th, 5th, and 6th causes of action). In addition, there are tort claims that do not properly allege all the requisite elements (see 2nd, 3rd, 5th, 6th, 7th, 8th, and 10th causes of action). Kassa's ninth cause of action for injunctive relief is preempted by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* ("PMPA")[1] And of course, there are the absurd and ridiculous allegations that H&O, Inc. (a non-human corporate entity) sustained injuries to its body and shock and injury to its nervous system as well as emotional distress damages. (Compl., ¶4, 6th C/A and ¶ 4, 7th C/A). Finally, the eleventh cause of action for purported "unfair and deceptive business practices" is so uncertain that BPWCP cannot

---

[1] BPWCP maintains that the entire complaint is preempted by the PMPA to the extent the claims relate to and arise out of the franchise non-renewal.

1

1  respond properly; it is impossible to decipher whether Kassa seeks statutory relief (i.e., under

2  Business & Professions Code § 17200) or common law relief (i.e., through an unfair

3  competition claim).  None of the causes of action in Kassa's complaint are proper and

4  BPWCP's demurrer should be sustained without leave to amend.

5  **II.    FACTUAL ALLEGATIONS**

6          Plaintiff Kassa was the franchisee/lessee operator of the ARCO-branded

7  gasoline station and am/pm Mini Market located at 2015 Winchester Road, Campbell,

8  California 95008 ("Station") (Compl., ¶3, 1st Cause of Action ("C/A")[2]).  An am/pm Lease

9  PMPA Franchise Agreement and am/pm Mini Market Agreement effective March 1, 2005

10  (collectively, "Franchise Agreements") governed the franchise relationship between Kassa

11  and BPWCP. (*Id.*, ¶7, ¶9, 1st C/A)  The Franchise Agreements included a lease of the

12  BPWCP-owned gasoline station and convenience store and a gasoline supply agreement,

13  which were set to expire on March 1, 2008. (*Id.*)

14          Given the Franchise Agreements were set to expire on March 1, 2008 in

15  January 2008, BPWCP delivered to Kassa the 45-Day Renewal Letter and provided Kassa

16  with proposed new franchise agreements ("Renewal Offer") (Compl., ¶10, 1st C/A).  As of

17  March 1, 2008 the Agreements expired, as Kassa failed to return the signed documents

18  contained in the Renewal Offer which were required to continue the franchise beyond March

19  1, 2008. (*Id.*, ¶11, 1st C/A).

20          Kassa filed suit on March 12, 2008, in Superior Court for the County of Santa

21  Clara.  In his "all-but-the-kitchen-sink" Complaint, Kassa alleges one claim for breach of

22  contract and asserts eleven tort causes of action which are based on the exact same facts as

23  the claim for breach of contract.  The tort causes of action are as follows: (1) conversion;

24  (2) fraud and deceit; (3) breach of the implied covenant of good faith and fair dealing;

25  (4) negligent misrepresentation; (5) negligence; (6) negligent hiring and supervision;

26

27  _____

[2]The paragraph numbers in Kassa's Complaint restart with each new Cause of Action.
28  BPWCP therefore refers to the number of the paragraph, as well as the relevant cause of
action in citing to Kassa's Complaint.

1 (7) intentional infliction of emotional distress; (8) conspiracy; (9) unfair and deceptive

2 business practices; (10) unfair business practices pursuant to Business and Professions Code

3 section 21200; and (11) violations of the Unruh Civil Rights Act, sections 51 and 52  The

4 only difference between Kassa's breach of contract cause of action and the tort claims is that

5 the tort claims include boilerplate and conclusory language that BPWCP acted negligently,

6 wrongfully, etc.  Kassa's Complaint also states a claim for a temporary restraining order and

7 preliminary and permanent injunctive relief to unwind the franchise termination and reinstate

8 Kassa as the dealer operator of the Station.[3]

9              Kassa's entire Complaint can be boiled down to the following contract breach

10 allegations:

11          •       BPWCP allegedly promised not to discriminate in pricing when selling

12 motor fuel to Kassa, to deliver motor fuel in a timely fashion, to provide necessary

13 equipment, and to charge Kassa electronically only for those deliveries that had actually been

14 made. (See Compl., ¶ 7, 1st C/A; ¶ 1, 2nd C/A; ¶¶ 1 & 2, 3rd C/A; ¶¶ 1 & 3, 4th C/A; ¶¶ 1 & 2,

15 5th C/A; ¶¶ 1 & 2, 6th C/A; ¶¶ 1 & 2, 10th C/A;  ); and

16          •       From March 2004 to March 2008, BPWCP purportedly failed to deliver

17 fuel to Kassa, and that BPWCP further charged Kassa's bank account for gasoline products

18 that were never delivered. (Compl., ¶9, 1st C/A; ¶¶ 1 & 6, 3rd C/A; ¶¶ 1 & 6, 4th C/A; ¶¶ 1 &

19 2, 5th C/A; ¶¶ 1 & 3, 10th C/A; ¶¶ 1 & 3, 12th C/A; ¶¶ 1, 5 & 6, 13th C/A).

20              However, as set forth in detail below, these general allegations alone fail to

21 support any of the causes of action asserted in Kassa's Complaint and without more, the

22 Court should sustain BPWCP's demurrer without leave to amend.

23

24

25

26

27

28

---

[3]As the Court may recall, on March 24, 2008, it granted BPWCP's *Ex Parte* Application to unwind the TRO, and on April 4, 2008, the Court denied Kassa's request for preliminary injunction.

3

1  III.  **THE COMPLAINT FAILS TO STATE FACTS SUFFICIENT TO**
2      **CONSTITUTE ANY CAUSE OF ACTION AGAINST BPWCP**

3          A.    **Kassa Failed to Allege the Material Contract Provisions to Support**
4                **the Breach of Contract Cause of Action.**

5          Kassa's first cause of action is for breach of contract. In order to maintain a

6  breach of contract cause of action, Kassa must allege the essential elements of its claim:

7  (1) the existence and the essential terms of the contract at issue; (2) Kassa's performance or

8  excuse for non-performance of all conditions precedent to the BPWCP's obligation to

9  perform; (3) BPWCP's breach of the contract, and (4) Kassa's damages. *Reichert v. General*

10  *Insurance Co.* (1968) 68 Cal.2d 822, 830; and *Perry v. Robertson* (1988) 201 Cal.App.3d

11  333, 341. Where an action is based on an alleged breach of a written contract such as we

12  have here, the "terms must be set out verbatim in the body of the complaint or a copy of the

13  written instrument must be attached and incorporated by reference." *Otworth v. So. Pacific*

14  *Railway Trans. Co.* (1985) 166 Cal.App.3d 452, 459.

15          Here, Kassa has failed to plead verbatim the material terms of the contract

16  upon which the breach of contract cause of action against BPWCP is based. Kassa has also

17  failed to attach the relevant contracts which have allegedly been breached. Without

18  necessary contract information BPWCP is unable to adequately respond. For example, who

19  are the proper parties to the contract? Most likely Kassa seeks to avoid attaching the relevant

20  Franchise Agreements and related assignment documents because the Court will learn that

21  only H&O, Inc. was a party to the agreements and therefore, the individual defendant, Omer

22  Kassa, lacks standing to maintain the breach of contract cause of action as well as remaining

23  causes of action. Also, what specific provisions were purportedly breached? Without the

24  actual contract language or contracts themselves attached to the Complaint, the first cause of

25  action for breach of contract is lacking and incomplete. Accordingly, the first cause of

26  action for breach of contract is flawed and the Court should sustain BPWCP's demurrer.

27

28

44
4

B.  **Kassa's Claim for Conversion Lacks the Requisite Elements.**

Kassa's second cause of action is for conversion.  To sustain a claim for conversion, the following three elements must be pled: (1) plaintiff's ownership or right to possession of property; (2) defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and (3) damage to plaintiff. *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395.

Kassa's Complaint fails to state facts sufficient to constitute a cause of action for conversion as against BPWCP because there is no allegation that Kassa had a right to possess the Station at the time BPWCP took possession of the Station.  Kassa simply contends that he has "performed all the conditions of the contract that are required to be performed," and that "Plaintiffs remains [sic] ready and willing to perform all of the terms of the contract applicable to them and receive title to the property as promised by BPWCP." (Compl., ¶2, 2nd C/A).  There is no allegation indicating that Kassa had a right to any property or possession of the Station.  In fact, Kassa concedes that the Franchise Agreements (which gave Kassa any possible right to possession of the Station) expired. (Compl., ¶ 11, 1st C/A.)  Furthermore, it is not specifically alleged what property BPWCP allegedly converted; rather, BPWCP is left to assume that the Station (which is owned by BPWCP) is the property that was allegedly converted.  Accordingly, Kassa's conversion cause of action is incomplete and insufficiently pled.

Moreover, BPWCP's demurrer as to the conversion claim should be sustained without leave to amend because the facts pled in support thereof are nothing more than breach of contract allegation.  Neither negligence, active or passive, nor a breach of contract, even though it results in injury to, or loss of, specific property, constitutes a conversion. *Taylor v. Forte Hotels International* (1991) 235 Cal.App.3d 1119, 1124.

C.  **Kassa's Fraud Claim is Inadequate Because He Alleges No Facts to Support the Imposition of Tort Liability.**

Kassa's Third Cause of Action is for fraud and deceit.  The elements of a claim for fraud and deceit are as follows: (1) a misrepresentation or concealment of a material fact;

5

1    (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance;

2    (4) justifiable reliance; and (5) resulting damage." *In re Napster, Inc. Copyright Litigation*

3    (9th Cir. 2007) 479 F.3d 1078, 1096, quoting *Small v. Fritz Cos., Inc.* (2003) 30 Cal.4th 167,

4    132 (internal quotation marks omitted). Moreover, where there is a breach of contract

5    alleged, the law will not find tort liability as well as contractual liability unless there is a

6    breach of some independent duty imposed by law. *Erlich v. Mendezes* (1999) 21 Cal.4th 543,

7    553-4; *see also Bank of America v. Pendergrass* (1935) 4 Cal.2d 258, 48 P.2d 659, 661-662

8    (as a general proposition, a claim for fraud cannot be based upon promises which concern

9    contractually negotiated obligations).

10         Here, Kassa's fraud claim is based upon the same facts which support the

11    inadequately pled breach of contract claim. The sole allegation on which Kassa's fraud

12    claim is based is the assertion that BPWCP failed to "deliver gasoline products after timely

13    request were made; fail[ed] to charge Plaintiffs a reasonable costs [sic] for gasoline products

14    as compared to other gasoline stations in the area; wrongfully deducting money from Kassa's

15    bank account for money not owed." (Compl., ¶6, 3rd C/A). Kassa is essentially asserting

16    that BPWCP has committed fraud by breaching the purported contracts; these facts alone are

17    insufficient given the *Erlich* and *Pendergrass* decisions and the demurrer should be sustained

18    without leave to amend.

19         Moreover, the only additional allegations supporting his fraud claim are

20    boilerplate assertions that BPWCP "made intentional misrepresentations of material facts to

21    Plaintiffs, knowing such statements were untrue with the intent to induct [sic] plaintiffs to

22    entering [sic] into the contract, continuing with the contract and not terminating it all to their

23    detriment." (Compl., ¶3, 3rd C/A). Such boilerplate statements, without more, are not

24    sufficient to support a fraud claim and withstand attack by a demurrer. *Kiseskey v.*

25    *Carpenter Trust for Southern California* (1983) 144 Cal.App.3d 222, 228. Therefore, the

26    Court should sustain BPWCP's demurrer as to Kassa's third cause of action.

27         **D.**    **Kassa's Implied Covenant of Good Faith and Fair Dealing Claim is**

28         **Improperly Duplicative of the Breach of Contract Claim.**

1  Kassa's fourth cause of action is for breach of the covenant of good faith and
2  fair dealing. Kassa's cause of action for breach of the implied covenant as against BPWCP
3  is flawed in two respects: (1) the claim is duplicative of the breach of contract cause of
4  action and thus the express provisions (rather than the implied covenant) govern; and
5  (2) there is no recognized cause of action for tortuous breach of contract outside of the
6  insurance context where a special relationship exists between the parties.

7  Kassa alleges that BPWCP breached the covenant of good faith and fair
8  dealing by breaching the contract "in bad faith." (Compl., ¶6, 4th C/A). Every contract
9  imposes on each party a duty of good faith and fair dealing in each performance and in its
10  enforcement. *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d
11  1371, 1393. However, where a claim for breach of the implied covenant does not go beyond
12  the statement of a breach of express contractual terms and seeks the same relief sought in a
13  breach of contract claim, it is simply superfluous to the contract claim. *Celador Int'l Ltd. V.*
14  *Walt Disney Co.* (C.D. Cal., 2004) 347 F.Supp.2d 846, 852; *Guz v. Bechtel Nat'l, Inc.* (2000)
15  24 Cal.4th 317, 353, n. 18. Furthermore, where there is an express agreement covering a
16  certain subject, "the law cannot imply a contract in the face of such express agreement."
17  *Benton v. Hofmann Plastering Company* (1962) 207 Cal.App.2d 61, 24 Cal.Rptr 268, 276.
18  The facts upon which Kassa relies in alleging breach of the covenant are covered by express
19  terms in the Franchise Agreements, and therefore his claim for breach of the covenant is
20  duplicative of his claim for breach of contract and is improper.

21  In addition, Kassa essentially attempts to allege a tortuous breach of contract
22  claim by stating that BPWCP had a special relationship and "Plaintiffs were in a vulnerable
23  position because they were unsophisticated with the complexities of the transaction."
24  (Compl., ¶4, 4th C/A) These facts, even if true, are insufficient to elevate the relationship
25  between Kassa and BPWCP to a "special relationship." The covenant of good faith and fair
26  dealing is a contract term and compensation for its breach has almost always been limited to
27  contract rather than tort remedies. *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654,
28  684. An exception to this general rule occurs in the insurance contract setting. There, the

7

1   contracting parties are held to be in a special relationship, because the insured does not seek

2   to obtain a commercial advantage by entering into the contract, but instead seeks protection

3   against calamity. *Id* at 685. Therefore, in the insurance setting, the obligations of good faith

4   and fair dealing are said to encompass qualities of decency and humanity inherent in the

5   responsibilities of a fiduciary, so that breach of these obligations justifies the imposition of

6   tort liability. *Id.* Kassa entered into the Franchise Agreements for his own commercial

7   advantage, and not for purposes of securing any sort of protection from BPWCP. Therefore,

8   the "special relationship" does not apply to Kassa and BPWCP and the fourth cause of action

9   is improper. BPWCP's demurrer as to the fourth cause of action should be sustained without

10  leave to amend.

11          **E.    Kassa's Negligent Misrepresentation Claim Lacks the Requisite**

12                  **Specificity.**

13          Kassa's fifth cause of action is for negligent misrepresentation. The elements

14  of a negligent misrepresentation claim are: (1) the defendant must have made a

15  representation as to a past or existing material fact; (2) the representation must have been

16  untrue; (3) regardless of his actual belief the defendant must have made the representation

17  without any reasonable ground for believing it to be true; (4) the representation must have

18  been made with the intent to induce plaintiff to rely upon it; (5) the plaintiff must have been

19  unaware of the falsity of the representation; he must have acted in reliance upon the truth of

20  the representation and he must have been justified in relying upon the representation; and (6)

21  as a result of his reliance upon the truth of the representation, the plaintiff must have

22  sustained damage. *Walters v. Marler* (1978) 83 Cal.App.3d 1, 17, overruled on another

23  ground in *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505-507.

24  Furthermore, where there is a breach of contract alleged, the law will not find tort liability as

25  well as contractual liability unless there is a breach of some independent duty imposed by

26  law. *Erlich v. Mendezes* (1999) 21Cal.4th 543, 553-4.

27          In alleging the negligent misrepresentation cause of action, Kassa relies solely

28  on purported representations that BPWCP made to him in connection with the Franchise

1    Agreements. Indeed, there are no facts alleged which go beyond those supporting the breach
2    of contract claim.   Kassa's Complaint alleges that BPWCP "made the promises and
3    representations under the contract with no reasonable rounds for believing them to be true..."
4    (Compl., ¶2; 5th C/A).  However, Kassa fails to allege the precise misrepresentations at issue,
5    as well as state any facts tending to show that these supposed misrepresentations were made
6    with the intent of inducing reliance by Kassa.   Furthermore, Kassa's Complaint is also
7    uncertain in that it cannot be ascertained from review of the fifth cause of action how, when,
8    in what manner, or upon what basis Kassa can claim that BPWCP has engaged in negligent
9    misrepresentation.       Specifically,   Kassa   fails   to   identify   when   the   purported
10   misrepresentations   took   place,   who   made   the   misrepresentations,   what   the
11   misrepresentations were, and by what authority those misrepresentations were made.
12   Finally, there is no other independent duty pled or imposed by law in this fifth cause of
13   action and BPWCP cannot recover tort damages for what are, in actuality, purported contract
14   claims.  Accordingly, the Court should sustain the demurrer to Kassa's fifth cause of action
15   without leave to amend.

16              F.    **Kassa's Negligence Claim is Also Improperly Duplicative of His**
17                    **Claim for Breach of Contract.**

18              Kassa's sixth cause of action is for negligence.   To properly allege a
19   negligence cause of action, a plaintiff must plead the following four elements: (1) duty; (2)
20   breach of the duty; (3) causation; and (4) damages.  *Ann M. v. Pacific Plaza Shopping*
21   *Center* (1993) 6 Cal.4[th] 666, 673.  The negligent performance of a contract, however, will
22   not ordinarily give rise to tort damages. *Aas v. Superior Court* (2000) 24 Cal.App.4[th] 627,
23   643, superseded by statute on other grounds as stated in stated in *Rosen v. State Farm*
24   *General Ins. Co.* (2003) 30 Cal.4[th] 1070, 1079-1080.

25              Here, Kassa alleges that BPWCP owed him a duty under the contract, and that
26   BPWCP "negligently, recklessly, or carelessly knew or should have known that the BPWCP
27   never intended to proceed with the promises, terms and conditions of the contract..."
28   (Compl., ¶3, 6th C/A).  This is insufficient to state a cause of action for negligence in the

                                                9

1   absence of any facts that BPWCP breached some duty to Kassa that is independent of its
2   duties to Kassa under the Franchise Agreements. Furthermore, the negligence cause of
3   action is also uncertain in that Kassa fails to identify when the purported breach of duty took
4   place, which acts constituted the specific breach, or who was responsible for the breach.
5   BPWCP's demurrer as to the sixth cause of action should be sustained without leave to
6   amend.

7           **G.      Kassa's Negligent Hiring and Supervision Claim Lacks Required**
8                    **Elements.**

9           Kassa's seventh cause of action is for negligent hiring and supervision. To
10  state a claim for negligent supervision, the complaint must allege: (1) a duty of care owed to
11  the plaintiff with respect to the supervision of the employee; (2) a breach of that duty with
12  respect to the supervision of the employee; (3) that negligent supervision must be the cause
13  of plaintiff's damages; and (4) resulting damages to the plaintiff. *Delfino v. Agilent*
14  *Technologies, Inc.* (2006) 145 Cal.App.4[th] 790. Furthermore, claims for negligent hiring and
15  supervision are limited to situations in which an employee has tortiously injured the plaintiff.
16  *See Underwriters Ins. Co. v. Purdie* (1983) 145 Cal.App.3d 57, 69. A typical situation and
17  widely cited example in which a claim for negligent hiring and supervision was deemed
18  appropriate was in *Roman Catholic Bishop v. Superior Court* (1996) 42 Cal.App.4[th] 1556,
19  where the plaintiff brought suit against the Roman Catholic Church for the negligent hiring
20  and supervision of a priest who had allegedly sexually molested her.

21          Kassa's Complaint lacks any facts to support the existence of any duty of care
22  owed by BPWCP to Kassa with respect to the supervision of any particular employee. The
23  Complaint also lacks any allegation of the breach of that duty. In addition, Kassa fails to
24  identify which of BPWCP's employees were negligently hired or supervised, or how the
25  purported negligent hiring or supervision actually caused any injury to Kassa. Finally, as
26  previously noted, Kassa has failed to adequately allege any facts supporting the notion that
27  he has been tortiously injured by BPWCP's purported breach of contract. Therefore, Kassa's
28  claim for negligent supervision is not only uncertain and insufficient, but also inapplicable in

1   this setting. Accordingly, the Court should sustain the demurrer as to Kassa's seventh cause
2   of action.

3           **H.    Kassa's Intentional Infliction of Emotional Distress Claim Lacks**
4              **Sufficient Facts to Support a Viable Cause of Action.**

5           Kassa's eighth cause of action is for intentional infliction of emotional distress.
6   To maintain such a cause of action, a plaintiff must allege that: (1) the defendant engaged in
7   extreme and outrageous conduct with the intention of causing, or reckless disregard of the
8   probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually
9   suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual
10  and proximate cause of the emotional distress. *Cervantez v. J.C. Penny Co.* (1979) 24 Cal.3d
11  578, 593. The nature of the wrongful conduct must be so extreme and outrageous as to
12  exceed all bounds usually tolerated in a civilized society, and it further must be especially
13  calculated to cause, and must actually cause, mental distress of a very serious kind.
14  *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209. A person is entitled to receive
15  emotional distress damages. *Hailey v. California Physicians' Service*, 158 Cal.App.4th 452,
16  477. Not surprisingly, BPWCP has been unable to locate a single reported decision in
17  California in which a corporation has received emotional distress damages.

18          Notwithstanding the ridiculousness of H&O, Inc. asserting this claim (and the
19  demurrer as to H&O, Inc. on this claim should no doubt be sustained without leave to
20  amend), the intentional infliction of emotional distress cause of action fails to assert the
21  required element of extreme or outrageous conduct on the part of BPWCP. Kassa alleges
22  that "as a result of the wrongful, intentional and malicious acts of BPWCP and each of them
23  and the fright thereby caused to Plaintiffs, he have [sic] suffered extreme and severe mental
24  anguish, emotional distress and physical pain and have been injured to their minds and
25  bodies [sic]." (Compl., ¶2, 8th C/A). This type of general and conclusive allegation is
26  insufficient. Kassa also asserts states that BPWCP engaged in "wrongful, intentional, and
27  malicious acts," without explaining the precise nature of those acts, or how they were so
28  extreme as to exceed all bounds usually tolerated in a civilized community. *See Canta v.*

1    *Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 888 (allegations that defendant's conduct

2    is "outrageous" or "malicious" is insufficient, as a matter of law, to provide a basis for the

3    outrageous conduct element of the facts). Furthermore, the claim is based on contract breach

4    allegations and tort liability based on these contentions is inappropriate. *Aas v. Superior*

5    *Court, supra,* 24 Cal.4th at 643. Accordingly, BPWCP's demurrer as to the eighth cause of

6    action should be sustained without leave to amend.

7                I.      **Kassa's Claim for Injunctive Relief is Subject to Demurrer Because**

8                        **it is Preempted by the PMPA.**

9                Kassa's ninth cause of action is for temporary restraining order, preliminary

10   injunction, and permanent injunction. Aside from the fact that the Court has already issued

11   rulings denying Kassa's requests for TRO and Preliminary Injunctive relief, Kassa's

12   remaining claim for permanent injunctive relief is also improper and should be dismissed on

13   grounds of Federal preemption.

14               Kassa's claim for a permanent injunction seeks to reverse the franchise

15   termination and non-renewal and "prevent [BPWCP] from continu[ing] to wrongfully

16   possess Plaintiffs' business and property and prevent it [sic] from operating as a business

17   earning income, profits, use, possession an control of the premises." (Compl., ¶2, 9th C/A).

18   The Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.* ("PMPA"), however,

19   specifically governs gasoline franchise nonrenewal claims and preempts the injunctive relief

20   sought in Kassa's complaint.  See 15 U.S.C. §§ 2801 *et seq.; see also California ARCO*

21   *Distributors, Inc. v. Atlantic Richfield Co.* (1984) 158 Cal.App.3d 349 (a service station

22   franchise nonrenewal may not be enjoined absent a claim brought under the governing

23   PMPA).  True and correct copies of all Federal Authorities cited herein have been filed

24   concurrently herewith.

25               Moreover, Kassa has had ample opportunity to file an amended complaint

26   (having been notified via BPWCP's *Ex Parte* Application to Dissolve the TRO and

27   BPWCP's Opposition to the Preliminary Injunction Motion about the PMPA preemption

28   concerns), but has failed to specifically assert any claims under the PMPA. Accordingly, the

1   demurrer should be sustained as to Kassa's ninth cause of action without leave to amend.[4]

2       **J.    Kassa's Conspiracy Claim Lacks the Necessary Elements Required**

3           **to State a Cause of Action.**

4           Kassa's tenth cause of action is for conspiracy.  To state a cause of action for

5   conspiracy, <u>facts</u> must be alleged showing the formation and operation of a conspiracy and

6   damage resulting from an act or acts done in furtherance of the plan.  *Orloff v. Metropolitan*

7   *Trust Co.* (1941) 17 Cal.2d 484, 487.  The pleaded facts must show <u>something was done</u>

8   which, without the conspiracy, would give rise to a right of action.  *Lesperance v. North*

9   *American Aviation, Inc.* (1963) 217 Cal.App.2d 336, 345.   Bare legal conclusions,

10  inferences, generalities and presumptions are insufficient to properly state a cause of action

11  for conspiracy.  *117 Sales Corporation v. Olsen* (1978) 80 Cal.App.3d 645, 650.

12          Kassa's cause of action for conspiracy fails to allege the necessary facts to

13  support such a claim.  First, there is a complete absence of any facts showing that BPWCP

14  was involved in the formation and operation of any conspiracy.  In fact, Kassa has failed to

15  even allege any facts regarding the person(s) with whom BPWCP supposedly entered into a

16  conspiracy.  Next, Kassa fails to allege any facts showing that damage resulted from an act

17  or acts done in furtherance of the purported plan.  There is no allegation of any actual

18  wrongful conduct on the part of BPWCP, and no information concerning BPWCP's

19

20  _____

21  [4] BPWCP continues to maintain that the entire complaint is preempted by the PMPA to the
    extent the claims are related to the nonrenewal of the franchise (which BPWCP maintains

22  they are).  *See Niakan, et al. v. Samaan and Union Oil Company of California* (1988) 199
    Cal.App.3d 716 (state court lacked subject matter jurisdiction where claims of wrongful

23  nonrenewal of gasoline franchise preempted by PMPA; claims of unfair trade practices,
    breach of implied covenant of good faith and fair dealing, breach of written contract, and

24  misrepresentation often stem from franchisor's failure to renew and such claims held to be
    preempted by PMPA); *Pride v. Exxon Corp.* (9th Cir. 1990) 911 F.2d 251, 257 (PMPA

25  preempts state law causes of action that would have effect of limiting permissible reason for
    terminating or nonrenewing a petroleum franchise); *Consumers Petroleum Co. v. Texaco* (6th

26  Cir. 1986) 804 F.2d 907 (state law claims alleging misrepresentations relating to the
    termination or nonrenewal of a franchise are preempted); *Mobil Oil Corp. v. Superior Court*

27  (1987) 189 Cal.App.3d 485 (all state law claims arising out of termination of station lease,
    including claim for breach of covenant of good faith and fair dealing, are preempted); and

28  *California ARCO Distributors, Inc. v. Atlantic Richfield Co.* (1984) 158 Cal.App.3d 349 (a
    service station franchise nonrenewal may not be enjoined absent a claim brought under the
    governing PMPA).

1    participation in the alleged conspiracy.

2            Assuming Kassa is claiming that agents or employees of BPWCP conspired

3    with one another, Kassa cannot maintain a conspiracy cause of action, as a matter of law.

4    Agents and employees of a corporation cannot conspire with their corporate principal and

5    employer if they were acting in their official capacities on behalf of the corporation. *Applied*

6    *Equip. Corp. v. Litton Saudi Arabia, Ltd.* (1994) 7 Cal.4[th] 502, 512, n. 12.  Without more,

7    Kassa's conspiracy cause of action against BPWCP is defective and subject to demurrer.

8            **K.    Kassa's Claim for Unfair and Deceptive Business Practices is**

9                    **Uncertain and Ambiguous.**

10           Kassa's eleventh cause of action is for "unfair and deceptive business

11   practices."  Unlike the other causes of action discussed above, BPWCP is unable to present

12   the Court with the requisite elements necessary to support this claim.  This is because it is

13   virtually impossible to decipher whether Kassa is stating a statutory claim (i.e., under

14   Business & Professions Code § 17200) or a common law claim (i.e., for unfair competition).

15   Given such uncertainty, BPWCP has no way of responding to this claim.

16           In the Complaint, Kassa alleges that BPWCP engaged in unfair and deceptive

17   business practices by "misrepresent[ing] their authority, misrepresent[ing] the contract

18   provisions, and process [sic] for correcting problems by BPWCP, and engag[ing] in an

19   overall pattern and scheme of defrauding members of the public including Plaintiffs, into

20   relying upon their professional expertise..." (Compl., ¶2, 11th C/A).  Based on these

21   allegations (which are duplicative of the breach of contract and other tort claims), BPWCP

22   cannot determine what exactly Kassa is pleading.  Further specificity is required or else the

23   claim should be dropped.

24           Furthermore, Kassa also alleges in this cause of action that BPWCP are

25   "fiduciaries and/or professionals with duties of due care and loyalty to Plaintiffs."  (*Id*).  To

26   the extent that there is some recognized cause of action for "unfair and deceptive business

27   practices" and Kassa contends that this purported fiduciary relationship creates some liability

28   therefore, we note that to establish a fiduciary relationship, there must be a "relation existing

14

1 │ between parties to a transaction wherein one of the parties is in duty bound to act with the

2 │ utmost good faith for the benefit of the other party." *Wolf v. Superior Court* (2003) 107

3 │ Cal.App.4th 25, 29. There is generally no fiduciary owed duty in a purely commercial

4 │ situation. *McCann v. Lucky Money, Inc.* (2005) 129 Cal.App.4th 1382, 1398. BPWCP's

5 │ relationship with Kassa was purely commercial in nature and thus Kassa's conclusory

6 │ assertion that BPWCP was a fiduciary to Kassa is unsupported.

7 │ **IV.    CONCLUSION**

8 │        This action is nothing more than a straightforward gasoline franchise non-

9 │ renewal and termination matter and the governing franchise agreements dictate the available

10 │ damages, if any. Kassa's attempts to create tort liability where none exists fail as is

11 │ evidenced by the inadequately pled causes of action in the Complaint. For the reasons stated

12 │ herein as well as those stated in the Motion to Strike filed concurrently herewith, BPWCP

13 │ respectfully requests that this Court sustain its demurrer, without leave to amend.

14 │

15 │ DATED: April 18, 2008          Respectfully submitted,

16 │                                KURT OSENBAUGH
   │                                DEBORAH YOON JONES
17 │                                MacKENZIE E. HUNT
   │                                **WESTON, BENSHOOF, ROCHEFORT,**
18 │                                   **RUBALCAVA & MacCUISH LLP**

19 │

20 │                                _____
   │                                       Deborah Yoon Jones
21 │                                Attorneys for Defendant
   │                                BP WEST COAST PRODUCTS LLC

22 │

23 │

24 │

25 │

26 │

27 │

28 │

———————————————————————————————————————————————

15

**PROOF OF SERVICE**

I, Heather Thai, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On April 18, 2008, I served the document(s) described as **DEMURRER OF BP WEST COAST PRODUCTS LLC TO COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:    SEE ATTACHED SERVICE LIST

☒    BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

☐    BY FEDERAL EXPRESS    ☐ UPS NEXT DAY AIR    ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☐ FEDERAL EXPRESS   ☐ UPS   ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of ☐ FEDERAL EXPRESS   ☐ UPS   ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐    BY FACSIMILE:    I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☐    BY ELECTRONIC MAIL TRANSMISSION WITH ATTACHMENT: On this date, I transmitted the above-mentioned document by electronic mail transmission with attachment to the parties at the electronic mail transmission address set forth on the attached service list.

☒    [State] I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐    [Federal]    I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 18, 2008, at Los Angeles, California.

Heather Thai

1174236.1

56

1

2

**KASSA, et al. v. BP WEST COAST PRODUCTS LLC**
**SANTA CLARA SUPERIOR COURT**
**Case No. 108CV107979**

3

4

**SERVICE LIST**

George Holland, Esq.
LAW OFFICES OF GEORGE HOLLAND
1970 Broadway, Suite 1030
Oakland, CA 94612

5

6

7

Attorney for Plaintiffs, OMER KASSA,
OMER KASSA dba H & O, INC. and H &
O, INC.

Tel: (510) 465-4100
Fax: (510) 465-4747

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1174236.1

57

(ENDORSED)

1  GEORGE HOLLAND, ESQ., State Bar No. 55740     2008 APR 11 PM 3:25
   LAW OFFICES OF GEORGE HOLLAND
2  1970 Broadway, Suite 1030                         KIRI TORRE, CEO
   Oakland, California 94612                       SUPERIOR COURT
3  Telephone: (510) 465-4100                       SANTA CLARA CO.
                                                 BY M. Sorum  DEPUTY
4  Attorneys for Plaintiffs
   OMER KASSA, OMER KASSA dba H & O, INC.
5  and H & O, INC.

6

7                    SUPERIOR COURT OF CALIFORNIA

8                      COUNTY OF SANTA CLARA

9                      UNLIMITED JURISDICTION

10

11  OMER   KASSA   individually;   OMER)   No. 108CV107979
    KASSA dba H & O, INC., and H & O,)
12  INC.,                            )   FIRST AMENDED COMPLAINT FOR
                                     )   BREACH  OF  CONTRACT,  FRAUD,
13                                   )   MISREPRESENTATION,
              Plaintiffs,            )   NEGLIGENCE,      RESTRAINING
14                                   )   ORDER, INTENTIONAL INFLICTION
    vs.                              )   OF  EMOTIONAL  DISTRESS  AND
15                                   )   DAMAGES
    BP WEST COAST PRODUCTS, LLC, dba)
16  ARCO PRODUCTS COMPANY and  DOES 1)   Demand for Jury Trial
    to 50,                          )
17                                   )
              Defendants.
18

19      Plaintiffs OMER KASSA individually; OMER KASSA dba H & O,

20  INC., and H & O, INC., allege:

21           FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

22                      (BREACH OF CONTRACT)

23      1.    Plaintiff H & O, INC., is at all times herein mentioned

24  duly licensed corporation in the State of California and was prese

25  and doing business in the City of Campbell, Santa Clara Count

26  California.  Plaintiff OMER KASSA is the president of H & O, INC., a

27  is doing business as H & O, INC.

28      2.    Defendants BP WEST COAST PRODUCTS, LLC dba ARCO PRODUC

COMPLAINT FOR DAMAGES                    1

58

1  COMPANY and DOES 1 to 50, (``ARCO PRODUCTS COMPANY was subsequent
2  purchased by BP WEST COAST PRODUCTS, LLC'') at all times here
3  mentioned were, present and doing business in the City of Campbel
4  Santa Clara County, California.

5       3.    Plaintiffs are the owners, operators and franchisees of
6  ARCO AM/PM gasoline station and mini-market located at 2015 Sou
7  Winchester Boulevard, Campbell, California.    Defendants and each
8  them is the franchisor of the Arco AM/PM Mini-market and the suppli
9  of motor vehicle fuel or oils of like grade and quality, food a
10 other products to plaintiffs.

11      4.    At all times herein mentioned each defendant was an agen
12 servant, employee, partner, joint venturer of the other defendant,
13 and each of them and all times herein mentioned, each defendant w
14 acting within the course and scope of this relationship as an agen
15 servant, employee, partner or joint venturer of the other defendant
16 and each of them.

17      5.    Plaintiffs are ignorant of the true names and capacities
18 each of the defendants sued herein as DOES 1 to 50 inclusive a
19 therefore, sues said defendants by such fictitious names.  Plaintif
20 will seek leave to amend the complaint to allege their true names a
21 capacities when the same has been ascertained.

22      6.    Plaintiffs are informed and believes and based upon su
23 information and belief allege that each of the defendants named here
24 or as a DOE is intentionally and negligently responsible in so
25 manner for the occurrences herein alleged and Plaintiffs' injuries a
26 damages as herein alleged were proximately caused by defendant
27 conduct.

28      7.    On or about March 1, 2002 , in the City of Campbell, San

COMPLAINT FOR DAMAGES                    2

59

1  Clara County, plaintiffs and defendants and each of them, entered in
2  an agreement for the use, operation, possession and control of t
3  ARCO AM/PM Mini-market located at 2015 South Winchester Boulevar
4  Campbell, California (hereinafter "ARCO"). According to the terms
5  the agreement, Plaintiffs were required to pay an initial franchis
6  fee of $35,000, lease the property for $2,000 per month and p
7  defendants 15% of his gross sales per month to operate an AM/PM Mi
8  Market, a retail convenience store identified by the service mark a
9  service name of AM/PM for the sale of prepackaged foods, fast food
10 beverages, sundries and convenience store goods and service
11 Plaintiffs paid $500,000 for this franchise and defendants promis
12 at that time not to discriminate in price between plaintiffs a
13 different purchasers of vehicle motor fuels, gasoline or oils of li
14 grade and quality where the effect of such discrimination would less
15 competition or to injure, destroy or prevent competition. Defendan
16 also promised to timely deliver vehicle motor fuels or oils of li
17 grade and quality to plaintiffs and to charge plaintiffs account v
18 electronic funds payment only for those deliveries that actually h
19 occurred. In exchange, defendants and each of them, were required
20 provide Plaintiffs the equipment necessary to run the AM/P
21 convenience store; timely supply plaintiffs with of motor vehic
22 fuels or oils of like grade and quality and not to discrimina
23 against plaintiffs by charging others lower prices than plaintif
24 either directly or indirectly for gasoline products.

25     9.    At all times herein mentioned, the contract was renewed
26 by the parties on or about March 1, 2005 for another three year peri
27 under the same terms and conditions. In or about March 2004 a
28 continuing to March 4, 2008, defendants, and each of them, failed

COMPLAINT FOR DAMAGES                                    3

60

1  deliver motor vehicle fuels or oils of like grade and quali

2  (hereinafter "gasoline products"), electronically charged funds fr

3  plaintiffs bank account for undelivered gasoline products a

4  discriminated against plaintiffs either directly or indirectly

5  charging them higher prices for gasoline products than it charg

6  others franchisees' located in close proximity to plaintiffs' AM/

7  to lessen competition, to injure and to cause plaintiffs to lose the

8  business.

9       10. At all times herein mentioned, Defendants submitted a

10  renewal of the contract to plaintiffs on or about January 19, 200

11  and gave plaintiffs a certain number of days to sign the renew

12  contract. Plaintiffs complained to defendants both orally and

13  writing about these problems as well as other accounting issues

14  several occasions including on February 27, 2008 during a meetir

15  Plaintiffs tried to discuss the renewal of the contract because issu

16  in the old contract were unresolved. However, defendants have refus

17  and continue their refusal to discuss these problems or take a

18  corrective action. On each occasion, defendants refused to answer a

19  of plaintiffs' questions regarding requirements in the renew

20  contract including the initial deposit fee, monthly rent increases a

21  royalties from gross sales. However, defendants insisted orally th

22  after plaintiffs signed the contract renewal, these issues would

23  addressed.

24       11. On or about March 1, 2008, the contract between Plainti

25  and defendants expired and defendants demanded that plaintiffs rer

26  the contract without addressing any of the ongoing problems th

27  plaintiffs had identified such as increased rent, increased costs

28  gasoline products and why other dealers were charged less prices f

COMPLAINT FOR DAMAGES         4

61

1   deliveries and products; and why did defendants charge plaintiffs a

2   electronically take money for their account to pay for deliveries th

3   were never made.

4        12.  At all times herein mentioned, Plaintiffs have performe

5   all conditions, covenants, and promises required on their part to

6   performed in accordance with the terms and conditions of the contrac

7        12.  Defendants breached the Agreement by failing to deliver

8   gasoline products after being timely requested to do so; by chargi

9   Plaintiffs unreasonably high costs for its gasoline products and

10  wrongfully electronically withdrawing funds from plaintiffs' banki

11  account for gasoline products that were never delivered and refusi

12  to return the funds after being requested to do so.

13       13.  Defendants have wholly failed and refused to perform und

14  the terms of the contract and have seized plaintiffs's business a

15  real property preventing plaintiffs from the use, operation a

16  possession of their business as well as lost profits.

17       14.  As a direct and proximate results of these acts, omissic

18  or breaches by defendants, plaintiffs have sustained damages accordi

19  to proof.

20            **SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS**

21                         (CONVERSION)

22       1.  Plaintiffs incorporates by referenced the First Cause o

23  Action herein and alleges as follows.

24       2.  Plaintiffs have performed all the conditions of the

25  contract that are required to be performed.  Plaintiffs remains rea

26  and willing to perform all of the terms of the contract applicable

27  Plaintiffs and receive title to the property as promised

28  defendants.

---

COMPLAINT FOR DAMAGES                    5

62

1        3.    Plaintiffs have no adequate remedy at law because the

2   contract is for an interest in real property, and pursuant to Civ

3   Code Section 3387 money damages are presumed inadequate for t

4   breach. Further, Plaintiffs have already invested $500,000 and

5   substantial amount of time regarding the property with defendants

6        4.    The aforementioned acts of defendants, were willful and

7   intentional and done with malice, oppression and fraud and Plaintif

8   is therefore entitled to exemplary and punitive damages.

9              **THIRD CAUSE OF ACTION AS TO ALL DEFENDANTS**

10                       (FRAUD and DECEIT)

11       1.    Plaintiffs incorporate by referenced the First and Seco

12   Causes of Action, herein and alleges as follows.

13       2.    On or about March 1, 2005, defendants entered into

14   an extension of the original contract for a period of three years f

15   the purchase of an ARCO AM/PM Mini Market franchise and lease the re

16   property located at 2015 South Winchester Boulevard, Campbel

17   California defendants required plaintiffs to authorize electron

18   funds payments to defendants from plaintiffs' banking accoun

19   Defendants promised to deliver to plaintiffs gasoline products time

20   upon request and at reasonable prices as others they charge as we

21   as to deduct only money owed from plaintiffs' banking account fr

22   deliveries that were actually made and to correct any amoun

23   wrongfully deducted from Plaintiffs' banking account upon notic

24   Defendants falsely and fraudulently represented to plaintiffs th

25   defendants would credit plaintiffs' account for amounts wrongful

26   taken but have failed and continue not to do so.

27       3.    At the time defendants and each of them, made the promise

28   defendants had no intention of performing them. Defendants and ea

---

COMPLAINT FOR DAMAGES                    6

                        63

1   of them, made intentional misrepresentations of material facts

2   Plaintiffs, knowing such statements were untrue with the intent

3   induct Plaintiffs to entering into the contract, continuing with t

4   contract and not terminating it all to their detriment.

5       4.    Plaintiffs are informed and believes that the promises we

6   made by defendants were false and done with the intent to

7   defraud Plaintiffs and that said promises and acts were dc

8   maliciously and oppressively.

9       5.    Plaintiffs at the time these promises were made and at a

10  times herein mentioned took the actions alleged and was ignorant

11  defendants' secret intentions not to perform and Plaintiffs could n

12  in the exercise of reasonable diligence have discovered defendant

13  secret intention. In reliance on the promise of defendants, Plaintif

14  entered into the contract and continued with the contract aft

15  defendants made misrepresentations of material facts that they wou

16  correct the problems.  If Plaintiffs had known of the actual intenti

17  of defendants and each of them, he would not have taken such actic

18      6.    Defendants failed to abide by their promises on March 1,

19  2005, by, among other things, such as failing to deliver gasoli

20  products after timely requests were made; failing to charge Plaintif

21  a reasonable costs for gasoline products as compared to other gasoli

22  stations in the area; wrongfully deducting money from Plaintiffs' ba

23  account for money not owed.   As a result of defendants acts and/

24  conduct, Plaintiffs is entitled to damages according to proof.

25      7.    The aforementioned acts of defendants, were willful and

26  intentional and done with malice, oppression and fraud and Plaintif

27  is therefore entitled to exemplary and punitive damages.

28

---

COMPLAINT FOR DAMAGES                        7

64

**FOURTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

1.    Plaintiffs incorporates by reference the First through Third Causes of Action, herein and allege as follows:

2.    On or about March 1, 2005, Plaintiffs and defendants entered into a written agreement for an ARCO AM/PM Mini Mark Franchise.

3.    By the terms of the agreement, plaintiffs paid $500,000 along with a renewal fee of $20,000 and other money to defendants f the ARCO AM/PM Mini Market. Defendants promised to deliver gasoli products to Plaintiffs in a timely manner, lease real property Plaintiffs; charge Plaintiffs reasonable prices for gasoline produc and not charge others in the area less for gasoline products and on transfer money from plaintiffs's banking account for deliveries th actually occurred. Implied in the contract was a covenant defendants that they would act in good faith and deal fairly wi Plaintiffs and that they would do nothing to deprive Plaintiffs of t benefits of the agreement.

4.    Plaintiffs and defendants had a special relationship in that Plaintiffs were in a vulnerable position because they we unsophisticated with the complexities of the transaction. Plaintif relied upon the defendants and each of them and defendants were awa of Plaintiffs' vulnerability and the usual measure of contract damag provide no incentive for its continued performance under the contrac

5.    Plaintiffs performed their obligations under the contrac and defendants breached their obligations under the contact by failing to deliver gasoline products to Plaintiffs at all; by al failing to timely deliver gasoline products; by electronical

COMPLAINT FOR DAMAGES                              8

65

1  transferring money from Plaintiffs' banking account for deliver|
2  that never occurred and by failing to charge Plaintiffs reasonal
3  prices for gasoline products as compared to other gasoline static
4  in close proximity as agreed on or about March 1, 2005.  These k
5  faith breaches were a violation of the implied covenant of good fai
6  and fair dealing in that defendants were in a superior positic
7  because Plaintiffs were especially vulnerable.  Plaintiffs had
8  immediate need for the real property which were set forth in t
9  contract.

10      7.  As a proximate result of the bad faith breach, by
11  defendants and each of them, of their obligations under the contra
12  as herein alleged, Plaintiffs have suffered damages in an amou
13  according to proof.

14      8.  As a further proximate result of the tortious breach of
15  the implied covenant of good faith and fair dealing by defendants a
16  each of them, as herein alleged, Plaintiffs sustained emotional a
17  mental distress, anguish, anxiety, sleeplessness and indignity all
18  their general damage in an additional sum according to proof.

19      9.  As a further proximate result of the tortious breach of t
20  implied covenant of good faith and fair dealing, by defendants a
21  each of them, Plaintiffs have incurred and will continue to incu
22  medical and related expenses.  The full amount of such expenses is n
23  known to Plaintiffs at this time, and Plaintiffs will move to ame
24  this complaint to state such amount when the same becomes known
25  their according to proof.

26     10.  The aforementioned acts of defendants, were willful and
27  intentional and done with malice, oppression and fraud and Plaintif
28  is therefore entitled to exemplary and punitive damages.

COMPLAINT FOR DAMAGES                    9

66

**FIFTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

(Negligent Misrepresentation)

1.    Plaintiffs incorporates the First through Fourth Causes
Action and hereby allege as follows.

2.    Defendants and each of them, made the promises
and representations under the contract with no reasonable grounds f
believing them to be true, in that Plaintiffs are informed a
believes that defendants never intended to proceed with the contrac
charge plaintiffs gasoline products at an higher price than others
order to lessen competition and discriminate against plaintiffs wi
the intent to injure; wrongfully electronically transfer funds fr
plaintiffs' bank account and charge them for deliveries that nev
occurred.

3.    At all times herein mentioned, these representations we
made with the intent to defraud Plaintiffs in the manner here
alleged.

4.    Plaintiffs, at the time of these representations were ma
by defendants, and at the time Plaintiffs took the actions here
alleged, were ignorant of the falsity of defendants' representati
and believed them to be true.  In reliance on these representation
Plaintiffs were induced to enter into the contract and relied
defendants' statements and were justified because of the promises a
representations.

5.    As a proximate result of defendants' conduct, Plaintiff
have suffered damages in a sum according to proof.

**SIXTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

(Negligence)

1.    Plaintiffs incorporates by reference the First through

COMPLAINT FOR DAMAGES                     10

67

1 Fifth Causes of Action herein and alleges.

2     2. At all times herein mentioned, defendants and each of the

3 owed a duty to Plaintiffs to perform under the contract on the agre

4 upon date in a timely manner.

5     3. Defendants and each of them, negligently, recklessly or

6 carelessly knew or should have known that the defendants nev

7 intended to proceed with the promises, terms and conditions of t

8 contract and that their conduct would create an unreasonable risk

9 harm and danger to persons and property.

10     4. As a proximate cause of the negligence of defendants, a

11 each of them, and the resulting harm, Plaintiffs were injured in the

12 health, strength and activity, sustaining injuries to their body a

13 shock and injury to their nervous system and person, all of whi

14 injuries and damages have caused, and continue to cause Plaintif

15 great physical, mental and nervous pain and suffering, loss of us

16 enjoyment and profits all to Plaintiffs' general damage.

17     5. As a further proximate result of the negligence

18 defendants, and each of them, Plaintiffs were required to, and d

19 employ physicians and surgeons for medical examination and treatme

20 and incurred medical and hospital expenses. Plaintiffs will be oblig

21 to incur further medical and hospital expenses in an amount present

22 unknown.

23     6. As a further proximate result of the negligence

24 defendants, Plaintiffs were prevented from attending to their busine

25 and lost profits and business and opportunities.

26             **SEVENTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

27                (Negligent Hiring and Supervision)

28     1. Plaintiffs incorporate by reference the First through

---

COMPLAINT FOR DAMAGES           11

68

1  Sixth Causes of Action, as though set forth here in full.

2      2.   Defendants and each of them, knew or should have known th

3  the named defendants and DOES 1 to 50, were unfit for the positio

4  which they were hired.   Defendants and each of them, failed

5  properly supervise and train defendants and each of them and we

6  directly responsible for the harm to plaintiffs and as a result

7  said lack of training and supervision, for the acts of these named a

8  unnamed defendants.   The acts include the aforementioned.

9      3.   Defendants and each of them, ratified the acts of said

10 defendants and at all times herein mentioned, defendants were acti

11 within the course and scope of their employment or agency with t

12 other defendants.

13     4.   As a proximate result of the acts of defendants, and ea

14 of them, Plaintiffs suffered extreme and severe mental anguis

15 emotional and physical pain and have been injured in their bodies a

16 minds.

17     5.   As a proximate result of defendants' negligent conduct,

18 Plaintiffs have suffered severe and extreme physical injuries, ment

19 and emotional distress all to their general damage.

20     6.   As a proximate result of defendants negligent conduct

21 Plaintiffs were unable for period of time, to attend operate :

22 business, lost profits and good will in a sum according to proof.

23           **EIGHTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

24            (Intentional Infliction of Emotional Distress)

25     1.   Plaintiffs incorporate by referenced the First through

26 Seven Causes of Action, as though set forth here in full.

27     2.   As a result of the wrongful, intentional and malicious

28 acts of defendants and each of them and the fright thereby caused

COMPLAINT FOR DAMAGES                    12

69

1   Plaintiffs, he have suffered extreme and severe mental anguis
2   emotional distress and physical pain and have been injured to the
3   minds and bodies.
4       3.   As a proximate result of the acts of defendant, Plaintif
5   were unable for a period of time, to attend to their work and lo
6   earnings in a sum according to proof.  Plaintiffs also lost the us
7   possession, good will and profits.
8       4.   As a proximate result of defendants willful, wanton and
9   malicious conduct, Plaintiffs became terrified and suffered severe a
10  extreme mental and emotional distress, to Plaintiffs' general damag
11  according to proof.
12      5.   The aforementioned acts of defendants, were willful and
13  intentional and done with malice, oppression and fraud and Plainti
14  are therefore entitled to exemplary and punitive damages.
15              **NINTH CAUSE OF ACTION AS TO ALL DEFENDANTS**
16          (Temporary Restraining Order, Preliminary Injunction,
                        Permanent Injunction)
17
18      1.   Plaintiffs incorporate their First through Eighth Causes
    Action as though set forth here in full.
19
20      2.   Defendants have seized Plaintiffs' franchise and real
21  property preventing their use, operation and possession. Unl
22  restrained, defendants will continue to wrongfully possess Plaintif
23  business and property and prevent it from operating as a busin
24  earning income, profits, use, possession and control of the premis
25  Their would be to Plaintiffs's great and irreparable injury, for wh
26  pecuniary compensation would not afford adequate relief, in t
27  Plaintiffs is legally the owner of the Property.
28      3.   An actual controversy have arisen and now exists betwee

COMPLAINT FOR DAMAGES                 13

70

1   Plaintiffs and defendants regarding their respective rights
2   duties.
3   Plaintiffs contends he is the legal owner and a Judicial Declarat
4   is necessary and appropriate at their time under all the circumstan
5   so that Plaintiffs may determine their rights.
6                **TENTH CAUSE OF ACTION AS TO ALL DEFENDANTS**
7                          (Conspiracy)
8        1.    Plaintiffs incorporate by reference the First through
9   Ninth Causes of Action herein and allege.
10       2.    Defendants and each of them, conspired to participate i
11  charging Plaintiffs unreasonable higher prices for gasoline produ
12  as compared to lower prices they charged others in close proximity
13  plaintiffs' gasoline station, the failure to deliver gasoline produ
14  and wrongfully deducting money from Plaintiffs' bank account ba
15  upon undelivered gasoline products in a fraudulent scheme to cl
16  Plaintiffs' business in order to acquire their franchise and r
17  property to generate money and other benefits to them, financial
18  otherwise, to the total disregard of Plaintiffs' rights causing sev
19  emotional distress and losses to Plaintiffs.
20       3.    None of the transactions could be consummated without
21  Plaintiffs' authority unless each of the Defendants breached thei
22  duties and/or acted in a knowing or grossly negligent manner to
23  detriment of Plaintiffs, and thus foil a system of checks and balan
24  consisting of the normal and standard custom in a franchisee
25  franchisor gasoline transaction.    Completion of the transactio
26  herein require simultaneous failures of all Defendants wh
27  Plaintiffs are informed and believe, that defendants herein inten
28  to and so orchestrated so as to defraud Plaintiffs, with the expre

COMPLAINT FOR DAMAGES                 14.

71

1    and/or implicit knowledge and concurrence of each of the defendan

2        4.    As a consequence of defendants' misconduct, Plaintiffs h

3    been damaged in an amount yet to be ascertained, including suffer

4    mental and physical distress, plus special damages in an amount to

5    determined.

6        5.    Plaintiffs are also entitled to restitution from Defenda

7    for all losses stemming from their unlawful conduct.    Defenda

8    committed such offenses and engaged in such despicable condu

9    including fraud and conscious disregard of the rights of Plaintif

10   such that punitive damages should be assessed against them.

11            **ELEVENTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

12            (Unfair and Deceptive Business Practices)

13       1.    Plaintiffs incorporate by reference the First through

14   Tenth Causes of Action herein and allege.

15       2.    Defendants and each of them, engaged in unfair and

16   deceptive business practices in providing services to Plainti

17   herein. Defendants misrepresented their authority, misrepresented

18   contract provisions, and process for correcting problems

19   defendants, and engaged in an overall pattern and scheme of defraud

20   members of the public including Plaintiffs, into relying upon th

21   professional expertise while in fact Defendants completely disregar

22   the rights of Plaintiffs and put together and continue to operate

23   contract and/or transactions solely for their own benefit and se

24   interest despite their roles as fiduciaries and/or professionals w

25   duties of due care and loyalty to Plaintiffs who justifiably rel

26   upon defendants.

27       3.    As a consequence of defendants' misconduct, Plaintiffs h

28   been damaged in an amount yet to be ascertained, including suffer

COMPLAINT FOR DAMAGES                    15

72

1  mental and physical distress, plus special damages in an amount to

2  determined.

3       4.   Plaintiffs are also entitled to restitution from Defenda

4  for all losses stemming from their unlawful conduct.   Defenda

5  committed such offenses and engaged in such despicable condu

6  including fraud and conscious disregard of the rights of Plaintif

7  such that punitive damages should be assessed against them.

8            **TWELFTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

9   (Unfair Business Practices Pursuant to Business & Profession Cod

10  Section 21200)

11      1.   Plaintiffs incorporate by reference the First through

12  Tenth Causes of Action herein and allege.

13      2.   At all times herein mentioned, defendants and each of th

14  were the agents, partners, servants and employees of the oth

15  defendants and doing the things hereinafter alleged were acting wit

16  the course and scope of the agency, agreement or services and with

17  permission and consent of defendants and each of them.

18      3.   At all times herein mentioned, defendants and each of th

19  engaged in a pattern of conduct with the intent to either directly

20  indirectly discriminate against plaintiffs in the higher price t

21  charged to plaintiffs than to other purchasers of motor vehicle fu

22  or oils of like grade and quality to lessen competition and to inj

23  and/or destroy plaintiffs' business within the meaning of Business

24  Professions Code Section  21200.

25      4.   As a proximate result of the acts of defendants and each

26  them, as herein alleged, plaintiffs were required to and did emp

27  physicians and surgeons for medical examination, treatment and c

28  for their injuries and did incur medical and incidental expense, l

COMPLAINT FOR DAMAGES                    16

73

1  of business, loss of use, loss profits and other damages.

2      5.   As a further proximate result of the acts of defendants

3  each of them, as herein alleged, plaintiffs have incurred and w

4  incur, further medical and incidental expenses for the care

5  treatment of these injuries as well as lost business, goodwill, l

6  of use and lost profits and other damages, the exact amount of wh

7  is unknown at the present time.

8      6.   The acts and conduct of defendants and each of them as

9  herein alleged were willful, wanton, malicious and oppressive

10  justify the awarding of punitive damages.

11              **THIRTEENTH CAUSE OF ACTION**

12      (Unruh Civil Rights Violation Civil Code Sections 51 & 52)

13      1.   Plaintiffs incorporate by reference the First through

14  Tenth Causes of Action herein and allege.

15      2.   At all times herein mentioned, defendants and each of the

16  were the agents, partners, servants and employees of the ot

17  defendants and doing the things hereinafter alleged were acting wit

18  the course and scope of the agency, agreement or services and with

19  permission and consent of defendants and each of them.

20      3.   At all times herein mentioned, defendants and each of the

21  were the owners or proprietors or distributors of a busine

22  establishment engaged is the business of manufacturing, selling

23  distributing gasoline products commonly known as BP WEST COA

24  PRODUCTS, LLC dba ARCO PRODUCTS COMPANY, situated in the City of S

25  Jose, Santa Clara, County California.

26      4.   Plaintiff OMER KASSA at all times herein mentioned is of

27  Ethiopian descent and a member of the black race.

28      5.   Plaintiffs are informed and believe and thereon alleges

COMPLAINT FOR DAMAGES                    17

74

1  that defendants and each of them, denied to plaintiffs servic
2  advantages and privileges provided to other persons as alleged abo
3  on account of plaintiffs' race, ancestry or national origin in t
4  defendants discriminated against plaintiffs by charging them hig
5  prices for gasoline products than others in the area, thro
6  electronic transfer for gasoline deliveries that never occurred;
7  charging plaintiffs a higher price for gasoline products than oth
8  in the area and by refusing to discuss these and other problems and
9  seizing and taking possession of plaintiffs' business.

10  6.  Defendants' conduct is wrongful and continues in that
11  defendants remain in possession of plaintiffs' business. Defenda
12  continue to deny plaintiffs request to return the money back i
13  their bank account and to charge plaintiffs' the same amount
14  gasoline products as others in the area which denies plainti
15  because of their race, ancestry or national origin the full and eq
16  advantages, privileges and services of the aforementioned busines.

17  7.  Unless defendants and each of them are restrained by a
18  preliminary and permanent injunction by this Court, plaintif
19  injuries will be great and irreparable. Plaintiffs have no pla
20  speedy and adequate remedy at law because of the loss and potent
21  destruction of their business and it would be difficult if
22  impossible for plaintiffs to determine the precise amount of dam
23  which they will suffer if defendants' conduct is not restrained.

24  8.  As a proximate result of the wrongful acts of defendant
25  plaintiffs are entitled to recovery statutory damages up to a maxi
26  of three times the amount of actual damages, but not less than $2
27  plus attorney's fees, as provided by Section 52 of the Civil
28  Code.

COMPLAINT FOR DAMAGES                    18

75

**FOURTEENTH CAUSE OF ACTION**

(Violation of Petroleum Marketing Practices Act

15 U.S.C. §§ 2801-2806)

1. Plaintiffs incorporate by reference the First through Thirteenth Causes of Action herein and allege.

2. At all times herein mentioned, plaintiffs were franchis and defendants and each of them were franchisors engaged in the sa consignment or distribution of motor fuel or gasoline products.

3. Plaintiffs are informed and believe and thereby allege that defendants and each of them in wrongfully, intentional willfully, purposefully, maliciously and in bad faith failed to cre plaintiffs' banking account for non-deliveries and return the mo wrongfully withdrawn; by charging plaintiffs' higher prices for th gasoline products than others in the same area and refusing to m adjustments to plaintiffs' account; by failing to change provisions of the renewal franchise agreement pertaining to r increases, fees increases, etc., and by threatening plainti independence with termination and/or non-renewal of the franch agreement if plaintiffs failed to comply with defendants' demands

4. That defendants demand that plaintiffs renewal the contr or face termination amounts to a contract of adhesion and termination or non-renewal disrupts the reasonable expectation plaintiffs to the franchise relationship on a continuous basis.

5. As a consequence of defendants' misconduct, Plaintiffs h been damaged in an amount yet to be ascertained, including suffer mental and physical distress, plus special damages in an amount to determined.

6. Plaintiffs are also entitled to restitution from Defenda

COMPLAINT FOR DAMAGES                    19

76

1   for all losses stemming from their unlawful conduct. Defenda
2   committed such offenses and engaged in such despicable condu
3   including fraud and conscious disregard of the rights of Plainti1
4   such that punitive damages should be assessed against them.

5        WHEREFORE, Plaintiffs pray for judgment as follows:

6        1.   For general damages;

7        2.   For compensatory damages;

8        3.   For special damages according to proof;

9        4    For an Order that defendants specifically perform
10  requirements of the Contract between plaintiffs and defendants ente
11  into on or about March 1, 2005.

12       5.   For exemplary and punitive damages according to proof;

13       6.   For loss of use and enjoyment according to proof;

14       7.   For a temporary restraining order, a preliminary injuncti
15  a permanent injunction all enjoining defendants, their agen
16  attorneys and representatives, and all other persons acting in conc
17  or participating with them, from selling or transferring the Prope

18       8.   For costs of suit herein incurred;

19       9.   For a reasonable attorney's fee in a sum according to
20  proof;

21       10.  For interest at the legal rate on the foregoing sum
22   pursuant to Section 3336 of the Civil Code, from March 1, 2008;

23       11.  For such other and further relief as the court may deem
24  proper.

25  DATED:  April 11, 2008

26                              GEORGE HOLLAND, ESQ.
                                Attorneys for Plaintiffs
27

28  kassa-1st-amended-complaint

---

COMPLAINT FOR DAMAGES                    20

77

VERIFICATION

1
2
3    I, OMER KASSA, declare:
4    That I am the president of H & O, Inc and have read the following:
5
6    **COMPLAINT FOR DAMAGES**
7
8    I, the undersigned have read the foregoing complaint and it is true of my own knowledge, exc
9    as to those matter stated on information and belief, and as to those matters, I believe them to be tru
10    I declare under the penalty of perjury under the laws of the State of California that the forego
11    is true and correct.
12
13    Dated: ~~March~~ April 3, 2008
14
15
16
17    OMER KASSA
18    President of H & O, Inc.
19
20
21
22
23
24
25
26
27
28

1

78

(ENDORSED)

1
2                     **PROOF OF SERVICE**    2008 APR 11 PM 3: 25
                  C.C.P. SECTIONS 1013a, 2015.5
3                                 KIRI TURRELLCEG
                             SUPERIOR COURT
     I am a citizen of the United States and employed in the Coun
                            BY_____ DEPUTY
4 of Alameda; I am over the age of eighteen years and not a party to t
5
within action; my business address is 1970 Broadway, Suite 10
6
7 Oakland, California, 94612.

8      On April $\underline{11}$, 2008, I served a copy of the attached:

9                **FIRST AMENDED COMPLAINT AND SUMMONS**

10      X        by placing said copy in a sealed envelope with posta
               thereon fully prepaid, following ordinary busine
               practices, said correspondence to be deposited with t
11                United States Postal Service, that same day in the ordina
               course of business, at Oakland, California addressed as s
12                forth below.

13      _____      by personally delivering a true copy thereof to t
               person(s) at the address(es) as set forth below.
14
     _____      by sending a copy to Facsimile number _____
15                the person at the address(es) as set forth below.

16 Kurt Osenbaugh, Esq.
Deborah Yoon Jones, Eq.
17 WESTON, BENSHOOF, ROCHEFORT, et al.
333 South Hope Street, 16ᵗʰ Flr.
18 Los Angeles, CA 90071

19      I declare under penalty of perjury under the laws of the Sta

20 of California that the foregoing is true and correct.

21 Dated: April $\underline{11}$, 2008

22                    _____

23                   George Holland, Jr.

24
25
26
27
28

                      1

                79

1  GEORGE HOLLAND, ESQ., , State Bar No. 55740
   **LAW OFFICES OF GEORGE HOLLAND**
2  1970 Broadway, Suite 1030
   Oakland, California  94612
3  Telephone:  (510) 465-4100

4  Attorneys for Plaintiffs
   OMER KASSA, individually, OMER KASSA
5  dba H & O INC., and H & O, INC.

6

7

8
                  SUPERIOR COURT OF CALIFORNIA
9
                    COUNTY OF SANTA CLARA
10
                    UNLIMITED JURISDICTION
11

12  OMER  KASSA,  individually,  OMER)      No.  108CIV107979
    KASSA dba H & O, INC., and H & O,)
13  INC.                            )      **EX  PARTE  APPLICATION  AND
                                    )      SUPPORTING DECLARATION FOR A
14                                  )      TEMPORARY  RESTRAINING  ORDER
                                    )      AND  ORDER  TO  SHOW  CAUSE  RE
15          Plaintiffs,             )      PRELIMINARY INJUNCTION**
                                    )
16  vs.                             )      Date: March 19, 2008
                                    )      Time: 8:15 a.m.
17  BP WEST COAST PRODUCTS, LLC., dba)      Dept: 104
    ARCO PRODUCTS COMPANY and DOES 1)
18  to 50,                          )      Action Filed: March 12, 2008
                                    )
19          Defendants.

20
       Plaintiffs OMER KASSA individually, OMER KASSA dba H & O, INC
21
   and H & O, INC., apply for a temporary restraining order restrain
22
   defendants BP WEST COAST PRODUCTS, LLC., dba ARCO PRODUCTS COMPANY a
23
   DOES 1 to 50, from the seizing, closing and preventing the furth
24
   use, possession, operation and consequentially causing the destructi
25
   of their ARCO AM/PM gasoline station and mini-market business locat
26
   at 2015 South Winchester Boulevard, San Jose, California that is t
27
   subject of the lawsuit and scheduled for a hearing on March 19, 20
28

   ─────────────────────────────────────────────────────────────
   EX PARTE APPLICATION                1



1  at 8:15 a.m., and for an order to show cause for a prelimina[

2  injunction enjoining defendants and their agents, servants, a[

3  employees from performing the above described acts during the pend[

4  of this action.  This application is made on the grounds that:

5      a.    The complaint shows that the subject matter of t[

6           agreement is for the use, operation and possession of

7           gasoline station, mini-market and real property a[

8           plaintiffs are entitled to the relief demanded, and t[

9           relief demanded consists of restraining the commission .

10         continuance of the seizure of the business and closure .

11         the real property located at 2015 South Winchest[

12         Boulevard, Campbell, California on March 5, 2008 at 8:

13         a.m.;

14      b.    The complaint shows that the commission or continuance

15         the act by defendants of closing the business during t

16         litigation would cause loss of use, loss profit

17         possession, goodwill and destruction of the business th

18         would cause plaintiffs great or irreparable harm;

19      c.    The complaint shows that defendants have discriminat

20         against plaintiffs by charging them higher prices for mot

21         vehicle fuel and oil of like quality and grade produc

22         versus what they charge others in close proximity.

23      d.    That during the litigation, defendants have seized t

24         business and real property that is the subject of t

25         dispute in violation of the rights of plaintiffs a

26         tending to render a judgment ineffectual;

27      e.    There is a dispute regarding the deliveries, ren

28         royalties and pricing in the underlying litigation;

EX PARTE APPLICATION         2

81

1        f.    The restraint is necessary to prevent the continued seizur
2              of the business, closure, preventing the use of rea
3              property and destruction of the business; and,

4        g.    To prevent the seizure and closure of plaintiffs' busines
5              because the promised service is unique and special whic
6              gives it peculiar value.

7        h.    That during litigation, the parties are to perform their
8              promises, terms, conditions and obligations under th
9              contract entered into on or about March 1, 2005.

10       In addition, irreparable harm will result to plaintiffs befor
11   the matter can be heard on notice.

12       Plaintiffs have not previously applied to any judicial office
13   for similar relief.

14       This application is based upon the complaint on file in this cas
15   and on the memorandum of points and authorities and declarations
16   support of the motion.

17

18   DATED: March / 2 , 2008

19                                        GEORGE HOLLAND, ESQ.
                                          Attorney for Plaintiffs
20

21

22

23

24

25   dc\kassa-ex-parte

26

27

28

---

EX PARTE APPLICATION                          3

1

## PROOF OF SERVICE
C.C.P. SECTIONS 1013a, 2015.5

2

3

4      I am a citizen of the United States and employed in the Count

5  of Alameda; I am over the age of eighteen years and not a party to th

6  within action; my business address is 1970 Broadway, Suite 1030

7  Oakland, California, 94612.

On March 12, 2008, I served a copy of the attached:

8

**EX PARTE APPLICATION AND SUPPORTING DECLARATION FOR A TEMPORAR**
9  **RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
   **MEMORANDUM OF POINTS IN AUTHORITIES IN SUPPORT, DECLARATION OF OMP**
10  **KASSA, DECLARATION OF GEORGE HOLLAND AND ORDER GRANTING**

11  _____     by placing said copy in a sealed envelope with postag
                thereon  fully  prepaid,  following  ordinary  busines
12              practices, said correspondence to be deposited with th
                United States Postal Service, that same day in the ordinar
13              course of business, at Oakland, California addressed as se
                forth below.
14

_____     by personally delivering a true copy thereof to th
15              person(s) at the address(es) as set forth below.

16    __X__     by sending a copy to Facsimile number ~~See Below~~     t
                the person at the address(es) as set forth below.
17

18  Derek Tomita
    Director of Franchise Operations
19  BP West Coast Products, LLC
    4 Centerpointe Drive
20  La Palma, CA 90623
    **VIA FACSIMILE (714) 228-6570**
21

Thomas Reeder
22  Sales Manager
    BP West Coast Products, LLC
23  6 Centerpointe Drive
    La Palma, CA 90623
24  **VIA FACSIMILE (408) 848-4425**

25  ///

26
    ///
27

28  ///

83

1        I declare under penalty of perjury under the laws of the Stat

2    of California that the foregoing is true and correct.

3    Dated: March 12, 2008

4

5                  George Holland Jr.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

84

1  GEORGE HOLLAND, ESQ., , State Bar No. 55740
   **LAW OFFICES OF GEORGE HOLLAND**
2  1970 Broadway, Suite 1030
   Oakland, California 94612
3  Telephone: (510) 465-4100

4  Attorneys for Plaintiffs
   OMER KASSA, individually, OMER KASSA
5  dba H & O INC., and H & O, INC.

6

7

8
                    SUPERIOR COURT OF CALIFORNIA
9
                       COUNTY OF SANTA CLARA
10
                       UNLIMITED JURISDICTION
11
   OMER  KASSA,  individually,  OMER)    No.  108CIV107979
12 KASSA dba H & O, INC., and H & O,)
   INC.                            )    **MEMORANDUM  OF  POINTS  AND**
13                                 )    **AUTHORITIES   IN   SUPPORT  OF**
                                   )    **APPLICATION  FOR  A  TEMPORARY**
14              Plaintiffs,        )    **RESTRAINING ORDER AND ORDER**
                                   )    **TO SHOW CAUSE RE PRELIMINARY**
15 vs.                            )    **INJUNCTION**
                                   )
16 BP WEST COAST PRODUCTS, LLC., dba)    Date: March 19, 2008
   ARCO PRODUCTS COMPANY and DOES 1)    Time: 8:15 a.m.
17 to 50,                          )    Dept: 104
                                   )
18                                      Action Filed: March 12, 2008
                Defendants.
19

20                         I. ARGUMENT

21      A.    **THE COURT SHOULD GRANT THE TEMPORARY RESTRAINING ORDER**
              **PLAINTIFFS BECAUSE THEIR RIGHT TO RELIEF IS APPARENT FR**
22            **THE   COMPLAINT  AND  RESTRAINING  DEFENDANTS  FROM  THE**
              **CONTINUED SEIZURE OF PLAINTIFFS' BUSINESS AND PROPERTY**
23            **NECESSARY**

24      The Court should impose an injunction when it appears from t

25 compliant that plaintiffs are entitled to the relief demanded and t

26 relief, or any part thereof consists of restraining the commission

27 continuance of an act.  <u>Dingley v. Buckner</u> (1909) 11 Cal.App. 18

28
   ───────────────────────────────────────
   MEMORANDUM OF POINTS AND
   AUTHORITIES IN SUPPORT OF
   EX PARTE APPLICATION                    1

010/700₪            BRAD-CHRISTENSEN        SZ446484480480 XAJ SE:Z1 8002 E0/81

1  183-184. 104 P. 478.

2      An injunction should also be granted if plaintiffs demand an

3  relief from a restraining the continuance of an act for the possessio

4  of property, interference with the operation of and destruction of

5  business. Id.

6      The Dingley Court stated that "

7          "No proceeding at law could afford an adequate remedy fo
           the destruction of one's business". Id. at 183-184.
8

9      Similarly, here plaintiffs' complaint demands relief fro

10  restraining defendants from their continual wrongful seizure

11  possession and closure of plaintiffs' AM/PM Mini Market business o

12  March 4, 2008. Defendants act has interfered with plaintiffs

13  operation of their business and if continued will result in th

14  destruction of the business.

15      Plaintiffs have no adequate remedy at law for defendants seizur

16  and possession of their business. Therefore, the Court should impos

17  and injunction to restrain defendants from interfering an

18  consequently destroying plaintiffs' business.

19  B.    THE COURT SHOULD GRANT THE INJUNCTION BECAUSE PLAINTIFF
         HAVE NO ADEQUATE REMEDY AT LAW FOR DEFENDANTS SEIZURE AN
20       POSSESSION OF THEIR BUSINESS

21      An injunction should be granted when pecuniary compensation woul

22  not afford an adequate relief. C.C.P. § 526(a)(4); Dingley, supra

23  Injunctions should also be granted when it would be extremel

24  difficult to ascertain the amount of compensation that would affor

25  adequate relief. C.C.P. § 526(a)(5); Union Oil Co. v. Domenge
    (1930) 30 Cal.App.2d 266, 270-271.
26

27      Clearly, there is no adequate remedy at law for the seizure

28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
EX PARTE APPLICATION                    2

86

1    possession and closures of plaintiffs business by defendants.    I

2    would be extremely difficult for plaintiffs to ascertain the amour

3    of loss use, profits, good will and compensation that would affor

4    adequate relief based upon defendants act.

5        Accordingly, since there is no adequate remedy at law, the Cour

6    should grant plaintiffs requests for injunctive relief.

7        C.    **AN    INJUNCTION    SHOULD    BE    GRANTED    BECAUSE    DEFENDANT
            CONTINUED SEIZURE AND POSSESSION OF PLAINTIFFS' BUSINES**

8        **WOULD PRODUCE WASTE AND IRREPARABLE INJURY TO PLAINTIFF
            DURING LITIGATION**

9

10       The Court should grant an injunction when it appears from th

11   complaint or declarations that the commission or continuance of som

12   act during the litigation would produce waste, or great or irreparabl

13   injury to a party to litigation. <u>Volpicelli v. Jared Sydney Torranc</u>

14   <u>Memorial Hosp</u>. (1980) 109 Cal.App.3d 242.

15       An irreparable injury is a species of damages, whether great, o

16   small that ought not to be submitted to on the one hand or inflicte

17   to on the other. <u>Wind v. Herbert</u> (1960) 186 Cal.App.2d 276, 285.

18       Plaintiffs' complaint and the supporting declarations to thi

19   motion, show that defendants continuance of the seizure, possessio

20   and closure of their AM/PM business by defendants would produce grea

21   or irreparable injury since the business is closed, losing profits

22   goodwill and ultimately destroying the business.

23       In addition, defendants act of seizure, possession, closure an

24   consequently destruction of plaintiffs' business produces wast

25   because the real property is unoccupied and no business is bein

26   conducted on the premises thus losing years of goodwill and othe

27   damages that plaintiffs have developed in the community for the pas

28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
EX PARTE APPLICATION            3

*87*

1  several years.

2      Therefore, the Court should impose an injunction agains

3  defendants preventing the waste and irreparable harm it has an

4  continues to cause plaintiffs.

5                        **II. CONCLUSION**

6      For the foregoing reasons, plaintiffs' ex parte application fo

7  a temporary restraining order and preliminary injunction restrainin

8  defendants from seizure, possession and closure of plaintiffs

9  business should be granted.

10

11

12  DATED: March 18, 2008

13                          GEORGE HOLLAND, ESQ.
14                          Attorney for Plaintiffs

15

16

17

18

19  dc\kassa-ex-parte

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
EX PARTE APPLICATION                4

ENDORSED FILED

08 MAR 24 AM 8:18

CHIEF _____ CLERK
SU _____ CA.
CO _____ LARA
_____ _____

1   KURT OSENBAUGH (State Bar No. 106132)
    DEBORAH YOON JONES (State Bar No. 178127)
2   MacKENZIE E. HUNT (State Bar No. 251127)
    **WESTON, BENSHOOF, ROCHEFORT,**
3       **RUBALCAVA & MacCUISH LLP**
    333 South Hope Street
4   Sixteenth Floor
    Los Angeles, California 90071
5   Telephone: (213) 576-1000
    Facsimile: (213) 576-1100
6
    Attorneys for Specially Appearing Defendant
7   BP WEST COAST PRODUCTS LLC

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF SANTA CLARA

10

11  OMER KASSA individually; OMER KASSA      Case No.: 108CV107979
    dba H & O, INC., and H & O, INC.,
12                                           *EX PARTE* APPLICATION OF
                  Plaintiffs,                SPECIALLY APPEARING
13                                           DEFENDANT BP WEST COAST
        v.                                   PRODUCTS LLC TO DISSOLVE
14                                           ORDER GRANTING TEMPORARY
    BP WEST COAST PRODUCTS, LLC, dba         RESTRAINING ORDER AND ORDER
15  ARCO PRODUCTS COMPANY and DOES 1         TO SHOW CAUSE RE PRELIMINARY
    to 50,                                   INJUNCTION; MEMORANDUM OF
16                                           POINTS AND AUTHORITIES IN
                  Defendants.                SUPPORT THEREOF
17
                                             [Filed concurrently with Declarations of
18                                           Deborah Yoon Jones, Brad Christensen,
                                             Thomas L. Reeder, and Derek Tomita; and
19                                           [Proposed] Order.]

20                                           Date: March 24, 2008
                                             Time: 8:15 a.m.
21                                           Dept.: 22

22                                                 Honorable Kevin J. Murphy

23                                           Filing Date:  March 12, 2008

24

25

26

27

28                              89

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

2              **PLEASE TAKE NOTICE** that on March 24, 2008, at 8:15 a.m., or as soon

3    thereafter as the matter may be heard, in Department 22 of the above-entitled Court, located

4    at 161 N. First Street, San Jose, California, specially appearing defendant BP West Coast

5    Products LLC ("BPWCP"), will apply *ex parte* for an order to dissolve the March 19, 2008

6    Order Granting Temporary Restraining Order and Order to Show Cause Re Preliminary

7    Injunction ("TRO") issued in favor of plaintiffs Omer Kassa and H&O, Inc. (collectively,

8    "Kassa").

9              BPWCP's *Ex Parte* Application should be granted and the TRO should be

10   dissolved immediately because:

11             •         The TRO does not preserve the status quo, but it is an improper

12   mandatory injunction requiring BPWCP to reinstate Kassa in a closed service station after

13   the expiration of his lease of BPWCP-owned facilities.  The TRO also forces BPWCP to

14   continue doing business with a franchisee which has refused to renew the relevant franchise

15   agreements and currently owes BPWCP over $35,000.  The gasoline station facility was

16   boarded up and shut down on or about March 4, 2008;

17             •         Kassa's TRO application was untimely as Kassa knew for months that

18   the franchise was going to be nonrenewed during which time Kassa had sufficient

19   opportunity to seek injunctive relief but did not.  Kassa refused to renew the relevant

20   franchise agreements, spent several days moving their personal property and merchandise off

21   the property, and waited until BPWCP expended thousands of dollars to board up and fence

22   the property before seeking *ex parte* injunctive relief;

23             •         Kassa provided <u>no</u> advance notice to BPWCP prior to the hearing on the

24   *ex parte* application; and

25             •         The Petroleum Marketing Practices Act, 28 U.S.C. §§ 2801 *et seq.*

26   ("PMPA") exclusively governs the termination and nonrenewal of service station franchise

27   agreements and such a nonrenewal cannot be enjoined pursuant to the state law claims stated

28

90
1

1    by Kassa.  Indeed, <u>Kassa alleges no violation of the PMPA and California authorities are</u>

2    <u>clear that the franchise nonrenewal cannot be enjoined</u>.  Moreover, pursuant to the franchise

3    agreements and the PMPA, BPWCP had every right to nonrenew Kassa's franchise

4    agreements.

5            BPWCP's counsel provided notice to plaintiff's counsel of this *Ex Parte*

6    Application via facsimile and U.S. Mail on March 20, 2008 at 2:47 p.m..  (See Jones Decl., ¶

7    4, Exh. A.)  BPWCP's counsel also spoke with Plaintiffs' counsel over the telephone on

8    March 20, 2008 concerning the *Ex Parte* Application.  (*Id.* at ¶ 5.)  Plaintiffs will oppose the

9    *Ex Parte* Application.  (*Id.*)

10           This *Ex Parte* Application is made pursuant to California Rules of Court, Rule

11   3.1202(c), as well as other applicable California statutory and legal authority.  Further, this

12   *Ex Parte* Application is based upon this notice, the attached Memorandum of Points and

13   Authorities, the Declarations of Deborah Yoon Jones, Brad S. Christensen, Thomas L.

14   Reeder, and Derek Tomita filed concurrently herewith, the files and records in this action,

15   and on such evidence and argument as may be presented at the time of the hearing of this

16   motion.

17

18   DATED:  March 23, 2008           Respectfully submitted,

19                                    KURT OSENBAUGH
                                      DEBORAH YOON JONES
20                                    MacKENZIE E. HUNT
                                      **WESTON, BENSHOOF, ROCHEFORT,**
21                                        **RUBALCAVA & MacCUISH LLP**

22

23                                    _____
                                            Deborah Yoon Jones
24                                    Attorneys for Specially Appearing Defendant
                                      BP WEST COAST PRODUCTS LLC
25

26

27

28                                   *91*
                                        2

---

EX PARTE APPLICATION TO DISSOLVE ORDER GRANTING TRO AND OSC RE PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1143644.1

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.    INTRODUCTION**

3           BP West Coast Products LLC ("BPWCP") is specially appearing to implore
4 this Court to dissolve the TRO which was so wrongfully entered against it on March 19,
5 2008. Not only was BPWCP deprived of any opportunity to defend itself at the hearing due
6 to the plaintiffs' inadequate and improper notice and service attempts of the TRO papers,
7 BPWCP was unable to present numerous facts which the plaintiffs neglected to apprise the
8 Court of and which support a dissolution of the TRO.

9           This lawsuit involves a franchise relationship concerning a BPWCP-owned
10 ARCO-branded gasoline station and an am/pm mini market. Plaintiffs leased the property
11 and facilities from BPWCP and operated the franchise pursuant to agreements, which
12 expired on March 1, 2008. Although BPWCP notified plaintiffs <u>in January 2008</u> about the
13 renewal requirements and the need to sign new lease and franchise agreements by February
14 2008, plaintiffs refused to sign the agreements and let the franchise expire. The plaintiffs
15 moved out of the station, which has been boarded up and closed since March 4, 2008.
16 Plaintiffs now assert various claims which pertain to the franchise nonrenewal, which should
17 be brought under the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801, *et seq.*
18 ("PMPA"). The PMPA specifically governs gasoline franchise relationships and their
19 termination and nonrenewal.

20           In any event, the plaintiffs waited until March 19, 2008 to apply *ex parte* for a
21 TRO which requires BPWCP to reopen the station and allow plaintiffs to operate the
22 business. Of course, the plaintiffs neglected to inform the Court of significant facts that
23 justify the immediate dissolution of the TRO. The plaintiffs failed to explain that pursuant to
24 the terms of the written franchise agreements (as well as the governing PMPA), BPWCP had
25 every right to nonrenew the franchise given the expiration of the former franchise
26 agreements and plaintiffs' refusal to agree to the terms and conditions of the new lease and
27 franchise agreements. BPWCP also believes that the Court was misled into believing that

28

92
1

1   preserving the status quo involved reinstating the plaintiffs as operating franchisees.

2   However, it is undisputed that the station closed on March 4, 2008, and the plaintiffs

3   removed all of their belongings and merchandise as of March 11, 2008. The plaintiffs also

4   failed to show irreparable injury given their delay in seeking injunctive relief. Plaintiffs

5   admittedly were aware of the nonrenewal and expiration of the franchise agreements for

6   nearly 3 months. They waited until after BPWCP made numerous efforts to renew the

7   franchise agreements and ultimately closed the station before bringing the request for

8   injunctive relief.

9           Finally, BPWCP was never afforded the opportunity to defend itself at the

10  TRO hearing given Kassa's procedurally deficient and improper notice and service of the

11  TRO application. The TRO papers were sent via facsimile at the last possible moment to

12  two BPWCP employees who never received the documents. Notwithstanding the fact that

13  there is no agreement by BPWCP to accept any documents via facsimile in this matter

14  (indeed BPWCP has yet to be properly served with the Summons and Complaint), Kassa

15  used incorrect facsimile numbers for the individuals. As a result, BPWCP did not become

16  aware of the TRO application until over 8 hours after the hearing had taken place. Although

17  Kassa had cell phone numbers for certain BPWCP employees who would have, at least, had

18  an opportunity to inform BPWCP's legal counsel of the pending application, Kassa failed to

19  make a good faith effort to inform BPWCP of the TRO proceedings. The TRO papers were

20  further problematic as they failed to indicate a specific address where the hearing was to take

21  place and also incorrectly identified the department. In sum, Kassa made it impossible for

22  BPWCP to defend itself at the TRO hearing. Given such misleading and bad faith tactics,

23  the TRO should be dissolved.

24

25

26

27

28

93

2

EX PARTE APPLICATION TO DISSOLVE ORDER GRANTING TRO AND OSC RE PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1143644.1

## II.    FACTUAL BACKGROUND

A.    **Kassa's Franchise Relationship Was Governed By Agreements That Expired on March 1, 2008**

Plaintiffs Omer Kassa and H&O, Inc. ("Kassa" or "Plaintiffs") were the franchisee/lessee operators of the ARCO-branded gasoline station and am/pm Mini Market located at 2015 Winchester Road, Campbell, California 95008 ("Station"). (Declaration of Brad Christensen filed concurrently herewith ("Christensen Decl."), ¶¶ 2 and 3.) An am/pm Lease PMPA Franchise Agreement and am/pm Mini Market Agreement effective March 1, 2005 (collectively, "Franchise Agreements") governed the franchise relationship between Kassa and BPWCP. The Franchise Agreements included a lease of the BPWCP-owned gasoline station and convenience store and a gasoline supply agreement, which were set to expire on March 1, 2008. (*Id.*, Exhs. A and B).

B.    **Kassa Refused to Enter Into a New Lease and Franchise Agreements with BPWCP**

Given the Franchise Agreements were set to expire on March 1, 2008, on January 8, 2008, BPWCP delivered to Kassa the 45 Day Renewal Letter and proposed new lease agreements ("Renewal Offer"). (Christensen Decl., ¶ 4, Exh. C.) Mr. Kassa acknowledged receipt of the Renewal Offer on January 8, 2008. (*Id.*) Pursuant to the Renewal Offer, Kassa was required to return the new Lease Agreements with notarized signatures to BPWCP by February 18, 2008. (*Id.*)

During telephone conversations and face-to-face meetings with Mr. Kassa on January 8, 14, 17, 22, 29 and February 6, 11, and 21, BPWCP's Brad Christensen advised Mr. Kassa that the renewal paperwork needed to be signed and submitted in order for Kassa to continue the franchise relationship with BPWCP. (Christensen Decl., ¶ 5.) Mr. Christensen even met with Mr. Kassa after the deadline of February 18, 2008, to provide Kassa with a further opportunity to sign the new Lease and Franchise Agreements. (*Id.*) Mr. Kassa did not return the signed Renewal Offer and disagreed with the increased

*94* 3

EX PARTE APPLICATION TO DISSOLVE ORDER GRANTING TRO AND OSC RE PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1143644.1

1   franchise fee and rent provisions. (*Id.*) During these numerous meetings, Mr. Christensen

2   explained to Mr. Kassa that the new terms and conditions of the Renewal Offer existed in all

3   BP-owned or leased properties. (*Id.*) Mr. Christensen also explained that if Kassa did not

4   sign the new lease agreements that lease and Franchise Agreements would expire. (*Id.*)

5          On February 29, 2008, BPWCP hand delivered an "Acknowledgement of

6   Nonrenewal" ("Nonrenewal Acknowledgement") to Mr. Kassa at the Station. (Christensen

7   Decl., ¶ 6, Exh. D.) The Nonrenewal Acknowledgement confirms that the Renewal Offer

8   was presented to Mr. Kassa on January 8, 2008 and that Mr. Kassa has refused to sign and

9   return the new lease and franchise agreements. (*Id.*) The Nonrenewal Acknowledgement

10  further states that BPWCP would retake possession of the Station on March 3, 2008 at 8:00

11  a.m. (*Id.*)

12         As of March 1, 2008, Kassa failed to return the signed documents contained in

13  the Renewal Offer which were required to continue the franchise beyond March 1, 2008.

14  (Christensen Decl., ¶ 7.)

15  **C.    The Franchise Relationship Expired Effective March 1, 2008 and BPWCP**

16  **       Took Possession of the Station on March 4, 2008**

17         On March 3, 2008, BPWCP delivered to Mr. Kassa a Notice of Termination

18  which confirmed the Franchise Agreements expired on their own terms. (Christensen Decl.,

19  ¶ 8, Exh. E.)

20         On March 4, 2008, 15 days before Kassa applied *Ex Parte* for a TRO, BPWCP

21  took possession of the Station from Kassa. (Christensen Decl., ¶ 9.) BPWCP allowed Kassa

22  to return to the Station for several days to retrieve personal belongings and merchandise

23  (although BPWCP was under no obligation to do so). (*Id.*) Mr. Christensen spent nearly 10

24  hours at the Station on March 4, 2008 to oversee the transition of the Station back to

25  BPWCP. (*Id.*) On March 5 and 6, 2008, Mr. Christensen spent nearly the entire day at the

26  Station so that Mr. Kassa could have access to retrieve his property. (*Id.*) On March 11,

27

28

95

4

1   2008, Mr. Christensen allowed Mr. Kassa to have further access to the Station so he could

2   complete the removal of his property. (*Id.*)

3          Since approximately March 4, 2008, the Station has been boarded up and a

4   large gate has been placed around its perimeter. (Christensen Decl., ¶ 10.) Moreover,

5   gasoline was removed from the tanks beneath the pump stations. (*Id.*) The Station is not

6   currently operating. (*Id.*)

7          On March 11, 2008, the last day that Mr. Kassa was removing his property

8   from the Station, Mr. Kassa and BPWCP discussed whether he wanted to sell certain

9   equipment to BPWCP. (Christensen Decl., ¶ 11.) Mr. Kassa provided BPWCP with a list of

10  equipment that he was interested in selling to BPWCP, offered retail prices even though the

11  equipment was used, and offered to sell the equipment for a total of $23,000. (*Id.*) Mr.

12  Kassa subsequently agreed to a price of $15,000. (*Id.*) In addition, Mr. Kassa agreed that

13  BPWCP would purchase certain paper products for an additional $1,500. (*Id.*) Ultimately

14  Mr. Kassa did not sign the agreement/list to sell BPWCP the property but BPWCP

15  understood that he agreed to the terms and price. (*Id.*)

16         During BPWCP's numerous telephone calls and meetings in January and

17  February 2008 and during the closure of the Station, Mr. Kassa never once informed

18  BPWCP that he intended to challenge the franchise nonrenewal and take legal action to

19  unwind the franchise termination. (Christensen Decl., ¶ 12.) Mr. Christensen spent nearly

20  four full days at the Station assisting in the closure and removal of property by Mr. Kassa.

21  (*Id.*) In order to shut down the Station, BPWCP required three crews and trucks and Mr.

22  Christensen's time to board up the site, place a fence around the entire property, pump out

23  the gasoline in the underground storage tanks, and lock and secure the facilities. (*Id.*)

24     **D.    Kassa Continues to Owe BPWCP for Past Sums Due**

25         In addition, as of March 20, 2008, Kassa owes BPWCP over $35,000 for

26  various unpaid invoices for charges relating maintenance, rent, royalty fees, and audit

27

28

96 5

1   findings. (Christensen Decl., ¶ 13.) Though Kassa contests some of these charges, Kassa

2   has continually failed to provide BPWCP with documentation to support otherwise.[1] (*Id.*)

3       **E.   Kassa Failed to Properly Serve and Notify BPWCP of the TRO *Ex Parte***

4          **Papers; BPWCP Was Deprived of Its Right to Appear and Oppose the**

5          **TRO**

6       BPWCP first learned that Kassa applied *ex parte* and a hearing took place at

7   approximately 4:30 p.m. on March 19, 2008 (some 8 hours <u>after</u> the hearing occurred), when

8   Mr. Christensen returned home from a business trip and saw a facsimile on his home fax

9   machine. (Christensen Decl., ¶ 14.) The document contained a fax transmission sheet and

10   was addressed to "Derek Tomita". (*Id.* and Exh. F.) The fax indicated that a hearing had

11   taken place in the morning of March 19, 2008. (*Id.*) Mr. Christensen never received any

12   phone calls from Kassa or their counsel to advise that a facsimile was sent to me even though

13   Mr. Kassa has called Mr. Christensen numerous times before and has his cell phone number.

14   (*Id.*)

15       In addition, Derek Tomita, the individual to whom Kassa's TRO papers were

16   purportedly faxed to, never received the documents. (See Declaration of Derek Tomita filed

17   concurrently herewith ("Tomita Decl."), ¶ 2.) Nor did Mr. Tomita ever receive any

18   telephone calls or voice mail messages advising that he was served with the TRO papers by

19   Kassa. (*Id.*, ¶ 4.) The facsimile number used for Mr. Tomita by Kassa belonged to Mr.

20   Christensen. (*Id.*, ¶ 3; and see above discussion.)

21       Kassa also maintains that notice of the TRO and the moving papers were

22   provided as a "cc" to Tom Reeder. (See Declaration of George Holland filed in support of

23   TRO Application). However, the facsimile number used for Mr. Reeder is not Mr. Reeder's

24   facsimile number <u>and</u> Mr. Reeder <u>never received the TRO papers</u>. (See Declaration of

25   Thomas L. Reeder filed concurrently herewith, ¶¶ 2 and 3.)

26

27   _____                    *97*

[1] Kassa recently provided some documentation on the evening of March 20, 2008, which
28   BPWCP is considering. (Christensen Decl., ¶ 13.)

6

EX PARTE APPLICATION TO DISSOLVE ORDER GRANTING TRO AND OSC RE PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1143644.1

1   Thus, neither of the individuals to whom Kassa claims were provided notice of
2   the TRO papers actually received the papers.  Though Mr. Christensen ultimately received
3   them, it was long after the Court ruled on the application.  (Christensen Decl., ¶ 14.)
4   Furthermore, BPWCP has never agreed to accept service of documents in this matter via
5   facsimile and the TRO papers themselves fail to properly identify exactly when and where
6   the hearing on the TRO was to take place.  Kassa's untimely and unnoticed TRO application
7   is particularly egregious since the Renewal Offer - - which Kassa has refused to sign - - was
8   provided to him on January 8, 2008.  Essentially, Kassa and their counsel made it virtually
9   impossible for BPWCP to know about and defend itself against the TRO request.

10  **III.    THE TRO SHOULD BE DISSOLVED AS IT WAS IMPROPERLY**
11  **PROCURED AND NO SUCH INJUNCTION CAN BE ISSUED ABSENT A**
12  **PMPA CLAIM WHICH PREEMPTS STATE CLAIMS RE SERVICE**
13  **STATION FRANCHISE TERMINATIONS AND NONRENEWALS**

14  **A.    Kassa Did Not and Cannot Prove the Likelihood That They Will Prevail**
15  **on Merits of Their Claims**

16  A trial court may not grant a preliminary injunction unless there is some
17  possibility that the plaintiff would ultimately prevail on the merits of the claim.  *O'Connell v.*
18  *Superior Court (Valenzuela)* (2006) 141 Cal.App.4th 1452, 1463; *citing Butt v. State of*
19  *California* (1992) 4 Cal.4th 668, 677-678.

20  Plaintiffs here have no right to obtain the TRO relief which was granted on
21  March 19, 2008, given the language of the governing Franchise Agreements and the
22  Petroleum Marketing Practices Act, 28 U.S.C. §§ 2801 *et seq.* ("PMPA").  The PMPA
23  specifically governs gasoline franchise nonrenewal claims such as these and preempts the
24  State court relief sought in Plaintiffs' action.  See 28 U.S.C. §§ 2801 *et seq.; see also Niakan,*
25  *et al. v. Samaan and Union Oil Company of California* (1988) 199 Cal.App.3d 716 (state
26  court lacked subject matter jurisdiction where claims of wrongful nonrenewal of gasoline
27  franchise preempted by PMPA; claims of unfair trade practices, breach of implied covenant

28
*98*
7

1    of good faith and fair dealing, breach of written contract, and misrepresentation often stem

2    from franchisor's failure to renew and such claims held to be preempted by PMPA).

3    Therefore, a service station franchise nonrenewal may not be enjoined absent a claim

4    brought under the governing PMPA. *See California ARCO Distributors, Inc. v. Atlantic*

5    *Richfield Co.* (1984) Cal.App.3d 349 (1984).

6         In addition, BPWCP was not given the opportunity to present the relevant facts

7    and authority to support this conclusion (see the service issues discussed further below),

8    BPWCP presents them to the Court now, as follows:

9         Even if Kassa stated a PMPA claim, pursuant to the terms of the Franchise

10   Agreements, BPWCP had a right to nonrenew the franchise given Plaintiffs' refusal to sign

11   and agree to the renewal terms.  The PMPA Agreement states explicitly that BPWCP may

12   nonrenew the agreement and franchise relationship for "failure of Franchisee and BPWCP to

13   agree to changes or additions to the franchise relationship, as defined in the PMPA, which

14   are the result of a determination made by BPWCP in good faith and in the normal course of

15   business." (See ¶ 17.b. of the PMPA Agreement; Exh. A to Christensen Decl.)  BPWCP had

16   a right to terminate am/pm Agreement upon termination of the PMPA Agreement.  (See ¶

17   18.05 of am/pm Agreement; Exh. B to Christensen Decl.)

18        Furthermore, the PMPA specifically supports BPWCP's nonrenewal of the

19   Franchise Agreement based on the fact that Kassa would not agree to the changes or

20   additions to the provisions of the proposed new lease and franchise agreements.  ~~18~~ U.S.C.

     15

21   § 2802(b)(3).  In addition, a party attempting to enjoin a franchisor from changing the terms

22   of the franchise under state law claims that are preempted by the PMPA (which is what we

23   have here), must instead state a claim under the PMPA and pursue injunctive relief there

24   under. *See California ARCO Distributors, Inc. v. Atlantic Richfield Co.* (1984) Cal.App.3d

25   349 (1984) (reversal of order granting preliminary injunction in favor of franchisee who

26   sought to enjoin defendant from changing terms of a franchise-related agreement).

27

28

99

8

1    Moreover, Kassa's argument that there were issues with late deliveries, over

2   charges, false invoices, and price discrimination has no bearing on whether BPWCP properly

3   nonrenewed the franchise relationship and does not explain Kassa's refusal to sign the

4   renewal documents.[2]  Also, Kassa's claim that BPWCP's intent to close the Station came as

5   a total surprise to him are directly contradicted by his January 8, 2008 signature

6   acknowledging receipt of the renewal documents.  (See Christensen Decl., Exh. C.)  In

7   addition, as already discussed, BPWCP met with Mr. Kassa numerous times to explain the

8   Renewal Offer.  (*Id.* at ¶ 5.)

9    Accordingly, Kassa cannot show that there is any likelihood of success on the

10  merits and the TRO should be dissolved.

11  **B.     The TRO Alters Rather Than Preserves the Status Quo**

12   One purpose of a temporary restraining order is to preserve the status quo.  *See*

13  *Scripps Health v. Marin* (1999) 72 Cal.App.4[th] 324, 334.  A TRO which provides mandatory

14  injunctive relief should rarely be issued.  *See Paramount Pictures Corporation v. Davis*

15  (1964) 228 Cal.App.2d 827, 835-836 and 838-839 (where preliminary injunction granted all

16  injunctive relief requested in the complaint is considered mandatory and beyond "preserving

17  the status quo.")  An injunction is "mandatory" when it compels the performance of an

18  affirmative act that will change the position of the parties.  *Davenport v. Blue Cross of Calif.*

19  (1997) 52 Cal.App.4[th] 435, 448.  Furthermore, an injunction "lies to prevent threatened

20  injuries and has no application to completed wrongs for the redress of which the plaintiff is

21  relegated to an action of law.  Obviously a completed wrong cannot be corrected by a

22  preliminary injunction, the purpose of which is to preserve the *status quo* until after final

23  judgment."  *McManus v. KPAL Broadcasting Corp.* (1960) 182 Cal.App.2d 558, 563.

24                                  *100*

25  [2] Any issues that Kassa has had with regard to the franchise were caused by his own sub-
    standard, never adaptive, operating practices that have been documented in numerous
26  defaults issued by BPWCP.  For example, Kassa has been defaulted for failure to pay state
    sales tax, non-compliance with State Health and Environmental laws, safety issues, insurance
27  non-compliance, non-payment of rents, refusal to provide royalty collectible ATM income
    data, falsification of data including spoilage and breakage, operating without required
28  permits and license, and operating unauthorized equipment. (Christensen Decl., ¶ 15.)

1    Rather than preserve the status quo, the TRO granted in this action on March
2  19, 2008 in favor of the Plaintiffs alters the status quo which involves a terminated/expired
3  franchise relationship, a boarded up and closed Station, and Plaintiffs' removal from the
4  Station. The TRO also attempts to "undo" the purported wrong committed by BPWCP. The
5  franchise relationship between BPWCP and Plaintiffs expired effective February 29, 2008.
6  (Christensen Decl., ¶ 3 and Exhs. A, B, C, and D.)  On March 4, 2008, the Station was
7  boarded up and closed and the gasoline was removed from the underground storage tanks.
8  (*Id.* at ¶ 9.) BPWCP permitted Plaintiffs to return to the Station through March 11, 2008 in
9  order for Plaintiffs to remove personal property and merchandise (even though BPWCP was
10  under no obligation to allow Plaintiffs back on to the property). (*Id.*) Since March 11, 2008,
11  the Station has been closed and a fence has been placed around its perimeter. (*Id.*)

12    The TRO entered on March 19, 2008, however, requires BPWCP to allow the
13  Plaintiffs to return to the Station and operate a franchise business.  Furthermore, the TRO
14  provides that BPWCP must sell Plaintiffs more gasoline product, despite the fact that Kassa
15  currently owes BPWCP approximately $35,000. (Christensen Decl., ¶ 13.)  These are not
16  "status quo" actions.  BPWCP exerted significant efforts to close the Station down;
17  reopening the Station will require additional burden to BPWCP. (*Id.*, ¶ 12.) Moreover, if the
18  TRO stands, BPWCP will be forced to do business with Plaintiffs without an enforceable
19  and controlling franchise agreement pending the preliminary injunction OSC and perhaps
20  until the end of this litigation.  Preserving the status requires that Kassa remain removed
21  from the Station.

22    The Court was likely not apprised of these above facts (as apparent from
23  Kassa's moving papers); the TRO should be dissolved and the OSC re preliminary injunction
24  should be taken off calendar.

25
26
27
28                                   / O l
                                      10

1

C.    **Kassa Did Not Promptly Seek Injunctive Relief and Thus There Was No**

2

**Irreparable Harm to Justify the TRO**

3    Kassa must also provide evidence to show that irreparable harm will result if

4    the TRO is not granted.  See Code of Civil Procedure §527(c).  However, delay in moving

5    for preliminary injunction may be considered in determining whether the claimed injury is

6    "irreparable."  *O'Connell, supra,* 141 Cal.App.4[th] at 1481.  In *O'Connell,* for example, the

7    plaintiffs' claim of imminent injury from not receiving a high school diploma, which was

8    raised shortly before graduation, could have been made earlier in the school year thereby

9    avoiding the urgency of the situation.    The Court of Appeal in *O'Connell* stayed the

10    injunction stating "the urgency with which the trial court was forced to decide plaintiffs'

11    motion may have been, to some extent, of plaintiffs' own making – a fact that the trial court,

12    as a court of equity, should have taken into account in determining what weight to give

13    plaintiffs' claim of imminent irreparable injury."  *Id.*

14    Here, as far back as 2005 when Plaintiffs entered into a three-year franchise

15    agreement with BPWCP, Kassa knew that the franchise agreement would expire on March 1,

16    2008.  (Christensen Decl., ¶ 3, Exhs. A & B.).  Furthermore, BPWCP provided Kassa with

17    the renewal information in January 2008 and Kassa acknowledged receipt of the letter on

18    January 8, 2008.   (*Id.,* ¶ 4, Exh. C.)   Indeed, Mr. Christensen met and had telephone

19    conversations with Mr. Kassa numerous times in January and February 2008 to discuss the

20    renewal documents.  (*Id.,* ¶ 5.)  Accordingly, Kassa had months in which they could have

21    sought injunctive relief.  Instead, they moved their personal property and merchandise out of

22    the Station from March 4 through March 11, 2008.  (*Id.,* ¶ 9.)  During the time Kassa

23    removed their property from the Station, they never once advised BPWCP that they would

24    seek injunctive relief or attempt to unwind the nonrenewal.  (*Id.,* ¶ 12.)  Of course, the

25    moving papers supporting Plaintiffs' application for TRO are notably silent concerning these

26    facts.  In addition, BPWCP exerted significant efforts to close down the Station.  (*Id.,* ¶ 12.)

27

28

*102*

11

1   Given Plaintiffs' delay in seeking injunctive relief, a TRO is not necessary to prevent
2   irreparable injury and this Application to Dissolve the TRO should be granted.

3        **D.    The Plaintiffs Deprived BPWCP of the Opportunity to Defend Itself at the**
4             **TRO Hearing Through Improper Service and Procedural Flaws**

5             At a minimum, BPWCP should have been given the opportunity to be heard by
6   the Court before the issuance of such a damaging TRO against it.  BPWCP was denied that
7   opportunity as Plaintiffs failed to provide adequate and proper service and notice of the TRO
8   hearing and papers.  Counsel seeking a TRO generally must inform the opposing party or
9   counsel when and where the application will be made and a declaration showing attempts to
10  provide such notice is generally required before a TRO may issue.  Code of Civil Procedure
11  § 527(c)(2).  The declaration must show that either (1) the applicant informed the opposing
12  party or counsel when and where the application for TRO would be made, (2) the applicant
13  made a good faith effort to so inform opposing party or counsel but was unable to do so, or
14  (3) for reasons specified (e.g., risk of harm), the applicant should not be required to inform
15  the opposing party or counsel.  Code of Civil Procedure § 527(c)(2); California Rules of
16  Court, Rule 3.1204.  The declaration should also provide the name, address and telephone
17  number of either the attorney known to represent the defendant or the defendant.  California
18  Rules of Court, Rule 3.1204.

19            Plaintiffs' service and notice of the TRO and hearing was faulty on a number
20  of grounds:

21        •    According to Plaintiffs' declaration submitted in support of the TRO,
22             the papers were served on Derek Tomita of BPWCP.  However, Mr.
23             Tomita never received the papers from Plaintiffs and the facsimile
24             number identified by Plaintiffs does not belong to Mr. Tomita (See
25             Tomita Decl., ¶¶ 2 and 3);

26        •    No calls were made to Mr. Tomita to determine if he received the TRO
27             papers (See Tomita Decl., ¶ 4);

28

*103*

12

1143644.1

1    • According to Plaintiffs' declaration submitted in support of the TRO,
2        the papers were served on Thomas Reeder of BPWCP. However, Mr.
3        Reeder never received the papers from Plaintiffs and the facsimile
4        number identified by Plaintiffs does not belong to Mr. Reeder (See
5        Reeder Decl., ¶¶ 2 and 3);

6    • No calls were made to Mr. Reeder (although Plaintiffs know and have
7        his cell phone number) to determine if he received the TRO papers (See
8        Reeder Decl., ¶ 4);

9    • BPWCP's Brad Christensen received a copy of Plaintiffs' TRO papers
10       at his home facsimile at 4:30 p.m., some 8 hours after the TRO hearing
11       (See Christensen Decl., ¶ 14); and

12   • No calls were made to Mr. Christensen (although Plaintiffs know and
13       have his cell phone number) to determine if he received the TRO papers
14       (See Christensen Decl., ¶ 14).

15       Furthermore, BPWCP has never agreed to accept service of documents in this
16   matter via facsimile, which is required by California Rules of Court 2.306(a)(1) and
17   2.260(a).[3] Finally and notwithstanding the fact that Kassa failed to make good efforts to
18   properly serve BPWCP with the papers, the TRO papers themselves fail to properly identify
19   exactly when and where the hearing on the TRO was to take place as required by Code of
20   Civil Procedure § 527(c)(2). In fact, the "notice" page does not provide the specific Court's
21   address or the correct department number where the TRO was heard. Essentially, Kassa and
22   their counsel made it virtually impossible for BPWCP to know about and defend itself
23   against the TRO request. Relief obtained in such a procedurally flawed manner should not
24   be allowed to stand and BPWCP respectfully implores this Court to dissolve the TRO that
25   was issued on March 19, 2008.

26

27   _I 04_

[3] Kassa has yet to properly serve BPWCP with the Summons and Complaint in this action let
28   alone procure an agreement by BPWCP to serve documents via facsimile or electronically.

1   IV.   **CONCLUSION**

2          The papers filed by Kassa in order to procure the TRO against BPWCP were

3   fraught with missing information and misrepresentations. Now that BPWCP finally has had

4   the opportunity to present all the relevant and true facts to the Court, there should be no

5   question that Kassa lacked the factual and legal support to obtain the overreaching injunctive

6   relief set forth in the TRO. BPWCP should not be forced to reopen the Station and re-enter

7   into a franchise relationship with a party who is unwilling to abide by the terms of the

8   relevant franchise agreements. Nor should BPWCP be required to do business with a party

9   that still is indebted to BPWCP in the sum of approximately $35,000. Kassa allowed the

10  franchise agreements to expire, willingly moved out of the Station, and now, cannot seek to

11  unwind the events that they allowed to occur. BPWCP respectfully requests that this Court

12  enter and Order to dissolve the TRO that was issued on March 19, 2008. [4]

13

14  DATED: March 23, 2008         Respectfully submitted,

15                                KURT OSENBAUGH
                                  DEBORAH YOON JONES
16                                MacKENZIE E. HUNT
                                  **WESTON, BENSHOOF, ROCHEFORT,**
17                                **RUBALCAVA & MacCUISH LLP**

18

19                                _____
                                  Deborah Yoon Jones
20                                Attorneys for Specially Appearing Defendant
                                  BP WEST COAST PRODUCTS LLC

21

22

23

24

25  [4] While not meant to be a threat, BPWCP feels so strongly about the injustice it has suffered
    as a result of the mandatory injunctive relief granted to Kassa by way of the TRO that in the
26  event the Court does not dissolve the TRO or alter the TRO so that only the status quo is
    preserved, BPWCP will have no alternative but to appeal the decision thereby automatically
27  staying the TRO. *See Agricultural Labor Relations Board v. Kern County Superior Court*
    (1984) 149 Cal.App.3d 709, 716-717; and *Kettenhofn v. Superior Court* (1961) 55 Cal.2d
28  189, 191.

105   14

# PROOF OF SERVICE

I, Heather Thai, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On May 30, 2008, I served the document(s) described as **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441 [FEDERAL QUESTION JURISDICTION]** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows: SEE ATTACHED SERVICE LIST

☐ BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

☒ BY FEDERAL EXPRESS    ☐ UPS NEXT DAY AIR    ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☒ FEDERAL EXPRESS    ☐ UPS    ☐ Overnight Delivery [specify name of service:   ] with delivery fees fully provided for or delivered the envelope to a courier or driver of   ☒ FEDERAL EXPRESS   ☐ UPS   ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐ BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☐ BY ELECTRONIC MAIL TRANSMISSION WITH ATTACHMENT: On this date, I transmitted the above-mentioned document by electronic mail transmission with attachment to the parties at the electronic mail transmission address set forth on the attached service list.

☐ [State]    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ [Federal]    I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 30, 2008, at Los Angeles, California.

_Heather Thai_
Heather Thai

1144511.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KASSA, et al. v. BP WEST COAST PRODUCTS LLC**
**USDC, NORTHERN DISTRICT**

## SERVICE LIST

| | |
|---|---|
| George Holland, Esq.<br>LAW OFFICES OF GEORGE HOLLAND<br>1970 Broadway, Suite 1030<br>Oakland, CA 94612 | Attorney for Plaintiffs, OMER KASSA,<br>OMER KASSA dba H & O, INC. and H<br>& O, INC.<br><br>Tel: (510) 465-4100 |

1144511.1

JS 44 (Rev. 12/07) (cand rev 1-08)

**CIVIL COVER SHEET**
ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a) PLAINTIFFS**
Omer Kassa

**DEFENDANTS**
BP West Coast Products LLC
ADR

**(b)** County of Residence of First Listed Plaintiff SANTA CLARA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant ORANGE COUNTY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
George Holland, Esq.
Law Offices of George Holland
1970 Broadway, Suite 1030
Oakland, CA 94612 - (510) 465-4100

Attorneys (If Known)
Kurt Osenbaugh, Esq.
E-FILING
Weston, Benshoof, Rochefort, Rubalcava & MacCuish
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071 - (213) 576-1000

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

C08   02725   PVT

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☒ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC 2801, et seq.
Brief description of cause:
See Attachment "A"

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)
☐ SAN FRANCISCO/OAKLAND    ☒ SAN JOSE

DATE   5/29/08
SIGNATURE OF ATTORNEY OF RECORD

American LegalNet, Inc.
www.FormsWorkflow.com

## Attachment A

Breach of contract, conversion, fraud and deceit, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, negligence, negligent hiring and supervision, intentional infliction of emotional distress, temporary restraining order, preliminary injunction and permanent injunction, conspiracy, unfair and deceptive business practices, unfair business practices pursuant to California Business and Professions Code §21200, violations of the Unruh Civil Rights Act, violations of the Petroleum Marketing Practices Act.

1193096.1