ORIGINAL

1  KURT OSENBAUGH (State Bar No. 106132)
   DEBORAH YOON JONES (State Bar No. 178127)
2  MacKENZIE E. HUNT (State Bar No. 251127)
   **WESTON, BENSHOOF, ROCHEFORT,**
3     **RUBALCAVA & MacCUISH LLP**
   333 South Hope Street
4  Sixteenth Floor
   Los Angeles, California 90071
5  Telephone: (213) 576-1000
   Facsimile: (213) 576-1100
6
   Attorneys for Defendant
7  BP WEST COAST PRODUCTS LLC
8

E-FILING

ADR

Filed

MAY 3 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

PVT

| | |
|---|---|
| 11  OMER KASSA individually; OMER<br>KASSA dba H & O, INC., and H & O,<br>12  INC., | Case No. **C08 02725**<br>**BP WEST COAST PRODUCTS<br>LLC'S APPENDIX OF NON-<br>FEDERAL AUTHORITIES IN<br>SUPPORT OF NOTICE OF<br>REMOVAL OF ACTION UNDER 28<br>U.S.C. § 1441(b)** |
| 13              Plaintiffs, | |
| 14        v. | |
| 15  BP WEST COAST PRODUCTS, LLC, dba<br>ARCO PRODUCTS COMPANY and<br>16  DOES 1 to 50, | **[Filed Concurrently with Notice of<br>Removal of Action under 28 I.S.C. §<br>1441(b) (Federal Question<br>Jurisdiction); Declaration of<br>MacKenzie E. Hunt in Support of<br>Removal; Appendix of State Court<br>Pleadings and Papers; Notice of<br>Interested Parties; and Certificate of<br>Service.]** |
| 17              Defendants. | |
| 18 | |
| 19 | |
| 20 | Filing Date:        March 12, 2008<br>Complaint Served:   March 20, 2008<br>FAC Served:         May 14, 2008<br>Sup. Ct. Case No:   108CV107979 |
| 21 | |
| 22 | |

23

24

25

26

27

28

1192121.1

1          BP West Coast Products LLC ("BPWCP") hereby submits copies of the

2    following state authorities cited in support of its Notice of Removal of Action under

3    28 U.S.C. § 1441 (Federal Question Jurisdiction), filed concurrently herewith:

4        **State Cases:**

5            1.    *California ARCO Distributors, Inc. v. Atlantic Richfield Co.* (1984)

6                158 Cal.App.3d 349

7            2.    *Mobil Oil Corp. v. Superior Court* (1987) 189 Cal.App.3d 485

8            3.    *Niakan, et. al. v. Samaan and Union Oil Company of California*

9                (1988) 199 Cal.App.3d 716

10

11

12    DATED: May 29, 2008      Respectfully submitted,

13    KURT OSENBAUGH
    DEBORAH YOON JONES
    MacKENZIE E. HUNT

14    **WESTON, BENSHOOF, ROCHEFORT,**
        **RUBALCAVA & MacCUISH LLP**

15

16

17    ————————————————
    Deborah Yoon Jones
    Attorneys for Defendant

18    BP WEST COAST PRODUCTS LLC

19

20

21

22

23

24

25

26

27

28

APPENDIX OF NON-FEDERAL AUTHORITIES

1192121.1

Westlaw.

158 Cal.App.3d 349
158 Cal.App.3d 349, 204 Cal.Rptr. 743
(Cite as: 158 Cal.App.3d 349)

**C**California ARCO Distributors, Inc. v. Atlantic Richfield Co.
Cal.App.2.Dist.
CALIFORNIA ARCO DISTRIBUTORS, INC., et al., Plaintiffs and Respondents,
v.
ATLANTIC RICHFIELD COMPANY, Defendant and Appellant.
**Civ. No. 66562.**

Court of Appeal, Second District, Division 4, California.
Jul 17, 1984.

### SUMMARY

A corporation comprised of certain petroleum distributors and a distributor brought an action against a petroleum producer and franchisor under Bus. & Prof. Code, § 20999.1, to enjoin what was alleged to be the termination of their franchises. The trial court found that the inevitable result of the conduct undertaken by the franchisor would cause a termination of the distributorships and issued a preliminary injunction in favor of plaintiffs. It denied defendant's motion to dissolve the preliminary injunction. (Superior Court of Los Angeles County, Nos. B 002911 and C 423917, John L. Cole, Judge.)

The Court of Appeal reversed the order granting the preliminary injunction and dismissed defendant's appeal from the order denying its motion to dissolve it. The court held that because that portion of Bus. & Prof. Code, § 20999.1, subd. (d), relating to termination of franchises for legitimate business reasons was not the same as a federal act regulating petroleum franchise agreements, the Petroleum Marketing Practices Act (15 U.S.C. §§ 2801-2806), and because it stood as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, it was preempted by the federal act, and the issuance of the preliminary injunction therefore exceeded the trial court's jurisdiction. It further held the Franchise Investment Law (Corp. Code, §§ 31000-31516) and Corp. Code, § 17200 (unfair business practices), were also preempted to the extent they were relied on to enjoin the constructive terminations of the franchises of

plaintiffs. Since plaintiffs expressly disclaimed reliance on the federal act in prior proceedings in federal court, they could not rely on it on appeal as authority for the preliminary injunction. (Opinion by McClosky, J., with Kingsley, Acting P. J., and Arguelles, J., concurring.)

### HEADNOTES

Classified to California Digest of Official Reports

(1) Constitutional Law § 34--Distribution of Governmental Powers--Conflicts Between Federal and State Powers and Their Resolution--Preemption.
The doctrine of federal preemption of state law (U.S. Const., art. VI, cl. 2) requires courts to examine congressional intent. Preemption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.

(2) Constitutional Law § 34--Distribution of Governmental Powers--Conflicts Between Federal and State Powers and Their Resolution--Preemption.
Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Making this determination is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict. In deciding whether any conflict is present, a court's concern is necessarily with the nature of the activities which the states have sought to regulate, rather than on the method of regulation adopted.
[See Cal.Jur.3d, Constitutional Law, § 207; Am.Jur.2d, Constitutional Law, § 292.]
(3) Constitutional Law § 34--Distribution of Governmental Powers--Conflicts Between Federal and State Powers and Their Resolution--Preemption.
A mere conflict in words is not sufficient to establish federal preemption of state law. For a state statute to



158 Cal.App.3d 349                                                                                                   Page 2
158 Cal.App.3d 349, 204 Cal.Rptr. 743
(Cite as: 158 Cal.App.3d 349)

be consistent with a federal law, it is not necessary that it parrot that federal law word for word. In determining whether state and federal law conflict, courts must consider the relation between state and federal laws as they are interpreted and applied, not merely as they are written. The pertinent questions are whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition.

**(4)** Constitutional Law § 34--Distribution of Governmental Powers--Conflicts Between Federal and State Powers and Their Resolution--Preemption.
State and federal laws should be accommodated and harmonized where possible so that preemption can be avoided. Courts may not, however, give a statute a meaning to which it is not reasonably susceptible, nor may it rewrite a statute. The statute must be interpreted so as to give effect to the intent of the Legislature and, therefore, the purpose of the law.

**(5)** Franchise, Distribution, and Dealership Contracts § 1--Petroleum Franchises--State and Federal Regulation--Preemption.
The federal Petroleum Marketing Practices Act (15 U.S.C. §§ 2801-2806) does not preempt all state laws regulating petroleum franchises. Rather it merely supplants those provisions which are different from the federal act. The language of the federal act prohibiting states from enforcing "any provision of any law" which is different from the federal act manifests a Congressional intent to treat state laws which govern petroleum franchises as severable.

**(6)** Franchise, Distribution, and Dealership Contracts § 1--Petroleum Franchises--State and Federal Regulation--Preemption--Termination Provisions.
Bus. & Prof. Code, § 20999.1, subd. (d), providing that gasoline dealer or petroleum distributor contracts may be terminated by the franchisor for "other legitimate business reasons," is not the same as the federal Petroleum Marketing Practices Act (15 U.S.C. §§ 2801-2806), in that the federal act, but not the state law, contains specific time limits as to causes for termination, was enacted for the benefit of franchisors also, and was enacted to promote nationwide uniformity of petroleum franchise termination laws. Thus, because § 20999.1, subd. (d), stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress, it is preempted by the federal act. Accordingly, a preliminary injunction against a petroleum producer in favor of its franchisees, based on the preempted portion of § 20999.1, exceeded the trial court's jurisdiction as to its power to act except in a particular manner or to give certain relief.

**(7)** Franchise, Distribution, and Dealership Contracts § 7--Actions-- Petroleum Distribution--Federal and State Law.
Although state courts have concurrent jurisdiction with federal courts to enforce the Petroleum Marketing Practices Act (15 U.S.C. §§ 2801-2806), gasoline distributing franchisees who sought to enjoin their franchisor's termination of their franchise agreements under state law (Bus. & Prof. Code, § 20999.1), and who expressly disclaimed reliance on the federal act in proceedings in federal court, could not rely on the federal act in an appeal from a state court judgment as authority for a preliminary injunction.

**(8)** Franchise, Distribution, and Dealership Contracts § 1--Petroleum Distribution Franchises--Regulation--Federal Law--Application.
The Petroleum Marketing Practices Act (15 U.S.C. §§ 2801-2806) does not apply only to an actual technical termination of a franchise agreement, but applies equally to preclude unlawful constructive terminations of franchises.

**(9)** Franchise, Distribution, and Dealership Contracts § 1--Petroleum Franchises--Regulation--Federal and State Law--Preemption.
Because the Petroleum Marketing Practices Act (15 U.S.C. §§ 2801-2806) preempts any provision of any law or regulation with respect to termination of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of the federal act, the Franchise Investment Law (Corp. Code, § 31000 et seq. and Bus. & Prof. Code, § 17200 (unfair business practices)) were preempted to the extent they were inconsistent with federal law and to the extent they were relied on by petroleum distributors to enjoin the constructive terminations of their franchises by the franchisor.

COUNSEL
Smaltz & Neelley, Donald C. Smaltz, Robert L. Hess, Leighton M. Anderson and Paul J. Richmond for Defendant and Appellant.

*3*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Shapiro, Laufer, Krane, Jacobson & Posell, Shapiro, Laufer, Posell & Close, David Laufer, Kenneth P. Roberts and Douglas L. Carden for Plaintiffs and Respondents.

McCLOSKY, J.

On October 5, 1982, defendant Atlantic Richfield Company (ARCO) appealed from the preliminary injunction issued on October 1, 1982, in favor of plaintiffs California ARCO Distributors, Inc. (CADI) and Little Oil Company, Inc. (Little). (2d Civ. No. 66562.)

On June 1, 1983, ARCO appealed from an order dated April 19, 1983, wherein the trial court denied ARCO's motion to dissolve the preliminary \*353 injunction. Said motion was made during the pendency of the appeal from the preliminary injunction. (2d Civ. No. B002911.)

On July 1, 1983, by order of this court, we consolidated these appeals.

### Issues on Appeal

The following issues are presented for determination in 2d Civil No. 66562:

1. Is <u>Business and Professions Code section 20999.1</u>, <sup>FN1</sup> under the authority of which the preliminary injunction was issued, preempted by the federal Petroleum Marketing Practices Act (PMPA) (<u>15 U.S.C. §§ 2801-2806</u>)?

> FN1 All statutory references herein are to the Business and Professions Code unless stated otherwise.

2. If <u>section 20999.1</u> is preempted, was the preliminary injunction properly issued under the authority of the PMPA?

3. Assuming, arguendo, that <u>section 20999.1</u> is preempted by the PMPA, were ARCO's material modifications of its branded distributor franchise agreements properly enjoined under the Franchise Investment Law (FIL) (<u>Corp. Code, §§ 31000-31516</u>) or as unlawful business practices (<u>§ 17200</u>)?

4. Was the preliminary injunction issued in violation of ARCO's procedural due process rights?

5. Is there substantial evidence to support the issuance of the preliminary injunction?

In 2d Civil No. B002911, the sole question for resolution is whether the trial court had jurisdiction to consider the merits of ARCO's motion to dissolve the preliminary injunction.

### General Background

CADI is a California corporation comprised of ARCO distributors doing business in California. Little is a California corporation and is an ARCO distributor. Each member of CADI and Little entered into a "Branded Distributor-Gasoline Agreement" with ARCO Petroleum Products Company, a division of ARCO, a Pennsylvania corporation, for the purchase of gasoline. \*354

As branded distributors, the members of CADI including Little performed the same wholesale and retail functions performed by ARCO including, among other things, the sale and distribution of gasoline to service stations, commercial accounts, industrial accounts and farm accounts, the delivery of gasoline by tank truck vehicles to these accounts, and the performance of all administrative and marketing services to implement these functions.

Under the "Branded Distributor-Gasoline Agreement" it had been among ARCO's business practices, as well as the parties' course of dealings, (1) to compensate branded distributors with a reasonable hauling allowance for costs incurred in hauling ARCO branded gasoline from ARCO's gasoline distribution terminals where gasoline is purchased to branded distributors' places of business; (2) to grant branded distributors a reasonable line of credit based upon need, creditworthiness, volume of purchases, security and/or posted letter of credit and record of payment; and (3) to allow branded gasoline distributors to pay for gasoline on "10th-prox" terms. By usage "10th-prox" terms means that purchases made in one month are not due and payable until the 10th day of the following month.

On or before June 23, 1981, ARCO eliminated the hauling allowance to Little and other CADI members.

4

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

158 Cal.App.3d 349
158 Cal.App.3d 349, 204 Cal.Rptr. 743
(Cite as: 158 Cal.App.3d 349)

On or about May 1, 1982, ARCO announced that, effective at the end of July 1982, branded distributors' credit line on gasoline purchases would be subject to "receipt of invoice" payment terms. This modification reduced the time within which payment had to be made from approximately 40 days to approximately 7 days.

On September 1, 1982, CADI and Little filed a verified complaint for declaratory and injunctive relief against ARCO. Counts I, II and III were asserted only on behalf of Little and alleged violations of the FIL. Count IV was asserted by CADI and Little and alleged unfair business practices.

Also on September 1, CADI and Little filed an ex parte application for a temporary restraining order and an order to show cause re preliminary injunction. The trial court issued an order to show cause, but did not issue a temporary restraining order.

On September 30, 1982, the application of CADI and Little for a preliminary injunction was heard. At this hearing, the trial court granted relief on the basis of section 20999.1 which provides:

"Notwithstanding the terms of any franchise, no franchisor shall terminate, cancel, or fail to or refuse to renew any existing franchise without good cause. *355

"As used in this section good cause is limited to the following:

"(a) The gasoline dealer or petroleum distributor failed to comply with essential and reasonable requirements of the franchise agreement;

"(b) The gasoline dealer or petroleum distributor failed to act in good faith in carrying out the terms of the franchise; or

"(c) The franchisor is withdrawing from the marketing location at which the franchise of a gasoline dealer is located, provided that the franchisor pays the gasoline dealer the current wholesale market value for all qualifying equipment and supplies purchased by the gasoline dealer from

the franchisor or affiliate of the franchisor. This subdivision shall only apply to those gasoline dealer franchises which are entered into or renewed on or after January 1, 1979. As used in this subdivision, 'qualifying equipment and supplies' means all equipment and supplies purchased by the gasoline dealer from the franchisor or an affiliate of the franchisor which is free and clear of all liens, security interests and other encumbrances, valued on a first-in, first-out basis, evidenced by receipted invoices, and is (i) in first-class and resalable condition, (ii) in the original packages or containers and (iii) bears the original labels and trademarks, and (iv) the goods display no evidence of deterioration. This subdivision shall not be construed to create any priority over any other debt between the parties to the franchise arising from the same franchise agreement.

"(d) For other legitimate business reasons (except that a termination, or cancellation of a franchise for the purpose of enabling the petroleum distributor or manufacturer to assume operation of the distributor's or gasoline dealer's business shall not be considered to be a legitimate business reason unless the gasoline dealer or distributor is paid reasonable compensation for the value of his franchise, including a reasonable amount for good will)."

In its opposition to CADI's and Little's application for a preliminary injunction, ARCO maintained that the challenged modifications of its business practices were expressly authorized under the terms of the branded distributor gasoline agreement which it entered into with the members of CADI, including Little. The trial court noted that ARCO's argument "sounds good" until the "Notwithstanding the terms of any franchise" language of section 20999.1 is considered.

In granting the injunctive relief sought, the trial court stated: "... I believe the inevitable result of the conduct undertaken is to diminish or terminate ARCO's wholesale distributors in an effort to build up their retail *356 sales." The trial court then further explained: "I don't say that there is anything wrong with that as an ultimate goal as a business practice or as a business decision, but there are certain constraints imposed by statute, particularly section 29999.1 [FN2] [sic], ... [¶] ... [¶] I believe the inevitable inference I must draw is that the combination of these changes and practices we have

5

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

been talking about is to cause a termination of the distributorships and that therefore the statutes are triggered off."

> FN2 While the trial judge erroneously referred to section 20999.1 as section 29999.1 throughout the hearing, it is readily apparent that he was referring to section 20999.1.

At the hearing, ARCO argued that section 20999.1 was preempted by the PMPA. The trial court disagreed stating, "... I don't see anything in the applicable federal statute, ... to denigrate from [section 20999.1]" and "I don't think I would deny a preliminary injunction on the basis of preemption."

On October 1, 1982, the trial court issued a preliminary injunction wherein it ordered, among other things, "that during the pendency of this action, ARCO, its officers, agents and employees, and each of them, and all persons acting under, and in concert with, or for it, shall be and are hereby enjoined and restrained from:

"(1) Reducing the line of credit ARCO made available to LITTLE and to each member of CADI prior to September 1, 1982;

"(2) Changing the payment terms for the purchase of ARCO branded motor gasoline by LITTLE and each member of CADI from "10th prox.";

"(3) Eliminating the hauling allowance paid by ARCO to LITTLE and to each member of CADI prior to the elimination thereof on or about June 1, 1981."

Discussion

I

2d Civil No. 66562

A

(1)"The pre-emption doctrine, which has its roots in the Supremacy Clause, U.S. Const., Art. VI, cl. 2, requires us to examine congressional *357 intent. Pre-emption may be either express or implied, and 'is

compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977)." ( Fidelity Federal Sav. & Loan Assn. v. De La Cuesta (1982) 458 U.S. 141, 152-153 [73 L.Ed.2d 664, 674-675, 102 S.Ct. 3014].)

In enacting the PMPA, Congress explicitly addressed the preemption issue.Section 2806 (a) of title 15 of the United States Code provides: "(a) To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter."

That Congress did not intend to exclusively occupy the field with regard to the termination and nonrenewal of petroleum franchises is made clear by the language of 15 United States Code section 2806 (a). State legislation in the area does not, therefore, violate the supremacy clause if it is "the same as" the PMPA.

(2)Our nation's high court has noted: "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 (1963), or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' Hines v. Davidowitz, 312 U.S. 52, 67 (1941)." ( Fidelity Federal Sav. & Loan Assn. v. De La Cuesta, supra., 458 U.S. at p. 153 [73 L.Ed.2d at p. 675].) "Making this determination 'is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the

6

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

constitutional question whether they are in conflict.' *Perez v. Campbell,* [(1979) 402 U.S. 637,] 644.And in deciding whether any conflict is present, a court's concern is necessarily with 'the nature of the activities which the States have sought to regulate, rather than on the method of regulation adopted.' *358San Diego Building Trades Council v. Garmon,* [(1959) 359 U.S. 236,] 243." ( *Chicago & N. W. Tr. Co. v. Kalo Brick & Tile Co.* (1981) 450 U.S. 311, 317-318 [67 L.Ed.2d 258, 265, 101 S.Ct. 1124].)

Appellant maintains that the substantive provisions of section 20999.1 are not "the same as" the substantive provisions of the PMPA. [FN3]It urges that there are many substantive differences as well as a multitude of differences in language between the two.

> FN3 CADI and Little contend, in essence, that ARCO waived the defense of preemption because it failed to plead it as an affirmative defense in its answer to the complaint.
> No claimed violation of section 20999.1 appears in CADI's and Little's complaint, and it does not appear from the record that ARCO filed its answer before the hearing on CADI's and Little's application for a preliminary injunction.
> Prior to the hearing, CADI and Little filed a "Statement of Legal Position." Therein, they alleged for the first time that the changes imposed by ARCO constitute constructive termination of their franchise in violation of section 20999.1. Thereafter, in its memorandum of points and authorities in opposition to the application of CADI and Little for a preliminary injunction, ARCO expressly claimed that section 20999.1 was preempted by the PMPA. Because ARCO raised the defense of preemption at the earliest possible moment after learning that CADI and Little claimed a violation of section 20999.1 and because preemption was also raised and argued during the hearing, we find no waiver and conclude that this contention is without merit.

With regard to the differences in each law, we note that if a mere difference in words sufficed to preempt state law, then section 20999.1 would surely be preempted. (3)However, a "mere conflict in words is

not sufficient" to establish federal preemption. ( *Hisquierdo v. Hisquierdo* (1979) 439 U.S. 572, 581 [59 L.Ed.2d 1, 10-11, 99 S.Ct. 802].) For a state statute to be consistent with a federal law, it is not necessary that it parrot that federal law word for word. In determining whether state and federal law conflict, we must "consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." ( *Jones v. Rath Packing Co.* (1977) 430 U.S. 519, 526 [51 L.Ed.2d 604, 614, 97 S.Ct. 1305].) As the *Hisquierdo* court observed, "[t]he pertinent questions are whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." ( *Hisquierdo v. Hisquierdo, supra,* 439 U.S. 572, 583 [59 L.Ed.2d 1, 12].)

With regard to claimed substantive differences between section 20999.1 and the PMPA, we do not in this opinion undertake the evaluation of section 20999.1 as a whole. Hence, we do not pass on the validity of those provisions of section 20999.1 that have no applicability to this appeal. *359

(4)State and federal laws should be accommodated and harmonized where possible so that preemption can be avoided. [FN4] We may not, however, give a statute a meaning to which it is not reasonably susceptible. Nor may we rewrite a statute. It is a fundamental rule of statutory construction that a statute must be interpreted so as to give effect to the intent of the Legislature and, therefore, the purpose of the law. ( *Landrum v. Superior Court* (1981) 30 Cal.3d 1, 12 [177 Cal.Rptr. 325, 634 P.2d 352]; *Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [177 Cal.Rptr. 325, 634 P.2d 352].)

> FN4 See generally *Greater Westchester Homeowners Assn. v. City of Los Angeles* (1979) 26 Cal.3d 86, 93 [160 Cal.Rptr. 733, 603 P.2d 1329],cert. den., *City of Los Angeles v. Greater Westchester Homeowners Assn.* (1980) 449 U.S. 820 [66 L.Ed.2d 22, 101 S.Ct. 77].)

Under section 20999.1, good cause for the termination of a franchise exists (1) when a franchisee fails to "comply with essential and reasonable requirements of the franchise agreement,"

(2) when a franchisee fails "to act in good faith in carrying out the terms of the franchise," (3) when a "franchisor is withdrawing from the marketing location at which the franchise of a gasoline dealer is located" (with one condition and a qualification), and (4) when there are "other legitimate business reasons." [FN5]

> FN5 With regard to this fourth ground, section 20999.1 parenthetically states that "a termination, or cancellation of a franchise for the purpose of enabling the petroleum distributor or manufacturer to assume operation of the distributor's or gasoline dealer's business shall not be considered to be a legitimate business reason unless the gasoline dealer or distributor is paid reasonable compensation for the value of his franchise, including a reasonable amount for good will."
> We need not decide whether such termination coupled with reasonable compensation is valid under the PMPA because we are not dealing with that type of termination.

A review of these grounds for termination quickly reveals that the first three have no applicability in this case. Hence, we need not, and do not, decide whether they are preempted by the PMPA. (5)"The federal Act does not preempt all state laws regulating petroleum franchises; rather it merely supplants those provisions which are different from the PMPA. The language of the federal Act prohibiting states from enforcing 'any provision of any law' which is different from the PMPA, 15 U. S. C. § 2806(a), manifests a Congressional intent to treat state laws which govern petroleum franchises as severable." ( _Ted's Tire Service Inc. v. Chevron U. S. A. Inc._ (D. Conn. 1979) 470 F.Supp. 163, 165.)

At the hearing on the application for preliminary injunction, the trial court noted, "... I draw the fairly strong conclusion from the evidence presented that ARCO's conduct vis-á-vis these distributors was deliberately intended *360 and designed to drive them out of business." From this statement, we can reasonably infer that the trial court issued the injunction because it found that the changes made by ARCO were not made for any legitimate business reason within the meaning of section 20999.1 but

rather were, as a practical matter, made for the purpose of terminating their franchises. Therefore, our inquiry regarding the constitutionality of section 20999.1 is limited solely to whether "legitimate business reasons" is a ground for termination under the federal act.

The parties have not directed our attention to, and our research has not disclosed, any case interpreting the term "other legitimate business reasons" as it appears in section 20999.1. A comparison of this ground with its federal counterpart discloses that the state ground, while somewhat similar to, is not "the same as" the federal one.

In the PMPA, the grounds for termination of a franchise are set forth in 15 United States Code section 2802 (b)(2) (A) through (E). The PMPA's counterpart to our state ground of "other legitimate business reasons" is set forth in section 2802 (b)(2)(C) which provides:

"(C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, [is a ground for termination of a franchise] if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence-

"(i) not more than 120 days prior to the date on which notification of termination of nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or

"(ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title."

The specific time limits of 15 United States Code section 2802(b)(2)(C) which create a time frame within which a franchisor must acquire actual or constructive notice of the occurrence of an event prior to the time that notice of termination is given were "imposed to preclude a franchisor from basing termination or non-renewal upon old and long forgotten events." (1978 U.S. Code Cong. & Admin. News, at p. 892.)

8

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Section 20999.1 contains no comparable time limitations. Nevertheless, its requirement that a business reason be legitimate impliedly requires the *361 franchisor to actually terminate within a reasonable time after learning about a business reason justifying termination. That follows from the fact that an unjustifiable or unwarranted delay in terminating will negate the legitimacy of a business reason proffered for termination. This implicit requirement of reasonableness does not, however, shield section 20999.1 from a successful preemptive attack.

Section 20999.1, as originally enacted, became effective on January 1, 1976, prior to enactment or effective date of the PMPA. (Stats. 1975, ch. 640, p. 1389, § 1.) In section 2 of Statutes 1975, chapter 640, page 1390, the state Legislature enunciated its intent in enacting section 20999.1 thusly: "The Legislature finds and declares that distribution and sales through franchise arrangements of gasoline in the State of California affects the general economy of the state, the public interest and the public welfare. Competition and nondiscriminatory practices are essential to the fair and efficient functioning of a free market economy. Gasoline and other petroleum products should be marketed in the manner most beneficial to the consumer, and to prevent the disruption of vital energy sources. To prevent such disruptions it is necessary to define the relationships and responsibilities of parties to gasoline franchise agreements, and provide a remedy to gasoline dealers whose franchises are terminated, or not renewed."

Hence, section 20999.1 represented "an attempt on the part of the Legislature to correct certain abuses it perceived to exist in franchise arrangements between petroleum distributors and retail gasoline dealers." ( *Union Oil Co. v. Moesch* (1979) 88 Cal.App.3d 72, 75-76 [151 Cal.Rptr. 517].) Its purpose was the protection of franchises. Section 20999.1 "was designed to prevent franchisors from terminating or refusing to renew franchises where the agreement gives a right to do so arbitrarily or permits cancellation for a cause that is inconsistent with the grounds set forth in the section." ( *Witt v. Union Oil Co.* (1979) 99 Cal.App.3d 435, 438 [160 Cal.Rptr. 285].)

The PMPA, too, was enacted "to provide for the protection of franchised distributors and retailers of

motor fuel." (1978 U.S. Code Cong. & Admin. News, at p. 873.)"Congress enacted the PMPA in an effort to protect 'franchisees from arbitrary or discriminatory termination or non-renewal of their franchises.' [Citation.] ... Congress designed the PMPA to allay three specific concerns: that franchisee independence may be undermined by the use of actual or threatened termination or nonrenewal to compel compliance with franchisor marketing policies; that gross disparity of bargaining power may result in franchise agreements that amount to contracts of adhesion; and that termination or nonrenewal may disrupt the reasonable *362 expectations of the parties that the franchise relationship will be a continuing one. [Citation.]" ( *Brach v. Amoco Oil Co.* (7th Cir. 1982) 677 F.2d 1213, 1216.)

Unlike section 20999.1, however, PMPA was also enacted for the benefit of franchisors. "While one purpose of the Act is to protect the reasonable expectations of the 'franchisee' in the continuation of a motor fuel franchise relationship, the legislative history also discloses that Congress intended to recognize the 'legitimate needs of a franchisor to be able to terminate a franchise or not renew a franchise relationship ... upon certain changes in circumstances,' and to provide 'flexibility so that franchisors may initiate changes in their marketing activities to respond to changing market conditions and consumer preferences.' S.Rep. No. 95-731, 95th Cong., 1st Sess. 19, *reprinted in* [1978] U.S. Code Cong. & Ad. News 873, 877.' ( *Ames v. Texaco, Inc.* (W.D. Mich. 1983) 568 F.Supp. 1317, 1321,app. dism. (6th Cir. 1984) 727 F.2d 1108.)

Additionally, the PMPA was enacted to promote nationwide uniformity of laws relating to the termination or nonrenewal of a franchise. The legislative history of the PMPA discloses the concerns of the Congress thusly:

"Numerous States have initiated various legislative actions to address these petroleum product franchising problems. These actions have, unfortunately, resulted in an uneven patchwork of rules governing franchise relationships which differ from State to State.

"Needed is a single, uniform set of rules governing the grounds for termination and non-renewal of

*9*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

motor fuel marketing franchises and the notice which franchisors must provide franchisees prior to termination of a franchise or non-renewal of a franchise relationship. Such a set of rules would clearly define the rights and obligations of the parties to the franchise relationship in the crucial area of termination of a franchise or non-renewal of the franchise relationship." (1978 U.S. Code Cong. & Admin. News, at p. 877.)

While the implicit requirement of section 20999.1 that a franchisor actually terminate within a reasonable time after learning about a business reason justifying termination serves to ensure that franchisees are protected from having their franchises terminated because of a stale event, there is no guarantee that a time limitation which is reasonable under state law will be "the same as" the limitations imposed in 15 United States Code section 2802. Moreover, from the concept of "reasonableness" emanates the notion that what is reasonable will vary depending upon the particular circumstances *363 of each case. This would impede the PMPA's purpose of promoting nationwide uniformity of laws relating to the termination or nonrenewal of a franchise.

Additionally, the time limits set forth in 15 United States Code section 2802(b)(2)(C) were also designed "to provide adequate opportunity for a franchisor to evaluate potential grounds for franchise termination or nonrenewal prior to making a determination whether to terminate the franchise or not to renew the franchise relationship." (1978 U.S. Code Cong. & Admin. News, at p. 892.)In the absence of intent that section 20999.1 was enacted for the protection of franchisors, we cannot read into section 20999.1 a time limit that will serve the purposes sought to be achieved by the PMPA. [FN6]

> FN6 Respondent contends that our state Legislature intended section 20999.1 to be interpreted and applied consistently with the PMPA because in 1981 the definitions set forth in the PMPA (15 U.S.C. § 2801) were incorporated into section 20999.
> At the time that section 20999.1 was enacted, section 20999 which sets forth the definitions of terms used in chapter 7.5 of the Business and Professions Code relating to franchises was also enacted. In 1981, section 20999 was repealed and a new

section 20999, also containing definitions, was enacted. With a few exceptions, the definitions mirror those contained in 15 United States Code section 2801. The Legislative Counsel's Digest to Assembly Bill No. 433 (1981-1982 regular session) as amended by the assembly and the senate states that the bill would revise the definition of franchise so that it would be "in conformance with that provided under the federal Petroleum Marketing Practices Act (Public Law 95-197)."
> At first blush, respondent's argument seems plausible, but upon reflection it does not hold up. At the time that section 20999 was amended 20999.1, too, was amended. The amendment to section 20999.1, however, which consisted solely of adding the phrase "or fail to" before the phrase" or refuse to renew" did not effect a change in the substance of, or the intent underlying, section 20999.1.

(6)Because 20999.1, subdivision (d) is not the same as the PMPA, it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. ( *Hines v. Davidowitz* (1941) 312 U.S. 52, 67 [85 L.Ed. 581, 587] S.Ct. 399].) That portion of section 20999.1 that we scrutinize today is preempted by the PMPA. [FN7]"An injunction based on an unconstitutional [statute] exceeds the issuing court's jurisdiction." [FN8]*364 ( *Welton v. City of Los Angeles* (1976) 18 Cal.3d 497, 507 [134 Cal.Rptr. 668, 556 P.2d 1119].) Therefore, the preliminary injunction, which was based on that portion of section 20999.1 that we hold to be unconstitutional today, must be reversed.

> FN7 Under 15 United States Code section 2802, subdivision (b)(1)(A)-(B), a franchisor may terminate a franchise if the notification requirements set forth in 15 United States Code section 2804 are met and if said termination is based upon one of the grounds delineated in 15 United States Code section 2802, subdivision (b)(2). Neither section 20999.1 nor any other section in chapter 7.5 of the Business and Professions Code relating to franchises contains a requirement of notification prior to termination.

10

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

We need not, and do not, decide whether the absence of a notification requirement would be further reason for preemption. Nor need we decide whether any other grounds warrant preemption.

FN8 Jurisdiction as the term is used here, has a broader meaning than subject matter jurisdiction or jurisdiction over the person. It refers to the trial court's power to act except in a particular manner or to give certain relief. (See _Board of Medical Examiners v. Terminal-Hudson Electronics, Inc._ (1977) 73 Cal.App.3d 376, 388 [140 Cal.Rptr. 757], fn. 9 and accompanying text.)

**B**

(7)CADI and Little next contend that even if section 20999.1 is preempted by the PMPA, the trial court was authorized to enjoin ARCO's constructive termination under the authority of the PMPA. While we are cognizant that state courts have concurrent jurisdiction to enforce the PMPA ( _Ted's Tire Service Inc. v. Chevron U.S.A. Inc., supra.,_ 470 F.Supp. at p. 165), we note that CADI and Little expressly disclaimed reliance on the PMPA in the proceedings in United States District Court. Having done so they may not rely on the PMPA in this appeal as authority for the preliminary injunction.

After the trial court issued the preliminary injunction, ARCO removed this matter to the United States District Court for the Central District of California. CADI and Little then moved to remand the action to the state court. That motion was granted. FN9In their reply to ARCO's opposition to their motion to remand, CADI and Little made the following statements:

FN9 We reject as meritless CADI's and Little's contention that the district court's remand order constituted a determination that state law could be construed "the same as" the PMPA. As pointed out by CADI and Little in their "Memorandum of Points and Authorities in Reply to Opposition to Motion to Remand," the United States District Court did not sit as an appellate court tribunal reviewing the state trial court's determination in this case.

"[A]rco acknowledges that plaintiff's [_sic_] claim is based solely upon California law including, but not limited to, California Business and Professions Code § 20999.1."

"With the defense of preemption rejected, plaintiffs are, as they have always been, preceding [_sic_] under exclusively state law statutes."

"California Business and Professions Code § 20999.1, as well as the other authorities and legal positions argued in support of the preliminary injunction, present a prima facie basis for relief entirely under state law."

"Because preemption is a defense which can and should be pled in the state court, a defense which has been rejected and is currently being appealed by Arco in the state court, it does not transform that plaintiffs' exclusively state law lawsuit into one arising under federal law." *365

"[P]laintiffs have not changed their complaint or otherwise characterized their claims as arising under PMPA."

We need not, and do not, decide if injunctive relief would have been available under the PMPA. We point out, however, that ARCO argues inconsistently. It now contends that the PMPA precludes an injunction against changed marketing practices. It maintains that the terms "termination" and "nonrenewal" under the PMPA mean _actual_ termination of a franchise or failure to renew franchises after the expiration date.

ARCO may not successfully argue that the PMPA preempts section 20999.1 and then turn around and claim that the PMPA does not seek to regulate constructive terminations of franchise, for if the PMPA has no applicability to this case then no issue of preemption is presented and constructive terminations may properly be enjoined under section 20999.1. (8)We do not, however, agree that the PMPA applies only to an actual technical termination. A franchisor who cannot actually terminate under the PMPA may not be allowed to evade the reach of the PMPA by doing indirectly that which it cannot do directly. We conclude that the

11

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

158 Cal.App.3d 349
158 Cal.App.3d 349, 204 Cal.Rptr. 743
(Cite as: 158 Cal.App.3d 349)

PMPA applies equally to preclude unlawful constructive terminations of franchises.

## C

CADI and Little contend that even if section 20999.1 is preempted by the PMPA, ARCO's material modification of its branded distributor franchise agreements can be enjoined as unlawful business practices because they violate the FIL (Corp. Code, § 31000 et seq.) and as unfair business practices. (§ 17200.)

They maintain that "Arco's violation of the FIL, if not enjoined, will force its franchisees to cease operating as Arco branded distributors." They further maintain that the modifications implemented by Arco were unfair business practices that "would effectively convert Arco branded distributors into Arco branded retail dealers and would force them to cease operating at Arco branded distributors."

CADI and Little cannot circumvent the PMPA's preemptive effect over section 20999.1 by challenging ARCO's constructive terminations of their franchises as violations of the FIL and section 17200.

We, therefore need not, and do not, decide whether the changes which ARCO implemented constitute material modifications of its branded distributor franchise agreements or whether said modifications were authorized by *366 said franchise agreements. Neither need we decide if these modifications were, in fact, unlawful business practices which violate the FIL, nor if they are unfair business practices which violate section 17200. To the extent that CADI and Little contend that these unlawful and unfair business practices were designed to constructively terminate ARCO's branded distributor agreements, they may be enjoined neither under the FIL nor under section 17200.

(9)The PMPA preempts *"any provision of any law* or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) ... of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision" of the PMPA. (15 U.S.C., § 2806 (a), italics added.)

Accordingly, the FIL and section 17200 are preempted to the extent relied upon to enjoin the constructive terminations of the franchises of Little and the members of CADI. ( *Exxon Corp. v. Miro* (C.D.Cal. 1983) 555 F.Supp. 234, 237 [PMPA preempts application of FIL to bar nonrenewal of franchise].)

## D & E

Our determination of the foregoing issues is dispositive of the appeal in 2d Civil No. 66562. We, therefore need not, and do not, reach the further contentions of the parties in 2d Civil No. 66562.

## II

### Case No. B002911

In light of the dispositive nature of our decision in 2d Civil No. 66562, ARCO's appeal from the trial court's order denying its motion to dissolve the preliminary injunction must be dismissed as moot. Hence, we do not decide whether the trial court had jurisdiction to consider the merits of ARCO's motion to dissolve the preliminary injunction.

In 2d Civil No. 66562, the preliminary injunction issued on October 1, 1982, is reversed. The matter is remanded to the trial court to allow respondents California ARCO Distributors, Inc. and Little Oil Company, Inc. to file an amended complaint and an amended application for a temporary restraining order and order to show cause re preliminary injunction alleging such violations of the Petroleum Marketing Practices Act as they are able to demonstrate. *367

In 2d Civil No. B002911, the appeal taken from the April 19, 1983, order denying Atlantic Richfield Company's motion to dissolve the preliminary injunction issued on October 1, 1982, is dismissed as moot.

Each party is to bear its own costs on both appeals.

Kingsley, Acting P. J., and Arguelles, J., concurred.
A petition for a rehearing was denied August 3, 1984, and respondents' petition for a hearing by the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

158 Cal.App.3d 349
158 Cal.App.3d 349, 204 Cal.Rptr. 743
(Cite as: 158 Cal.App.3d 349)

Supreme Court was denied November 14, 1984.
Broussard, J., Reynoso, J., and Grodin, J., were of the
opinion that the petition should be granted. *368

Cal.App.2.Dist.
California ARCO Distributors, Inc. v. Atlantic
Richfield Co.
158 Cal.App.3d 349, 204 Cal.Rptr. 743

END OF DOCUMENT

13

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

189 Cal.App.3d 485
189 Cal.App.3d 485, 234 Cal.Rptr. 482
(Cite as: 189 Cal.App.3d 485)

**H**Mobil Oil Corp. v. Superior Court (Benevento)
Cal.App.6.Dist.
MOBIL OIL CORPORATION, Petitioner,
v.
THE SUPERIOR COURT OF SANTA CLARA
COUNTY, Respondent; FRANK BENEVENTO et
al., Real Parties in Interest.
**No. H002259.**

Court of Appeal, Sixth District, California.
Feb 13, 1987.

### SUMMARY

An oil company petitioned to the Court of Appeal for
a writ of mandate after the trial court denied the
company's motion for summary judgment, in an
action by the lessees of a service station against the
oil company following the termination of their lease.
The lessees operated their station under a written
lease from the oil company on premises leased from
landowners by the oil company. When the underlying
ground lease expired during the term of the station
lease, the oil company failed to exercise its option to
renew the ground lease, thereby automatically
terminating the station lease. The lessees sued for the
termination upon theories of violation of an implied
covenant of good faith and fair dealing, fraud, and
interference with prospective advantage. The oil
company moved for summary judgment on the
ground that the claims were preempted by federal
law.

The Court of Appeal granted the writ and directed the
trial court to grant summary judgment for the oil
company. It held that the lessees' common law claims
were preempted by the franchise termination
provisions of the Petroleum Marketing Practices Act
(15 U.S.C. §§ 2801-2806), regardless whether the
claims were couched in terms of tort or contract law.
The act precludes states from enacting or enforcing
laws with respect to franchise termination differed
from those provided by the act (15 U.S.C. § 2806(a)).
The court held that, because the act differs from
California law with respect to exemplary damages,
and witness and attorney fees, the state claims were
preempted. (Opinion by Capaccioli, J., with Agliano,
P. J., and Brauer, J., concurring.)

### HEADNOTES

Classified to California Digest of Official Reports

(1) Franchise, Distribution, and Dealership Contracts
§ 7--Actions-- Petroleum Franchises--Federal
Preemption--Termination Provisions.
The preemption clause of the Petroleum Marketing
Practices Act (15 U.S.C. § 2806(a)), providing that
no state may adopt or enforce laws for the
termination of petroleum franchises, unless such laws
are the same as those provided in the act, preempts
state common law rights and remedies as well as
formally codified legisative or administrative laws
and regulations, regardless whether such laws sound
in contract or tort. Thus, the lessees of a service
station were precluded from maintaining an action
against an oil company for termination of their lease
based on state law tort theories. The California
common law remedies are not the same as those
available under the act, as to exemplary damages, and
witness and attorney fees.
[See Cal.Jur.3d, Constitutional Law, § 207;
Am.Jur.2d, Constitutional Law, § 292.]

COUNSEL
William K. O'Brien and Norman L. Miley, Jr., for
Petitioner.
No appearance for Respondent.
Wylie, Blunt, McBride, Jesinger & Sure, John
McBride and Christopher E. Platten for Real Parties
in Interest.
CAPACCIOLI, J.
Mobil Oil Corporation is the named defendant in an
action by Frank and Joseph Benevento arising out of
their loss of a Mobil service station lease. The lease
terminated when Mobil elected not to renew the
underlying ground lease. The Beneventos pled three
theories based in California common law: Violation
of an implied covenant of good faith and fair dealing,
fraud, and interference with prospective advantage.
Mobil moved for summary judgment, arguing among
other things that these claims are preempted by
federal law. The motion was denied,; Mobil seeks
review. We conclude, as a matter of law, that the
Beneventos' claims were preempted. Accordingly we
shall issue a peremptory writ of mandate.

14

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In their second amended complaint the Beneventos alleged that they operated a Mobil gas station in San Jose, under written service station leases from Mobil, on premises leased from the landowners by Mobil. The Beneventos **\*487** acknowledge that each of the successive service station leases provided that the station lease would automatically terminate 30 days prior to the expiration of the ground lease. The stated term of the most recent station lease was from September 1, 1983, to August 31, 1986. The ground lease was due to expire during that term, but Mobil had an option to renew the ground lease for an additional period of five years beginning April 1, 1984. Mobil did not exercise the option. As a result the Beneventos lost their station lease in March 1984.

The Beneventos sued Mobil on the theories enumerated above. Among other things they alleged that a representative of Mobil had given them false assurances concerning the ground lease and that with respect to the ground lease Mobil had acted fraudulently, in bad faith, and with intent to disrupt the Beneventos' economic relationships with their established customers. The Beneventos sought relief including compensation for emotional distress and punitive damages.

Mobil's initial response was to remove the action to the federal district court. In federal district court the Beneventos moved to remand to the superior court, and the matter was remanded. Then Mobil demurred; respondent court overruled its demurrer. The Beneventos argue that the remand and the demurrer ruling made clear that both the federal district court and respondent court believed the Beneventos' claims were not preempted, and that Mobil's summary-judgment motion and this writ petition represent attempts to relitigate an issue already resolved. But neither these orders nor the moving papers have been made available to this court: We have been given no way to know precisely what issues were presented and resolved. Thus we have no basis on which to question respondent court's implicit conclusion that the preemption issue was properly before it on Mobil's ensuing motion for summary judgment.

In support of its summary-judgment motion, Mobil invoked the federal Petroleum Marketing Practices Act (15 U.S.C. §§ 2801-2806) (PMPA), which would define Mobil as a "franchisor," at least one of the

Beneventos as a "franchisee," and the station lease as a "franchise." (Id. § 2801.) In part relevant to these circumstances the PMPA provides that a franchisor may terminate a franchise only in circumstances described, and only in accordance with procedures specified, in the PMPA. (Id. § 2802(a).) The PMPA contains detailed provisions for relief by civil action brought by the franchisee in the event a franchisor "fails to comply with the requirements of section 2802..." (id. § 2805) and an express preemption clause which (in part pertinent to these issues) provides: "To the extent that any provision of this subchapter applies to the termination...of any franchise,...no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision **\*488** of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination...of any such franchise...unless such provision of such law or regulation is the same as the applicable provision of this subchapter." (Id. § 2806(a).)

Only one published California appellate opinion has discussed the PMPA in any detail; consistent with several federal cases, it concludes that the PMPA was enacted to protect both franchisees and franchisors, and "to promote nationwide uniformity of laws relating to the termination or nonrenewal of a franchise." ( _California Arco Distributors, Inc. v. Atlantic Richfield Co._ (1984) 158 Cal.App.3d 349, 361-362 [204 Cal.Rptr. 743]; see also _Brach v. Amoco Oil Co._ (7th Cir. 1982) 677 F.2d 1213, 1216-1217; _Kostantas v. Exxon Co., U.S.A._ (5th Cir. 1981) 663 F.2d 605, 606.)

Mobil's motion for summary judgment developed relatively little dispute as to the underlying facts: It acknowledged that it had permitted the ground lease to expire, but tendered no factual response to the Beneventos' allegations that it had acted in bad faith, maintaining that its motivation was legally irrelevant. Respondent court denied the motion, concluding among other things that "[p]laintiffs' causes of action are not pre-empted by the Petroleum Marketing Practices Act." This writ petition followed.

(1)A threshold question is whether the relatively narrow PMPA preemption clause (15 U.S.C. § 2806(a)) extends to common law theories as distinct from a formally codified legislative or administrative "law or regulation." As a broad generalization, any

15

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

preemptive effect of a particular piece of federal legislation will extend to common law rights and remedies. (E.g., *San Diego Unions v. Garmon* (1959) 359 U.S. 236, 244 [3 L.Ed.2d 775, 782, 79 S.Ct. 773] (NLRA).) Most of the reported decisions of federal district judges who have considered the issue have agreed that common law theories and remedies *are* preempted by the PMPA. (E.g., *Continental Enterprises, Inc. v. American Oil Co.* (W.D. Mo. 1986) 628 F.Supp. 126, 128-130 (citing several of the earlier cases); *Graeber v. Mobil Oil Corp.* (D.C.N.J. 1985) 614 F.Supp. 268, 271; *Siecko v. Amerada Hess Corp.* (E.D.Pa. 1983) 569 F.Supp. 768, 773; *Huth v. B.P. Oil, Inc.* (D. Md. 1983) 555 F.Supp. 191, 194; *Meyer v. Amerada Hess Corp.* (D.N.J. 1982) 541 F.Supp. 321, 332;*Nesheiwat v. Mobil Oil Corp.* (C.D.Cal. 1984) Bus. Franch. Guide (CCH) [¶] 8283.) This narrow issue appears not to have been directly addressed in any reported California decision.

*California Arco Distributors, Inc. v. Atlantic Richfield Co., supra,* 158 Cal.App.3d 349, 365-366, states a relatively broad rule of preemption under the PMPA. In our view the purposes of the federal statute, as stated in *489California Arco Distributors,* support a conclusion that the PMPA does preempt common law rights and remedies.

The Beneventos do not contest this conclusion. Instead they maintain that the subject-matter of their action is outside the purview of the PMPA, arguing that they "do not base their claims on the non-renewal or discontinuation of *their* contract with Mobil [. R]ather, all three claims are premised upon Mobil['s] alleged action *extraneous* to the franchise relationship, that is, Mobil's fraudulent conduct, *coupled with* Mobil's alleged intent to frustrate plaintiffs' enjoyment of their economic rights." The Beneventos insist that these are "extraneous" *tort* claims rather than "a contract claim under the PMPA for non-renewal of their franchise agreement." For this proposition they cite *Nesheiwat v. Mobil Oil Corp., supra,* presumably relying on a narrow reading of the federal district judge's conclusion that "[c]ommon law claims including fraud or contract claims, are included in the scope of preemption under the PMPA *to the extent they purport to apply to issues of franchise termination or nonrenewal contrary to the effect of the PMPA.*" (Bus. Franchise Guide, *supra.*, at pp. 14,939-14,940 (italics added).)

To support their purview argument the Beneventos rely on precedents from the highly developed caselaw of preemption under the federal labor statutes. (E.g., *San Diego Unions v. Garmon, supra,*, 359 U.S. 236; *Farmer v. Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056].) Finally, the Beneventos cite the accepted proposition that "'[t]he federal Act does not preempt all state laws regulating petroleum franchises; rather it merely supplants those provisions which are different from the PMPA.'" ( *California Arco Distributors, Inc. v. Atlantic Richfield Co., supra.*, 158 Cal.App.3d 349, 359.)

Mobil's response is that the Beneventos cannot avoid a conclusion that in essence each of their claims is for the termination of their franchise. We agree: Termination of the ground lease, for whatever purposes and with or without honest disclosure, was significant to the Beneventos only because it worked a termination of the franchise. The courts have perceived, and the language and legislative history of the PMPA support, a congressional intent that claims which, in the last analysis, are for assertedly improper termination of a petroleum franchise be brought only under the PMPA or local law which is "the same as" the PMPA. Only in this way can some semblance of uniformity in the treatment of such claims be assured.

The California common law remedies are not the same as those available under the PMPA. Two significant differences are immediately obvious: Under the PMPA, "[t]he question of whether to award exemplary damages and the amount of any such award shall be determined by the court and not by a jury" (15 U.S.C. § 2805(d)(2)), and "the court may, in its discretion, direct that reasonable attorney and expert witness fees be paid by the *490 franchisee [here, the plaintiffs Benevento] if the court finds that such action is frivolous" (*id.,*§ 2805(d)(3)).

We conclude that the Beneventos' claims are preempted by the PMPA and therefore cannot be maintained under California law.

Our conclusion renders it unnecessary for us to consider Mobil's additional contentions.

The procedural requirements for a peremptory writ in the first instance have been met. ( *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-

16

189 Cal.App.3d 485
189 Cal.App.3d 485, 234 Cal.Rptr. 482
**(Cite as: 189 Cal.App.3d 485)**

178 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing respondent Superior Court of Santa Clara County to vacate its order in action 549001, Benevento et al. v. Mobil Oil Corporation et al., denying Mobil Oil Corporation's motion for summary judgment and to enter a new order granting summary judgment for Mobil Oil Corporation.

Agliano, P. J., and Brauer, J., concurred.
A petition for a rehearing was denied March 11, 1987, and the petition of real parties in interest for review by the Supreme Court was denied May 14, 1987. Mosk, J., was of the opinion that the petition should be granted. *491

Cal.App.6.Dist.
Mobil Oil Corp. v. Superior Court
189 Cal.App.3d 485, 234 Cal.Rptr. 482

END OF DOCUMENT

17

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

199 Cal.App.3d 716
199 Cal.App.3d 716, 245 Cal.Rptr. 24
**(Cite as: 199 Cal.App.3d 716)**

Page 1

▷Niakan v. Samaan
Cal.App.2.Dist.
  F. NIAKAN et al., Plaintiffs, Cross-defendants and
Respondents,
v.
ISSA ELIAS SAMAAN, Defendant, Cross-
complainant and Appellant; UNION OIL
COMPANY OF CALIFORNIA, Defendant, Cross-
defendant and Respondent
**No. B015459.**

Court of Appeal, Second District, Division 5,
California.
Feb 16, 1988.

### SUMMARY

Property owners brought an action against the
sublessee of their property, a service station
franchisee, for a declaration that the franchisee had
no right to remain on the premises beyond the
expiration date of his sublease. The franchisee cross-
complained against the owners and the franchisor,
alleging violations of the federal Petroleum
Marketing Practices Act (15 U.S.C. § 2801 et seq.),
unfair trade practices in violation of Bus. & Prof.
Code, § 17200, breach of the implied covenant of
good faith and fair dealing and breach of written
contract, and misrepresentation. The trial court
directed a verdict against the franchisee on each of
these causes of action except misrepresentation; as to
that cause, the jury decided against him. (Superior
Court of Los Angeles County, No. WEC77378,
Jacqueline L. Weiss, Judge.)

The Court of Appeal dismissed the franchisee's
appeal on the cross- complaint. It held that it lacked
subject matter jurisdiction to entertain the appeal,
since Congress intended to vest the federal courts
with exclusive jurisdiction over actions involving
franchise agreements under 15 U.S.C. § 2801 et seq.
(Opinion by Hastings, J., [FN*] with Feinerman, P. J.,
and Boren, J., concurring.)

    FN* Retired Associate Justice of the Court
    of Appeal sitting under assignment by the
    Chairperson of the Judicial Council.

### HEADNOTES

Classified to California Digest of Official Reports

(1) Garages, Service Stations, and Parking Facilities
§ 8--Actions--Federal Jurisdiction of Actions Under
Petroleum Marketing Practices Act.
In an action by property owners for a declaration that
the sublessee of the property, a service station
franchisee, had no right to remain there beyond the
expiration date of his sublease, the franchisee's
appeal on his cross-complaint against the owners and
the franchisor alleging violations of the federal
Petroleum Marketing Practices Act (15 U.S.C. §
2801 et seq.), unfair trade practices in violation of
Bus. & Prof. Code, § 17200, breach of the implied
covenant of good faith and fair dealing and breach of
written contract, and misrepresentation-all predicated
on the franchisor's failure to renew the franchise-was
precluded on the grounds of lack of state court
jurisdiction. Congress intended to vest the federal
courts with exclusive jurisdiction over actions
involving franchise agreements under 15 U.S.C. §
2801 et seq.
[Termination or nonrenewal of franchise to sell motor
fuel in commerce under Petroleum Marketing
Practices Act (15 U.S.C.S. § 2801 et seq.), note, 53
A.L.R. Fed. 348. See also Cal.Jur.3d, Garages,
Service Stations, and Parking Facilities, § 21;
Am.Jur.2d, Garages, and Filling and Parking
Stations, § 163.]

### COUNSEL
Minutillo & Gorman, Daniel C. Minutiefo, Shapiro,
Posell & Close John C. Gorman, Kindel & Anderson
and David Laufer for Defendant, Cross-complainant
and Appellant.
Margolis, Ryan, Burrill & Besser, Robert S. Besser
and Christopher Chapin for Defendant, Cross-
defendant and Respondent.
Thomas E. Reeks for Plaintiffs, Cross-defendants and
Respondents.
**HASTINGS, J.**[FN*]

    FN* Retired Associate Justice of the Court
    of Appeal sitting under assignment by the

18

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Chairperson of the Judicial Council.
Defendant/appellant Issa Elias Samaan (appellant) appeals from the judgment entered against him and in favor of plaintiffs/respondents F. Niakan, E. Niakan, Ben Niakan and Betty Niakan (the Niakans) and Union Oil Company of California (Union Oil), and from denial of his motion for a new trial. *718

FACTS:

In 1963, Union Oil [FN1] leased a service station site on Wilshire Boulevard in Los Angeles from the Sheffields and constructed a Union Oil Station facility on the site. The original term of the lease expired on April 30, 1979. The lease contained options to extend the lease for two 5-year periods. On September 30, 1980, Union Oil exercised one of its two options to extend the site lease. The new expiration date was scheduled for April 30, 1984. The Sheffields subsequently sold the site to the Niakans.

> FN1 Union Oil is a petroleum marketing franchisor, as defined by the Petroleum Marketing Practices Act, 15 United States Code section 2801 et seq.

On July 15, 1977, Union entered into a franchise agreement with appellant which encompassed a sublease of the same Wilshire Blvd. service station site. The sublease was for a three-year period ending July 14, 1980. On September 30, 1980, Union Oil and appellant entered into another three-year franchise which, by its terms, commenced on September 15, 1980, and expired on September 30, 1983. When these franchise lease documents were delivered to appellant for signature, he was given written notice of the April 30, 1984, expiration date of the site lease.

In August 1981, Union Oil entered into a settlement agreement with the Sheffields and Niakans, in order to settle a lawsuit brought by the Sheffields in 1977. The Sheffield suit claimed retroactive rental increases were due under the site lease. Under the terms of the settlement, Union Oil relinquished its option to extend the site lease for an additional five-year term and its tenancy of the site beyond September 30, 1983 (appellant's sublease's expiration date).

Appellant did not receive notice of this settlement

and learned about it in June 1982, from the Niakans' attorney. Up to that time, he understood the site lease was due to expire on April 30, 1984. Appellant took the position that the settlement agreement was invalid as to his interest and that he was entitled to remain in possession of the site beyond the expiration date of his lease with Union Oil through the term of the *second option lease*, i.e., April 30, 1989.

The Niakans had planned to convert the site to a different use. When they could not secure an agreement to vacate from appellant, they filed suit in November 1982, seeking a judicial declaration that appellant had no further right to remain on the premises beyond the expiration of his sublease, September 30, 1983.

Appellant cross-complained against the Niakans, the Sheffields and Union Oil. Of the eight causes of action contained in the cross-complaint, *719 only the following five are pertinent to this appeal: The first cause of action, against Union Oil, alleged violation of the federal Petroleum Marketing Practices Act (PMPA), 15 United States Code section 2801 et seq., as a result of Union Oil's nonrenewal of appellant's service station franchise. The Niakans are also named as cross-defendants as to the first cause of action for conspiring with Union Oil to violate appellant's franchise rights under PMPA. The fifth cause of action, against Union Oil, alleged unfair trade practices in violation of California Business and Professions Code section 17200. The sixth and seventh causes of action, against Union Oil, alleged breach of the implied covenant of good faith and fair dealing and breach of written contract. The eighth cause of action, against Union Oil, alleged misrepresentation, as to the duration of appellant's franchise.

At the conclusion of the presentation of evidence, the court directed a verdict against appellant as to each cause of action, except the eighth. The issue of whether Union Oil fraudulently misrepresented the length of appellant's lease was decided by the jury in Union Oil's favor.

On appeal, appellant contends the court made errors of law when it directed verdicts against him as to causes of action 1, 5, 6 and 7; and when it refused his requested jury instruction on negligent misrepresentation and concealment. Appellant further

19

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

199 Cal.App.3d 716
199 Cal.App.3d 716, 245 Cal.Rptr. 24
(Cite as: 199 Cal.App.3d 716)

argues that the bailiff's conduct at trial deprived him of a fair trial.

(1) Union Oil counters that each of the causes of action of which appellant seeks reversal either are directly governed by or are preempted by the PMPA, and that the federal court has exclusive jurisdiction for any action grounded in the PMPA. Accordingly, the entire appeal should be dismissed for lack of subject matter jurisdiction. We concur.

All parties agree that Union Oil is a petroleum marketing franchisor as defined by PMPA section 2801 (3), and that the franchise agreement is subject to requirements of the PMPA. All the causes of action, summarized above, stem from Union Oil's failure to renew appellant's petroleum marketing franchise.

Subsequent to trial on this matter, the United States District Court for Central California has addressed the question of whether the federal courts have exclusive jurisdiction over actions brought under the PMPA. In *Rustom v. Atlantic Richfield Co.*, (C.D.Cal. 1985) 618 F.Supp. 210, the court acknowledged the presumption that state courts have concurrent jurisdiction. It noted, however, that this "... presumption may be rebutted 'by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests.' (Citations.)" *720(Id. at p. 212.)*After analyzing the legislative history as well as the language and the requirements of the statute, [FN2] the court concluded that Congress intended to vest the federal courts with exclusive jurisdiction over actions brought under the PMPA. (*Id.* at p. 214.)This holding has been followed in *Elimelekh, et al. v. Texaco Refining & Marketing Inc.* (C.D.Cal. 1986, Business Franchise Guide, [¶] 8663, pp. 16751-16752).

FN2 The court noted that while the PMPA does not specifically require action to be brought solely in federal district court, both House and Senate reports state that the provisions of the PMPA "are enforceable by private civil action in U.S. District Court"; there is no mention in the reports of bringing PMPA actions in state courts; and the PMPA incorporates standards under the Federal Rules of Civil Procedure to the

award of damages and to the issuance of preliminary injunctions.

Our research indicates that the body of case law developed under the PMPA consists almost entirely of federal court decisions. Moreover, on two occasions, our appellate court has held that all California state law remedies for wrongful termination or nonrenewal have been preempted by the PMPA. (*California Arco Distributors, Inc. v. Atlantic Richfield Co.* (1984) 158 Cal.App.3d 349 [204 Cal.Rptr. 743];*Mobile Oil Corp.* v. *Superior Court* (1987) 189 Cal.App.3d 485 [234 Cal.Rptr. 482]; see also 15 U.S.C. § 2806.)

The PMPA is federal legislation applying federal remedies which have been extensively interpreted by federal courts and jurisdiction. The legislative history of this act (1978 U.S. Code, Cong. & Adm. News, vol. 3, p. 873 et seq.) reveals a strong legislative concern for development of a uniform body of federal law to address the problems associated with termination and nonrenewal of franchise relationship. In addition, it has been held that federal courts retain exclusive jurisdiction over suits brought under the PMPA. (*Rustom, supra.*)We accept the *Rustom* court analysis and conclude that our state courts lack jurisdiction. [FN3]Accordingly, the appeal is dismissed. Each party to bear own costs.

FN3 We have read the record and conclude were this not the case, an affirmance would lie. There is substantial evidence to support the trial court's directed verdicts, and appellant's other contentions are meritless.

Feinerman, P. J., and Boren, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 4, 1988. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted. *721

Cal.App.2.Dist.
Niakan v. Samaan
199 Cal.App.3d 716, 245 Cal.Rptr. 24

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# PROOF OF SERVICE

I, Heather Thai, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On May 30, 2008, I served the document(s) described as **BP WEST COAST PRODUCTS LLC'S APPENDIX OF NON-FEDERAL AUTHORITIES IN SUPPORT OF NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows: SEE ATTACHED SERVICE LIST

☐ BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

☒ BY FEDERAL EXPRESS      ☐ UPS NEXT DAY AIR     ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☒ FEDERAL EXPRESS     ☐ UPS      ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of   ☒ FEDERAL EXPRESS    ☐ UPS    ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐ BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☐ BY ELECTRONIC MAIL TRANSMISSION WITH ATTACHMENT: On this date, I transmitted the above-mentioned document by electronic mail transmission with attachment to the parties at the electronic mail transmission address set forth on the attached service list.

☐ [State]      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ [Federal]      I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 30, 2008, at Los Angeles, California.

_Heather Thai_
Heather Thai

1192121.1

1

## KASSA, et al. v. BP WEST COAST PRODUCTS LLC
## USDC, NORTHERN DISTRICT

2

3

## SERVICE LIST

4

5

George Holland, Esq.
LAW OFFICES OF GEORGE HOLLAND
1970 Broadway, Suite 1030
Oakland, CA  94612

Attorney for Plaintiffs, OMER KASSA, OMER KASSA dba H & O, INC. and H & O, INC.

6

7

Tel:  (510) 465-4100
Fax:  (510) 465-4747

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1192121.1