ORIGINAL

1  KURT OSENBAUGH (State Bar No. 106132)
   DEBORAH YOON JONES (State Bar No. 178127)
2  MacKENZIE E. HUNT (State Bar No. 251127)
   **WESTON, BENSHOOF, ROCHEFORT,**
3     **RUBALCAVA & MacCUISH LLP**
   333 South Hope Street
4  Sixteenth Floor
   Los Angeles, California 90071
5  Telephone: (213) 576-1000
   Facsimile: (213) 576-1100
6
   Attorneys for Defendant
7  BP WEST COAST PRODUCTS LLC

E-FILING

Filed

MAY 3 0 2008

RICHARD W. ___
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

8

9           UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11  OMER KASSA individually; OMER
    KASSA dba H & O, INC., and H & O,
12  INC.,

13          Plaintiffs,

14     v.

15  BP WEST COAST PRODUCTS, LLC, dba
    ARCO PRODUCTS COMPANY and
16  DOES 1 to 50,

17          Defendants.

18

19

Case No:

**C08    02725 PVT**

**CERTIFICATE OF SERVICE OF
NOTICE TO ADVERSE PARTY OF
REMOVAL TO FEDERAL COURT**

**[Filed concurrently with Notice of
Removal of Action Under 28 U.S.C. §
1441(b) (Federal Question
Jurisdiction); Declaration of
MacKenzie E. Hunt in Support of
Removal; Appendix of Non-Federal
Authorities in Support of Removal;
Notice of Interested Parties; and
Appendix of State Court Pleadings and
Papers.]**

20  | Filing Date: | March 12, 2008 |
    | Complaint Served: | March 20, 2008 |
21  | FAC Served: | May 14, 2008 |
    | Sup. Ct. Case No: | 108CV107979 |

22

23

24

25

26

27

28

1192519.1

1    Heather Thai certifies and declares as follows:

2        1.    I am over the age of 18 and not a party to this action.

3        2.    My business address is c/o Weston, Benshoof, Rochefort,

4    Rubalcava & MacCuish LLP, 333 South Hope Street, 16th Floor, Los Angeles,

5    California 90071, which is located in the city, county and state where the mailing

6    described below took place.

7        3.    On May 30, 2008, I deposited in a facility regularly maintained by

8    Federal Express at Los Angeles, California, a copy of the Notice to Adverse Parties of

9    Removal to Federal Court dated May 29, 2008, a copy of which is attached to this

10   Certificate as Exhibit A.

11       I declare under penalty of perjury under the laws of the State of

12   California that the foregoing is true and correct.  Executed on the 30th day of

13   May 2008 at Los Angeles, California.

14

15   *Heather Thai*
                Heather Thai

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTY

1192519.1

KURT OSENBAUGH (State Bar No. 106132)
DEBORAH YOON JONES (State Bar No. 178127)
MacKENZIE E. HUNT (State Bar No. 251127)
**WESTON, BENSHOOF, ROCHEFORT,**
  **RUBALCAVA & MacCUISH LLP**
333 South Hope Street
Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

Attorneys for Defendant
BP WEST COAST PRODUCTS LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA CLARA

OMER KASSA individually; OMER
KASSA dba H & O, INC., and H & O,
INC.,

            Plaintiffs,

      v.

BP WEST COAST PRODUCTS, LLC, dba
ARCO PRODUCTS COMPANY and
DOES 1 to 50,

            Defendants.

Case No.: 108CV107979

**NOTICE TO ADVERSE PARTIES
OF REMOVAL OF ACTION TO
FEDERAL DISTRICT COURT**

Honorable Kevin J. Murphy

Filing Date:        March 12, 2008

.

1    TO PLAINTIFF OMER KASSA, AND H & O, INC. AND THEIR

2  ATTORNEYS OF RECORD HEREIN:

3    PLEASE TAKE NOTICE THAT a Notice of Removal of this action is

4  going to be filed in the United States District Court for the Northern District of

5  California on May 30, 2008.

6    A copy of the said Notice of Removal is attached to this Notice, and is

7  served and filed herewith.

8
   DATED: May 29, 2008        KURT OSENBAUGH
9                             DEBORAH YOON JONES
                             MacKENZIE E. HUNT
10                            **WESTON, BENSHOOF, ROCHEFORT,**
                              **RUBALCAVA & MacCUISH LLP**
11

12

13                           _____
                                      Deborah Yoon Jones
14                           Attorneys for Defendant
                             BP WEST COAST PRODUCTS LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
1188859.1

# EXHIBIT A

1  KURT OSENBAUGH (State Bar No. 106132)
   DEBORAH YOON JONES (State Bar No. 178127)
2  MacKENZIE E. HUNT (State Bar No. 251127)
   **WESTON, BENSHOOF, ROCHEFORT,**
3    **RUBALCAVA & MacCUISH LLP**
   333 South Hope Street
4  Sixteenth Floor
   Los Angeles, California  90071
5  Telephone:  (213) 576-1000
   Facsimile:  (213) 576-1100
6
   Attorneys for Defendant
7  BP WEST COAST PRODUCTS LLC

8                **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11  OMER KASSA individually; OMER          Case No.:
    KASSA dba H & O, INC., and H & O,
12  INC.,                                  **NOTICE OF REMOVAL OF
                                           ACTION UNDER 28 U.S.C. §1441**
13              Plaintiffs,                **[FEDERAL QUESTION
                                           JURISDICTION]**
14      v.
                                           **[Filed concurrently with Declaration
15  BP WEST COAST PRODUCTS, LLC, dba       of MacKenzie E. Hunt In Support of
    ARCO PRODUCTS COMPANY and              Removal of Action Under 28 U.S.C. §
16  DOES 1 to 50,                          1441(b); Appendix of Non-Federal
                                           Authorities; Appendix of State Court
17              Defendants.                Pleadings of Papers; Notice of
                                           Interested Parties; and Certificate of
18                                         Service.]**

19                                         Filing Date:        March 12, 2008
                                           Complaint Served:   March 20, 2008
20                                         FAC Served:         May 14, 2008
                                           Sup. Ct. Case No:   108CV107979
21

22

23

24        TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL

   PARTIES AND THEIR COUNSEL OF RECORD HEREIN:
25
          PLEASE TAKE NOTICE that Defendant BP West Coast Products LLC
26
   ("BPWCP") hereby removes to this Court the state court action described herein
27
   pursuant to 28 USC §1446. As grounds for removal, BPWCP states as follows:
28

                                        1

                                              NOTICE OF REMOVAL OF ACTION
   1144511.1

## I.     NOTICE OF REMOVAL IS TIMELY

### A.     Kassa's Complaint

1.     On March 12, 2008, Plaintiffs Omer Kassa and H&O, Inc. (collectively "Kassa") commenced an action entitled *Omer Kassa, Omer Kassa dba H & O, Inc., and H & O, Inc., v. BP West Coast Products, LLC, dba ARCO Products Company* as Case No. 108CV107979 ("Action") in the Superior Court for the State of California for the County of Santa Clara ("Superior Court"). A true and correct copy of the original Complaint filed in this Action is attached hereto as Exhibit A.

2.     BPWCP first received a copy of the Complaint on March 20, 2008, when it was delivered to C T Corporation System with a summons from the said Superior Court. A true and correct copy of the summons is attached hereto and marked as Exhibit B. Also served with the Complaint and summons was a statement of damages, as well as a civil lawsuit notice and alternative dispute resolution information sheet/civil division. True and correct copies of each of these documents are attached hereto as Exhibits C and D, respectively. BPWCP hereby reserves any and all rights to assert lack of personal jurisdiction, insufficiency of process, and/or insufficiency of service of process as defenses to Plaintiffs' Complaint.

3.     The Complaint was filed in the Superior Court of the State of California for the County of Santa Clara, which is within this judicial district. See 28 U.S.C. § 84(a). On April 18, 2008, BPWCP filed a demurrer to Kassa's Complaint. The Demurrer is attached hereto as Exhibit E.

### B.     Kassa's Failure to Serve the Amended Complaint on BPWCP

4.     On April 11, 2008, Kassa apparently filed a First Amended Complaint, which added a cause of action arising under federal law, citing the Petroleum Marketing Practices Act ("PMPA") 15 U.S.C. §§ 2801-2806 ("Amended Complaint"). Kassa's Amended Complaint is the first pleading in this action upon which removal could be based. A true and correct copy of the Amended Complaint is attached hereto and marked as Exhibit F.

1144511.1

1         5.     Although the proof of service filed with the Superior Court
2    indicates the Amended Complaint was mailed to BPWCP's counsel of record,
3    BPWCP did not receive the Amended Complaint or notice of such pleading until May
4    13, 2008, when BPWCP's counsel received a call from the Superior Court inquiring
5    whether BPWCP's Demurrer to Kassa's Complaint was moot, given that an Amended
6    Complaint had been filed. Accordingly, BPWCP requested a copy of the Amended
7    Complaint from Kassa, which it received for the first time via facsimile, on the
8    evening of May 14, 2008. (See Declaration of MacKenzie Hunt ("Hunt Decl.") ¶ 3
9    and Exhibit A thereto, filed concurrently herewith.)   BPWCP has confirmed its
10   position with Kassa. (See Exhibit B to Hunt Decl.)

11        6.     This failure to properly serve BPWCP with Kassa's Amended
12   Complaint is the same gamesmanship as was seen with respect to Kassa's *Ex Parte*
13   Application for Temporary Restraining Order ("Application for TRO," attached hereto
14   as Exhibit G), which was similarly improperly served on BPWCP. (See Hunt Decl., ¶
15   5.) With regard to the Application for TRO, Kassa misrepresented to the Superior
16   Court that service was made on two of BPWCP's employees, when in fact: (1) the
17   documents were faxed to incorrect fax numbers; and (2) neither one of these
18   employees was authorized to accept service on behalf of BPWCP. In fact, Kassa's
19   failure to properly notice BPWCP with respect to his Application for TRO was the
20   subject of a motion by BPWCP seeking to dissolve the granting of Kassa's TRO
21   ("Motion to Dissolve," attached hereto as Exhibit H). Ultimately, of course, the
22   Superior Court granted BPWCP's Motion to Dissolve the TRO on March 24, 2008.

23        7.     Since service of the Amended Complaint was not effectuated until
24   May 14, 2008 (at the earliest), this Notice of Removal is timely filed pursuant to 28
25   U.S.C. §1446(b), because it is filed within 30 days of BPWCP obtaining service of the
26   Amended Complaint.

27
28

3

1144511.1

## II.    FEDERAL JURISDICTION

8.    This lawsuit is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1331, and is one which may be removed to this Court by BPWCP pursuant to the provisions of 28 U.S.C. §1441(b) in that it is a civil action over which this Court has original jurisdiction because the claims asserted arise under the laws of the United States.

9.    Kassa has asserted claims arising under the Petroleum Marketing Practices Act, 15 U.S.C. §2800, et. seq., (the "PMPA") a Federal law over which this Court has original jurisdiction. Accordingly, it is evident from the face of Kassa's Amended Complaint that his claims are subject to removal to this Court. *See* 15 U.S.C. §2805(a); 28 U.S.C. § 1441(b).

10.    Furthermore, the PMPA specifically governs gasoline franchise nonrenewal claims and preempts Kassa's state law claims. In addition to the PMPA claim, Kassa also asserts causes of action for breach of contract, conversion, fraud and deceit, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, negligence, negligent hiring and supervision, intentional infliction of emotional distress, temporary restraining order, preliminary injunction and permanent injunction, conspiracy, unfair and deceptive business practices, unfair business practices pursuant to California Business and Professions Code §21200, and violations of the Unruh Civil Rights Act. Both California and Federal Courts recognize the preemptive effect of PMPA claims upon such state tort claims. *See* 15 U.S.C. §§ 2801 *et seq.*; *see* also *Niakan, et al. v. Samaan and Union Oil Company of California* (1988) 199 Cal.App.3d 716 (state court lacked subject matter jurisdiction where claims of wrongful nonrenewal of gasoline franchise preempted by PMPA; claims of unfair trade practices, breach of implied covenant of good faith and fair dealing, breach of written contract, and misrepresentation often stem from franchisor's failure to renew and such claims held to be preempted by PMPA); *Pride v. Exxon Corp.* (9th Cir. 1990) 911 F.2d 251, 257 (PMPA preempts state law causes of action

4

1 | that would have effect of limiting permissible reason for terminating or nonrenewing a
2 | petroleum franchise); *Consumers Petroleum Co. v. Texaco* (6th Cir. 1986) 804 F.2d
3 | 907 (state law claims alleging misrepresentations relating to the termination or
4 | nonrenewal of a franchise are preempted); *Mobil Oil Corp. v. Superior Court* (1987)
5 | 189 Cal.App.3d 485 (all state law claims arising out of termination of station lease,
6 | including claim for breach of covenant of good faith and fair dealing, are preempted);
7 | and *California ARCO Distributors, Inc. v. Atlantic Richfield Co.* (1984) 158
8 | Cal.App.3d 349 (a service station franchise nonrenewal may not be enjoined absent a
9 | claim brought under the governing PMPA). (Copies of Non-Federal Authorities are
10 | filed concurrently herewith.)

11 | **III.   VENUE**

12 | **A.    Removal to this District is Appropriate**

13 | 11.    Pursuant to 28 U.S.C. §1331, 1441 and 1446, removal of the
14 | above-referenced Superior Court Action to this Court is appropriate. No prior Notice
15 | of Removal has been filed for the relief sought here.

16 | **B.    Intradistrict Assignment**

17 | 12.    Pursuant to 28 U.S.C. §1441(a), removal is made to this Court as
18 | the district embracing the place where the state action is pending. See 28 U.S.C.
19 | §84(a); Local Rule 3-2(e).

20 | 13.    Notice to Superior Court and Adverse Party of Removal to Untied
21 | States District Court will be filed in the Superior court for the State of California for
22 | the County of Santa Clara and will be served on Kassa in accordance with 28 U.S.C.
23 | §1446(d).

24 |
25 |
26 |
27 |
28 |

5

1144511 1

1          14.   BPWCP hereby reserves the right to amend or supplement this

2    Notice of Removal.

3

4    DATED: May 29, 2008        Respectfully submitted,

5                         KURT OSENBAUGH
                     DEBORAH YOON JONES

6                         MacKENZIE E. HUNT
                     **WESTON, BENSHOOF, ROCHEFORT,**

7                            **RUBALCAVA & MacCUISH LLP**

8

9                         Deborah Yoon Jones
                     Attorneys for Defendant

10                        BP WEST COAST PRODUCTS LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                6

1144511.1

# EXHIBIT A

1  GEORGE HOLLAND, ESQ., State Bar No. 55740
   **LAW OFFICES OF GEORGE HOLLAND**
2  1970 Broadway, Suite 1030
   Oakland, California  94612
3  Telephone:  (510) 465-4100

4  Attorneys for Plaintiffs
   OMER KASSA, OMER KASSA dba H & O, INC.                    **UCS**
5  and H & O, INC.

6                                                    FILED  Santa Clara Co
                                                     03/12/08    2:38pm
7                                                    Kiri Torre
                                                     Chief Executive Offic
8                                                    By: jcaonguyen DTSCIV
                          SUPERIOR COURT OF CALIFORNIA R#200800026161
9                                                    CK              $320.00
                            COUNTY OF SANTA CLARA     TL              $320.00
10                                                   Case: 1-08-CV-107979
                            UNLIMITED JURISDICTION
11                                                        J. Cao-Nguyen

12 OMER  KASSA  individually;  OMER)    No. **108CV107979**
   KASSA dba H & O, INC., and H & O,)
13 INC.,                           )    **COMPLAINT  FOR  BREACH  OF
                                    )    C O N T R A C T ,    F R A U D ,
14                                  )    M I S R E P R E S E N T A T I O N ,
              Plaintiffs,           )    NEGLIGENCE,   RESTRAINING
15                                  )    ORDER, INTENTIONAL INFLICTION
   vs.                             )    OF  EMOTIONAL  DISTRESS  AND
16                                  )    DAMAGES**
   BP WEST COAST PRODUCTS, LLC, dba)
17 ARCO PRODUCTS COMPANY and  DOES 1)    Demand for Jury Trial
   to 50,                          )
18                                  )
              Defendants.
19 ─────────────────────────────────

20      Plaintiffs OMER KASSA individually; OMER KASSA dba H & O,

21 INC., and H & O, INC., allege:

22          **FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS**

23                    (BREACH OF CONTRACT)

24      1.   Plaintiff H & O, INC., is at all times herein mentioned a

25 duly licensed corporation in the State of California and was present

26 and doing business in the City of Campbell, Santa Clara County,

27 California. Plaintiff OMER KASSA is the president of H & O, INC., and

28 is doing business as H & O, INC.

─────────────────────────────────────────────

COMPLAINT FOR DAMAGES              1

1    2.    Defendants BP WEST COAST PRODUCTS, LLC dba ARCO PRODUCTS
2 COMPANY and DOES 1 to 50, ("ARCO PRODUCTS COMPANY was subsequently
3 purchased by BP WEST COAST PRODUCTS, LLC") at all times herein
4 mentioned were, present and doing business in the City of Campbell,
5 Santa Clara County, California.

6    3.    Plaintiffs are the owners, operators and franchisees of an
7 ARCO AM/PM gasoline station and mini-market located at 2015 South
8 Winchester Boulevard, Campbell, California.   Defendants and each of
9 them is the franchisor of the Arco AM/PM Mini-market and the supplier
10 of motor vehicle fuel or oils of like grade and quality, food and
11 other products to plaintiffs.

12    4.    At all times herein mentioned each defendant was an agent,
13 servant, employee, partner, joint venturer of the other defendants
14 and each of them and all times herein mentioned, each defendant was
15 acting within the course and scope of this relationship as an agent,
16 servant, employee, partner or joint venturer of the other defendants,
17 and each of them.

18    5.    Plaintiffs are ignorant of the true names and capacities of
19 each of the defendants sued herein as DOES 1 to 50 inclusive and
20 therefore, sues said defendants by such fictitious names.  Plaintiffs
21 will seek leave to amend the complaint to allege their true names and
22 capacities when the same has been ascertained.

23    6.    Plaintiffs are informed and believes and based upon such
24 information and belief allege that each of the defendants named herein
25 or as a DOE is intentionally and negligently responsible in some
26 manner for the occurrences herein alleged and Plaintiffs' injuries and
27 damages as herein alleged were proximately caused by defendants'
28 conduct.

---

1          7.    On or about March 1, 2002 , in the City of Campbell, Santa
2  Clara County, plaintiffs and defendants and each of them, entered into
3  an agreement for the use, operation, possession and control of the
4  ARCO AM/PM Mini-market located at 2015  South Winchester Boulevard,
5  Campbell, California (hereinafter "ARCO"). According to the terms of
6  the agreement, Plaintiffs were required to pay an initial franchisee
7  fee of $35,000, lease the property for $2,000 per month and pay
8  defendants 15% of his gross sales per month to operate an AM/PM Mini
9  Market, a retail convenience store identified by the service mark and
10 service name of AM/PM for the sale of prepackaged foods, fast foods,
11 beverages,   sundries   and   convenience   store   goods   and   services.
12 Plaintiffs paid $500,000 for this franchise and defendants promised
13 at that time not to discriminate in price between plaintiffs and
14 different purchasers of vehicle motor fuels, gasoline or oils of like
15 grade and quality where the effect of such discrimination would lessen
16 competition or to injure, destroy or prevent competition. Defendants
17 also promised to timely deliver vehicle motor fuels or oils of like
18 grade and quality to plaintiffs and to charge plaintiffs account via
19 electronic funds payment only for those deliveries that actually had
20 occurred.  In exchange, defendants and each of them, were required to
21 provide  Plaintiffs  the  equipment  necessary  to  run  the  AM/PM,
22 convenience store; timely supply plaintiffs with of motor vehicle
23 fuels or oils of like grade and quality and not to discriminate
24 against plaintiffs by charging others lower prices than plaintiffs
25 either directly or indirectly for gasoline products.

26         9.   At all times herein mentioned, the contract was renewed
27 by the parties on or about March 1, 2005 for another three year period
28 under the same terms and conditions.  In or about March 2004 and

1  continuing to March 4, 2008, defendants, and each of them, failed tc
2  deliver motor vehicle fuels or oils of like grade and quality
3  (hereinafter "gasoline products"), electronically charged funds from
4  plaintiffs bank account for undelivered gasoline products and
5  discriminated against plaintiffs either directly or indirectly by
6  charging them higher prices for gasoline products than it charged
7  others franchisees' located in close proximity to plaintiffs' AM/PM
8  to lessen competition, to injure and to cause plaintiffs to lose their
9  business.

10      10.  At all times herein mentioned, Defendants submitted a
11  renewal of the contract to plaintiffs on or about January 19, 2008,
12  and gave plaintiffs a certain number of days to sign the renewal
13  contract.  Plaintiffs complained to defendants both orally and in
14  writing about these problems as well as other accounting issues on
15  several occasions including on February 27, 2008 during a meeting.
16  Plaintiffs tried to discuss the renewal of the contract because issues
17  in the old contract were unresolved. However, defendants have refused
18  and continue their refusal to discuss these problems or take any
19  corrective action. On each occasion, defendants refused to answer any
20  of plaintiffs' questions regarding requirements in the renewal
21  contract including the initial deposit fee, monthly rent increases and
22  royalties from gross sales.  However, defendants insisted orally that
23  after  plaintiffs signed the contract renewal, these issues would be
24  addressed.

25      11.  On or about March 1, 2008, the contract between Plaintiffs
26  and defendants expired and defendants demanded that plaintiffs renew
27  the contract without addressing any of the ongoing problems that
28  plaintiffs had identified such as increased rent, increased costs of

COMPLAINT FOR DAMAGES                    4

1   gasoline products and why other dealers were charged less prices for
2   deliveries and products; and why did defendants charge plaintiffs and
3   electronically take money for their account to pay for deliveries that
4   were never made.

5       12.   At all times herein mentioned, Plaintiffs have performed
6   all conditions, covenants, and promises required on their part to be
7   performed in accordance with the terms and conditions of the contract.

8       12.   Defendants breached the Agreement by failing to deliver
9   gasoline products after being timely requested to do so; by charging
10  Plaintiffs unreasonably high costs for its gasoline products and by
11  wrongfully electronically withdrawing funds from plaintiffs' banking
12  account for gasoline products that were never delivered and refusing
13  to return the funds after being requested to do so.

14      13.   Defendants have wholly failed and refused to perform under
15  the terms of the contract and have seized plaintiffs's business and
16  real property preventing plaintiffs from the use, operation and
17  possession of their business as well as lost profits.

18      14.   As a direct and proximate results of these acts, omissions
19  or breaches by defendants, plaintiffs have sustained damages according
20  to proof.

21              **SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS**
22                          (CONVERSION)

23      1.    Plaintiffs incorporates by referenced the First Cause of
24  Action herein and alleges as follows.

25      2.    Plaintiffs have performed all the conditions of the
26  contract that are required to be performed.  Plaintiffs remains ready
27  and willing to perform all of the terms of the contract applicable to
28  Plaintiffs  and  receive  title  to  the  property  as  promised  by

1 | defendants.

2 |     3.    Plaintiffs have no adequate remedy at law because the

3 | contract is for an interest in real property, and pursuant to Civil

4 | Code Section 3387 money damages are presumed inadequate for the

5 | breach. Further, Plaintiffs have already invested $500,000 and a

6 | substantial amount of time regarding the property with defendants.

7 |     4.    The aforementioned acts of defendants, were willful and

8 | intentional and done with malice, oppression and fraud and Plaintiffs

9 | is therefore entitled to exemplary and punitive damages.

10 |                **THIRD CAUSE OF ACTION AS TO ALL DEFENDANTS**

11 |                        (FRAUD and DECEIT)

12 |     1.    Plaintiffs incorporate by referenced the First and Second

13 | Causes of Action, herein and alleges as follows.

14 |     2.    On or about March 1, 2005, defendants entered into

15 | an extension of the original contract for a period of three years for

16 | the purchase of an ARCO AM/PM Mini Market franchise and lease the real

17 | property located at 2015 South Winchester Boulevard, Campbell,

18 | California defendants required plaintiffs to authorize electronic

19 | funds payments to defendants from plaintiffs' banking account.

20 | Defendants promised to deliver to plaintiffs gasoline products timely

21 | upon request and at reasonable prices as others they charge as well

22 | as to deduct only money owed from plaintiffs' banking account from

23 | deliveries that were actually made and to correct any amounts

24 | wrongfully deducted from Plaintiffs' banking account upon notice.

25 | Defendants falsely and fraudulently represented to plaintiffs that

26 | defendants would credit plaintiffs' account for amounts wrongfully

27 | taken but have failed and continue not to do so.

28 |     3.    At the time defendants and each of them, made the promises

---

COMPLAINT FOR DAMAGES                    6

1   defendants had no intention of performing them.  Defendants and each
2   of them, made intentional misrepresentations of material facts to
3   Plaintiffs, knowing such statements were untrue with the intent to
4   induct Plaintiffs to entering into the contract, continuing with the
5   contract and not terminating it all to their detriment.

6       4.    Plaintiffs are informed and believes that the promises were
7   made by defendants were false and done with the intent to
8   defraud Plaintiffs and that said promises and acts were done
9   maliciously and oppressively.

10      5.    Plaintiffs at the time these promises were made and at all
11  times herein mentioned took the actions alleged and was ignorant of
12  defendants' secret intentions not to perform and Plaintiffs could not
13  in the exercise of reasonable diligence have discovered defendants'
14  secret intention. In reliance on the promise of defendants, Plaintiffs
15  entered into the contract and continued with the contract after
16  defendants made misrepresentations of material facts that they would
17  correct the problems.  If Plaintiffs had known of the actual intention
18  of defendants and each of them, he would not have taken such action.

19      6.    Defendants failed to abide by their promises on March 1,
20  2005, by, among other things, such as failing to deliver gasoline
21  products after timely requests were made; failing to charge Plaintiffs
22  a reasonable costs for gasoline products as compared to other gasoline
23  stations in the area; wrongfully deducting money from Plaintiffs' bank
24  account for money not owed.   As a result of defendants acts and/or
25  conduct, Plaintiffs is entitled to damages according to proof.

26      7.    The aforementioned acts of defendants, were willful and
27  intentional and done with malice, oppression and fraud and Plaintiffs
28  is therefore entitled to exemplary and punitive damages.

## FOURTH CAUSE OF ACTION AS TO ALL DEFENDANTS

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

1.    Plaintiffs incorporates by reference the First through Third Causes of Action, herein and allege as follows:

2.    On or about March 1, 2005, Plaintiffs and defendants entered into a written agreement for an ARCO AM/PM Mini Market Franchise.

3.    By the terms of the agreement, plaintiffs paid $500,000 along with a renewal fee of $20,000 and other money to defendants for the ARCO AM/PM Mini Market.  Defendants promised to deliver gasoline products to Plaintiffs in a timely manner,  lease real property to Plaintiffs; charge Plaintiffs reasonable prices for gasoline products and not charge others in the area less for gasoline products and only transfer money from plaintiffs's banking account for deliveries that actually occurred.  Implied in the contract was a covenant by defendants that they would act in good faith and deal fairly with Plaintiffs and that they would do nothing to deprive Plaintiffs of the benefits of the agreement.

4.    Plaintiffs and defendants had a special relationship in that Plaintiffs were in a vulnerable position because they were unsophisticated with the complexities of the transaction.  Plaintiffs relied upon the defendants and each of them and defendants were aware of Plaintiffs' vulnerability and the usual measure of contract damages provide no incentive for its continued performance under the contract.

5.    Plaintiffs performed their obligations under the contract and defendants breached their obligations under the contact by failing to deliver gasoline products to Plaintiffs at all; by also failing to timely deliver gasoline products; by electronically

1  transferring money from Plaintiffs' banking account for deliveries
2  that never occurred and by failing to charge Plaintiffs reasonable
3  prices for gasoline products as compared to other gasoline stations
4  in close proximity as agreed on or about March 1, 2005. These bad
5  faith breaches were a violation of the implied covenant of good faith
6  and fair dealing in that defendants were in a superior position,
7  because Plaintiffs were especially vulnerable. Plaintiffs had an
8  immediate need for the real property which were set forth in the
9  contract.

10     7.  As a proximate result of the bad faith breach, by
11 defendants and each of them, of their obligations under the contract
12 as herein alleged, Plaintiffs have suffered damages in an amount
13 according to proof.

14     8.  As a further proximate result of the tortious breach of
15 the implied covenant of good faith and fair dealing by defendants and
16 each of them, as herein alleged, Plaintiffs sustained emotional and
17 mental distress, anguish, anxiety, sleeplessness and indignity all to
18 their general damage in an additional sum according to proof.

19     9.  As a further proximate result of the tortious breach of the
20 implied covenant of good faith and fair dealing, by defendants and
21 each of them, Plaintiffs have incurred and will continue to incur,
22 medical and related expenses. The full amount of such expenses is not
23 known to Plaintiffs at this time, and Plaintiffs will move to amend
24 this complaint to state such amount when the same becomes known to
25 their according to proof.

26     10.  The aforementioned acts of defendants, were willful and
27 intentional and done with malice, oppression and fraud and Plaintiffs
28 is therefore entitled to exemplary and punitive damages.

COMPLAINT FOR DAMAGES                    9

**FIFTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

(Negligent Misrepresentation)

1.    Plaintiffs incorporates the First through Fourth Causes of Action and hereby allege as follows.

2.    Defendants and each of them, made the promises and representations under the contract with no reasonable grounds for believing them to be true, in that Plaintiffs are informed and believes that defendants never intended to proceed with the contract, charge plaintiffs gasoline products at an higher price than others in order to lessen competition and discriminate against plaintiffs with the intent to injure; wrongfully electronically transfer funds from plaintiffs' bank account and charge them for deliveries that never occurred.

3.    At all times herein mentioned, these representations were made with the intent to defraud Plaintiffs in the manner herein alleged.

4.    Plaintiffs, at the time of these representations were made by defendants, and at the time Plaintiffs took the actions herein alleged, were ignorant of the falsity of defendants' representation and believed them to be true.  In reliance on these representations, Plaintiffs were induced to enter into the contract and relied on defendants' statements and were justified because of the promises and representations.

5.    As a proximate result of defendants' conduct, Plaintiffs have suffered damages in a sum according to proof.

**SIXTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

(Negligence)

1.    Plaintiffs incorporates by reference the First through

COMPLAINT FOR DAMAGES                    10

1  Fifth Causes of Action herein and alleges.

2      2.   At all times herein mentioned, defendants and each of them,
3  owed a duty to Plaintiffs to perform under the contract on the agreed
4  upon date in a timely manner.

5      3.   Defendants and each of them, negligently, recklessly or
6  carelessly knew or should have known that the defendants never
7  intended to proceed with the promises, terms and conditions of the
8  contract and that their conduct would create an unreasonable risk of
9  harm and danger to persons and property.

10     4.   As a proximate cause of the negligence of defendants, and
11 each of them, and the resulting harm, Plaintiffs were injured in their
12 health, strength and activity, sustaining injuries to their body and
13 shock and injury to their nervous system and person, all of which
14 injuries and damages have caused, and continue to cause Plaintiffs
15 great physical, mental and nervous pain and suffering, loss of use,
16 enjoyment and profits all to Plaintiffs' general damage.

17     5.   As a further proximate result of the negligence of
18 defendants, and each of them, Plaintiffs were required to, and did
19 employ physicians and surgeons for medical examination and treatment
20 and incurred medical and hospital expenses. Plaintiffs will be obliged
21 to incur further medical and hospital expenses in an amount presently
22 unknown.

23     6.   As a further proximate result of the negligence of
24 defendants, Plaintiffs were prevented from attending to their business
25 and lost profits and business and opportunities.

26         **SEVENTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

27             (Negligent Hiring and Supervision)

28     1.   Plaintiffs incorporate by reference the First through

COMPLAINT FOR DAMAGES              11

1 | Sixth Causes of Action, as though set forth here in full.

2 |     2.   Defendants and each of them, knew or should have known that
3 | the named defendants and DOES 1 to 50, were unfit for the positions
4 | which they were hired.  Defendants and each of them, failed to
5 | properly supervise and train defendants and each of them and were
6 | directly responsible for the harm to plaintiffs and as a result of
7 | said lack of training and supervision, for the acts of these named and
8 | unnamed defendants.  The acts include the aforementioned.

9 |     3.   Defendants and each of them, ratified the acts of said
10 | defendants and at all times herein mentioned, defendants were acting
11 | within the course and scope of their employment or agency with the
12 | other defendants.

13 |     4.   As a proximate result of the acts of defendants, and each
14 | of them, Plaintiffs suffered extreme and severe mental anguish,
15 | emotional and physical pain and have been injured in their bodies and
16 | minds.

17 |     5.   As a proximate result of defendants' negligent conduct,
18 | Plaintiffs have suffered severe and extreme physical injuries, mental
19 | and emotional distress all to their general damage.

20 |     6.   As a proximate result of defendants negligent conduct
21 | Plaintiffs were unable for period of time, to attend operate its
22 | business, lost profits and good will in a sum according to proof.

23 |           **EIGHTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

24 |           (Intentional Infliction of Emotional Distress)

25 |     1.   Plaintiffs incorporate by referenced the First through
26 | Seven Causes of Action, as though set forth here in full.

27 |     2.   As a result of the wrongful, intentional and malicious
28 | acts of defendants and each of them and the fright thereby caused to

1 Plaintiffs, he have suffered extreme and severe mental anguish,
2 emotional distress and physical pain and have been injured to their
3 minds and bodies.

4    3.    As a proximate result of the acts of defendant, Plaintiffs
5 were unable for a period of time, to attend to their work and lost
6 earnings in a sum according to proof.  Plaintiffs also lost the use,
7 possession, good will and profits.

8    4.    As a proximate result of defendants willful, wanton and
9 malicious conduct, Plaintiffs became terrified and suffered severe and
10 extreme mental and emotional distress, to Plaintiffs' general damages
11 according to proof.

12    5.    The aforementioned acts of defendants, were willful and
13 intentional and done with malice, oppression and fraud and Plaintiffs
14 are therefore entitled to exemplary and punitive damages.

15              **NINTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

16              (Temporary Restraining Order, Preliminary Injunction,
                            Permanent Injunction)
17

18    1.    Plaintiffs incorporate their First through Eighth Causes of
   Action as though set forth here in full.
19

20    2.    Defendants have seized Plaintiffs' franchise and real
21 property preventing their use, operation and possession. Unless
22 restrained, defendants will continue to wrongfully possess Plaintiffs'
23 business and property and prevent it from operating as a business
24 earning income, profits, use, possession and control of the premises.
25 Their would be to Plaintiffs's great and irreparable injury, for which
26 pecuniary compensation would not afford adequate relief, in that
27 Plaintiffs is legally the owner of the Property.

   3.    An actual controversy have arisen and now exists between
28

---

COMPLAINT FOR DAMAGES                    13

1 Plaintiffs and defendants regarding their respective rights and
2 duties.

3 Plaintiffs contends he is the legal owner and a Judicial Declaration
4 is necessary and appropriate at their time under all the circumstances
5 so that Plaintiffs may determine their rights.

### TENTH CAUSE OF ACTION AS TO ALL DEFENDANTS

(Conspiracy)

8    1.    Plaintiffs incorporate by reference the First through
9 Ninth Causes of Action herein and allege.

10    2.    Defendants and each of them, conspired to participate in
11 charging Plaintiffs unreasonable higher prices for gasoline products
12 as compared to lower prices they charged others in close proximity to
13 plaintiffs' gasoline station, the failure to deliver gasoline products
14 and wrongfully deducting money from Plaintiffs' bank account based
15 upon undelivered gasoline products in a fraudulent scheme to close
16 Plaintiffs' business in order to acquire their franchise and real
17 property to generate money and other benefits to them, financial and
18 otherwise, to the total disregard of Plaintiffs' rights causing severe
19 emotional distress and losses to Plaintiffs.

20    3.    None of the transactions could be consummated without
21 Plaintiffs' authority unless each of the Defendants breached their
22 duties and/or acted in a knowing or grossly negligent manner to the
23 detriment of Plaintiffs, and thus foil a system of checks and balances
24 consisting of the normal and standard custom in a franchisee and
25 franchisor gasoline transaction.  Completion of the transactions
26 herein require simultaneous failures of all Defendants which
27 Plaintiffs are informed and believe, that defendants herein intended
28 to and so orchestrated so as to defraud Plaintiffs, with the express

1 | and/or implicit knowledge and concurrence of each of the defendants.

2 | 4.    As a consequence of defendants' misconduct, Plaintiffs have

3 | been damaged in an amount yet to be ascertained, including suffering

4 | mental and physical distress, plus special damages in an amount to be

5 | determined.

6 | 5.    Plaintiffs are also entitled to restitution from Defendants

7 | for all losses stemming from their unlawful conduct.    Defendants

8 | committed such offenses and engaged in such despicable conduct,

9 | including fraud and conscious disregard of the rights of Plaintiffs,

10 | such that punitive damages should be assessed against them.

11 | **ELEVENTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

12 | (Unfair and Deceptive Business Practices)

13 | 1.    Plaintiffs incorporate by reference the First through

14 | Tenth Causes of Action herein and allege.

15 | 2.    Defendants and each of them, engaged in unfair and

16 | deceptive business practices in providing services to Plaintiffs

17 | herein.  Defendants misrepresented their authority, misrepresented the

18 | contract provisions, and process for correcting problems by

19 | defendants, and engaged in an overall pattern and scheme of defrauding

20 | members of the public including Plaintiffs, into relying upon their

21 | professional expertise while in fact Defendants completely disregarded

22 | the rights of Plaintiffs and put together and continue to operate the

23 | contract and/or transactions solely for their own benefit and self-

24 | interest despite their roles as fiduciaries and/or professionals with

25 | duties of due care and loyalty to Plaintiffs who justifiably relied

26 | upon defendants.

27 | 3.    As a consequence of defendants' misconduct, Plaintiffs have

28 | been damaged in an amount yet to be ascertained, including suffering

1  mental and physical distress, plus special damages in an amount to be
2  determined.

3      4.    Plaintiffs are also entitled to restitution from Defendants
4  for all losses stemming from their unlawful conduct.    Defendants
5  committed such offenses and engaged in such despicable conduct,
6  including fraud and conscious disregard of the rights of Plaintiffs,
7  such that punitive damages should be assessed against them.

8              **TWELFTH CAUSE OF ACTION AS TO ALL DEFENDANTS**
9      (Unfair Business Practices Pursuant to Business & Profession Code
10  Section 21200)

11      1.    Plaintiffs incorporate by reference the First through
12  Tenth Causes of Action herein and allege.

13      2.    At all times herein mentioned, defendants and each of them,
14  were the agents, partners, servants and employees of the other
15  defendants and doing the things hereinafter alleged were acting within
16  the course and scope of the agency, agreement or services and with the
17  permission and consent of defendants and each of them.

18      3.    At all times herein mentioned, defendants and each of them,
19  engaged in a pattern of conduct with the intent to either directly or
20  indirectly to discriminate against plaintiffs in the higher price they
21  charged to plaintiffs than to different purchasers of motor vehicle
22  fuels or oils of like grade and quality to lessen competition and to
23  injury and/or destroy plaintiffs' business within the meaning of
24  Business and Professions Code Section  21200.

25      4.    As a proximate result of the acts of defendants and each of
26  them, as herein alleged, plaintiffs were required to and did employ
27  physicians and surgeons for medical examination, treatment and care
28  for their injuries and did incur medical and incidental expense, loss

1  of business, loss of use, loss profits and other damages.

2      5.    As a further proximate result of the acts of defendants and

3  each of them, as herein alleged, plaintiffs have incurred and will

4  incur, further medical and incidental expenses for the care and

5  treatment of these injuries as well as lost business, goodwill, lost

6  of use and lost profits and other damages, the exact amount of which

7  is unknown at the present time.

8      6.    The acts and conduct of defendants and each of them as

9  herein alleged were willful, wanton, malicious and oppressive and

10 justify the awarding of punitive damages.

11                    **THIRTEENTH CAUSE OF ACTION**

12     (Unruh Civil Rights Violation Civil Code Sections 51 & 52)

13     1.    Plaintiffs incorporate by reference the First through

14 Tenth Causes of Action herein and allege.

15     2.    At all times herein mentioned, defendants and each of them,

16 were the agents, partners, servants and employees of the other

17 defendants and doing the things hereinafter alleged were acting within

18 the course and scope of the agency, agreement or services and with the

19 permission and consent of defendants and each of them.

20     3.    At all times herein mentioned, defendants and each of them,

21 were the owners or proprietors or distributors of a business

22 establishment engaged is the business of manufacturing, selling or

23 distributing gasoline products commonly known as BP WEST COAST

24 PRODUCTS, LLC dba ARCO PRODUCTS COMPANY, situated in the City of San

25 Jose, Santa Clara, County California.

26     4.    Plaintiff OMER KASSA at all times herein mentioned is of

27 Ethiopian descent and a member of the black race.

28     5.    Plaintiffs are informed and believe and thereon alleges

1   that defendants and each of them, denied to plaintiffs services,
2   advantages and privileges provided to other persons as alleged above,
3   on account of plaintiffs' race, ancestry or national origin in that
4   defendants discriminated against plaintiffs by charging them higher
5   prices for gasoline products than others in the area, through
6   electronic transfer for gasoline deliveries that never occurred; by
7   charging plaintiffs a higher price for gasoline products than others
8   in the area and by refusing to discuss these and other problems and by
9   seizing and taking possession of plaintiffs' business.

10      6.   Defendants' conduct is wrongful and continues in that
11  defendants remain in possession of plaintiffs' business. Defendants
12  continue to deny plaintiffs request to return the money back into
13  their bank account and to charge plaintiffs' the same amount for
14  gasoline products as others in the area which denies plaintiffs
15  because of their race, ancestry or national origin the full and equal
16  advantages, privileges and services of the aforementioned business.

17      7.   Unless defendants and each of them are restrained by a
18  preliminary and permanent injunction by this Court, plaintiffs'
19  injuries will be great and irreparable. Plaintiffs have no plain,
20  speedy and adequate remedy at law because of the loss and potential
21  destruction of their business and it would be difficult if not
22  impossible for plaintiffs to determine the precise amount of damage
23  which they will suffer if defendants' conduct is not restrained.

24      8.   As a proximate result of the wrongful acts of defendants,
25  plaintiffs are entitled to recovery statutory damages up to a maximum
26  of three times the amount of actual damages, but not less than $250,
27  plus attorney's fees, as provided by Section 52 of the Civil
28  Code.

1     WHEREFORE, Plaintiffs pray for judgment as follows:

2     1.   For general damages;

3     2.   For compensatory damages;

4     3.   For special damages according to proof;

5     4   For an Order that defendants specifically perform the
6 requirements of the Contract between plaintiffs and defendants entered
7 into on or about March 1, 2005.

8     5.   For exemplary and punitive damages according to proof;

9     6.   For loss of use and enjoyment according to proof;

10     7.   For a temporary restraining order, a preliminary injunction,
11 a permanent injunction all enjoining defendants, their agents,
12 attorneys and representatives, and all other persons acting in concert
13 or participating with them, from selling or transferring the Property

14     8.   For costs of suit herein incurred;

15     9.   For a reasonable attorney's fee in a sum according to
16 proof;

17     10.   For interest at the legal rate on the foregoing sum
18 pursuant to Section 3336 of the Civil Code, from March 1, 2008;

19     11.   For such other and further relief as the court may deem
20 proper.

21 DATED:   March 12, 2008

GEORGE HOLLAND, ESQ.
Attorneys for Plaintiffs

25 kassa-complaint

# EXHIBIT B



**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
03/20/2008
CT Log Number 513219429

<span style="font-family: barcode;">▌▌▐▐▌▐▌▌▐▌▌▐▌▐▌▐▌▌▐▌▌▐▐▌▌▐▌▐▌▐▌▐▌▌▐▌▐▌</span>

**TO:** John Everhardus
BP America Inc.
4101 Winfield Road, Mail Code 5 West
Warrenville, IL 60555

**RE:    Process Served in California**

**FOR:** BP West Coast Products LLC (Domestic State: DE)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | Omer Kassa, etc., et al., Pltfs. vs. BP West Coast Products, LLC, etc., et al., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Statement of Damages, Notice, Attachment(s), Ex Parte Application, Proof of Service, Memorandum, Declaration(s), Verification, Order |
| **COURT/AGENCY:** | Santa Clara County- San Jose, Superior Court, CA Case # 108CV107979 |
| **NATURE OF ACTION:** | Dfts. are restrained from any further seizure and possession of Arco AM/PM Mini Market at 2015 Winchester Blvd., Campbell, California |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/20/2008 at 12:17 |
| **APPEARANCE OR ANSWER DUE:** | Restraining Order - Immediate // 4/1/2008 - Response // 4/4/2008 at 10:30 a.m. - Hearing // Within 30 days after service - file written response // 9/2/2008 at 8:30 a.m. - Case Management Conference |
| **ATTORNEY(S) / SENDER(S):** | George Holland Law Offices of George Holland 1970 Broadway Ste 1030 Oakland, CA 94612 510-465-4100 |
| **ACTION ITEMS:** | Telephone, John Everhardus , 630-821-2262 *Left voicemail message* SOP Papers with Transmittal, via Fed Ex 2 Day , 790474556051 Image SOP - Page(s): 38 Email Notification, Katherine Johnson katherine.johnson@bp.com Email Notification, John Everhardus John.Everhardus@bp.com Email Notification, Jennifer Iraci jennifer.iraci@bp.com |
| **SIGNED:** **PER:** **ADDRESS:** **TELEPHONE:** | C T Corporation System Nancy Flores 818 West Seventh Street Los Angeles, CA 90017 213-337-4615 |

Page 1 of 1 / JK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

SUM-100

# SUMMONS
## (CITACION JUDICIAL)



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED

MAR 12 '08

KIRI TORRE
CHIEF EXEC. OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
DEPUTY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

BP West Coast Products, LLC dba Arco Products Company and Does 1
to 50,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Omer Kassa individually; Omer Kassa dba H & O, Inc., and H & O, Inc.

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California/Santa Clara County<br>191 N. First Street<br>San Jose, CA 95113 | CASE NUMBER:<br>*(Número del Caso):*<br>**108 CV 107979** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
George Holland, Esq., (55740)/Law Offices of George Holland
1970 Broadway, Suite 1030, Oakland, CA 94612 (510) 465-4100

Kiri Torre
Chief Executive Officer/Clerk

J. Cao-Nguyen

| DATE:<br>*(Fecha)* MAR 12 2008 | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* BP West coast Products, LLC

   under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

# EXHIBIT C

Mar 19 2008 1:48PM    LASERJET FAX                                          p.19

                                                                        CIV-050
                    - DO NOT FILE WITH THE COURT-
-UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): George Holland, Esq., SBN 55740<br>Law Offices of George Holland<br>1970 Broadway, Suite 1030<br>Oakland, CA 94612 | TELEPHONE NO.:<br>- 510-465-4100 | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY FOR (name): Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 N. FIRST STREET
MAILING ADDRESS:
CITY AND ZIP CODE: SAN JOSE 95113
BRANCH NAME: UNLIMITED JURISDICTION

PLAINTIFF: OMER KASSA, et al.
DEFENDANT: BP WEST COAST PRODUCTS, LLC, et al.

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>108CV107979 |
|---|---|

To (name of one defendant only): BP WEST COAST PRODUCTS
Plaintiff (name of one plaintiff only): OMER KASSA

seeks damages in the above-entitled action, as follows:

                                                                        AMOUNT

1. General damages
   a. ✓ Pain, suffering, and inconvenience ........................................... $ 500,000
   b. ✓ Emotional distress. ............................................................ $ 500,000
   c. ☐ Loss of consortium ........................................................... $ _____
   d. ☐ Loss of society and companionship (wrongful death actions only) ........ $ _____
   e. ✓ Other (specify)  Loss profits ............................................... $ 1,000,000.00
   f. ✓ Other (specify)  Goodwill ................................................... $ 500,000
   g. ☐ Continued on Attachment 1.g.

2. Special damages
   a. ☐ Medical expenses (to date) ................................................... $ _____
   b. ☐ Future medical expenses (present value) .................................... $ _____
   c. ☐ Loss of earnings (to date) ................................................... $ _____
   d. ☐ Loss of future earning capacity (present value) ............................ $ _____
   e. ✓ Property damage .............................................................. $ 10,000
   f. ☐ Funeral expenses (wrongful death actions only) ............................. $ _____
   g. ☐ Future contributions (present value) (wrongful death actions only) ....... $ _____
   h. ☐ Value of personal service, advice, or training (wrongful death actions only) .. $ _____
   i. ☐ Other (specify) ............................................................... $ _____
   j. ☐ Other (specify) ............................................................... $ _____
   k. ☐ Continued on Attachment 2.k.

3. ✓ Punitive damages: Plaintiff reserves the right to seek punitive damages in the amount of (specify):.. $ 5,000,000.00
   when pursuing a judgment in the suit filed against you.

Date: March 19, 2008
George Holland
_____                        _____
(TYPE OR PRINT NAME)                             (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

                        (Proof of service on reverse)                        Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-050 [Rev. January 1, 2007] | STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | Code of Civil Procedure, §§ 425.11, 425.115<br>www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT D

Mar 19 2008 1:49PM    HP  LERJET FAX

ATTACHMENT CV-5012

## CIVIL LAWSUIT NOTICE

CASE NUMBER: **1 0 8 C V 1 0 7 9 7 9**

*Superior Court of California, County of Santa Clara*
*191 N. First St., San Jose, CA 95113*

## READ THIS ENTIRE FORM

*PLAINTIFFS* (the person(s) suing):  Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

> *DEFENDANTS* (The person(s) being sued): You must do each of the following to protect your rights:
>
> 1.  You must file a written response to the *Complaint*, in the Clerk's Office of the Court, within 30 days of the date the *Summons* and *Complaint* were served on you;
> 2.  You must send a copy of your written response to the plaintiff; and
> 3.  You must attend the first Case Management Conference.
>
>   **Warning:** If you do not do these three things, you may automatically lose this case.

*RULES AND FORMS:*  You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.scsuperiorcourt.org/civil/rule1toc.htm
- Rose Printing: 408-293-8177 or becky@rose-printing.com (there is a charge for forms)

For other local legal information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

*CASE MANAGEMENT CONFERENCE (CMC):*  You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

>   You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.

| | | |
|---|---|---|
| Your Case Management Judge is: **Kevin J Murphy** | Department: | **22** |
| The 1st CMC is scheduled for: (Completed by Clerk of Court) | | |
| Date: **AUG - 5 2008**  Time: **3:00 PM**  in Department | | **22** |
| The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed) | | |
| Date: _____  Time: _____  in Department _____ | | |

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*  If all parties have appeared and filed a completed ADR *Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.scsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

<   **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

<   **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

<   **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

<   **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

<   **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

<   **Mediation** is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

<   Mediation may be appropriate when:
    <   The parties want a non-adversary procedure
    <   The parties have a continuing business or personal relationship
    <   Communication problems are interfering with a resolution
    <   There is an emotional element involved
    <   The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

CV-5003 REV 6/05

EXHIBIT E

1   KURT OSENBAUGH (State Bar No. 106132)
2   DEBORAH YOON JONES (State Bar No. 178127)
    MacKENZIE E. HUNT (State Bar No. 251127)
3   **WESTON, BENSHOOF, ROCHEFORT,**
    **RUBALCAVA & MacCUISH LLP**
4   333 South Hope Street
    Sixteenth Floor
5   Los Angeles, California 90071
    Telephone: (213) 576-1000
6   Facsimile: (213) 576-1100

7   Attorneys for Defendant
    BP WEST COAST PRODUCTS LLC

8

9                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                      FOR THE COUNTY OF SANTA CLARA

11

12   OMER KASSA individually; OMER KASSA    Case No.: 108CV107979
     dba H & O, INC., and H & O, INC.,
13                                          **DEMURRER OF BP WEST COAST**
              Plaintiffs,                   **PRODUCTS LLC TO COMPLAINT;**
14                                          **MEMORANDUM OF POINTS AND**
         v.                                 **AUTHORITIES IN SUPPORT**
15                                          **THEREOF**
     BP WEST COAST PRODUCTS, LLC, dba
16   ARCO PRODUCTS COMPANY and DOES 1       [Filed Concurrently with Notice of
     to 50,                                 Demurrer; Notice of Motion and Motion to
17                                          Strike; and Appendix of Federal
              Defendants.                   Authorities.]
18
                                            Date: June 5, 2008
19                                          Time: 9:00 a.m.
                                            Dept.: 22
20
                                            Honorable Kevin J. Murphy
21
                                            Filing Date:  March 12, 2008
22

23

24

25

26

27

28

---

## TABLE OF CONTENTS

Page

I.    INTRODUCTION..................................................................................................1

II.   FACTUAL ALLEGATIONS...................................................................................2

III.  THE COMPLAINT FAILS TO STATE FACTS SUFFICIENT TO
      CONSTITUTE ANY CAUSE OF ACTION AGAINST BPWCP.................................4

      A.    Kassa Failed to Allege the Material Contract Provisions to Support the
            Breach of Contract Cause of Action......................................................4

      B.    Kassa's Claim for Conversion Lacks the Requisite Elements. ............................5

      C.    Kassa's Fraud Claim is Inadequate Because He Alleges No Facts to
            Support the Imposition of Tort Liability. .............................................5

      D.    Kassa's Implied Covenant of Good Faith and Fair Dealing Claim is
            Improperly Duplicative of the Breach of Contract Claim...................................6

      E.    Kassa's Negligent Misrepresentation Claim Lacks the Requisite
            Specificity...........................................................................8

      F.    Kassa's Negligence Claim is Also Improperly Duplicative of His Claim
            for Breach of Contract. ...............................................................9

      G.    Kassa's Negligent Hiring and Supervision Claim Lacks Required
            Elements. .............................................................................10

      H.    Kassa's Intentional Infliction of Emotional Distress Claim Lacks
            Sufficient Facts to Support a Viable Cause of Action. ....................................10

      I.    Kassa's Claim for Injunctive Relief is Subject to Demurrer Because it is
            Preempted by the PMPA. ..............................................................12

      J.    Kassa's Conspiracy Claim Lacks the Necessary Elements Required to
            State a Cause of Action. ...............................................................13

      K.    Kassa's Claim for Unfair and Deceptive Business Practices is Uncertain
            and Ambiguous........................................................................14

IV.   CONCLUSION ...................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*117 Sales Corporation v. Olsen*
(1978) 80 Cal.App.3d 645 .......................................................................................................13

*Aas v. Superior Court*
(2000) 24 Cal.App.4th 627 ................................................................................................9, 12

*Ann M. v. Pacific Plaza Shopping Center*
(1993) 6 Cal.4th 666..............................................................................................................9

*Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*
(1994) 7 Cal.4th 502............................................................................................................14

*Bank of America v. Pendergrass*
(1935) 4 Cal.2d 258, 48 P.2d 659...........................................................................................6

*Benton v. Hofmann Plastering Company*
(1962) 207 Cal.App.2d 61, 24 Cal.Rptr 268 ...........................................................................7

*California ARCO Distributors, Inc. v. Atlantic Richfield Co.*
(1984) 158 Cal.App.3d 349 ............................................................................................. 12-13

*Canta v. Resolution Trust Corp.*
(1992) 4 Cal.App.4th 857 ................................................................................................ 11-12

*Careau & Co. v. Security Pacific Business Credit, Inc.*
(1990) 222 Cal.App.3d 1371 ..................................................................................................7

*Celador Int'l Ltd. V. Walt Disney Co.*
(C.D. Cal., 2004) 347 F.Supp.2d 846.....................................................................................7

*Cervantez v. J.C. Penny Co.*
(1979) 24 Cal.3d 578............................................................................................................11

*Consumers Petroleum Co. v. Texaco*
(6th Cir. 1986) 804 F.2d 907................................................................................................13

*Davidson v. City of Westminster*
(1982) 32 Cal.3d 197............................................................................................................11

*Delfino v. Agilent Technologies, Inc.*
(2006) 145 Cal.App.4th 790 .................................................................................................10

*Erlich v. Mendezes*
(1999) 21 Cal.4th 543.........................................................................................................6, 8

ii

## TABLE OF AUTHORITIES
(continued)

Page

*Foley v. Interactive Data Corp.*
(1988) 47 Cal.3d 654 ................................................................................................... 7-8

*Gray v. Don Miller & Associates, Inc.*
(1984) 35 Cal.3d 498 ....................................................................................................... 8

*Guz v. Bechtel Nat'l, Inc.*
(2000) 24 Cal.4th 317....................................................................................................... 7

*Hailey v. California Physicians' Service,*
158 Cal.App.4th 452 ....................................................................................................... 11

*In re Napster, Inc. Copyright Litigation*
(9th Cir. 2007) 479 F.3d 1078 ......................................................................................... 6

*Kiseskey v. Carpenter Trust for Southern California*
(1983) 144 Cal.App.3d 222 ............................................................................................. 6

*Lesperance v. North American Aviation, Inc.*
(1963) 217 Cal.App.2d 336 ............................................................................................. 13

*McCann v. Lucky Money, Inc.*
(2005) 129 Cal.App.4th 1382 .......................................................................................... 15

*Mobil Oil Corp. v. Superior Court*
(1987) 189 Cal.App.3d 485 ............................................................................................. 13

*Niakan, et al. v. Samaan and Union Oil Company of California*
(1988) 199 Cal.App.3d 716 ............................................................................................. 13

*Orloff v. Metropolitan Trust Co.*
(1941) 17 Cal.2d 484 ....................................................................................................... 13

*Otworth v. So. Pacific Railway Trans. Co.*
(1985) 166 Cal.App.3d 452 ............................................................................................. 4

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*
(2007) 150 Cal.App.4th 384 ............................................................................................ 5

*Perry v. Robertson*
(1988) 201 Cal.App.3d 333 ............................................................................................. 4

*Pride v. Exxon Corp.*
(9th Cir. 1990) 911 F.2d 251 ........................................................................................... 13

*Reichert v. General Insurance Co.*
(1968) 68 Cal.2d 822 ....................................................................................................... 4

iii

# TABLE OF AUTHORITIES
(continued)

Page

*Roman Catholic Bishop v. Superior Court*
  (1996) 42 Cal.App.4th 1556 ...................................................................................... 10

*Rosen v. State Farm General Ins. Co.*
  (2003) 30 Cal.4th 1070 ................................................................................................. 9

*Taylor v. Forte Hotels International*
  (1991) 235 Cal.App.3d 1119 ............................................................................................. 5

*Underwriters Ins. Co. v. Purdie*
  (1983) 145 Cal.App.3d 57 ............................................................................................... 10

*Walters v. Marler*
  (1978) 83 Cal.App.3d 1 .................................................................................................... 8

*Wolf v. Superior Court*
  (2003) 107 Cal.App.4th 25 ........................................................................................... 15

## STATUTES

Business and Professions Code section 21200 ............................................................................... 3

Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* ...................................................... 1, 12

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DEMURRER

Defendant BP West Coast Products LLC ("BPWCP") demurs to the Complaint of plaintiffs Omer Kassa, individually and dba H&O, Inc., and H&O, Inc. (collectively, "Kassa") on the following grounds:

## DEMURRER TO FIRST CAUSE OF ACTION

Kassa's Complaint fails to state facts sufficient to constitute a cause of action for breach of contract as against BPWCP pursuant to Code of Civil Procedure § 430.10(e). Furthermore, Kassa's Complaint is uncertain pursuant to Code of Civil Procedure § 430.10(f) in that it cannot be ascertained from review of the first cause of action, how, in what manner, or upon what basis Kassa can claim that he has adequately pled a binding contract between Kassa and BPWCP. Specifically, the first cause of action is ambiguous in that Kassa has not properly pled verbatim the material terms of the contract (or attached a copy of the contract) upon which the cause of action against BPWCP is based.

## DEMURRER TO SECOND CAUSE OF ACTION

Kassa's Complaint fails to state facts sufficient to constitute a cause of action for conversion pursuant to Code of Civil Procedure § 430.10(e) in that Kassa has failed to allege which property BPWCP allegedly converted, or that he had a right to possess that property in the first instance. Furthermore, a breach of contract does not constitute a conversion. *Taylor v. Forte Hotels International* (1991) 235 Cal.App.3d 1119, 1124.

## DEMURRER TO THIRD CAUSE OF ACTION

Kassa's Complaint fails to state facts sufficient to constitute a cause of action for fraud and deceit pursuant to Code of Civil Procedure § 430.10(e) in that he has alleged only facts supporting a claim for breach of contract. Where there is a breach of contract alleged, the law will not find tort liability as well as contractual liability unless there is a breach of some independent duty imposed by law. *Elrich v. Menezes* (1999) 21 Cal.4th 543,

1

553-554. Kassa cannot withstand a demurrer on a fraud cause of action by merely reciting the facts supporting his claim for breach of contract.

## DEMURRER TO FOURTH CAUSE OF ACTION

Kassa's Complaint fails to state facts sufficient to constitute a cause of action for breach of the implied covenant of good faith and fair dealing pursuant to Code of Civil Procedure § 430.10(e) in that he has alleged only facts supporting a claim for breach of contract. Where a claim for breach of the implied covenant does not go beyond the statement of a breach of express contractual terms and seeks the same relief sought in a breach of contract claim, it is simply superfluous to the contract claim. *Celador Int'l Ltd. V. Walt Disney Co.* (C.D. Cal., 2004) 347 F.Supp.2d 846, 852; *Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317, 353, n. 18. Kassa cannot withstand a demurrer on a cause of action for breach of the covenant by merely reciting the facts supporting his claim for a purported breach of contract. Furthermore, California does not recognize a tortuous breach of contract claim outside of the insurance context.

## DEMURRER TO FIFTH CAUSE OF ACTION

Kassa's Complaint fails to state facts sufficient to constitute a cause of action for negligent misrepresentation pursuant to Code of Civil Procedure § 430.10(e) in that Kassa has not alleged the precise misrepresentations at issue, or any facts tending to show that BPWCP intended to induce reliance on the part of Kassa. Kassa's Complaint is also uncertain pursuant to Code of Civil Procedure § 430.10(f) in that it cannot be ascertained from reviewing the Fifth Cause of Action how, when, in what manner, or upon what basis Kassa can claim that BPWCP made a negligent misrepresentation. Furthermore, Kassa should not be allowed to recover in tort for the breach of duties that merely restate contractual obligations.

2

## DEMURRER TO SIXTH CAUSE OF ACTION

Kassa's Complaint fails to state facts sufficient to constitute a cause of action for negligence pursuant to Code of Civil Procedure § 430.10(e) in that Kassa has alleged only those facts supporting his claim for breach of contract. Where there is a breach of contract alleged, the law will not find tort liability as well as contractual liability unless there is a breach of some independent duty imposed by law. *Elrich v. Menezes* (1999) 21 Cal.4th 543, 553-4. Kassa cannot withstand a demurrer on a cause of action for negligence by merely reciting the facts supporting his claim for breach of contract, and making the conclusory assertion that the alleged breach was done "negligently." Furthermore, Kassa should not be allowed to recover in tort for the breach of duties that merely restate contractual obligations.

## DEMURRER TO SEVENTH CAUSE OF ACTION

Kassa's Complaint fails to state facts sufficient to constitute a cause of action for negligent hiring and supervision pursuant to Code of Civil Procedure § 430.10(e) in that Kassa has failed to allege any duty with respect to supervision of a particular employee, or that such duty was breached. Kassa's Complaint is also uncertain pursuant to Code of Civil Procedure § 430.10(f) in that it cannot be ascertained from reviewing the Sixth Cause of Action how, when, in what manner, or upon what basis Kassa can claim that BPWCP breached a duty owed to Kassa.

## DEMURRER TO EIGHTH CAUSE OF ACTION

Kassa's Complaint fails to state facts sufficient to constitute a cause of action for intentional infliction of emotional distress pursuant to Code of Civil Procedure § 430.10(e) in that Kassa has failed to allege any facts establishing the necessary element of extreme or outrageous conduct on the part of BPWCP.

**DEMURRER TO NINTH CAUSE OF ACTION**

Kassa's Complaint fails to state facts sufficient to constitute a cause of action for injunctive relief pursuant to Code of Civil Procedure § 430.10(e) in that Kassa's request for injunctive relief is preempted by the Petroleum Marketing Practices Act, 15 U.S.C. § 2802, *et seq.*  Furthermore, the Court has already denied Kassa's request for a temporary restraining order and preliminary injunctive relief.

**DEMURRER TO TENTH CAUSE OF ACTION**

Kassa's Complaint fails to state facts sufficient to constitute a cause of action for conspiracy pursuant to Code of Civil Procedure § 430.10(e) in that Kassa has failed to allege any facts establishing the formation and operation of a conspiracy.  Kassa has further failed to allege any facts that damage resulted from an act or acts done in furtherance of the purported plan.  The conspiracy claim also fails, as a matter of law, because agents and employees of a corporation cannot conspire with their employer/corporate principal if they are acting in their official capacities on behalf of the corporation. *Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.* (1994) 7 Cal.4th 502, 512, n. 12.

**DEMURRER TO ELEVENTH CAUSE OF ACTION**

Kassa's Complaint and cause of action for unfair and deceptive business practices is uncertain pursuant to Code of Civil Procedure § 430.10(f) in that it is impossible to determine whether Kassa is seeking recovery under statutory authority (i.e., Business & Professions Code § 17200) or whether Kassa seeks to recover under a common law claim (i.e., unfair competition).  The uncertainty is such that BPWCP is unable to intelligently respond to the allegations and purported cause of action.

4

1    BPWCP prays that its Demurrer be sustained without leave to amend, for costs,

2   and for such other and further and additional relief as this court may deem just and proper.

3
4   DATED:  April 18, 2008              Respectfully submitted,

5                                      KURT OSENBAUGH
                                       DEBORAH YOON JONES
                                       MacKENZIE E. HUNT
6                                      **WESTON, BENSHOOF, ROCHEFORT,**
                                         **RUBALCAVA & MacCUISH LLP**
7

8
9                                      _____
                                                   Deborah Yoon Jones
10                                     Attorneys for Defendant
                                       BP WEST COAST PRODUCTS LLC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          5

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2 | I.    **INTRODUCTION**

3 |       In order to survive an attack by demurrer, a plaintiff must adequately plead
4 | sufficient facts to establish all necessary elements for each of the claims asserted.  Here,
5 | plaintiff Omer Kassa (representing himself and H&O, Inc., collectively "Kassa") has
6 | essentially thrown all the facts he could possibly concoct onto his Complaint to see if any of
7 | the claims will stick.  In doing so, Kassa uses the same set of facts to assert a breach of
8 | contract claim, eleven tort claims, and an injunctive relief claim.  Indeed, Kassa attempts to
9 | convert a straightforward commercial contract dispute into a variety of inapplicable tort and
10 | statutory violations.  The gravaman of this dispute, however, is straightforward and involves
11 | a gasoline station franchisee (Kassa) who disagreed with proposed lease and franchise terms
12 | when the agreements came up for renewal.  Kassa refused to sign the renewal agreements
13 | and the lease and franchise relationship expired.  This is a contract case and the tort claims
14 | are superfluous, inadequately pled, and unsustainable as a matter of law.

15 |       Indeed, close scrutiny of each of the causes of action in Kassa's Complaint
16 | reveals them to be flawed and subject to demurrer.  For example, the breach of contract
17 | claim fails to set forth, verbatim, the material terms of the contract at issue or attach a copy
18 | of the contract.  Also, Kassa improperly seeks tort damages for what are, in fact, contract
19 | claims (see 3rd, 4th, 5th, and 6th causes of action).  In addition, there are tort claims that do not
20 | properly allege all the requisite elements (see 2nd, 3rd, 5th, 6th, 7th, 8th, and 10th causes of
21 | action).  Kassa's ninth cause of action for injunctive relief is preempted by the Petroleum
22 | Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* ("PMPA")[1]  And of course, there are the
23 | absurd and ridiculous allegations that H&O, Inc. (a non-human corporate entity) sustained
24 | injuries to its body and shock and injury to its nervous system as well as emotional distress
25 | damages.  (Compl., ¶4, 6th C/A and ¶ 4, 7th C/A).  Finally, the eleventh cause of action for
26 | purported "unfair and deceptive business practices" is so uncertain that BPWCP cannot

27

28 | [1] BPWCP maintains that the entire complaint is preempted by the PMPA to the extent the
claims relate to and arise out of the franchise non-renewal.

1

respond properly; it is impossible to decipher whether Kassa seeks statutory relief (i.e., under

Business & Professions Code § 17200) or common law relief (i.e., through an unfair

competition claim). None of the causes of action in Kassa's complaint are proper and

BPWCP's demurrer should be sustained without leave to amend.

## II.    FACTUAL ALLEGATIONS

Plaintiff Kassa was the franchisee/lessee operator of the ARCO-branded

gasoline station and am/pm Mini Market located at 2015 Winchester Road, Campbell,

California 95008 ("Station") (Compl., ¶3, 1st Cause of Action ("C/A")[2]). An am/pm Lease

PMPA Franchise Agreement and am/pm Mini Market Agreement effective March 1, 2005

(collectively, "Franchise Agreements") governed the franchise relationship between Kassa

and BPWCP. (*Id.*, ¶7, ¶9, 1st C/A) The Franchise Agreements included a lease of the

BPWCP-owned gasoline station and convenience store and a gasoline supply agreement,

which were set to expire on March 1, 2008. (*Id.*)

Given the Franchise Agreements were set to expire on March 1, 2008 in

January 2008, BPWCP delivered to Kassa the 45-Day Renewal Letter and provided Kassa

with proposed new franchise agreements ("Renewal Offer") (Compl., ¶10, 1st C/A). As of

March 1, 2008 the Agreements expired, as Kassa failed to return the signed documents

contained in the Renewal Offer which were required to continue the franchise beyond March

1, 2008. (*Id.*, ¶11, 1st C/A).

Kassa filed suit on March 12, 2008, in Superior Court for the County of Santa

Clara. In his "all-but-the-kitchen-sink" Complaint, Kassa alleges one claim for breach of

contract and asserts eleven tort causes of action which are based on the exact same facts as

the claim for breach of contract. The tort causes of action are as follows: (1) conversion;

(2) fraud and deceit; (3) breach of the implied covenant of good faith and fair dealing;

(4) negligent misrepresentation; (5) negligence; (6) negligent hiring and supervision;

---

[2]The paragraph numbers in Kassa's Complaint restart with each new Cause of Action. BPWCP therefore refers to the number of the paragraph, as well as the relevant cause of action in citing to Kassa's Complaint.

1  (7) intentional infliction of emotional distress; (8) conspiracy; (9) unfair and deceptive

2  business practices; (10) unfair business practices pursuant to Business and Professions Code

3  section 21200; and (11) violations of the Unruh Civil Rights Act, sections 51 and 52  The

4  only difference between Kassa's breach of contract cause of action and the tort claims is that

5  the tort claims include boilerplate and conclusory language that BPWCP acted negligently,

6  wrongfully, etc.  Kassa's Complaint also states a claim for a temporary restraining order and

7  preliminary and permanent injunctive relief to unwind the franchise termination and reinstate

8  Kassa as the dealer operator of the Station.[3]

9          Kassa's entire Complaint can be boiled down to the following contract breach

10  allegations:

11          •       BPWCP allegedly promised not to discriminate in pricing when selling

12  motor fuel to Kassa, to deliver motor fuel in a timely fashion, to provide necessary

13  equipment, and to charge Kassa electronically only for those deliveries that had actually been

14  made. (See Compl., ¶ 7, 1st C/A; ¶ 1, 2nd C/A; ¶¶ 1 & 2, 3rd C/A; ¶¶ 1 & 3, 4th C/A; ¶¶ 1 & 2,

15  5th C/A; ¶¶ 1 & 2, 6th C/A; ¶¶ 1 & 2, 10th C/A;  ); and

16          •       From March 2004 to March 2008, BPWCP purportedly failed to deliver

17  fuel to Kassa, and that BPWCP further charged Kassa's bank account for gasoline products

18  that were never delivered. (Compl., ¶9, 1st C/A; ¶¶ 1 & 6, 3rd C/A; ¶¶ 1 & 6, 4th C/A; ¶¶ 1 &

19  2, 5th C/A; ¶¶ 1 & 3, 10th C/A; ¶¶ 1 & 3, 12th C/A; ¶¶ 1, 5 & 6, 13th C/A).

20          However, as set forth in detail below, these general allegations alone fail to

21  support any of the causes of action asserted in Kassa's Complaint and without more, the

22  Court should sustain BPWCP's demurrer without leave to amend.

23

24

25

26

27

28

---

[3] As the Court may recall, on March 24, 2008, it granted BPWCP's *Ex Parte* Application to unwind the TRO, and on April 4, 2008, the Court denied Kassa's request for preliminary injunction.

III. **THE COMPLAINT FAILS TO STATE FACTS SUFFICIENT TO CONSTITUTE ANY CAUSE OF ACTION AGAINST BPWCP**

        A.    **Kassa Failed to Allege the Material Contract Provisions to Support the Breach of Contract Cause of Action.**

Kassa's first cause of action is for breach of contract. In order to maintain a breach of contract cause of action, Kassa must allege the essential elements of its claim: (1) the existence and the essential terms of the contract at issue; (2) Kassa's performance or excuse for non-performance of all conditions precedent to the BPWCP's obligation to perform; (3) BPWCP's breach of the contract, and (4) Kassa's damages. *Reichert v. General Insurance Co.* (1968) 68 Cal.2d 822, 830; and *Perry v. Robertson* (1988) 201 Cal.App.3d 333, 341. Where an action is based on an alleged breach of a written contract such as we have here, the "terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference." *Otworth v. So. Pacific Railway Trans. Co.* (1985) 166 Cal.App.3d 452, 459.

Here, Kassa has failed to plead verbatim the material terms of the contract upon which the breach of contract cause of action against BPWCP is based. Kassa has also failed to attach the relevant contracts which have allegedly been breached. Without necessary contract information BPWCP is unable to adequately respond. For example, who are the proper parties to the contract? Most likely Kassa seeks to avoid attaching the relevant Franchise Agreements and related assignment documents because the Court will learn that only H&O, Inc. was a party to the agreements and therefore, the individual defendant, Omer Kassa, lacks standing to maintain the breach of contract cause of action as well as remaining causes of action. Also, what specific provisions were purportedly breached? Without the actual contract language or contracts themselves attached to the Complaint, the first cause of action for breach of contract is lacking and incomplete. Accordingly, the first cause of action for breach of contract is flawed and the Court should sustain BPWCP's demurrer.

4

1

**B.    Kassa's Claim for Conversion Lacks the Requisite Elements.**

2          Kassa's second cause of action is for conversion.   To sustain a claim for
3    conversion, the following three elements must be pled: (1) plaintiff's ownership or right to
4    possession of property; (2) defendant's wrongful act toward or disposition of the property,
5    interfering with plaintiff's possession; and (3) damage to plaintiff. *PCO, Inc. v. Christensen,*
6    *Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395.

7          Kassa's Complaint fails to state facts sufficient to constitute a cause of action
8    for conversion as against BPWCP because there is no allegation that Kassa had a right to
9    possess the Station at the time BPWCP took possession of the Station.   Kassa simply
10   contends that he has "performed all the conditions of the contract that are required to be
11   performed," and that "Plaintiffs remains [sic] ready and willing to perform all of the terms of
12   the contract applicable to them and receive title to the property as promised by BPWCP."
13   (Compl., ¶2, 2nd C/A).   There is no allegation indicating that Kassa had a right to any
14   property or possession of the Station.  In fact, Kassa concedes that the Franchise Agreements
15   (which gave Kassa any possible right to possession of the Station) expired. (Compl., ¶ 11, 1st
16   C/A.)  Furthermore, it is not specifically alleged what property BPWCP allegedly converted;
17   rather, BPWCP is left to assume that the Station (which is owned by BPWCP) is the property
18   that was allegedly converted. Accordingly, Kassa's conversion cause of action is incomplete
19   and insufficiently pled.

20          Moreover, BPWCP's demurrer as to the conversion claim should be sustained
21   without leave to amend because the facts pled in support thereof are nothing more than
22   breach of contract allegation.  Neither negligence, active or passive, nor a breach of contract,
23   even though it results in injury to, or loss of, specific property, constitutes a conversion.
24   *Taylor v. Forte Hotels International* (1991) 235 Cal.App.3d 1119, 1124.

25          **C.    Kassa's Fraud Claim is Inadequate Because He Alleges No Facts to**
26                 **Support the Imposition of Tort Liability.**

27          Kassa's Third Cause of Action is for fraud and deceit. The elements of a claim
28   for fraud and deceit are as follows: (1) a misrepresentation or concealment of a material fact;

1   (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance;

2   (4) justifiable reliance; and (5) resulting damage." *In re Napster, Inc. Copyright Litigation*

3   (9th Cir. 2007) 479 F.3d 1078, 1096, quoting *Small v. Fritz Cos., Inc.* (2003) 30 Cal.4th 167,

4   132 (internal quotation marks omitted).   Moreover, where there is a breach of contract

5   alleged, the law will not find tort liability as well as contractual liability unless there is a

6   breach of some independent duty imposed by law. *Erlich v. Mendezes* (1999) 21 Cal.4th 543,

7   553-4; *see also Bank of America v. Pendergrass* (1935) 4 Cal.2d 258, 48 P.2d 659, 661-662

8   (as a general proposition, a claim for fraud cannot be based upon promises which concern

9   contractually negotiated obligations).

10          Here, Kassa's fraud claim is based upon the same facts which support the

11   inadequately pled breach of contract claim.  The sole allegation on which Kassa's fraud

12   claim is based is the assertion that BPWCP failed to "deliver gasoline products after timely

13   request were made; fail[ed] to charge Plaintiffs a reasonable costs [sic] for gasoline products

14   as compared to other gasoline stations in the area; wrongfully deducting money from Kassa's

15   bank account for money not owed." (Compl., ¶6, 3rd C/A).   Kassa is essentially asserting

16   that BPWCP has committed fraud by breaching the purported contracts; these facts alone are

17   insufficient given the *Erlich* and *Pendergrass* decisions and the demurrer should be sustained

18   without leave to amend.

19          Moreover, the only additional allegations supporting his fraud claim are

20   boilerplate assertions that BPWCP "made intentional misrepresentations of material facts to

21   Plaintiffs, knowing such statements were untrue with the intent to induct [sic] plaintiffs to

22   entering [sic] into the contract, continuing with the contract and not terminating it all to their

23   detriment." (Compl., ¶3, 3rd C/A).  Such boilerplate statements, without more, are not

24   sufficient to support a fraud claim and withstand attack by a demurrer.    *Kiseskey v.*

25   *Carpenter Trust for Southern California* (1983) 144 Cal.App.3d 222, 228.   Therefore, the

26   Court should sustain BPWCP's demurrer as to Kassa's third cause of action.

27              **D.    Kassa's Implied Covenant of Good Faith and Fair Dealing Claim is**

28                     **Improperly Duplicative of the Breach of Contract Claim.**

1   Kassa's fourth cause of action is for breach of the covenant of good faith and
2   fair dealing. Kassa's cause of action for breach of the implied covenant as against BPWCP
3   is flawed in two respects: (1) the claim is duplicative of the breach of contract cause of
4   action and thus the express provisions (rather than the implied covenant) govern; and
5   (2) there is no recognized cause of action for tortuous breach of contract outside of the
6   insurance context where a special relationship exists between the parties.

7   Kassa alleges that BPWCP breached the covenant of good faith and fair
8   dealing by breaching the contract "in bad faith." (Compl., ¶6, 4th C/A). Every contract
9   imposes on each party a duty of good faith and fair dealing in each performance and in its
10  enforcement. *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d
11  1371, 1393. However, where a claim for breach of the implied covenant does not go beyond
12  the statement of a breach of express contractual terms and seeks the same relief sought in a
13  breach of contract claim, it is simply superfluous to the contract claim. *Celador Int'l Ltd. V.*
14  *Walt Disney Co.* (C.D. Cal., 2004) 347 F.Supp.2d 846, 852; *Guz v. Bechtel Nat'l, Inc.* (2000)
15  24 Cal.4th 317, 353, n. 18. Furthermore, where there is an express agreement covering a
16  certain subject, "the law cannot imply a contract in the face of such express agreement."
17  *Benton v. Hofmann Plastering Company* (1962) 207 Cal.App.2d 61, 24 Cal.Rptr 268, 276.
18  The facts upon which Kassa relies in alleging breach of the covenant are covered by express
19  terms in the Franchise Agreements, and therefore his claim for breach of the covenant is
20  duplicative of his claim for breach of contract and is improper.

21  In addition, Kassa essentially attempts to allege a tortuous breach of contract
22  claim by stating that BPWCP had a special relationship and "Plaintiffs were in a vulnerable
23  position because they were unsophisticated with the complexities of the transaction."
24  (Compl., ¶4, 4th C/A) These facts, even if true, are insufficient to elevate the relationship
25  between Kassa and BPWCP to a "special relationship." The covenant of good faith and fair
26  dealing is a contract term and compensation for its breach has almost always been limited to
27  contract rather than tort remedies. *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654,
28  684. An exception to this general rule occurs in the insurance contract setting. There, the

1   contracting parties are held to be in a special relationship, because the insured does not seek

2   to obtain a commercial advantage by entering into the contract, but instead seeks protection

3   against calamity. *Id* at 685. Therefore, in the insurance setting, the obligations of good faith

4   and fair dealing are said to encompass qualities of decency and humanity inherent in the

5   responsibilities of a fiduciary, so that breach of these obligations justifies the imposition of

6   tort liability. *Id.* Kassa entered into the Franchise Agreements for his own commercial

7   advantage, and not for purposes of securing any sort of protection from BPWCP. Therefore,

8   the "special relationship" does not apply to Kassa and BPWCP and the fourth cause of action

9   is improper. BPWCP's demurrer as to the fourth cause of action should be sustained without

10  leave to amend.

11         E.     **Kassa's Negligent Misrepresentation Claim Lacks the Requisite**

12                **Specificity.**

13         Kassa's fifth cause of action is for negligent misrepresentation. The elements

14  of a negligent misrepresentation claim are: (1) the defendant must have made a

15  representation as to a past or existing material fact; (2) the representation must have been

16  untrue; (3) regardless of his actual belief the defendant must have made the representation

17  without any reasonable ground for believing it to be true; (4) the representation must have

18  been made with the intent to induce plaintiff to rely upon it; (5) the plaintiff must have been

19  unaware of the falsity of the representation; he must have acted in reliance upon the truth of

20  the representation and he must have been justified in relying upon the representation; and (6)

21  as a result of his reliance upon the truth of the representation, the plaintiff must have

22  sustained damage. *Walters v. Marler* (1978) 83 Cal.App.3d 1, 17, overruled on another

23  ground in *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505-507.

24  Furthermore, where there is a breach of contract alleged, the law will not find tort liability as

25  well as contractual liability unless there is a breach of some independent duty imposed by

26  law. *Erlich v. Mendezes* (1999) 21Cal.4[th] 543, 553-4.

27         In alleging the negligent misrepresentation cause of action, Kassa relies solely

28  on purported representations that BPWCP made to him in connection with the Franchise

8

1    Agreements. Indeed, there are no facts alleged which go beyond those supporting the breach

2    of contract claim.   Kassa's Complaint alleges that BPWCP "made the promises and

3    representations under the contract with no reasonable rounds for believing them to be true..."

4    (Compl., ¶2; 5th C/A).  However, Kassa fails to allege the precise misrepresentations at issue,

5    as well as state any facts tending to show that these supposed misrepresentations were made

6    with the intent of inducing reliance by Kassa.   Furthermore, Kassa's Complaint is also

7    uncertain in that it cannot be ascertained from review of the fifth cause of action how, when,

8    in what manner, or upon what basis Kassa can claim that BPWCP has engaged in negligent

9    misrepresentation.      Specifically,   Kassa   fails   to   identify   when   the   purported

10   misrepresentations   took   place,   who   made   the   misrepresentations,   what   the

11   misrepresentations were, and by what authority those misrepresentations were made.

12   Finally, there is no other independent duty pled or imposed by law in this fifth cause of

13   action and BPWCP cannot recover tort damages for what are, in actuality, purported contract

14   claims.  Accordingly, the Court should sustain the demurrer to Kassa's fifth cause of action

15   without leave to amend.

16                        F.     **Kassa's Negligence Claim is Also Improperly Duplicative of His**

17                               **Claim for Breach of Contract.**

18               Kassa's sixth cause of action is for negligence.   To properly allege a

19   negligence cause of action, a plaintiff must plead the following four elements: (1) duty; (2)

20   breach of the duty; (3) causation; and (4) damages.  *Ann M. v. Pacific Plaza Shopping*

21   *Center* (1993) 6 Cal.4th 666, 673.  The negligent performance of a contract, however, will

22   not ordinarily give rise to tort damages. *Aas v. Superior Court* (2000) 24 Cal.App.4th 627,

23   643, superseded by statute on other grounds as stated in stated in *Rosen v. State Farm*

24   *General Ins. Co.* (2003) 30 Cal.4th 1070, 1079-1080.

25               Here, Kassa alleges that BPWCP owed him a duty under the contract, and that

26   BPWCP "negligently, recklessly, or carelessly knew or should have known that the BPWCP

27   never intended to proceed with the promises, terms and conditions of the contract..."

28   (Compl., ¶3, 6th C/A).  This is insufficient to state a cause of action for negligence in the

                                                         9

1 absence of any facts that BPWCP breached some duty to Kassa that is independent of its

2 duties to Kassa under the Franchise Agreements. Furthermore, the negligence cause of

3 action is also uncertain in that Kassa fails to identify when the purported breach of duty took

4 place, which acts constituted the specific breach, or who was responsible for the breach.

5 BPWCP's demurrer as to the sixth cause of action should be sustained without leave to

6 amend.

7         G.    **Kassa's Negligent Hiring and Supervision Claim Lacks Required**

8               **Elements.**

9         Kassa's seventh cause of action is for negligent hiring and supervision. To

10 state a claim for negligent supervision, the complaint must allege: (1) a duty of care owed to

11 the plaintiff with respect to the supervision of the employee; (2) a breach of that duty with

12 respect to the supervision of the employee; (3) that negligent supervision must be the cause

13 of plaintiff's damages; and (4) resulting damages to the plaintiff. *Delfino v. Agilent*

14 *Technologies, Inc.* (2006) 145 Cal.App.4th 790. Furthermore, claims for negligent hiring and

15 supervision are limited to situations in which an employee has tortiously injured the plaintiff.

16 *See Underwriters Ins. Co. v. Purdie* (1983) 145 Cal.App.3d 57, 69. A typical situation and

17 widely cited example in which a claim for negligent hiring and supervision was deemed

18 appropriate was in *Roman Catholic Bishop v. Superior Court* (1996) 42 Cal.App.4th 1556,

19 where the plaintiff brought suit against the Roman Catholic Church for the negligent hiring

20 and supervision of a priest who had allegedly sexually molested her.

21         Kassa's Complaint lacks any facts to support the existence of any duty of care

22 owed by BPWCP to Kassa with respect to the supervision of any particular employee. The

23 Complaint also lacks any allegation of the breach of that duty. In addition, Kassa fails to

24 identify which of BPWCP's employees were negligently hired or supervised, or how the

25 purported negligent hiring or supervision actually caused any injury to Kassa. Finally, as

26 previously noted, Kassa has failed to adequately allege any facts supporting the notion that

27 he has been tortiously injured by BPWCP's purported breach of contract. Therefore, Kassa's

28 claim for negligent supervision is not only uncertain and insufficient, but also inapplicable in

10

1   this setting.  Accordingly, the Court should sustain the demurrer as to Kassa's seventh cause

2   of action.

3           **H.    Kassa's Intentional Infliction of Emotional Distress Claim Lacks**

4                   **Sufficient Facts to Support a Viable Cause of Action.**

5           Kassa's eighth cause of action is for intentional infliction of emotional distress.

6   To maintain such a cause of action, a plaintiff must allege that: (1) the defendant engaged in

7   extreme and outrageous conduct with the intention of causing, or reckless disregard of the

8   probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually

9   suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual

10  and proximate cause of the emotional distress. *Cervantez v. J.C. Penny Co.* (1979) 24 Cal.3d

11  578, 593.  The nature of the wrongful conduct must be so extreme and outrageous as to

12  exceed all bounds usually tolerated in a civilized society, and it further must be especially

13  calculated to cause, and must actually cause, mental distress of a very serious kind.

14  *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209.  A person is entitled to receive

15  emotional distress damages.  *Hailey v. California Physicians' Service*, 158 Cal.App.4th 452,

16  477.  Not surprisingly, BPWCP has been unable to locate a single reported decision in

17  California in which a corporation has received emotional distress damages.

18          Notwithstanding the ridiculousness of H&O, Inc. asserting this claim (and the

19  demurrer as to H&O, Inc. on this claim should no doubt be sustained without leave to

20  amend), the intentional infliction of emotional distress cause of action fails to assert the

21  required element of extreme or outrageous conduct on the part of BPWCP.  Kassa alleges

22  that "as a result of the wrongful, intentional and malicious acts of BPWCP and each of them

23  and the fright thereby caused to Plaintiffs, he have [sic] suffered extreme and severe mental

24  anguish, emotional distress and physical pain and have been injured to their minds and

25  bodies [sic]."  (Compl., ¶2, 8th C/A).  This type of general and conclusive allegation is

26  insufficient.  Kassa also asserts states that BPWCP engaged in "wrongful, intentional, and

27  malicious acts," without explaining the precise nature of those acts, or how they were so

28  extreme as to exceed all bounds usually tolerated in a civilized community.  *See Canta v.*

11

1    *Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 888 (allegations that defendant's conduct

2    is "outrageous" or "malicious" is insufficient, as a matter of law, to provide a basis for the

3    outrageous conduct element of the facts). Furthermore, the claim is based on contract breach

4    allegations and tort liability based on these contentions is inappropriate. *Aas v. Superior*

5    *Court, supra,* 24 Cal.4th at 643. Accordingly, BPWCP's demurrer as to the eighth cause of

6    action should be sustained without leave to amend.

7            I.    **Kassa's Claim for Injunctive Relief is Subject to Demurrer Because**

8               **it is Preempted by the PMPA.**

9       Kassa's ninth cause of action is for temporary restraining order, preliminary

10   injunction, and permanent injunction. Aside from the fact that the Court has already issued

11   rulings denying Kassa's requests for TRO and Preliminary Injunctive relief, Kassa's

12   remaining claim for permanent injunctive relief is also improper and should be dismissed on

13   grounds of Federal preemption.

14       Kassa's claim for a permanent injunction seeks to reverse the franchise

15   termination and non-renewal and "prevent [BPWCP] from continu[ing] to wrongfully

16   possess Plaintiffs' business and property and prevent it [sic] from operating as a business

17   earning income, profits, use, possession an control of the premises." (Compl., ¶2, 9th C/A).

18   The Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.* ("PMPA"), however,

19   specifically governs gasoline franchise nonrenewal claims and preempts the injunctive relief

20   sought in Kassa's complaint. See 15 U.S.C. §§ 2801 *et seq.*; *see also California ARCO*

21   *Distributors, Inc. v. Atlantic Richfield Co.* (1984) 158 Cal.App.3d 349 (a service station

22   franchise nonrenewal may not be enjoined absent a claim brought under the governing

23   PMPA). True and correct copies of all Federal Authorities cited herein have been filed

24   concurrently herewith.

25       Moreover, Kassa has had ample opportunity to file an amended complaint

26   (having been notified via BPWCP's *Ex Parte* Application to Dissolve the TRO and

27   BPWCP's Opposition to the Preliminary Injunction Motion about the PMPA preemption

28   concerns), but has failed to specifically assert any claims under the PMPA. Accordingly, the

1  demurrer should be sustained as to Kassa's ninth cause of action without leave to amend.[4]

2      J.    **Kassa's Conspiracy Claim Lacks the Necessary Elements Required**
3            **to State a Cause of Action.**

4          Kassa's tenth cause of action is for conspiracy. To state a cause of action for
5  conspiracy, <u>facts</u> must be alleged showing the formation and operation of a conspiracy and
6  damage resulting from an act or acts done in furtherance of the plan. *Orloff v. Metropolitan*
7  *Trust Co.* (1941) 17 Cal.2d 484, 487. The pleaded facts must show <u>something was done</u>
8  which, without the conspiracy, would give rise to a right of action. *Lesperance v. North*
9  *American Aviation, Inc.* (1963) 217 Cal.App.2d 336, 345. Bare legal conclusions,
10  inferences, generalities and presumptions are insufficient to properly state a cause of action
11  for conspiracy. *117 Sales Corporation v. Olsen* (1978) 80 Cal.App.3d 645, 650.

12          Kassa's cause of action for conspiracy fails to allege the necessary facts to
13  support such a claim. First, there is a complete absence of any facts showing that BPWCP
14  was involved in the formation and operation of any conspiracy. In fact, Kassa has failed to
15  even allege any facts regarding the person(s) with whom BPWCP supposedly entered into a
16  conspiracy. Next, Kassa fails to allege any facts showing that damage resulted from an act
17  or acts done in furtherance of the purported plan. There is no allegation of any actual
18  wrongful conduct on the part of BPWCP, and no information concerning BPWCP's

19

20  ───────────────
[4] BPWCP continues to maintain that the entire complaint is preempted by the PMPA to the
21  extent the claims are related to the nonrenewal of the franchise (which BPWCP maintains
they are). *See Niakan, et al. v. Samaan and Union Oil Company of California* (1988) 199
22  Cal.App.3d 716 (state court lacked subject matter jurisdiction where claims of wrongful
nonrenewal of gasoline franchise preempted by PMPA; claims of unfair trade practices,
23  breach of implied covenant of good faith and fair dealing, breach of written contract, and
misrepresentation often stem from franchisor's failure to renew and such claims held to be
24  preempted by PMPA); *Pride v. Exxon Corp.* (9th Cir. 1990) 911 F.2d 251, 257 (PMPA
preempts state law causes of action that would have effect of limiting permissible reason for
25  terminating or nonrenewing a petroleum franchise); *Consumers Petroleum Co. v. Texaco* (6th
Cir. 1986) 804 F.2d 907 (state law claims alleging misrepresentations relating to the
26  termination or nonrenewal of a franchise are preempted); *Mobil Oil Corp. v. Superior Court*
(1987) 189 Cal.App.3d 485 (all state law claims arising out of termination of station lease,
27  including claim for breach of covenant of good faith and fair dealing, are preempted); and
*California ARCO Distributors, Inc. v. Atlantic Richfield Co.* (1984) 158 Cal.App.3d 349 (a
28  service station franchise nonrenewal may not be enjoined absent a claim brought under the
governing PMPA).

13

1  participation in the alleged conspiracy.

2          Assuming Kassa is claiming that agents or employees of BPWCP conspired

3  with one another, Kassa cannot maintain a conspiracy cause of action, as a matter of law.

4  Agents and employees of a corporation cannot conspire with their corporate principal and

5  employer if they were acting in their official capacities on behalf of the corporation. *Applied*

6  *Equip. Corp. v. Litton Saudi Arabia, Ltd.* (1994) 7 Cal.4th 502, 512, n. 12.  Without more,

7  Kassa's conspiracy cause of action against BPWCP is defective and subject to demurrer.

8          K.    Kassa's Claim for Unfair and Deceptive Business Practices is

9                Uncertain and Ambiguous.

10         Kassa's eleventh cause of action is for "unfair and deceptive business

11  practices." Unlike the other causes of action discussed above, BPWCP is unable to present

12  the Court with the requisite elements necessary to support this claim. This is because it is

13  virtually impossible to decipher whether Kassa is stating a statutory claim (i.e., under

14  Business & Professions Code § 17200) or a common law claim (i.e., for unfair competition).

15  Given such uncertainty, BPWCP has no way of responding to this claim.

16         In the Complaint, Kassa alleges that BPWCP engaged in unfair and deceptive

17  business practices by "misrepresent[ing] their authority, misrepresent[ing] the contract

18  provisions, and process [sic] for correcting problems by BPWCP, and engag[ing] in an

19  overall pattern and scheme of defrauding members of the public including Plaintiffs, into

20  relying upon their professional expertise..." (Compl., ¶2, 11th C/A).  Based on these

21  allegations (which are duplicative of the breach of contract and other tort claims), BPWCP

22  cannot determine what exactly Kassa is pleading.  Further specificity is required or else the

23  claim should be dropped.

24         Furthermore, Kassa also alleges in this cause of action that BPWCP are

25  "fiduciaries and/or professionals with duties of due care and loyalty to Plaintiffs." (*Id*). To

26  the extent that there is some recognized cause of action for "unfair and deceptive business

27  practices" and Kassa contends that this purported fiduciary relationship creates some liability

28  therefore, we note that to establish a fiduciary relationship, there must be a "relation existing

14

1 | between parties to a transaction wherein one of the parties is in duty bound to act with the
2 | utmost good faith for the benefit of the other party." *Wolf v. Superior Court* (2003) 107
3 | Cal.App.4th 25, 29. There is generally no fiduciary owed duty in a purely commercial
4 | situation. *McCann v. Lucky Money, Inc.* (2005) 129 Cal.App.4th 1382, 1398. BPWCP's
5 | relationship with Kassa was purely commercial in nature and thus Kassa's conclusory
6 | assertion that BPWCP was a fiduciary to Kassa is unsupported.

7 | **IV.    CONCLUSION**

8 | This action is nothing more than a straightforward gasoline franchise non-
9 | renewal and termination matter and the governing franchise agreements dictate the available
10 | damages, if any. Kassa's attempts to create tort liability where none exists fail as is
11 | evidenced by the inadequately pled causes of action in the Complaint. For the reasons stated
12 | herein as well as those stated in the Motion to Strike filed concurrently herewith, BPWCP
13 | respectfully requests that this Court sustain its demurrer, without leave to amend.

14 |
15 | DATED: April 18, 2008                    Respectfully submitted,
16 |                                          KURT OSENBAUGH
                                             DEBORAH YOON JONES
                                             MacKENZIE E. HUNT
17 |                                          **WESTON, BENSHOOF, ROCHEFORT,**
                                             **RUBALCAVA & MacCUISH LLP**
18 |
19 |
20 |                                          _____
                                                      Deborah Yoon Jones
21 |                                          Attorneys for Defendant
                                             BP WEST COAST PRODUCTS LLC
22 |
23 |
24 |
25 |
26 |
27 |
28 |

1

## PROOF OF SERVICE

2

I, Heather Thai, declare:

3

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

4

5

6

On April 18, 2008, I served the document(s) described as **DEMURRER OF BP WEST COAST PRODUCTS LLC TO COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows: SEE ATTACHED SERVICE LIST

7

8

9

☒ BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

10

11

12

13

14

☐ BY FEDERAL EXPRESS      ☐ UPS NEXT DAY AIR      ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☐ FEDERAL EXPRESS  ☐ UPS   ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of ☐ FEDERAL EXPRESS  ☐ UPS  ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

15

16

17

18

☐ BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

19

20

☐ BY ELECTRONIC MAIL TRANSMISSION WITH ATTACHMENT: On this date, I transmitted the above-mentioned document by electronic mail transmission with attachment to the parties at the electronic mail transmission address set forth on the attached service list.

21

22

23

☒ [State] I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

24

☐ [Federal]    I declare under penalty of perjury that the foregoing is true and correct.

25

Executed on April 18, 2008, at Los Angeles, California.

26

27

_Heather Thai_
Heather Thai

28

1174236.1

1

2

**KASSA, et al. v. BP WEST COAST PRODUCTS LLC**
**SANTA CLARA SUPERIOR COURT**
**Case No. 108CV107979**

3

**SERVICE LIST**

4

5

6

George Holland, Esq.
LAW OFFICES OF GEORGE HOLLAND
1970 Broadway, Suite 1030
Oakland, CA 94612

Attorney for Plaintiffs, OMER KASSA,
OMER KASSA dba H & O, INC. and H &
O, INC.

7

Tel: (510) 465-4100
Fax: (510) 465-4747

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT F

(ENDORSED)

1  GEORGE HOLLAND, ESQ., State Bar No. 55740      2008 APR 11  PM 3:25
   **LAW OFFICES OF GEORGE HOLLAND**
2  1970 Broadway, Suite 1030                          KIRI TORRE, CEO
   Oakland, California  94612                         SUPERIOR COURT
3  Telephone:  (510) 465-4100                         SANTA CLARA CO.
                                                    BY  **M. Sorum**   DEPUTY
4  Attorneys for Plaintiffs
   OMER KASSA, OMER KASSA dba H & O, INC.
5  and H & O, INC.

6

7
                    SUPERIOR COURT OF CALIFORNIA
8
                       COUNTY OF SANTA CLARA
9
                       UNLIMITED JURISDICTION
10

11  OMER   KASSA  individually;   OMER)    No. 108CV107979
    KASSA dba H & O, INC., and H & O,)
12  INC.,                            )    **FIRST  AMENDED  COMPLAINT  FOR**
                                     )    **BREACH  OF  CONTRACT,  FRAUD,**
13                                   )    **MISREPRESENTATION ,**
              Plaintiffs,            )    **NEGLIGENCE,      RESTRAINING**
14                                   )    **ORDER,  INTENTIONAL  INFLICTION**
    vs.                              )    **OF   EMOTIONAL   DISTRESS   AND**
15                                   )    **DAMAGES**
    BP WEST COAST PRODUCTS, LLC, dba)
16  ARCO PRODUCTS COMPANY and  DOES 1)      Demand for Jury Trial
    to 50,                          )
17
            Defendants.
18  _____

19       Plaintiffs OMER KASSA individually; OMER KASSA dba H & O,

20  INC., and H & O, INC., allege:

21          **FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS**

22                    (BREACH OF CONTRACT)

23       1.    Plaintiff H & O, INC., is at all times herein mentioned

24  duly licensed corporation in the State of California and was prese

25  and doing business in the City of Campbell, Santa Clara Count

26  California.  Plaintiff OMER KASSA is the president of H & O, INC., a

27  is doing business as H & O, INC.

28       2.    Defendants BP WEST COAST PRODUCTS, LLC dba ARCO PRODUC

    _____
    COMPLAINT FOR DAMAGES                      1

1 | COMPANY and DOES 1 to 50, ("ARCO PRODUCTS COMPANY was subsequent
2 | purchased by BP WEST COAST PRODUCTS, LLC") at all times here
3 | mentioned were, present and doing business in the City of Campbel
4 | Santa Clara County, California.

5 |     3.   Plaintiffs are the owners, operators and franchisees of
6 | ARCO AM/PM gasoline station and mini-market located at 2015 Sou
7 | Winchester Boulevard, Campbell, California.   Defendants and each
8 | them is the franchisor of the Arco AM/PM Mini-market and the suppli
9 | of motor vehicle fuel or oils of like grade and quality, food a
10 | other products to plaintiffs.

11 |     4.   At all times herein mentioned each defendant was an agen
12 | servant, employee, partner, joint venturer of the other defendant
13 | and each of them and all times herein mentioned, each defendant w
14 | acting within the course and scope of this relationship as an agen
15 | servant, employee, partner or joint venturer of the other defendant
16 | and each of them.

17 |     5.   Plaintiffs are ignorant of the true names and capacities
18 | each of the defendants sued herein as DOES 1 to 50 inclusive a
19 | therefore, sues said defendants by such fictitious names. Plaintif
20 | will seek leave to amend the complaint to allege their true names a
21 | capacities when the same has been ascertained.

22 |     6.   Plaintiffs are informed and believes and based upon su
23 | information and belief allege that each of the defendants named here
24 | or as a DOE is intentionally and negligently responsible in so
25 | manner for the occurrences herein alleged and Plaintiffs' injuries a
26 | damages as herein alleged were proximately caused by defendant
27 | conduct.

28 |     7.   On or about March 1, 2002 , in the City of Campbell, Sar

COMPLAINT FOR DAMAGES             2

1   Clara County, plaintiffs and defendants and each of them, entered in
2   an agreement for the use, operation, possession and control of t
3   ARCO AM/PM Mini-market located at 2015  South Winchester Boulevar
4   Campbell, California (hereinafter "ARCO").  According to the terms
5   the agreement, Plaintiffs were required to pay an initial franchis
6   fee of $35,000, lease the property for $2,000 per month and p
7   defendants 15% of his gross sales per month to operate an AM/PM Mi
8   Market, a retail convenience store identified by the service mark a
9   service name of AM/PM for the sale of prepackaged foods, fast food
10  beverages,  sundries  and  convenience  store  goods  and  service
11  Plaintiffs paid $500,000 for this franchise and defendants promis
12  at that time not to discriminate in price between plaintiffs a
13  different purchasers of vehicle motor fuels, gasoline or oils of li
14  grade and quality where the effect of such discrimination would less
15  competition or to injure, destroy or prevent competition. Defendan
16  also promised to timely deliver vehicle motor fuels or oils of li
17  grade and quality to plaintiffs and to charge plaintiffs account w
18  electronic funds payment only for those deliveries that actually h
19  occurred.  In exchange, defendants and each of them, were required
20  provide  Plaintiffs  the  equipment  necessary  to  run  the  AM/P
21  convenience store; timely supply plaintiffs with of motor vehic
22  fuels or oils of like grade and quality and not to discrimina
23  against plaintiffs by charging others lower prices than plaintif
24  either directly or indirectly for gasoline products.

25      9.    At all times herein mentioned, the contract was renewed
26  by the parties on or about March 1, 2005 for another three year peri
27  under the same terms and conditions.  In or about March 2004 a
28  continuing to March 4, 2008,  defendants, and each of them, failed

---

COMPLAINT FOR DAMAGES                    3

1   deliver  motor  vehicle  fuels  or  oils  of  like  grade  and  quali
2   (hereinafter "gasoline products"),  electronically charged funds fr
3   plaintiffs  bank  account  for  undelivered  gasoline  products  a
4   discriminated  against  plaintiffs  either  directly  or  indirectly
5   charging  them  higher  prices  for  gasoline  products  than  it charg
6   others franchisees' located in close proximity to plaintiffs' AM/
7   to lessen competition, to injure and to cause plaintiffs to lose the
8   business.

9        10.   At all times herein mentioned, Defendants submitted a
10   renewal of the contract to plaintiffs on or about January 19, 200
11   and gave plaintiffs a certain number of days to sign the renew
12   contract.   Plaintiffs complained to defendants both orally and
13   writing about these problems as well as other accounting issues
14   several occasions including on February 27, 2008 during a meetir
15   Plaintiffs tried to discuss the renewal of the contract because issu
16   in the old contract were unresolved. However, defendants have refus
17   and continue their refusal to discuss these problems or take a
18   corrective action. On each occasion, defendants refused to answer a
19   of  plaintiffs'  questions  regarding  requirements  in  the  renew
20   contract including the initial deposit fee, monthly rent increases a
21   royalties from gross sales.  However, defendants insisted orally th
22   after  plaintiffs signed the contract renewal, these issues would
23   addressed.

24        11.   On or about March 1, 2008, the contract between Plainti;
25   and defendants expired and defendants demanded that plaintiffs rer
26   the contract without addressing any of the ongoing problems t;
27   plaintiffs had identified such as increased rent, increased costs
28   gasoline products and why other dealers were charged less prices ;

COMPLAINT FOR DAMAGES                        4

1  deliveries and products; and why did defendants charge plaintiffs a

2  electronically take money for their account to pay for deliveries th

3  were never made.

4       12.  At all times herein mentioned, Plaintiffs have performe

5  all conditions, covenants, and promises required on their part to

6  performed in accordance with the terms and conditions of the contrac

7       12.  Defendants breached the Agreement by failing to deliver

8  gasoline products after being timely requested to do so; by chargi

9  Plaintiffs unreasonably high costs for its gasoline products and

10 wrongfully electronically withdrawing funds from plaintiffs' banki

11 account for gasoline products that were never delivered and refusi

12 to return the funds after being requested to do so.

13      13.  Defendants have wholly failed and refused to perform und

14 the terms of the contract and have seized plaintiffs's business a

15 real property preventing plaintiffs from the use, operation a

16 possession of their business as well as lost profits.

17      14.  As a direct and proximate results of these acts, omissic

18 or breaches by defendants, plaintiffs have sustained damages accordi

19 to proof.

20           **SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS**

21                        (CONVERSION)

22      1.  Plaintiffs incorporates by referenced the First Cause o

23 Action herein and alleges as follows.

24      2.  Plaintiffs have performed all the conditions of the

25 contract that are required to be performed.  Plaintiffs remains rea

26 and willing to perform all of the terms of the contract applicable

27 Plaintiffs  and  receive  title  to  the  property  as  promised

28 defendants.

---

COMPLAINT FOR DAMAGES                        5

3.    Plaintiffs have no adequate remedy at law because the
contract is for an interest in real property, and pursuant to Civ
Code Section 3387 money damages are presumed inadequate for t
breach. Further, Plaintiffs have already invested $500,000 and
substantial amount of time regarding the property with defendants

4.    The aforementioned acts of defendants, were willful and
intentional and done with malice, oppression and fraud and Plaintif
is therefore entitled to exemplary and punitive damages.

**THIRD CAUSE OF ACTION AS TO ALL DEFENDANTS**

(FRAUD and DECEIT)

1.    Plaintiffs incorporate by referenced the First and Seco
Causes of Action, herein and alleges as follows.

2.    On or about March 1, 2005, defendants entered into
an extension of the original contract for a period of three years f
the purchase of an ARCO AM/PM Mini Market franchise and lease the re
property located at 2015 South Winchester Boulevard, Campbel
California defendants required plaintiffs to authorize electron
funds payments to defendants from plaintiffs' banking accoun
Defendants promised to deliver to plaintiffs gasoline products time
upon request and at reasonable prices as others they charge as we
as to deduct only money owed from plaintiffs' banking account fr
deliveries that were actually made and to correct any amoun
wrongfully deducted from Plaintiffs' banking account upon notic
Defendants falsely and fraudulently represented to plaintiffs th
defendants would credit plaintiffs' account for amounts wrongful
taken but have failed and continue not to do so.

3.    At the time defendants and each of them, made the promise
defendants had no intention of performing them.  Defendants and ea

COMPLAINT FOR DAMAGES                    6

1   of them, made intentional misrepresentations of material facts
2   Plaintiffs, knowing such statements were untrue with the intent
3   induct Plaintiffs to entering into the contract, continuing with t
4   contract and not terminating it all to their detriment.

5        4.    Plaintiffs are informed and believes that the promises we
6   made by defendants were false and done with the intent to
7   defraud  Plaintiffs  and  that  said  promises  and  acts  were  dc
8   maliciously and oppressively.

9        5.    Plaintiffs at the time these promises were made and at a
10  times herein mentioned took the actions alleged and was ignorant
11  defendants' secret intentions not to perform and Plaintiffs could n
12  in the exercise of reasonable diligence have discovered defendant
13  secret intention. In reliance on the promise of defendants, Plaintif
14  entered  into  the  contract  and  continued  with  the  contract  aft
15  defendants made misrepresentations of material facts that they wou
16  correct the problems.  If Plaintiffs had known of the actual intenti
17  of defendants and each of them, he would not have taken such actic

18       6.    Defendants failed to abide by their promises on March 1,
19  2005, by, among other things, such as failing to deliver gasoli
20  products after timely requests were made; failing to charge Plaintif
21  a reasonable costs for gasoline products as compared to other gasoli
22  stations in the area; wrongfully deducting money from Plaintiffs' ba
23  account for money not owed.   As a result of defendants acts and/
24  conduct, Plaintiffs is entitled to damages according to proof.

25       7.    The aforementioned acts of defendants, were willful and
26  intentional and done with malice, oppression and fraud and Plaintif
27  is therefore entitled to exemplary and punitive damages.

28

---

**COMPLAINT FOR DAMAGES**                    7

1       **FOURTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

2          (Breach of the Implied Covenant of Good Faith and Fair Dealing)

3          1.    Plaintiffs incorporates by reference the First through

4    Third Causes of Action, herein and allege as follows:

5          2.    On or about March 1, 2005, Plaintiffs and defendants

6    entered into a written agreement for an ARCO AM/PM Mini Mark

7    Franchise.

8          3.    By the terms of the agreement, plaintiffs paid $500,000

9    along with a renewal fee of $20,000 and other money to defendants f

10   the ARCO AM/PM Mini Market. Defendants promised to deliver gasoli

11   products to Plaintiffs in a timely manner,  lease real property

12   Plaintiffs; charge Plaintiffs reasonable prices for gasoline produc

13   and not charge others in the area less for gasoline products and on

14   transfer money from plaintiffs's banking account for deliveries th

15   actually occurred. Implied in the contract was a covenant

16   defendants that they would act in good faith and deal fairly wi

17   Plaintiffs and that they would do nothing to deprive Plaintiffs of t

18   benefits of the agreement.

19         4.    Plaintiffs and defendants had a special relationship in

20   that Plaintiffs were in a vulnerable position because they we

21   unsophisticated with the complexities of the transaction. Plaintif

22   relied upon the defendants and each of them and defendants were awa

23   of Plaintiffs' vulnerability and the usual measure of contract damag

24   provide no incentive for its continued performance under the contrac

25         5.    Plaintiffs performed their obligations under the contrac

26   and defendants breached their obligations under the contact

27   by failing to deliver gasoline products to Plaintiffs at all; by al

28   failing to timely deliver gasoline products; by electronical

COMPLAINT FOR DAMAGES                    8

1   transferring money from Plaintiffs' banking account for deliver:
2   that never occurred and by failing to charge Plaintiffs reasonal
3   prices for gasoline products as compared to other gasoline static
4   in close proximity as agreed on or about March 1, 2005.  These b
5   faith breaches were a violation of the implied covenant of good fai
6   and fair dealing in that defendants were in a superior positic
7   because Plaintiffs were especially vulnerable.  Plaintiffs had
8   immediate need for the real property which were set forth in :
9   contract.

10      7.   As a proximate result of the bad faith breach, by
11   defendants and each of them, of their obligations under the contra
12   as herein alleged, Plaintiffs have suffered damages in an amou
13   according to proof.

14      8.   As a further proximate result of the tortious breach of
15   the implied covenant of good faith and fair dealing by defendants a
16   each of them, as herein alleged, Plaintiffs sustained emotional a
17   mental distress, anguish, anxiety, sleeplessness and indignity all
18   their general damage in an additional sum according to proof.

19      9.   As a further proximate result of the tortious breach of t
20   implied covenant of good faith and fair dealing, by defendants a
21   each of them, Plaintiffs have incurred and will continue to incu
22   medical and related expenses.  The full amount of such expenses is n
23   known to Plaintiffs at this time, and Plaintiffs will move to ame
24   this complaint to state such amount when the same becomes known
25   their according to proof.

26      10.  The aforementioned acts of defendants, were willful and
27   intentional and done with malice, oppression and fraud and Plaintif
28   is therefore entitled to exemplary and punitive damages.

**COMPLAINT FOR DAMAGES**                9

**FIFTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

(Negligent Misrepresentation)

1.    Plaintiffs incorporates the First through Fourth Causes
Action and hereby allege as follows.

2.    Defendants and each of them, made the promises
and representations under the contract with no reasonable grounds f
believing them to be true, in that Plaintiffs are informed a
believes that defendants never intended to proceed with the contrac
charge plaintiffs gasoline products at an higher price than others
order to lessen competition and discriminate against plaintiffs wi
the intent to injure; wrongfully electronically transfer funds fr
plaintiffs' bank account and charge them for deliveries that nev
occurred.

3.    At all times herein mentioned, these representations we
made with the intent to defraud Plaintiffs in the manner here
alleged.

4.    Plaintiffs, at the time of these representations were ma
by defendants, and at the time Plaintiffs took the actions here
alleged, were ignorant of the falsity of defendants' representati
and believed them to be true.  In reliance on these representation
Plaintiffs were induced to enter into the contract and relied
defendants' statements and were justified because of the promises a
representations.

5.    As a proximate result of defendants' conduct, Plaintiff
have suffered damages in a sum according to proof.

**SIXTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

(Negligence)

1.    Plaintiffs incorporates by reference the First through

---

COMPLAINT FOR DAMAGES                    10

May 14 2008 5:11PM   HP⬛ SERJET FAX                                        p.12

Apr 11 2008 2:33PM   HP  ASERJET FAX                                      p.15

1 | Fifth Causes of Action herein and alleges.

2 |     2.   At all times herein mentioned, defendants and each of the
3 | owed a duty to Plaintiffs to perform under the contract on the agre
4 | upon date in a timely manner.

5 |     3.   Defendants and each of them, negligently, recklessly or
6 | carelessly knew or should have known that the defendants nev
7 | intended to proceed with the promises, terms and conditions of t
8 | contract and that their conduct would create an unreasonable risk
9 | harm and danger to persons and property.

10 |     4.   As a proximate cause of the negligence of defendants, a
11 | each of them, and the resulting harm, Plaintiffs were injured in the
12 | health, strength and activity, sustaining injuries to their body a
13 | shock and injury to their nervous system and person, all of whi
14 | injuries and damages have caused, and continue to cause Plaintif
15 | great physical, mental and nervous pain and suffering, loss of us
16 | enjoyment and profits all to Plaintiffs' general damage.

17 |     5.   As a further proximate result of the negligence
18 | defendants, and each of them, Plaintiffs were required to, and d
19 | employ physicians and surgeons for medical examination and treatme
20 | and incurred medical and hospital expenses. Plaintiffs will be oblig
21 | to incur further medical and hospital expenses in an amount present
22 | unknown.

23 |     6.   As a further proximate result of the negligence
24 | defendants, Plaintiffs were prevented from attending to their busine
25 | and lost profits and business and opportunities.

26 |           **SEVENTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

27 |              (Negligent Hiring and Supervision)

28 |     1.   Plaintiffs incorporate by reference the First through

COMPLAINT FOR DAMAGES           11

1   Sixth Causes of Action, as though set forth here in full.

2       2.   Defendants and each of them, knew or should have known th

3   the named defendants and DOES 1 to 50, were unfit for the positic

4   which they were hired.    Defendants and each of them, failed

5   properly supervise and train defendants and each of them and we

6   directly responsible for the harm to plaintiffs and as a result

7   said lack of training and supervision, for the acts of these named a

8   unnamed defendants.    The acts include the aforementioned.

9       3.   Defendants and each of them, ratified the acts of said

10  defendants and at all times herein mentioned, defendants were acti

11  within the course and scope of their employment or agency with t

12  other defendants.

13      4.   As a proximate result of the acts of defendants, and ea

14  of them,   Plaintiffs suffered extreme and severe mental anguis

15  emotional and physical pain and have been injured in their bodies a

16  minds.

17      5.   As a proximate result of defendants' negligent conduct,

18  Plaintiffs have suffered severe and extreme physical injuries, ment

19  and emotional distress all to their general damage.

20      6.   As a proximate result of defendants negligent conduct

21  Plaintiffs were unable for period of time, to attend operate :

22  business, lost profits and good will in a sum according to proof.

23          **EIGHTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

24          (Intentional Infliction of Emotional Distress)

25      1.   Plaintiffs incorporate by referenced the First through

26  Seven Causes of Action, as though set forth here in full.

27      2.   As a result of the wrongful, intentional and malicious

28  acts of defendants and each of them and the fright thereby caused

COMPLAINT FOR DAMAGES              12

1  Plaintiffs, he have suffered extreme and severe mental anguis
2  emotional distress and physical pain and have been injured to the
3  minds and bodies.

4      3.    As a proximate result of the acts of defendant, Plaintif
5  were unable for a period of time, to attend to their work and lo
6  earnings in a sum according to proof.  Plaintiffs also lost the us
7  possession, good will and profits.

8      4.    As a proximate result of defendants willful, wanton and
9  malicious conduct, Plaintiffs became terrified and suffered severe a
10 extreme mental and emotional distress, to Plaintiffs' general damag
11 according to proof.

12     5.    The aforementioned acts of defendants, were willful and
13 intentional and done with malice, oppression and fraud and Plainti
14 are therefore entitled to exemplary and punitive damages.

15              **NINTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

16          (Temporary Restraining Order, Preliminary Injunction,
                           Permanent Injunction)
17
18     1.    Plaintiffs incorporate their First through Eighth Causes
   Action as though set forth here in full.
19
20     2.    Defendants have seized Plaintiffs' franchise and real
   property  preventing  their  use,  operation  and  possession.  Unl
21
   restrained, defendants will continue to wrongfully possess Plaintif
22
   business and property and prevent it from operating as a busin
23
   earning income, profits, use, possession and control of the premis
24
   Their would be to Plaintiffs's great and irreparable injury, for wh
25
   pecuniary  compensation  would  not  afford  adequate  relief,  in  t
26
   Plaintiffs is legally the owner of the Property.
27
28     3.    An actual controversy have arisen and now exists betwee

---

COMPLAINT FOR DAMAGES                    13

1 | Plaintiffs  and  defendants  regarding  their  respective  rights
2 | duties.

3 | Plaintiffs contends he is the legal owner and a Judicial Declarat
4 | is necessary and appropriate at their time under all the circumstan
5 | so that Plaintiffs may determine their rights.

6 |                **TENTE CAUSE OF ACTION AS TO ALL DEFENDANTS**

7 |                          (Conspiracy)

8 |      1.    Plaintiffs incorporate by reference the First through
9 | Ninth Causes of Action herein and allege.

10 |      2.    Defendants and each of them, conspired to participate i:
11 | charging Plaintiffs unreasonable higher prices for gasoline produ·
12 | as compared to lower prices they charged others in close proximity
13 | plaintiffs' gasoline station, the failure to deliver gasoline produ.
14 | and wrongfully deducting money from Plaintiffs' bank account ba:
15 | upon undelivered gasoline products in a fraudulent scheme to cl
16 | Plaintiffs' business in order to acquire their franchise and r
17 | property to generate money and other benefits to them, financial .
18 | otherwise, to the total disregard of Plaintiffs' rights causing sev
19 | emotional distress and losses to Plaintiffs.

20 |      3.    None of the transactions could be consummated without
21 | Plaintiffs' authority unless each of the Defendants breached thei:
22 | duties and/or acted in a knowing or grossly negligent manner to t
23 | detriment of Plaintiffs, and thus foil a system of checks and balan·
24 | consisting of the normal and standard custom in a franchisee ε
25 | franchisor gasoline transaction.   Completion of the transactic
26 | herein  require  simultaneous  failures  of  all  Defendants  whi
27 | Plaintiffs are informed and believe, that defendants herein intenc
28 | to and so orchestrated so as to defraud Plaintiffs, with the expre

COMPLAINT FOR DAMAGES                14.

1  and/or implicit knowledge and concurrence of each of the defendan

2      4.    As a consequence of defendants' misconduct, Plaintiffs h

3  been damaged in an amount yet to be ascertained, including suffer

4  mental and physical distress, plus special damages in an amount to

5  determined.

6      5.    Plaintiffs are also entitled to restitution from Defenda

7  for all losses stemming from their unlawful conduct.    Defenda

8  committed such offenses and engaged in such despicable condu

9  including fraud and conscious disregard of the rights of Plaintif

10  such that punitive damages should be assessed against them.

11          **ELEVENTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

12              (Unfair and Deceptive Business Practices)

13      1.    Plaintiffs incorporate by reference the First through

14  Tenth Causes of Action herein and allege.

15      2.    Defendants and each of them, engaged in unfair and

16  deceptive business practices in providing services to Plainti

17  herein. Defendants misrepresented their authority, misrepresented

18  contract provisions, and process for correcting problems

19  defendants, and engaged in an overall pattern and scheme of defraud

20  members of the public including Plaintiffs, into relying upon th

21  professional expertise while in fact Defendants completely disregar

22  the rights of Plaintiffs and put together and continue to operate

23  contract and/or transactions solely for their own benefit and se

24  interest despite their roles as fiduciaries and/or professionals w

25  duties of due care and loyalty to Plaintiffs who justifiably rel

26  upon defendants.

27      3.    As a consequence of defendants' misconduct, Plaintiffs h

28  been damaged in an amount yet to be ascertained, including suffer

COMPLAINT FOR DAMAGES                15

1   mental and physical distress, plus special damages in an amount to

2   determined.

3      4.     Plaintiffs are also entitled to restitution from Defenda

4   for all losses stemming from their unlawful conduct.    Defenda

5   committed such offenses and engaged in such despicable condu

6   including fraud and conscious disregard of the rights of Plaintif

7   such that punitive damages should be assessed against them.

8             **TWELFTH CAUSE OF ACTION AS TO ALL DEFENDANTS**

9    (Unfair Business Practices Pursuant to Business & Profession Cod

10   Section 21200)

11      1.     Plaintiffs incorporate by reference the First through

12   Tenth Causes of Action herein and allege.

13      2.     At all times herein mentioned, defendants and each of th

14   were the agents, partners, servants and employees of the ot

15   defendants and doing the things hereinafter alleged were acting wit

16   the course and scope of the agency, agreement or services and with

17   permission and consent of defendants and each of them.

18      3.     At all times herein mentioned, defendants and each of th

19   engaged in a pattern of conduct with the intent to either directly

20   indirectly discriminate against plaintiffs in the higher price t

21   charged to plaintiffs than to other purchasers of motor vehicle fu

22   or oils of like grade and quality to lessen competition and to inj

23   and/or destroy plaintiffs' business within the meaning of Business

24   Professions Code Section   21200.

25      4.     As a proximate result of the acts of defendants and each

26   them, as herein alleged, plaintiffs were required to and did emp

27   physicians and surgeons for medical examination, treatment and c

28   for their injuries and did incur medical and incidental expense, l

COMPLAINT FOR DAMAGES           16

1  of business, loss of use, loss profits and other damages.

2       5.    As a further proximate result of the acts of defendants

3  each of them, as herein alleged, plaintiffs have incurred and w

4  incur, further medical and incidental expenses for the care

5  treatment of these injuries as well as lost business, goodwill, l.

6  of use and lost profits and other damages, the exact amount of wh

7  is unknown at the present time.

8       6.    The acts and conduct of defendants and each of them as

9  herein alleged were willful, wanton, malicious and oppressive

10  justify the awarding of punitive damages.

11                    **THIRTEENTH CAUSE OF ACTION**

12       (Unruh Civil Rights Violation Civil Code Sections 51 & 52)

13       1.    Plaintiffs incorporate by reference the First through

14  Tenth Causes of Action herein and allege.

15       2.    At all times herein mentioned, defendants and each of th

16  were the agents, partners, servants and employees of the ot

17  defendants and doing the things hereinafter alleged were acting wit

18  the course and scope of the agency, agreement or services and with

19  permission and consent of defendants and each of them.

20       3.    At all times herein mentioned, defendants and each of th

21  were the owners or proprietors or distributors of a busin

22  establishment engaged is the business of manufacturing, selling

23  distributing gasoline products commonly known as BP WEST CO

24  PRODUCTS, LLC dba ARCO PRODUCTS COMPANY, situated in the City of

25  Jose, Santa Clara, County California.

26       4.    Plaintiff OMER KASSA at all times herein mentioned is o

27  Ethiopian descent and a member of the black race.

28       5.    Plaintiffs are informed and believe and thereon alleges

---

COMPLAINT FOR DAMAGES                    17

1 that defendants and each of them, denied to plaintiffs servic
2 advantages and privileges provided to other persons as alleged abo
3 on account of plaintiffs' race, ancestry or national origin in t
4 defendants discriminated against plaintiffs by charging them hig
5 prices for gasoline products than others in the area, thro
6 electronic transfer for gasoline deliveries that never occurred;
7 charging plaintiffs a higher price for gasoline products than oth
8 in the area and by refusing to discuss these and other problems and
9 seizing and taking possession of plaintiffs' business.

10     6.  Defendants' conduct is wrongful and continues in that
11 defendants remain in possession of plaintiffs' business. Defenda
12 continue to deny plaintiffs request to return the money back i
13 their bank account and to charge plaintiffs' the same amount
14 gasoline products as others in the area which denies plainti
15 because of their race, ancestry or national origin the full and eq
16 advantages, privileges and services of the aforementioned busines

17     7.  Unless defendants and each of them are restrained by a
18 preliminary and permanent injunction by this Court, plaintif
19 injuries will be great and irreparable. Plaintiffs have no pla
20 speedy and adequate remedy at law because of the loss and potent
21 destruction of their business and it would be difficult if
22 impossible for plaintiffs to determine the precise amount of dam
23 which they will suffer if defendants' conduct is not restrained.

24     8.  As a proximate result of the wrongful acts of defendant
25 plaintiffs are entitled to recovery statutory damages up to a maxi
26 of three times the amount of actual damages, but not less than $2
27 plus attorney's fees, as provided by Section 52 of the Civil
28 Code.

COMPLAINT FOR DAMAGES                    18

## FOURTEENTH CAUSE OF ACTION

(Violation of Petroleum Marketing Practices Act

15 U.S.C. §§ 2801-2806)

1.    Plaintiffs incorporate by reference the First through Thirteenth Causes of Action herein and allege.

2.    At all times herein mentioned, plaintiffs were franchis and defendants and each of them were franchisors engaged in the sa consignment or distribution of motor fuel or gasoline products.

3.    Plaintiffs are informed and believe and thereby allege that defendants and each of them in wrongfully, intentional willfully, purposefully, maliciously and in bad faith failed to cre plaintiffs' banking account for non-deliveries and return the mo wrongfully withdrawn; by charging plaintiffs' higher prices for th gasoline products than others in the same area and refusing to m adjustments to plaintiffs' account; by failing to change provisions of the renewal franchise agreement pertaining to r increases, fees increases, etc., and by threatening plainti independence with termination and/or non-renewal of the franch agreement if plaintiffs failed to comply with defendants' demands

4.    That defendants demand that plaintiffs renewal the contr or face termination amounts to a contract of adhesion and termination or non-renewal disrupts the reasonable expectation plaintiffs to the franchise relationship on a continuous basis.

5.    As a consequence of defendants' misconduct, Plaintiffs h been damaged in an amount yet to be ascertained, including suffer mental and physical distress, plus special damages in an amount to determined.

6.    Plaintiffs are also entitled to restitution from Defenda

---

**COMPLAINT FOR DAMAGES**                          19

for all losses stemming from their unlawful conduct.   Defenda

committed such offenses and engaged in such despicable condu

including fraud and conscious disregard of the rights of Plaintif

such that punitive damages should be assessed against them.

WHEREFORE, Plaintiffs pray for judgment as follows:

1.   For general damages;

2.   For compensatory damages;

3.   For special damages according to proof;

4    For an Order that defendants specifically perform

requirements of the Contract between plaintiffs and defendants ente

into on or about March 1, 2005.

5.   For exemplary and punitive damages according to proof;

6.   For loss of use and enjoyment according to proof;

7.   For a temporary restraining order, a preliminary injuncti

a permanent injunction all enjoining defendants, their agen

attorneys and representatives, and all other persons acting in conc

or participating with them, from selling or transferring the Prope

8.   For costs of suit herein incurred;

9.   For a reasonable attorney's fee in a sum according to

proof;

10.  For interest at the legal rate on the foregoing sum

pursuant to Section 3336 of the Civil Code, from March 1, 2008;

11.  For such other and further relief as the court may deem

proper.

DATED:   April 11, 2008

GEORGE HOLLAND, ESQ.
Attorneys for Plaintiffs

kassa-1st-amended-complaint

COMPLAINT FOR DAMAGES                    20

**VERIFICATION**

I, OMER KASSA, declare:

That I am the president of H & O, Inc and have read the following:

**COMPLAINT FOR DAMAGES**

I, the undersigned have read the foregoing complaint and it is true of my own knowledge, exc
as to those matter stated on information and belief, and as to those matters, I believe them to be tru

I declare under the penalty of perjury under the laws of the State of California that the forego
is true and correct.

Dated: April 3, 2008

_____

OMER KASSA
President of H & O, Inc.

1

(ENDORSED)

**PROOF OF SERVICE**    2008 APR 11  PM 3: 25
C.C.P. SECTIONS 1013a, 2015.5

KURI TURPL...CEO
SUPERIOR COURT
SAN M. C. COUNTY
BY_____DEPUTY

I am a citizen of the United States and employed in the Coun
of Alameda; I am over the age of eighteen years and not a party to t
within action; my business address is 1970 Broadway, Suite 10
Oakland, California, 94612.

On April 11, 2008, I served a copy of the attached:

**FIRST AMENDED COMPLAINT AND SUMMONS**

X⃠    by placing said copy in a sealed envelope with posta
thereon fully prepaid, following ordinary busine
practices, said correspondence to be deposited with t
United States Postal Service, that same day in the ordina
course of business, at Oakland, California addressed as s
forth below.

_____    by personally delivering a true copy thereof to t
person(s) at the address(es) as set forth below.

_____    by sending a copy to Facsimile number _____
the person at the address(es) as set forth below.

Kurt Osenbaugh, Esq.
Deborah Yoon Jones, Eq.
WESTON, BENSHOOF, ROCHEFORT, et al.
333 South Hope Street, 16th Flr.
Los Angeles, CA 90071

I declare under penalty of perjury under the laws of the Sta
of California that the foregoing is true and correct.

Dated: April 11, 2008

_____
George Holland, Jr.

1

# EXHIBIT G

Mar 18 2008 9:56AM    LASERJET FAX                                    p.2

1  GEORGE HOLLAND, ESQ., , State Bar No. 55740
   **LAW OFFICES OF GEORGE HOLLAND**
2  1970 Broadway, Suite 1030
   Oakland, California  94612
3  Telephone:  (510) 465-4100

4  Attorneys for Plaintiffs
   OMER KASSA, individually, OMER KASSA
5  dba H & O INC., and H & O, INC.

6

7

8                    SUPERIOR COURT OF CALIFORNIA
9
                      COUNTY OF SANTA CLARA
10
                      UNLIMITED JURISDICTION
11

12 OMER  KASSA,  individually,  OMER)      No.  108CIV107979
   KASSA dba H & O, INC., and H & O,)
13 INC.                             )      **EX    PARTE    APPLICATION    AND**
                                    )      **SUPPORTING DECLARATION FOR A**
14                                  )      **TEMPORARY   RESTRAINING   ORDER**
                Plaintiffs,         )      **AND   ORDER   TO   SHOW   CAUSE   RE**
15                                  )      **PRELIMINARY INJUNCTION**
   vs.                              )
16                                  )      Date: March 19, 2008
   BP WEST COAST PRODUCTS, LLC., dba)      Time: 8:15 a.m.
17 ARCO PRODUCTS COMPANY and DOES 1)       Dept:  104
   to 50,                           )
18                                  )      Action Filed: March 12, 2008
                                    )
19           Defendants.

20 ────────────────────────────────────

21      Plaintiffs OMER KASSA individually, OMER KASSA dba H & O, INC

22 and H & O, INC., apply for a temporary restraining order restraini

23 defendants BP WEST COAST PRODUCTS, LLC., dba ARCO PRODUCTS COMPANY a

24 DOES 1 to 50, from the seizing, closing and preventing the furth

25 use, possession, operation and consequentially causing the destructi

26 of their ARCO AM/PM gasoline station and mini-market business locat

27 at 2015 South Winchester Boulevard, San Jose, California that is t

28 subject of the lawsuit and scheduled for a hearing on March 19, 20

─────────────────────────────────────────────────────

EX PARTE APPLICATION                    1

1   at 8:15 a.m., and for an order to show cause for a prelimina:
2   injunction enjoining defendants and their agents, servants, a:
3   employees from performing the above described acts during the penden
4   of this action.  This application is made on the grounds that:

5          a.    The complaint shows that the subject matter of t]
6                agreement is for the use, operation and possession of
7                gasoline station, mini-market and real property a:
8                plaintiffs are entitled to the relief demanded, and t
9                relief demanded consists of restraining the commission
10               continuance of the seizure of the business and closure
11               the real property located at 2015 South Winchest
12               Boulevard, Campbell, California on March 5, 2008 at 8:
13               a.m.;

14         b.    The complaint shows that the commission or continuance
15               the act by defendants of closing the business during t
16               litigation would cause loss of use, loss profit
17               possession, goodwill and destruction of the business th
18               would cause plaintiffs great or irreparable harm;

19         c.    The complaint shows that defendants have discriminat
20               against plaintiffs by charging them higher prices for mot
21               vehicle fuel and oil of like quality and grade produc
22               versus what they charge others in close proximity.

23         d.    That during the litigation, defendants have seized t
24               business and real property that is the subject of t
25               dispute in violation of the rights of plaintiffs a
26               tending to render a judgment ineffectual;

27         e.    There is a dispute regarding the deliveries, ren
28               royalties and pricing in the underlying litigation;

EX PARTE APPLICATION                    2

1      f.    The restraint is necessary to prevent the continued seizur
2            of the business, closure, preventing the use of rea
3            property and destruction of the business; and,
4      q.    To prevent the seizure and closure of plaintiffs' busines
5            because the promised service is unique and special whic
6            gives it peculiar value.
7      h.    That during litigation, the parties are to perform their
8            promises, terms, conditions and obligations under th
9            contract entered into on or about March 1, 2005.
10     In addition, irreparable harm will result to plaintiffs befo
11   the matter can be heard on notice.
12     Plaintiffs have not previously applied to any judicial offic
13   for similar relief.
14     This application is based upon the complaint on file in this ca:
15   and on the memorandum of points and authorities and declarations
16   support of the motion.
17
18   DATED: March /2, 2008                _____
19                                        GEORGE HOLLAND, ESQ.
                                          Attorney for Plaintiffs
20
21
22
23
24
25   dc\kassa-ex-parte
26
27
28

EX PARTE APPLICATION                      3

1
2                        PROOF OF SERVICE
                      C.C.P. SECTIONS 1013a, 2015.5
3

4          I am a citizen of the United States and employed in the Count

5    of Alameda; I am over the age of eighteen years and not a party to th

6    within action; my business address is 1970 Broadway, Suite 1030

7    Oakland, California, 94612.

           On March 17, 2008, I served a copy of the attached:
8
     **EX PARTE APPLICATION AND SUPPORTING DECLARATION FOR A TEMPORAR**
9    **RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
     **MEMORANDUM OF POINTS IN AUTHORITIES IN SUPPORT, DECLARATION OF OMA**
10   **KASSA, DECLARATION OF GEORGE HOLLAND AND ORDER GRANTING**

11   _____  __        by placing said copy in a sealed envelope with postac
                      thereon   fully   prepaid,   following   ordinary   busines
12                    practices,  said  correspondence  to  be  deposited  with  th
                      United States Postal Service, that same day in the ordinar
13                    course of business, at Oakland, California addressed as se
                      forth below.
14
     _____          by  personally  delivering  a  true  copy  thereof  to  th
15                    person(s) at the address(es) as set forth below.

16       X            by sending a copy to Facsimile number ___ ___
                      the person at the address(es) as set forth below.
17

18   Derek Tomita
     Director of Franchise Operations
19   BP West Coast Products, LLC
     4 Centerpointe Drive
20   La Palma, CA 90623
     **VIA FACSIMILE (714) 228-6570**
21

22   Thomas Reeder
     Sales Manager
     BP West Coast Products, LLC
23   6 Centerpointe Drive
     La Palma, CA 90623
24   **VIA FACSIMILE (408) 848-4425**

25   ///

26
     ///
27

28   ///

                                    1

1     I declare under penalty of perjury under the laws of the State

2 of California that the foregoing is true and correct.

3 Dated: March 12, 2008

4

5                   George Holland Jr.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1 | GEORGE HOLLAND, ESQ., , State Bar No. 55740
**LAW OFFICES OF GEORGE HOLLAND**
2 | 1970 Broadway, Suite 1030
Oakland, California 94612
3 | Telephone: (510) 465-4100

4 | Attorneys for Plaintiffs
OMER KASSA, individually, OMER KASSA
5 | dba H & O INC., and H & O, INC.

6

7

8
                        SUPERIOR COURT OF CALIFORNIA
9
                          COUNTY OF SANTA CLARA
10
                          UNLIMITED JURISDICTION
11
      OMER  KASSA,  individually,  OMER)    No.  108CIV107979
12 | KASSA dba H & O, INC., and H & O,)
      INC.                            )    **MEMORANDUM   OF   POINTS   AND**
13 |                                   )    **AUTHORITIES  IN  SUPPORT  OF**
                                      )    **APPLICATION  FOR  A  TEMPORARY**
14 |            Plaintiffs,            )    **RESTRAINING ORDER AND ORDER**
                                      )    **TO SHOW CAUSE RE PRELIMINARY**
15 | vs.                              )    **INJUNCTION**
                                      )
16 | BP WEST COAST PRODUCTS, LLC., dba)    Date: March 19, 2008
      ARCO PRODUCTS COMPANY and DOES 1)    Time: 8:15 a.m.
17 | to 50,                           )    Dept: 104
                                      )
18 |                                       Action Filed: March 12, 2008
              Defendants.
19

20 | _____

                          **I. ARGUMENT**

21 |    **A.    THE COURT SHOULD GRANT THE TEMPORARY RESTRAINING ORDER**
              **PLAINTIFFS BECAUSE THEIR RIGHT TO RELIEF IS APPARENT FR**
22 |          **THE   COMPLAINT   AND   RESTRAINING   DEFENDANTS   FROM   THE**
              **CONTINUED SEIZURE OF PLAINTIFFS' BUSINESS AND PROPERTY**
23 |          **NECESSARY**

24 |    The Court should impose an injunction when it appears from t

25 | compliant that plaintiffs are entitled to the relief demanded and t

26 | relief, or any part thereof consists of restraining the commission

27 | continuance of an act. <u>Dingley v. Buckner</u> (1909) 11 Cal.App. 18

28 | _____

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF                    1
EX PARTE APPLICATION

183-184. 104 P. 478.

An injunction should also be granted if plaintiffs demand an relief from a restraining the continuance of an act for the possessio of property, interference with the operation of and destruction of business. Id.

The Dingley Court stated that"

"No proceeding at law could afford an adequate remedy fo the destruction of one's business". Id. at 183-184.

Similarly, here plaintiffs' complaint demands relief fro restraining defendants from their continual wrongful seizure possession and closure of plaintiffs' AM/PM Mini Market business o March 4, 2008. Defendants act has interfered with plaintiffs operation of their business and if continued will result in th destruction of the business.

Plaintiffs have no adequate remedy at law for defendants seizur and possession of their business. Therefore, the Court should impos and injunction to restrain defendants from interfering an consequently destroying plaintiffs' business.

B. **THE COURT SHOULD GRANT THE INJUNCTION BECAUSE PLAINTIFF HAVE NO ADEQUATE REMEDY AT LAW FOR DEFENDANTS SEIZURE AN POSSESSION OF THEIR BUSINESS**

An injunction should be granted when pecuniary compensation woul not afford an adequate relief. C.C.P. § 526(a)(4); Dingley, supra Injunctions should also be granted when it would be extremel difficult to ascertain the amount of compensation that would affor adequate relief. C.C.P. § 526(a)(5); Union Oil Co. v. Domengeau (1930) 30 Cal.App.2d 266, 270-271.

Clearly, there is no adequate remedy at law for the seizure

1  possession and closures of plaintiffs business by defendants.   I

2  would be extremely difficult for plaintiffs to ascertain the amour

3  of loss use, profits, good will and compensation that would affor

4  adequate relief based upon defendants act.

5       Accordingly, since there is no adequate remedy at law, the Cour

6  should grant plaintiffs requests for injunctive relief.

7  C.   **AN INJUNCTION SHOULD BE GRANTED BECAUSE DEFENDANT
       CONTINUED SEIZURE AND POSSESSION OF PLAINTIFFS' BUSINES**
8      **WOULD PRODUCE WASTE AND IRREPARABLE INJURY TO PLAINTIFF
       DURING LITIGATION**
9
10      The Court should grant an injunction when it appears from th

11  complaint or declarations that the commission or continuance of som

12  act during the litigation would produce waste, or great or irreparabl

13  injury to a party to litigation. Volpicelli v. Jared Sydney Torranc

14  Memorial Hosp. (1980) 109 Cal.App.3d 242.

15      An irreparable injury is a species of damages, whether great, o

16  small that ought not to be submitted to on the one hand or inflicte

17  to on the other. Wind v. Herbert (1960) 186 Cal.App.2d 276, 285.

18      Plaintiffs' complaint and the supporting declarations to thi

19  motion, show that defendants continuance of the seizure, possessio

20  and closure of their AM/PM businees by defendants would produce grea

21  or irreparable injury since the business is closed, losing profits

22  goodwill and ultimately destroying the business.

23      In addition, defendants act of seizure, possession, closure an

24  consequently destruction of plaintiffs' business produces wast

25  because the real property is unoccupied and no business is bein

26  conducted on the premises thus losing years of goodwill and othe

27  damages that plaintiffs have developed in the community for the pas

28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
EX PARTE APPLICATION              3

1  several years.

2      Therefore, the Court should impose an injunction against

3  defendants preventing the waste and irreparable harm it has and

4  continues to cause plaintiffs.

5                    **II. CONCLUSION**

6      For the foregoing reasons, plaintiffs' ex parte application for

7  a temporary restraining order and preliminary injunction restraining

8  defendants from seizure, possession and closure of plaintiffs

9  business should be granted.

10

11

12  DATED: March 12, 2008

13                              GEORGE HOLLAND, ESQ.
                                Attorney for Plaintiffs
14

15

16

17

18

19  dc:\kassa-ex-parte

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
EX PARTE APPLICATION                    4

# EXHIBIT H

ENDORSED FILED

08 MAR 21  AM 9:18

1  KURT OSENBAUGH (State Bar No. 106132)
   DEBORAH YOON JONES (State Bar No. 178127)
2  MacKENZIE E. HUNT (State Bar No. 251127)
   **WESTON, BENSHOOF, ROCHEFORT,**
3      **RUBALCAVA & MacCUISH LLP**
   333 South Hope Street
4  Sixteenth Floor
   Los Angeles, California 90071
5  Telephone: (213) 576-1000
   Facsimile: (213) 576-1100
6
   Attorneys for Specially Appearing Defendant
7  BP WEST COAST PRODUCTS LLC

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF SANTA CLARA

10

11 | OMER KASSA individually; OMER KASSA | Case No.: 108CV107979
   | dba H & O, INC., and H & O, INC.,
12 |                                      | ***EX PARTE* APPLICATION OF**
   |         Plaintiffs,                  | **SPECIALLY APPEARING**
13 |                                      | **DEFENDANT BP WEST COAST**
   |  v.                                  | **PRODUCTS LLC TO DISSOLVE**
14 |                                      | **ORDER GRANTING TEMPORARY**
   | BP WEST COAST PRODUCTS, LLC, dba     | **RESTRAINING ORDER AND ORDER**
15 | ARCO PRODUCTS COMPANY and DOES 1     | **TO SHOW CAUSE RE PRELIMINARY**
   | to 50,                               | **INJUNCTION; MEMORANDUM OF**
16 |                                      | **POINTS AND AUTHORITIES IN**
   |         Defendants.                  | **SUPPORT THEREOF**
17 |                                      |
   |                                      | [Filed concurrently with Declarations of
18 |                                      | Deborah Yoon Jones, Brad Christensen,
   |                                      | Thomas L. Reeder, and Derek Tomita; and
19 |                                      | [Proposed] Order.]

20                                         Date: March 24, 2008
                                           Time: 8:15 a.m.
21                                         Dept.: 22

22                                             Honorable Kevin J. Murphy

23                                         Filing Date:  March 12, 2008.

24

25

26

27

28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

2    **PLEASE TAKE NOTICE** that on March 24, 2008, at 8:15 a.m., or as soon

3    thereafter as the matter may be heard, in Department 22 of the above-entitled Court, located

4    at 161 N. First Street, San Jose, California, specially appearing defendant BP West Coast

5    Products LLC ("BPWCP"), will apply *ex parte* for an order to dissolve the March 19, 2008

6    Order Granting Temporary Restraining Order and Order to Show Cause Re Preliminary

7    Injunction ("TRO") issued in favor of plaintiffs Omer Kassa and H&O, Inc. (collectively,

8    "Kassa").

9    BPWCP's *Ex Parte* Application should be granted and the TRO should be

10   dissolved immediately because:

11   •    The TRO does not preserve the status quo, but it is an improper

12   mandatory injunction requiring BPWCP to reinstate Kassa in a closed service station after

13   the expiration of his lease of BPWCP-owned facilities.  The TRO also forces BPWCP to

14   continue doing business with a franchisee which has refused to renew the relevant franchise

15   agreements and currently owes BPWCP over $35,000.  The gasoline station facility was

16   boarded up and shut down on or about March 4, 2008;

17   •    Kassa's TRO application was untimely as Kassa knew for months that

18   the franchise was going to be nonrenewed during which time Kassa had sufficient

19   opportunity to seek injunctive relief but did not.  Kassa refused to renew the relevant

20   franchise agreements, spent several days moving their personal property and merchandise off

21   the property, and waited until BPWCP expended thousands of dollars to board up and fence

22   the property before seeking *ex parte* injunctive relief;

23   •    Kassa provided <u>no</u> advance notice to BPWCP prior to the hearing on the

24   *ex parte* application; and

25   •    The Petroleum Marketing Practices Act, 38 U.S.C. §§ 2801 *et seq.*

26   ("PMPA") exclusively governs the termination and nonrenewal of service station franchise

27   agreements and such a nonrenewal cannot be enjoined pursuant to the state law claims stated

28

1

1  by Kassa.  Indeed, <u>Kassa alleges no violation of the PMPA and California authorities are</u>

2  <u>clear that the franchise nonrenewal cannot be enjoined</u>.  Moreover, pursuant to the franchise

3  agreements and the PMPA, BPWCP had every right to nonrenew Kassa's franchise

4  agreements.

5          BPWCP's counsel provided notice to plaintiff's counsel of this *Ex Parte*

6  Application via facsimile and U.S. Mail on March 20, 2008 at 2:47 p.m.. (See Jones Decl., ¶

7  4, Exh. A.)  BPWCP's counsel also spoke with Plaintiffs' counsel over the telephone on

8  March 20, 2008 concerning the *Ex Parte* Application. (*Id* at ¶ 5.)  Plaintiffs will oppose the

9  *Ex Parte* Application. (*Id.*)

10          This *Ex Parte* Application is made pursuant to California Rules of Court, Rule

11  3.1202(c), as well as other applicable California statutory and legal authority.  Further, this

12  *Ex Parte* Application is based upon this notice, the attached Memorandum of Points and

13  Authorities, the Declarations of Deborah Yoon Jones, Brad S. Christensen, Thomas L.

14  Reeder, and Derek Tomita filed concurrently herewith, the files and records in this action,

15  and on such evidence and argument as may be presented at the time of the hearing of this

16  motion.

17

18  DATED: March 23, 2008        Respectfully submitted,

19                         KURT OSENBAUGH
                       DEBORAH YOON JONES

20                         MacKENZIE E. HUNT
                       **WESTON, BENSHOOF, ROCHEFORT,**

21                          **RUBALCAVA & MacCUISH LLP**

22

23                             Deborah Yoon Jones

24                         Attorneys for Specially Appearing Defendant
                       BP WEST COAST PRODUCTS LLC

25

26

27

28

EX PARTE APPLICATION TO DISSOLVE ORDER GRANTING TRO AND OSC RE PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1143644.1

1 | <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2 | I.    **INTRODUCTION**

3 |       BP West Coast Products LLC ("BPWCP") is specially appearing to implore
4 | this Court to dissolve the TRO which was so wrongfully entered against it on March 19,
5 | 2008. Not only was BPWCP deprived of any opportunity to defend itself at the hearing due
6 | to the plaintiffs' inadequate and improper notice and service attempts of the TRO papers,
7 | BPWCP was unable to present numerous facts which the plaintiffs neglected to apprise the
8 | Court of and which support a dissolution of the TRO.

9 |       This lawsuit involves a franchise relationship concerning a BPWCP-owned
10 | ARCO-branded gasoline station and an am/pm mini market. Plaintiffs leased the property
11 | and facilities from BPWCP and operated the franchise pursuant to agreements, which
12 | expired on March 1, 2008. Although BPWCP notified plaintiffs <u>in January 2008</u> about the
13 | renewal requirements and the need to sign new lease and franchise agreements by February
14 | 2008, plaintiffs refused to sign the agreements and let the franchise expire. The plaintiffs
15 | moved out of the station, which has been boarded up and closed since March 4, 2008.
16 | Plaintiffs now assert various claims which pertain to the franchise nonrenewal, which should
17 | be brought under the Petroleum Marketing Practices Act, 2& U.S.C. §§ 2801, *et seq.*
18 | ("PMPA"). The PMPA specifically governs gasoline franchise relationships and their
19 | termination and nonrenewal.

20 |       In any event, the plaintiffs waited until March 19, 2008 to apply *ex parte* for a
21 | TRO which requires BPWCP to reopen the station and allow plaintiffs to operate the
22 | business. Of course, the plaintiffs neglected to inform the Court of significant facts that
23 | justify the immediate dissolution of the TRO. The plaintiffs failed to explain that pursuant to
24 | the terms of the written franchise agreements (as well as the governing PMPA), BPWCP had
25 | every right to nonrenew the franchise given the expiration of the former franchise
26 | agreements and plaintiffs' refusal to agree to the terms and conditions of the new lease and
27 | franchise agreements. BPWCP also believes that the Court was misled into believing that

28 |

1

1   preserving the status quo involved reinstating the plaintiffs as operating franchisees.

2   However, it is undisputed that the station closed on March 4, 2008, and the plaintiffs

3   removed all of their belongings and merchandise as of March 11, 2008. The plaintiffs also

4   failed to show irreparable injury given their delay in seeking injunctive relief. Plaintiffs

5   admittedly were aware of the nonrenewal and expiration of the franchise agreements for

6   nearly 3 months. They waited until after BPWCP made numerous efforts to renew the

7   franchise agreements and ultimately closed the station before bringing the request for

8   injunctive relief.

9          Finally, BPWCP was never afforded the opportunity to defend itself at the

10  TRO hearing given Kassa's procedurally deficient and improper notice and service of the

11  TRO application. The TRO papers were sent via facsimile at the last possible moment to

12  two BPWCP employees who never received the documents. Notwithstanding the fact that

13  there is no agreement by BPWCP to accept any documents via facsimile in this matter

14  (indeed BPWCP has yet to be properly served with the Summons and Complaint), Kassa

15  used incorrect facsimile numbers for the individuals. As a result, BPWCP did not become

16  aware of the TRO application until over 8 hours after the hearing had taken place. Although

17  Kassa had cell phone numbers for certain BPWCP employees who would have, at least, had

18  an opportunity to inform BPWCP's legal counsel of the pending application, Kassa failed to

19  make a good faith effort to inform BPWCP of the TRO proceedings. The TRO papers were

20  further problematic as they failed to indicate a specific address where the hearing was to take

21  place and also incorrectly identified the department. In sum, Kassa made it impossible for

22  BPWCP to defend itself at the TRO hearing. Given such misleading and bad faith tactics,

23  the TRO should be dissolved.

24

25

26

27

28

EX PARTE APPLICATION TO DISSOLVE ORDER GRANTING TRO AND OSC RE PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1143644.1

II.    **FACTUAL BACKGROUND**

A.    **Kassa's Franchise Relationship Was Governed By Agreements That Expired on March 1, 2008**

Plaintiffs Omer Kassa and H&O, Inc. ("Kassa" or "Plaintiffs") were the franchisee/lessee operators of the ARCO-branded gasoline station and am/pm Mini Market located at 2015 Winchester Road, Campbell, California 95008 ("Station"). (Declaration of Brad Christensen filed concurrently herewith ("Christensen Decl."), ¶¶ 2 and 3.) An am/pm Lease PMPA Franchise Agreement and am/pm Mini Market Agreement effective March 1, 2005 (collectively, "Franchise Agreements") governed the franchise relationship between Kassa and BPWCP. The Franchise Agreements included a lease of the BPWCP-owned gasoline station and convenience store and a gasoline supply agreement, which were set to expire on March 1, 2008. (*Id.*, Exhs. A and B).

B.    **Kassa Refused to Enter Into a New Lease and Franchise Agreements with BPWCP**

Given the Franchise Agreements were set to expire on March 1, 2008, on January 8, 2008, BPWCP delivered to Kassa the 45 Day Renewal Letter and proposed new lease agreements ("Renewal Offer"). (Christensen Decl., ¶ 4, Exh. C.) Mr. Kassa acknowledged receipt of the Renewal Offer on January 8, 2008. (*Id.*) Pursuant to the Renewal Offer, Kassa was required to return the new Lease Agreements with notarized signatures to BPWCP by February 18, 2008. (*Id.*)

During telephone conversations and face-to-face meetings with Mr. Kassa on January 8, 14, 17, 22, 29 and February 6, 11, and 21, BPWCP's Brad Christensen advised Mr. Kassa that the renewal paperwork needed to be signed and submitted in order for Kassa to continue the franchise relationship with BPWCP. (Christensen Decl., ¶ 5.) Mr. Christensen even met with Mr. Kassa after the deadline of February 18, 2008, to provide Kassa with a further opportunity to sign the new Lease and Franchise Agreements. (*Id.*) Mr. Kassa did not return the signed Renewal Offer and disagreed with the increased

3

1143644.1

1  franchise fee and rent provisions. (*Id.*) During these numerous meetings, Mr. Christensen

2  explained to Mr. Kassa that the new terms and conditions of the Renewal Offer existed in all

3  BP-owned or leased properties. (*Id.*) Mr. Christensen also explained that if Kassa did not

4  sign the new lease agreements that lease and Franchise Agreements would expire. (*Id.*)

5          On February 29, 2008, BPWCP hand delivered an "Acknowledgement of

6  Nonrenewal" ("Nonrenewal Acknowledgement") to Mr. Kassa at the Station. (Christensen

7  Decl., ¶ 6, Exh. D.) The Nonrenewal Acknowledgement confirms that the Renewal Offer

8  was presented to Mr. Kassa on January 8, 2008 and that Mr. Kassa has refused to sign and

9  return the new lease and franchise agreements. (*Id.*) The Nonrenewal Acknowledgement

10 further states that BPWCP would retake possession of the Station on March 3, 2008 at 8:00

11 a.m. (*Id.*)

12         As of March 1, 2008, Kassa failed to return the signed documents contained in

13 the Renewal Offer which were required to continue the franchise beyond March 1, 2008.

14 (Christensen Decl., ¶ 7.)

15     C.    **The Franchise Relationship Expired Effective March 1, 2008 and BPWCP**

16           **Took Possession of the Station on March 4, 2008**

17         On March 3, 2008, BPWCP delivered to Mr. Kassa a Notice of Termination

18 which confirmed the Franchise Agreements expired on their own terms. (Christensen Decl.,

19 ¶ 8, Exh. E.)

20         On March 4, 2008, 15 days before Kassa applied *Ex Parte* for a TRO, BPWCP

21 took possession of the Station from Kassa. (Christensen Decl., ¶ 9.) BPWCP allowed Kassa

22 to return to the Station for several days to retrieve personal belongings and merchandise

23 (although BPWCP was under no obligation to do so). (*Id.*) Mr. Christensen spent nearly 10

24 hours at the Station on March 4, 2008 to oversee the transition of the Station back to

25 BPWCP. (*Id.*) On March 5 and 6, 2008, Mr. Christensen spent nearly the entire day at the

26 Station so that Mr. Kassa could have access to retrieve his property. (*Id.*) On March 11,

27

28

1143644.1

1    2008, Mr. Christensen allowed Mr. Kassa to have further access to the Station so he could

2    complete the removal of his property. (Id.)

3           Since approximately March 4, 2008, the Station has been boarded up and a

4    large gate has been placed around its perimeter. (Christensen Decl., ¶ 10.) Moreover,

5    gasoline was removed from the tanks beneath the pump stations. (Id.) The Station is not

6    currently operating. (Id.)

7           On March 11, 2008, the last day that Mr. Kassa was removing his property

8    from the Station, Mr. Kassa and BPWCP discussed whether he wanted to sell certain

9    equipment to BPWCP. (Christensen Decl., ¶ 11.) Mr. Kassa provided BPWCP with a list of

10   equipment that he was interested in selling to BPWCP, offered retail prices even though the

11   equipment was used, and offered to sell the equipment for a total of $23,000. (Id.) Mr.

12   Kassa subsequently agreed to a price of $15,000. (Id.) In addition, Mr. Kassa agreed that

13   BPWCP would purchase certain paper products for an additional $1,500. (Id.) Ultimately

14   Mr. Kassa did not sign the agreement/list to sell BPWCP the property but BPWCP

15   understood that he agreed to the terms and price. (Id.)

16          During BPWCP's numerous telephone calls and meetings in January and

17   February 2008 and during the closure of the Station, Mr. Kassa never once informed

18   BPWCP that he intended to challenge the franchise nonrenewal and take legal action to

19   unwind the franchise termination. (Christensen Decl., ¶ 12.) Mr. Christensen spent nearly

20   four full days at the Station assisting in the closure and removal of property by Mr. Kassa.

21   (Id.) In order to shut down the Station, BPWCP required three crews and trucks and Mr.

22   Christensen's time to board up the site, place a fence around the entire property, pump out

23   the gasoline in the underground storage tanks, and lock and secure the facilities. (Id.)

24   **D.    Kassa Continues to Owe BPWCP for Past Sums Due**

25          In addition, as of March 20, 2008, Kassa owes BPWCP over $35,000 for

26   various unpaid invoices for charges relating maintenance, rent, royalty fees, and audit

27

28

1    findings. (Christensen Decl., ¶ 13.) Though Kassa contests some of these charges, Kassa

2    has continually failed to provide BPWCP with documentation to support otherwise.[1]  (*Id.*)

3        E.    **Kassa Failed to Properly Serve and Notify BPWCP of the TRO *Ex Parte***

4              **Papers; BPWCP Was Deprived of Its Right to Appear and Oppose the**

5              **TRO**

6              BPWCP first learned that Kassa applied *ex parte* and a hearing took place at

7    approximately 4:30 p.m. on March 19, 2008 (some 8 hours after the hearing occurred), when

8    Mr. Christensen returned home from a business trip and saw a facsimile on his home fax

9    machine. (Christensen Decl., ¶ 14.) The document contained a fax transmission sheet and

10   was addressed to "Derek Tomita". (*Id.* and Exh. F.) The fax indicated that a hearing had

11   taken place in the morning of March 19, 2008. (*Id.*) Mr. Christensen never received any

12   phone calls from Kassa or their counsel to advise that a facsimile was sent to me even though

13   Mr. Kassa has called Mr. Christensen numerous times before and has his cell phone number.

14   (*Id.*)

15             In addition, Derek Tomita, the individual to whom Kassa's TRO papers were

16   purportedly faxed to, never received the documents. (See Declaration of Derek Tomita filed

17   concurrently herewith ("Tomita Decl."), ¶ 2.) Nor did Mr. Tomita ever receive any

18   telephone calls or voice mail messages advising that he was served with the TRO papers by

19   Kassa. (*Id.*, ¶ 4.) The facsimile number used for Mr. Tomita by Kassa belonged to Mr.

20   Christensen. (*Id.*, ¶ 3; and see above discussion.)

21             Kassa also maintains that notice of the TRO and the moving papers were

22   provided as a "cc" to Tom Reeder. (See Declaration of George Holland filed in support of

23   TRO Application). However, the facsimile number used for Mr. Reeder is not Mr. Reeder's

24   facsimile number and Mr. Reeder never received the TRO papers. (See Declaration of

25   Thomas L. Reeder filed concurrently herewith, ¶¶ 2 and 3.)

26

27   ─────────────────────

28   [1] Kassa recently provided some documentation on the evening of March 20, 2008, which
     BPWCP is considering. (Christensen Decl., ¶ 13.)

EX PARTE APPLICATION TO DISSOLVE ORDER GRANTING TRO AND OSC RE PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1143644.1

1    Thus, neither of the individuals to whom Kassa claims were provided notice of

2  the TRO papers actually received the papers.  Though Mr. Christensen ultimately received

3  them, it was long after the Court ruled on the application.  (Christensen Decl., ¶ 14.)

4  Furthermore, BPWCP has never agreed to accept service of documents in this matter via

5  facsimile and the TRO papers themselves fail to properly identify exactly when and where

6  the hearing on the TRO was to take place.  Kassa's untimely and unnoticed TRO application

7  is particularly egregious since the Renewal Offer - - which Kassa has refused to sign - - was

8  provided to him on January 8, 2008.  Essentially, Kassa and their counsel made it virtually

9  impossible for BPWCP to know about and defend itself against the TRO request.

10  **III.    THE TRO SHOULD BE DISSOLVED AS IT WAS IMPROPERLY**

11  **PROCURED AND NO SUCH INJUNCTION CAN BE ISSUED ABSENT A**

12  **PMPA CLAIM WHICH PREEMPTS STATE CLAIMS RE SERVICE**

13  **STATION FRANCHISE TERMINATIONS AND NONRENEWALS**

14    **A.    Kassa Did Not and Cannot Prove the Likelihood That They Will Prevail**

15    **on Merits of Their Claims**

16    A trial court may not grant a preliminary injunction unless there is some

17  possibility that the plaintiff would ultimately prevail on the merits of the claim.  *O'Connell v.*

18  *Superior Court (Valenzuela)* (2006) 141 Cal.App.4th 1452, 1463; *citing Butt v. State of*

19  *California* (1992) 4 Cal.4th 668, 677-678.

20    Plaintiffs here have no right to obtain the TRO relief which was granted on

21  March 19, 2008, given the language of the governing Franchise Agreements and the

22  Petroleum Marketing Practices Act, 28 U.S.C. §§ 2801 *et seq.* ("PMPA").  The PMPA

23  specifically governs gasoline franchise nonrenewal claims such as these and preempts the

24  State court relief sought in Plaintiffs' action.  See 28 U.S.C. §§ 2801 *et seq.; see also Niakan,*

25  *et al. v. Samaan and Union Oil Company of California* (1988) 199 Cal.App.3d 716 (state

26  court lacked subject matter jurisdiction where claims of wrongful nonrenewal of gasoline

27  franchise preempted by PMPA; claims of unfair trade practices, breach of implied covenant

28

7

1     of good faith and fair dealing, breach of written contract, and misrepresentation often stem

2     from franchisor's failure to renew and such claims held to be preempted by PMPA).

3     Therefore, a service station franchise nonrenewal may not be enjoined absent a claim

4     brought under the governing PMPA. *See California ARCO Distributors, Inc. v. Atlantic*

5     *Richfield Co.* (1984) Cal.App.3d 349 (1984).

6            In addition, BPWCP was not given the opportunity to present the relevant facts

7     and authority to support this conclusion (see the service issues discussed further below),

8     BPWCP presents them to the Court now, as follows:

9            Even if Kassa stated a PMPA claim, pursuant to the terms of the Franchise

10     Agreements, BPWCP had a right to nonrenew the franchise given Plaintiffs' refusal to sign

11     and agree to the renewal terms. The PMPA Agreement states explicitly that BPWCP may

12     nonrenew the agreement and franchise relationship for "failure of Franchisee and BPWCP to

13     agree to changes or additions to the franchise relationship, as defined in the PMPA, which

14     are the result of a determination made by BPWCP in good faith and in the normal course of

15     business." (See ¶ 17.b. of the PMPA Agreement; Exh. A to Christensen Decl.) BPWCP had

16     a right to terminate am/pm Agreement upon termination of the PMPA Agreement. (See ¶

17     18.05 of am/pm Agreement; Exh. B to Christensen Decl.)

18            Furthermore, the PMPA specifically supports BPWCP's nonrenewal of the

19     Franchise Agreement based on the fact that Kassa would not agree to the changes or

20     additions to the provisions of the proposed new lease and franchise agreements. 28 U.S.C.

21     § 2802(b)(3). In addition, a party attempting to enjoin a franchisor from changing the terms

22     of the franchise under state law claims that are preempted by the PMPA (which is what we

23     have here), must instead state a claim under the PMPA and pursue injunctive relief there

24     under. *See California ARCO Distributors, Inc. v. Atlantic Richfield Co.* (1984) Cal.App.3d

25     349 (1984) (reversal of order granting preliminary injunction in favor of franchisee who

26     sought to enjoin defendant from changing terms of a franchise-related agreement).

27

28

8

EX PARTE APPLICATION TO DISSOLVE ORDER GRANTING TRO AND OSC RE PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
1143644.1

1    Moreover, Kassa's argument that there were issues with late deliveries, over

2  charges, false invoices, and price discrimination has no bearing on whether BPWCP properly

3  nonrenewed the franchise relationship and does not explain Kassa's refusal to sign the

4  renewal documents.[2]  Also, Kassa's claim that BPWCP's intent to close the Station came as

5  a total surprise to him are directly contradicted by his January 8, 2008 signature

6  acknowledging receipt of the renewal documents.  (See Christensen Decl., Exh. C.)  In

7  addition, as already discussed, BPWCP met with Mr. Kassa numerous times to explain the

8  Renewal Offer.  (*Id.* at ¶ 5.)

9    Accordingly, Kassa cannot show that there is any likelihood of success on the

10  merits and the TRO should be dissolved.

11    **B.    The TRO Alters Rather Than Preserves the Status Quo**

12    One purpose of a temporary restraining order is to preserve the status quo. *See*

13  *Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 334. A TRO which provides mandatory

14  injunctive relief should rarely be issued.  *See Paramount Pictures Corporation v. Davis*

15  (1964) 228 Cal.App.2d 827, 835-836 and 838-839 (where preliminary injunction granted all

16  injunctive relief requested in the complaint is considered mandatory and beyond "preserving

17  the status quo.")  An injunction is "mandatory" when it compels the performance of an

18  affirmative act that will change the position of the parties.  *Davenport v. Blue Cross of Calif.*

19  (1997) 52 Cal.App.4th 435, 448.  Furthermore, an injunction "lies to prevent threatened

20  injuries and has no application to completed wrongs for the redress of which the plaintiff is

21  relegated to an action of law.  Obviously a completed wrong cannot be corrected by a

22  preliminary injunction, the purpose of which is to preserve the *status quo* until after final

23  judgment." *McManus v. KPAL Broadcasting Corp.* (1960) 182 Cal.App.2d 558, 563.

24

25    [2] Any issues that Kassa has had with regard to the franchise were caused by his own sub-
standard, never adaptive, operating practices that have been documented in numerous
26  defaults issued by BPWCP.  For example, Kassa has been defaulted for failure to pay state
sales tax, non-compliance with State Health and Environmental laws, safety issues, insurance
27  non-compliance, non-payment of rents, refusal to provide royalty collectible ATM income
data, falsification of data including spoilage and breakage, operating without required
28  permits and license, and operating unauthorized equipment.  (Christensen Decl., ¶ 15.)

9

1    Rather than preserve the status quo, the TRO granted in this action on March
2  19, 2008 in favor of the Plaintiffs alters the status quo which involves a terminated/expired
3  franchise relationship, a boarded up and closed Station, and Plaintiffs' removal from the
4  Station. The TRO also attempts to "undo" the purported wrong committed by BPWCP. The
5  franchise relationship between BPWCP and Plaintiffs expired effective February 29, 2008.
6  (Christensen Decl., ¶ 3 and Exhs. A, B, C, and D.)  On March 4, 2008, the Station was
7  boarded up and closed and the gasoline was removed from the underground storage tanks.
8  (Id. at ¶ 9.)  BPWCP permitted Plaintiffs to return to the Station through March 11, 2008 in
9  order for Plaintiffs to remove personal property and merchandise (even though BPWCP was
10  under no obligation to allow Plaintiffs back on to the property). (Id.)  Since March 11, 2008,
11  the Station has been closed and a fence has been placed around its perimeter. (Id.)

12    The TRO entered on March 19, 2008, however, requires BPWCP to allow the
13  Plaintiffs to return to the Station and operate a franchise business. Furthermore, the TRO
14  provides that BPWCP must sell Plaintiffs more gasoline product, despite the fact that Kassa
15  currently owes BPWCP approximately $35,000. (Christensen Decl., ¶ 13.)  These are not
16  "status quo" actions.  BPWCP exerted significant efforts to close the Station down;
17  reopening the Station will require additional burden to BPWCP. (Id., ¶ 12.)  Moreover, if the
18  TRO stands, BPWCP will be forced to do business with Plaintiffs without an enforceable
19  and controlling franchise agreement pending the preliminary injunction OSC and perhaps
20  until the end of this litigation.  Preserving the status requires that Kassa remain removed
21  from the Station.

22    The Court was likely not apprised of these above facts (as apparent from
23  Kassa's moving papers); the TRO should be dissolved and the OSC re preliminary injunction
24  should be taken off calendar.

25
26
27
28

1143644.1

1

2

C.    **Kassa Did Not Promptly Seek Injunctive Relief and Thus There Was No Irreparable Harm to Justify the TRO**

3    Kassa must also provide evidence to show that irreparable harm will result if

4    the TRO is not granted.  See Code of Civil Procedure §527(c).  However, delay in moving

5    for preliminary injunction may be considered in determining whether the claimed injury is

6    "irreparable."  *O'Connell, supra,* 141 Cal.App.4th at 1481.  In *O'Connell,* for example, the

7    plaintiffs' claim of imminent injury from not receiving a high school diploma, which was

8    raised shortly before graduation, could have been made earlier in the school year thereby

9    avoiding the urgency of the situation.  The Court of Appeal in *O'Connell* stayed the

10    injunction stating "the urgency with which the trial court was forced to decide plaintiffs'

11    motion may have been, to some extent, of plaintiffs' own making – a fact that the trial court,

12    as a court of equity, should have taken into account in determining what weight to give

13    plaintiffs' claim of imminent irreparable injury." *Id.*

14    Here, as far back as 2005 when Plaintiffs entered into a three-year franchise

15    agreement with BPWCP, Kassa knew that the franchise agreement would expire on March 1,

16    2008.  (Christensen Decl., ¶ 3, Exhs. A & B.).  Furthermore, BPWCP provided Kassa with

17    the renewal information in January 2008 and Kassa acknowledged receipt of the letter on

18    January 8, 2008.  (*Id.*, ¶ 4, Exh. C.)  Indeed, Mr. Christensen met and had telephone

19    conversations with Mr. Kassa numerous times in January and February 2008 to discuss the

20    renewal documents.  (*Id.*, ¶ 5.)  Accordingly, Kassa had months in which they could have

21    sought injunctive relief.  Instead, they moved their personal property and merchandise out of

22    the Station from March 4 through March 11, 2008.  (*Id.*, ¶ 9.)  During the time Kassa

23    removed their property from the Station, they never once advised BPWCP that they would

24    seek injunctive relief or attempt to unwind the nonrenewal.  (*Id.*, ¶ 12.)  Of course, the

25    moving papers supporting Plaintiffs' application for TRO are notably silent concerning these

26    facts.  In addition, BPWCP exerted significant efforts to close down the Station.  (*Id.*, ¶ 12.)

27

28

11

1  Given Plaintiffs' delay in seeking injunctive relief, a TRO is not necessary to prevent
2  irreparable injury and this Application to Dissolve the TRO should be granted.

3          D.      **The Plaintiffs Deprived BPWCP of the Opportunity to Defend Itself at the**
4                  **TRO Hearing Through Improper Service and Procedural Flaws**

5                  At a minimum, BPWCP should have been given the opportunity to be heard by
6  the Court before the issuance of such a damaging TRO against it.  BPWCP was denied that
7  opportunity as Plaintiffs failed to provide adequate and proper service and notice of the TRO
8  hearing and papers.  Counsel seeking a TRO generally must inform the opposing party or
9  counsel when and where the application will be made and a declaration showing attempts to
10 provide such notice is generally required before a TRO may issue.  Code of Civil Procedure
11 § 527(c)(2).  The declaration must show that either (1) the applicant informed the opposing
12 party or counsel when and where the application for TRO would be made, (2) the applicant
13 made a good faith effort to so inform opposing party or counsel but was unable to do so, or
14 (3) for reasons specified (e.g., risk of harm), the applicant should not be required to inform
15 the opposing party or counsel.  Code of Civil Procedure § 527(c)(2); California Rules of
16 Court, Rule 3.1204.  The declaration should also provide the name, address and telephone
17 number of either the attorney known to represent the defendant or the defendant.  California
18 Rules of Court, Rule 3.1204.

19                 Plaintiffs' service and notice of the TRO and hearing was faulty on a number
20 of grounds:

21         •       According to Plaintiffs' declaration submitted in support of the TRO,
22                 the papers were served on Derek Tomita of BPWCP.  However, Mr.
23                 Tomita never received the papers from Plaintiffs and the facsimile
24                 number identified by Plaintiffs does not belong to Mr. Tomita (See
25                 Tomita Decl., ¶¶ 2 and 3);

26         •       No calls were made to Mr. Tomita to determine if he received the TRO
27                 papers (See Tomita Decl., ¶ 4);

28
                                                  12

1    • According to Plaintiffs' declaration submitted in support of the TRO,
2         the papers were served on Thomas Reeder of BPWCP. However, Mr.
3         Reeder never received the papers from Plaintiffs and the facsimile
4         number identified by Plaintiffs does not belong to Mr. Reeder (See
5         Reeder Decl., ¶¶ 2 and 3);

6    • No calls were made to Mr. Reeder (although Plaintiffs know and have
7         his cell phone number) to determine if he received the TRO papers (See
8         Reeder Decl., ¶ 4);

9    • BPWCP's Brad Christensen received a copy of Plaintiffs' TRO papers
10        at his home facsimile at 4:30 p.m., some 8 hours after the TRO hearing
11        (See Christensen Decl., ¶ 14); and

12   • No calls were made to Mr. Christensen (although Plaintiffs know and
13        have his cell phone number) to determine if he received the TRO papers
14        (See Christensen Decl., ¶ 14).

15   Furthermore, BPWCP has never agreed to accept service of documents in this
16   matter via facsimile, which is required by California Rules of Court 2.306(a)(1) and
17   2.260(a).[3] Finally and notwithstanding the fact that Kassa failed to make good efforts to
18   properly serve BPWCP with the papers, the TRO papers themselves fail to properly identify
19   exactly when and where the hearing on the TRO was to take place as required by Code of
20   Civil Procedure § 527(c)(2). In fact, the "notice" page does not provide the specific Court's
21   address or the correct department number where the TRO was heard. Essentially, Kassa and
22   their counsel made it virtually impossible for BPWCP to know about and defend itself
23   against the TRO request. Relief obtained in such a procedurally flawed manner should not
24   be allowed to stand and BPWCP respectfully implores this Court to dissolve the TRO that
25   was issued on March 19, 2008.

26

27

28

---

[3] Kassa has yet to properly serve BPWCP with the Summons and Complaint in this action let alone procure an agreement by BPWCP to serve documents via facsimile or electronically.

13

1 | **IV.    CONCLUSION**

2      The papers filed by Kassa in order to procure the TRO against BPWCP were

3 fraught with missing information and misrepresentations. Now that BPWCP finally has had

4 the opportunity to present all the relevant and true facts to the Court, there should be no

5 question that Kassa lacked the factual and legal support to obtain the overreaching injunctive

6 relief set forth in the TRO. BPWCP should not be forced to reopen the Station and re-enter

7 into a franchise relationship with a party who is unwilling to abide by the terms of the

8 relevant franchise agreements. Nor should BPWCP be required to do business with a party

9 that still is indebted to BPWCP in the sum of approximately $35,000. Kassa allowed the

10 franchise agreements to expire, willingly moved out of the Station, and now, cannot seek to

11 unwind the events that they allowed to occur. BPWCP respectfully requests that this Court

12 enter and Order to dissolve the TRO that was issued on March 19, 2008. [4]

13

14 | DATED: March 23, 2008          Respectfully submitted,

15 | KURT OSENBAUGH
DEBORAH YOON JONES
MacKENZIE E. HUNT
16 | **WESTON, BENSHOOF, ROCHEFORT,
RUBALCAVA & MacCUISH LLP**

17

18

19 |                                Deborah Yoon Jones
Attorneys for Specially Appearing Defendant
20 | BP WEST COAST PRODUCTS LLC

21

22

23

24

25 | [4] While not meant to be a threat, BPWCP feels so strongly about the injustice it has suffered
as a result of the mandatory injunctive relief granted to Kassa by way of the TRO that in the
26 | event the Court does not dissolve the TRO or alter the TRO so that only the status quo is
preserved, BPWCP will have no alternative but to appeal the decision thereby automatically
27 | staying the TRO. *See Agricultural Labor Relations Board v. Kern County Superior Court*
(1984) 149 Cal.App.3d 709, 716-717; and *Kettenhofn v. Superior Court* (1961) 55 Cal.2d
28 | 189, 191.

14

**PROOF OF SERVICE**

I, Heather Thai, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On May 30, 2008, I served the document(s) described as **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441 [FEDERAL QUESTION JURISDICTION]** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows: SEE ATTACHED SERVICE LIST

☐   BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

☒   BY FEDERAL EXPRESS    ☐ UPS NEXT DAY AIR    ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☒ FEDERAL EXPRESS    ☐ UPS    ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of    ☒ FEDERAL EXPRESS    ☐ UPS    ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐   BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☐   BY ELECTRONIC MAIL TRANSMISSION WITH ATTACHMENT: On this date, I transmitted the above-mentioned document by electronic mail transmission with attachment to the parties at the electronic mail transmission address set forth on the attached service list.

☐   [State]    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒   [Federal]    I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 30, 2008, at Los Angeles, California.

_Heather Thai_
Heather Thai

1144511.1

1

**KASSA, et al. v. BP WEST COAST PRODUCTS LLC**
**USDC, NORTHERN DISTRICT**

2

3

**SERVICE LIST**

4

George Holland, Esq.
LAW OFFICES OF GEORGE HOLLAND
1970 Broadway, Suite 1030
Oakland, CA 94612

Attorney for Plaintiffs, OMER KASSA,
OMER KASSA dba H & O, INC. and H
& O, INC.

5

6

Tel: (510) 465-4100

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1144511.1

**PROOF OF SERVICE**

I, Heather Thai, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On May 30, 2008, I served the document(s) described as **NOTICE TO ADVERSE PARTIES OF REMOVAL OF ACTION TO FEDERAL DISTRICT COURT** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows: SEE ATTACHED SERVICE LIST

☐    BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

☒    BY FEDERAL EXPRESS    ☐ UPS NEXT DAY AIR    ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☒ FEDERAL EXPRESS ☐ UPS ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of ☒ FEDERAL EXPRESS ☐ UPS ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐    BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☐    BY ELECTRONIC MAIL TRANSMISSION WITH ATTACHMENT: On this date, I transmitted the above-mentioned document by electronic mail transmission with attachment to the parties at the electronic mail transmission address set forth on the attached service list.

☒    [State]I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐    [Federal]    I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 30, 2008, at Los Angeles, California.

_Heather Thai_
Heather Thai

1

2

**KASSA, et al. v. BP WEST COAST PRODUCTS LLC**
**SANTA CLARA SUPERIOR COURT**
**Case No. 108CV107979**

3

**SERVICE LIST**

4

5

6

George Holland, Esq.
LAW OFFICES OF GEORGE HOLLAND
1970 Broadway, Suite 1030
Oakland, CA 94612

Attorney for Plaintiffs, OMER KASSA,
OMER KASSA dba H & O, INC. and H &
O, INC.

7

Tel: (510) 465-4100
Fax: (510) 465-4747

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1188859.1

# PROOF OF SERVICE

I, Heather Thai, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On May 30, 2008, I served the document(s) described as **CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:   SEE ATTACHED SERVICE LIST

☐   BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

☒   BY FEDERAL EXPRESS      ☐ UPS NEXT DAY AIR    ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☒ FEDERAL EXPRESS    ☐ UPS    ☐ Overnight Delivery [specify name of service:  ] with delivery fees fully provided for or delivered the envelope to a courier or driver of   ☒ FEDERAL EXPRESS    ☐ UPS    ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐   BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☐   BY ELECTRONIC MAIL TRANSMISSION WITH ATTACHMENT: On this date, I transmitted the above-mentioned document by electronic mail transmission with attachment to the parties at the electronic mail transmission address set forth on the attached service list.

☐   [State]     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒   [Federal]     I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 30, 2008, at Los Angeles, California.

*Heather Thai*
Heather Thai

1192519.1

1
2

**KASSA, et al. v. BP WEST COAST PRODUCTS LLC**
**SANTA CLARA SUPERIOR COURT**
**Case No. 108CV107979**

3

### SERVICE LIST

4
5
6
7

George Holland, Esq.
LAW OFFICES OF GEORGE HOLLAND
1970 Broadway, Suite 1030
Oakland, CA 94612

Attorney for Plaintiffs, OMER KASSA,
OMER KASSA dba H & O, INC. and H
& O, INC.

Tel: (510) 465-4100
Fax: (510) 465-4747

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1192519.1