1    KURT OSENBAUGH (State Bar No. 106132)
     DEBORAH YOON JONES (State Bar No. 178127)
2    MacKENZIE E. HUNT (State Bar No. 251127)
     **WESTON, BENSHOOF, ROCHEFORT,**
3        **RUBALCAVA & MacCUISH LLP**
     333 South Hope Street
4    Sixteenth Floor
     Los Angeles, California  90071
5    Telephone:  (213) 576-1000
     Facsimile:  (213) 576-1100
6
7    Attorneys for Defendant
     BP WEST COAST PRODUCTS LLC

8

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11   OMER KASSA individually; OMER          Case No:  C08-02725 PVT
     KASSA dba H & O, INC., and H & O,
12   INC.,                                   **NOTICE OF MOTION AND
                                             MOTION TO DISMISS OF
13                Plaintiffs,                DEFENDANT BP WEST COAST
                                             PRODUCTS LLC AS TO FIRST
14       v.                                  AMENDED COMPLAINT; AND
                                             MEMORANDUM OF POINTS AND
15   BP WEST COAST PRODUCTS, LLC, dba        AUTHORITIES IN SUPPORT
     ARCO PRODUCTS COMPANY and               THEREOF**
16   DOES 1 to 50,
                                             [Filed concurrently with Declaration of
17                Defendants.                Deborah Yoon Jones in Support Thereof;
                                             Appendix of Non-Federal Authorities;
18                                           and [Proposed] Order.]

19                                           Date:  To Be Determined
                                             Time:  To Be Determined
20                                           Crtrm: To Be Determined

21                                             Magistrate Judge Patricia V. Trumbull

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. FACTUAL ALLEGATIONS .................................................................................2

III. THE COURT SHOULD DISMISS ALL OF KASSA'S NON-PMPA CLAIMS
THAT ARE PREEMPTED AND/OR IMPROPER ..............................................4

    A.    Fed. R. Civ. P 12(b)(6) Standard ................................................................4

    B.    KASSA'S FIRST THROUGH ElevenTH CAUSES OF ACTION
        ARE PREEMPTED BY THE PMPA .........................................................4

    C.    THE CLAIMS LACK SUFFICIENT FACTS TO SUPPORT
        VIABLE CAUSES OF ACTION AGAINST BPWCP ...............................6

        1.    Kassa Failed to Allege the Material Contract Provisions to Support
            the Breach of Contract Cause of Action. ...........................................6

        2.    Kassa's Claim for Conversion Lacks the Requisite Elements............7

        3.    Kassa's Fraud Claim is Inadequate Because He Alleges No Facts to
            Support the Imposition of Tort Liability.............................................8

        4.    Kassa's Implied Covenant of Good Faith and Fair Dealing Claim is
            Improperly Duplicative of the Breach of Contract Claim. .................9

        5.    Kassa's Negligent Misrepresentation Claim Lacks the Requisite
            Specificity........................................................................................10

        6.    Kassa's Negligence Claim is Also Improperly Duplicative of His
            Claim for Breach of Contract.........................................................12

        7.    Kassa's Negligent Hiring and Supervision Claim Lacks Required
            Elements. .........................................................................................12

        8.    Kassa's Intentional Infliction of Emotional Distress Claim Lacks
            Sufficient Facts to Support a Viable Cause of Action. .....................13

        9.    Kassa's Claim for Injunctive Relief is Subject to Dismissal
            Because it is Moot and Duplicative. ................................................14

        10.    Kassa's Conspiracy Claim Lacks the Necessary Elements Required
             to State a Cause of Action. ...............................................................15

        11.    Kassa's Claim for Unfair and Deceptive Business Practices is
             Uncertain and Ambiguous...............................................................16

IV. CONCLUSION .....................................................................................................17

i

1

## TABLE OF AUTHORITIES

2

### CASES

3

*117 Sales Corporation v. Olsen*
4
   (1978) 80 Cal.App.3d 645 ................................................................. 15

5

*Aas v. Superior Court*
6
   (2000) 24 Cal.App.4th 627 ........................................................ 12, 14

7

*Ann M. v. Pacific Plaza Shopping Center*
8
   (1993) 6 Cal.4th 666 ..................................................................... 12

9

*Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*
10
   (1994) 7 Cal.4th 502 ................................................................15-16

11

*Balistreri v. Pacifica Police Dept.*
   (9th Cir. 1990) 901 F.2d 969 .......................................................... 4
12

13
*Bank of America v. Pendergrass*
   (1935) 4 Cal.2d 258, 48 P.2d 659 .................................................... 8
14

15
*Benton v. Hofmann Plastering Company*
   (1962) 207 Cal.App.2d 61, 24 Cal.Rptr. 268 .................................... 9

16

17
*Cahil v. Liberty Mutual Ins. Co.*
   (9th Cir. 1996) 80 F.3d 336 ............................................................ 4

18

19
*California ARCO Distributors, Inc. v. Atlantic Richfield Co.*
   (1984) 158 Cal.App.3d 349 ............................................................. 5

20

21
*Canta v. Resolution Trust Corp.*
   (1992) 4 Cal.App.4th 857 .............................................................. 14

22
*Careau & Co. v. Security Pacific Business Credit, Inc.*
23
   (1990) 222 Cal.App.3d 1371 .......................................................... 9

24
*Celador Int'l Ltd. V. Walt Disney Co.*
   (C.D. Cal., 2004) 347 F.Supp.2d 846 ............................................. 9

25

26
*Cervantez v. J.C. Penny Co.*
   (1979) 24 Cal.3d 578 ................................................................... 13

27

28
*Consumers Petroleum Co. v. Texaco*
   (6th Cir. 1986) 804 F.2d 907 .......................................................... 5

ii

*Davidson v. City of Westminster*
  (1982) 32 Cal.3d 197 ........................................................................... 14

*Delfino v. Agilent Technologies, Inc.*
  (2006) 145 Cal.App.4th 790 ................................................................ 13

*Erlich v. Mendezes*
  (1999) 21 Cal.4th 543 ..................................................................... 8, 11

*Foley v. Interactive Data Corp.*
  (1988) 47 Cal.3d 654 ........................................................................... 10

*Gray v. Don Miller & Associates, Inc.*
  (1984) 35 Cal.3d 498 ........................................................................... 11

*Guz v. Bechtel Nat'l, Inc.*
  (2000) 24 Cal.4th 317 ....................................................................... 9, 14

*Hailey v. California Physicians' Service,*
  158 Cal.App.4th 452 ............................................................................ 14

*In re Napster, Inc. Copyright Litigation*
  (9th Cir. 2007) 479 F.3d 1078 ............................................................... 8

*Kiseskey v. Carpenter Trust for Southern California*
  (1983) 144 Cal.App.3d 222 .................................................................... 9

*Lesperance v. North American Aviation, Inc.*
  (1963) 217 Cal.App.2d 336 .................................................................. 15

*McCann v. Lucky Money, Inc.*
  (2005) 129 Cal.App.4th 1382 ............................................................... 16

*Mobil Oil Corp. v. Superior Court*
  (1987) 189 Cal.App.3d 485 .................................................................... 5

*Moore v. Brewster*
  (9th Cir. 1996) 96 F.3d 1240 ................................................................. 9

*Niakan, et al. v. Samaan and Union Oil Company of California*
  (1988) 199 Cal.App.3d 716 .................................................................... 4

*Orloff v. Metropolitan Trust Co.*
  (1941) 17 Cal.2d 484 ........................................................................... 15

iii

1198886.1

*Otworth v. So. Pacific Railway Trans. Co.*
    (1985) 166 Cal.App.3d 452 ................................................................................ 6

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*
    (2007) 150 Cal.App.4th 384 ............................................................................ 7

*Perry v. Robertson*
    (1988) 201 Cal.App.3d 333 ............................................................................ 6

*Pride v. Exxon Corp.*
    (9th Cir. 1990) 911 F.2d 251 ......................................................................... 5

*Reichert v. General Insurance Co.*
    (1968) 68 Cal.2d 822 ...................................................................................... 6

*Roman Catholic Bishop v. Superior Court*
    (1996) 42 Cal.App.4th 1556 .......................................................................... 13

*Rosen v. State Farm General Ins. Co.*
    (2003) 30 Cal.4th 1070 .................................................................................. 12

*Taylor v. Forte Hotels International*
    (1991) 235 Cal.App.3d 1119 ......................................................................... 7

*Underwriters Ins. Co. v. Purdie*
    (1983) 145 Cal.App.3d 57 .............................................................................. 13

*Walters v. Marler*
    (1978) 83 Cal.App.3d 1 .................................................................................. 11

*Wolf v. Superior Court*
    (2003) 107 Cal.App.4th 25 ............................................................................ 16

## STATUTES

Business and Professions Code section 21200 ..................................................... 3

Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.* ....................... 1-2, 4

## RULES

Federal Rules of Civ. Pro., Rule 9(b) ................................................................... 9

iv

1198886 1

**TO PLAINTIFF OMER KASSA, INDIVIDUALLY AND DBA H&O, INC., AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on a date to be determined after the above-captioned case has been reassigned, a hearing shall take place in the above-entitled court located at 280 S. 1st Street, San Jose, California, wherein defendant BP West Coast Products LLC ("BPWCP") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss certain claims for relief set forth in the First Amended Complaint ("FAC") filed by Plaintiff Omer Kassa, (representing himself and H&O, Inc., collectively, "Kassa") against BPWCP on the ground that each of the purported claims fails to state a claim upon which relief can be granted, for the reasons set forth below. In support thereof, BPWCP further moves and states as follows:

## MOTION TO DISMISS UNDER FRCP RULE 12(b)(6)

(1)    Kassa's First Cause of Action for Breach of Contract fails to state a claim because it is preempted by the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.* ("PMPA"). Furthermore, it cannot be ascertained from review of the first cause of action, how, in what manner, or upon what basis Kassa can claim that he has adequately pled a binding contract between Kassa and BPWCP. Specifically, the First Cause of Action is ambiguous in that Kassa has not properly pled verbatim the material terms of the contract (or attached a copy of the contract) upon which the cause of action against BPWCP is based.

(2)    Kassa's Second Cause of Action for conversion fails to state a claim because it is preempted by the PMPA. Furthermore, Kassa has failed to allege which property BPWCP allegedly converted, or that he had a right to possess that property in the first instance. Furthermore, a breach of contract (which is essentially what this claim contends) does not constitute a conversion. *Taylor v. Forte Hotels International* (1991) 235 Cal.App.3d 1119, 1124.

(3)    Kassa's Third Cause of Action for Fraud and Deceit fails to state a

1

1198886.1

claim because it is preempted by the PMPA. Further, at best, Kassa has alleged only facts supporting a claim for breach of contract. Where there is a breach of contract alleged, the law will not find tort liability as well as contractual liability unless there is a breach of some independent duty imposed by law. *Elrich v. Menezes* (1999) 21 Cal.4[th] 543, 553-554. Kassa cannot merely recite the facts supporting his claim for breach of contract to maintain a cause of action for fraud and deceit.

(4)  Kassa's Fourth Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing fails to state a claim because it is preempted by the PMPA. Furthermore, Kassa has alleged, at best, only facts supporting a claim for breach of contract. Where a claim for breach of the implied covenant does not go beyond the statement of a breach of express contractual terms and seeks the same relief sought in a breach of contract claim, it is simply superfluous to the contract claim. *Celador Int'l Ltd. V. Walt Disney Co.* (C.D. Cal., 2004) 347 F.Supp.2d 846, 852; *Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4[th] 317, 353, n. 18. Kassa cannot merely recite the facts supporting his claim for a purported breach of contract to maintain a breach of the implied covenant claim. Furthermore, California does not recognize a tortious breach of contract claim outside of the insurance context.

(5)  Kassa's Fifth Cause of Action for Negligent Misrepresentation fails to state a claim because it is preempted by the PMPA. Further, it fails to state a claim because Kassa has not alleged the precise misrepresentations at issue, or any facts tending to show that BPWCP intended to induce reliance on the part of Kassa. Moreover, it cannot be ascertained from reviewing the Fifth Cause of Action how, when, in what manner, or upon what basis Kassa can claim that BPWCP made a negligent misrepresentation. Furthermore, Kassa should not be allowed to recover in tort for the breach of duties that merely restate contractual obligations.

(6)  Kassa's Sixth Cause of Action for Negligence fails to state a claim because it is preempted by the PMPA. Furthermore, at best, Kassa has alleged only those facts supporting his claim for breach of contract. Where there is a breach of

2

1    contract alleged, the law will not find tort liability as well as contractual liability

2    unless there is a breach of some independent duty imposed by law. *Elrich v. Menezes*

3    (1999) 21 Cal.4th 543, 553-4. Kassa cannot merely recite the facts supporting his

4    claim for breach of contract and make the conclusory assertion that the alleged breach

5    was done "negligently." Furthermore, Kassa should not be allowed to recover in tort

6    for the breach of duties that merely restate contractual obligations.

7    (7)    Kassa's Seventh Cause of Action for Negligent Hiring and

8    Supervision fails to state a claim because it is preempted by the PMPA. Furthermore,

9    Kassa has failed to allege any duty with respect to supervision of a particular

10    employee, or that such duty was breached. The FAC is also uncertain in that it cannot

11    be ascertained from reviewing the Sixth Cause of Action how, when, in what manner,

12    or upon what basis Kassa can claim that BPWCP breached a duty owed to Kassa.

13    (8)    Kassa's Eighth Cause of Action for Intentional Infliction of

14    Emotional Distress fails to state a claim because it is preempted by the PMPA.

15    Furthermore, Kassa has failed to allege any facts establishing the necessary element of

16    extreme or outrageous conduct on the part of BPWCP.

17    (9)    Kassa's Ninth Cause of Action for Temporary Restraining Order,

18    Preliminary Injunction, Permanent Injunction fails to state a claim because it is moot.

19    The lower court already denied Kassa's request for a temporary restraining order and

20    preliminary injunctive relief. Furthermore, the claim is duplicative of the PMPA-

21    based fourteenth cause of action.

22    (10)    Kassa's Tenth Cause of Action for Conspiracy fails to state a claim

23    because it is preempted by the PMPA. Kassa has failed to allege any facts

24    establishing the formation and operation of a conspiracy. Kassa has further failed to

25    allege any facts that damage resulted from an act or acts done in furtherance of the

26    purported plan. The conspiracy claim also fails, as a matter of law, because agents

27    and employees of a corporation cannot conspire with their employer/corporate

28    principal if they are acting in their official capacities on behalf of the corporation.

3

1198886.1

1    *Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.* (1994) 7 Cal.4[th] 502, 512, n. 12..

2    (11)  Kassa's Eleventh Cause of Action for Unfair and Deceptive

3    Business Practices fails to state a claim because it is preempted by the PMPA.

4    Furthermore, it is impossible to determine whether Kassa is seeking recovery under

5    statutory authority (i.e., Business & Professions Code § 17200) or whether Kassa

6    seeks to recover under a common law claim (i.e., unfair competition).  The uncertainty

7    is such that BPWCP is unable to intelligently respond to the allegations and purported

8    cause of action.

9    This Motion is made and based upon this Notice, the accompanying

10    Memorandum of Points and Authorities, the Appendix of Non-Federal Authorities

11    filed concurrently herewith, the prior proceedings and file herein, and such further

12    matters as the Court may consider at the time of the hearing.

13
14    DATED:  June 6, 2008                    Respectfully submitted,

15                                            KURT OSENBAUGH
                                              DEBORAH YOON JONES
16                                            MacKENZIE E. HUNT
                                              **WESTON, BENSHOOF, ROCHEFORT,**
17                                            **RUBALCAVA & MacCUISH LLP**

18                                                      /s/

19    _____
                                              Deborah Yoon Jones
20                                            Attorneys for Defendant
                                              BP WEST COAST PRODUCTS LLC

21

22

23

24

25

26

27

28

4

1198886.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

A Plaintiff must adequately plead sufficient facts to establish all necessary elements for each of the claims asserted in its, his or her complaint.  Here, plaintiff Omer Kassa (representing himself and H&O, Inc., collectively "Kassa") has essentially thrown all the facts he could possibly concoct onto his First Amended Complaint ("FAC") to see if any of the claims will stick.  In doing so, Kassa uses the same set of facts to assert a breach of contract claim, eleven tort claims, and an injunctive relief claim.   Indeed, Kassa attempts to convert a straightforward commercial contract dispute into a variety of inapplicable tort and statutory violations.  The gravaman of this dispute, however, is straightforward and involves a gasoline station franchisee (Kassa) who disagreed with proposed lease and franchise terms when the agreements came up for renewal.   Kassa refused to sign the renewal agreements and the lease and franchise relationship expired.  This is a contract case and the tort claims are superfluous, inadequately pled, and unsustainable as a matter of law.  Moreover, the majority of the claims are preempted by the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.* ("PMPA"), which exclusively governs the termination and nonrenewal of service station franchise agreements.

Furthermore, close scrutiny of most of the causes of action in the FAC reveals them to be flawed and subject to dismissal.   For example, the breach of contract claim fails to set forth, verbatim, the material terms of the contract at issue or attach a copy of the contract.  Kassa also improperly seeks tort damages for what are, in fact, contract claims (see 3rd, 4th, 5th, and 6th causes of action).  In addition, there are tort claims that do not properly allege all the requisite elements (see 2nd, 3rd, 5th, 6th, 7th, 8th, and 10th causes of action).  Kassa's ninth cause of action for injunctive relief is preempted by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* ("PMPA").  And of course, there are the absurd and ridiculous allegations that H&O, Inc. (a non-human corporate entity) sustained injuries to its body and shock and injury

1

to its nervous system as well as emotional distress damages.  (FAC, ¶4, 6th C/A and ¶ 4, 7th C/A).  Finally, the eleventh cause of action for purported "unfair and deceptive business practices" is so uncertain that BPWCP cannot respond properly; it is impossible to decipher whether Kassa seeks statutory relief (i.e., under Business & Professions Code § 17200) or common law relief (i.e., through an unfair competition claim).  None of these claims in the FAC are proper and BPWCP's Motion should be granted without leave to amend.

## II.    FACTUAL ALLEGATIONS

Plaintiff Kassa was the franchisee/lessee operator of the ARCO-branded gasoline station and am/pm Mini Market located at 2015 Winchester Road, Campbell, California 95008 ("Station") (First Amended Complaint ("FAC"), ¶3, 1st Cause of Action ("C/A")[1]).  An am/pm Lease PMPA Franchise Agreement and am/pm Mini Market Agreement effective March 1, 2005 (collectively, "Franchise Agreements") governed the franchise relationship between Kassa and BPWCP. (*Id.*, ¶7, ¶9, 1st C/A) The Franchise Agreements included a lease of the BPWCP-owned gasoline station and convenience store and a gasoline supply agreement, which were set to expire on March 1, 2008. (*Id.*)

Given the Franchise Agreements were set to expire on March 1, 2008, in January 2008, BPWCP delivered to Kassa the 45-Day Renewal Letter and provided Kassa with proposed new franchise agreements ("Renewal Offer") (FAC, ¶10, 1st C/A).  As of March 1, 2008, the Agreements expired; Kassa failed to return the signed documents contained in the Renewal Offer which were required to continue the franchise beyond March 1, 2008. (*Id.*, ¶11, 1st C/A).

Kassa filed suit on March 12, 2008, in the Superior Court for the County of Santa Clara.  In his "all-but-the-kitchen-sink" Complaint, Kassa alleges one claim for breach of contract and asserts eleven tort causes of action which are based on the

---

[1] The paragraph numbers in Kassa's FAC improperly restart with each new Cause of Action.  BPWCP therefore refers to the number of the paragraph, as well as the relevant cause of action in citing to Kassa's FAC.

2

1198886.1

exact same facts as the claim for breach of contract.  The tort causes of action are as follows: (1) conversion; (2) fraud and deceit; (3) breach of the implied covenant of good faith and fair dealing; (4) negligent misrepresentation; (5) negligence; (6) negligent hiring and supervision; (7) intentional infliction of emotional distress; (8) conspiracy; (9) unfair and deceptive business practices; (10) unfair business practices pursuant to Business and Professions Code section 21200; and (11) violations of the Unruh Civil Rights Act, sections 51 and 52  The only difference between Kassa's breach of contract cause of action and the tort claims is that the tort claims include boilerplate and conclusory language that BPWCP acted negligently, wrongfully, etc. Kassa's Complaint also states a claim for a temporary restraining order and preliminary and permanent injunctive relief to unwind the franchise termination and reinstate Kassa as the dealer operator of the Station.

On March 24, 2008, the Santa Clara County Superior Court granted BPWCP's *Ex Parte* Application to unwind the TRO erroneously obtained by Kassa. On April 4, 2008, the Superior Court denied Kassa's request for preliminary injunction.  BPWCP filed a Demurrer to the Complaint and Kassa filed (but failed to properly serve BPWCP) with the FAC which added a PMPA claim.  Upon BPWCP's eventual receipt of the FAC, BPWCP removed the action hereto.

Kassa's entire FAC can be boiled down to the following contract breach allegations:

- BPWCP allegedly promised not to discriminate in pricing when selling motor fuel to Kassa, to deliver motor fuel in a timely fashion, to provide necessary equipment, and to charge Kassa electronically only for those deliveries that had actually been made.  (See FAC, ¶ 7, 1st C/A; ¶ 1, 2nd C/A; ¶¶ 1 & 2, 3rd C/A; ¶¶ 1 & 3, 4th C/A; ¶¶ 1 & 2, 5th C/A; ¶¶ 1 & 2, 6th C/A; ¶¶ 1 & 2, 10th C/A;  ); and

- From March 2004 to March 2008, BPWCP purportedly failed to deliver fuel to Kassa, and that BPWCP further charged Kassa's bank account for gasoline products that were never delivered.  (FAC, ¶9, 1st C/A; ¶¶ 1 & 6, 3rd C/A; ¶¶

3

1 & 6, 4th C/A; ¶¶ 1 & 2, 5th C/A; ¶¶ 1 & 3, 10th C/A; ¶¶ 1 & 3, 12th C/A; ¶¶ 1, 5 & 6, 13th C/A).

However, as set forth in detail below, these general allegations alone fail to support any of the non-PMPA causes of action asserted in the FAC and without more, the Court should grant BPWCP's Motion without leave to amend.

## III. THE COURT SHOULD DISMISS ALL OF KASSA'S NON-PMPA CLAIMS THAT ARE PREEMPTED AND/OR IMPROPER

### A. FED. R. CIV. P 12(B)(6) STANDARD

A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.* (9th Cir. 1990) 901 F.2d 969, 699. In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *Cahil v. Liberty Mutual Ins. Co.* (9th Cir. 1996) 80 F.3d 336, 337.

### B. KASSA'S FIRST THROUGH ELEVENTH CAUSES OF ACTION ARE PREEMPTED BY THE PMPA

The Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.* ("PMPA") clearly preempts Kassa's first through eleventh claims, all which pertain in some form or manner to the nonrenewal of the franchise.

The PMPA specifically governs gasoline franchise nonrenewal claims and preempts the State court relief sought in the FAC. See 15 U.S.C. §§ 2801 *et seq.*; *see also Niakan, et al. v. Samaan and Union Oil Company of California* (1988) 199 Cal.App.3d 716 (state court lacked subject matter jurisdiction where claims of wrongful nonrenewal of gasoline franchise preempted by PMPA; claims of unfair trade practices, breach of implied covenant of good faith and fair dealing, breach of written contract, and misrepresentation often stem from franchisor's failure to renew

4

and such claims held to be preempted by PMPA); *Pride v. Exxon Corp.* (9th Cir. 1990) 911 F.2d 251, 257 (PMPA preempts state law causes of action that would have effect of limiting permissible reason for terminating or nonrenewing a petroleum franchise); *Consumers Petroleum Co. v. Texaco* (6th Cir. 1986) 804 F.2d 907 (state law claims alleging misrepresentations relating to the termination or nonrenewal of a franchise are preempted); *Mobil Oil Corp. v. Superior Court* (1987) 189 Cal.App.3d 485 (all state law claims arising out of termination of station lease, including claim for breach of covenant of good faith and fair dealing, are preempted); and *California ARCO Distributors, Inc. v. Atlantic Richfield Co.* (1984) 158 Cal.App.3d 349 (a service station franchise nonrenewal may not be enjoined absent a claim brought under the governing PMPA). Copies of all Non-Federal Authorities cited herein are attached to the concurrently filed Appendix of Non-Federal Authorities.

Though Kassa may argue that its claims are "extraneous" tort claims rather than a claim for the nonrenewal of their franchise agreements, the allegations including purported price discrimination, failure to deliver product, etc., are asserted solely because Kassa contends that they failed to renew their franchise agreements because of these issues. In addition, the damages sought relate directly to the loss of the franchise through the nonrenewal. The franchisees in *Mobil Oil Corp. v. Superior Court, supra* 189 Cal.App.3d 485 attempted to do exactly what Kassa is doing here by asserting claims for breach of the implied covenant of good faith and fair dealing, fraud and interference with prospective advantage after the franchisor nonrenewed the underlying ground lease. However, the court in *Mobil Oil* ruled that these common law state claims were in essence claims for the termination of the franchise and ruled that they were preempted by the PMPA. *Id.* at 489-491.

Accordingly, all causes of action which pertain to the nonrenewal of the franchise are preempted by the PMPA and Kassa cannot maintain that there is any likelihood of success on these claims.

NOTICE OF MOTION AND MOTION TO DISMISS

1198886.1

C. **THE CLAIMS LACK SUFFICIENT FACTS TO SUPPORT VIABLE CAUSES OF ACTION AGAINST BPWCP**

1. **Kassa Failed to Allege the Material Contract Provisions to Support the Breach of Contract Cause of Action.**

Kassa's first cause of action is for breach of contract. In order to maintain a breach of contract cause of action, Kassa must allege the essential elements of its claim: (1) the existence and the essential terms of the contract at issue; (2) Kassa's performance or excuse for non-performance of all conditions precedent to the BPWCP's obligation to perform; (3) BPWCP's breach of the contract, and (4) Kassa's damages. *Reichert v. General Insurance Co.* (1968) 68 Cal.2d 822, 830; and *Perry v. Robertson* (1988) 201 Cal.App.3d 333, 341. Where an action is based on an alleged breach of a written contract such as we have here, the "terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference." *Otworth v. So. Pacific Railway Trans. Co.* (1985) 166 Cal.App.3d 452, 459.

Here, Kassa has failed to plead verbatim the material terms of the contract upon which the breach of contract cause of action against BPWCP is based. Kassa has also failed to attach the relevant contracts which have allegedly been breached. Without necessary contract information BPWCP is unable to adequately respond. For example, who are the proper parties to the contract? Most likely Kassa seeks to avoid attaching the relevant Franchise Agreements and related assignment documents because the Court will learn that only H&O, Inc. was a party to the agreements and therefore, the individual defendant, Omer Kassa, lacks standing to maintain the breach of contract cause of action as well as remaining causes of action. Also, what specific provisions were purportedly breached? Without the actual contract language or contracts themselves attached to the FAC, the first cause of action for breach of contract is lacking and incomplete. Accordingly, the first cause of

6

1198886.1

1   action for breach of contract is flawed and the Court should grant BPWCP's motion to

2   dismiss.

### 2.   Kassa's Claim for Conversion Lacks the Requisite Elements.

4   Kassa's second cause of action is for conversion.  To sustain a claim for

5   conversion, the following three elements must be pled: (1) plaintiff's ownership or

6   right to possession of property; (2) defendant's wrongful act toward or disposition of

7   the property, interfering with plaintiff's possession; and (3) damage to plaintiff.  *PCO,*

8   *Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150

9   Cal.App.4th 384, 395.

10   Kassa's FAC fails to state facts sufficient to constitute a cause of action

11   for conversion as against BPWCP because there is no allegation that Kassa had a right

12   to possess the Station at the time BPWCP took possession of the Station.  Kassa

13   simply contends that he has "performed all the conditions of the contract that are

14   required to be performed," and that "Plaintiffs remains [sic] ready and willing to

15   perform all of the terms of the contract applicable to them and receive title to the

16   property as promised by BPWCP." (FAC, ¶2, 2nd C/A).  There is no allegation

17   indicating that Kassa had a right to any property or possession of the Station.  In fact,

18   Kassa concedes that the Franchise Agreements (which gave Kassa any possible right

19   to possession of the Station) expired.  (FAC, ¶ 11, 1st C/A.)  Furthermore, it is not

20   specifically alleged what property BPWCP allegedly converted; rather, BPWCP is left

21   to assume that the Station (which is owned by BPWCP) is the property that was

22   allegedly converted.  Accordingly, Kassa's conversion cause of action is incomplete

23   and insufficiently pled.

24   Moreover, the conversion claim contains the same allegations that

25   support the breach of contract claim.  Neither negligence, active or passive, nor a

26   breach of contract, even though it results in injury to, or loss of, specific property,

27   constitutes a conversion.  *Taylor v. Forte Hotels International* (1991) 235 Cal.App.3d

28

7

1119, 1124. Without more, Kassa cannot maintain an action for conversion against BPWCP and the Motion should be granted as to the second cause of action.

### 3. Kassa's Fraud Claim is Inadequate Because He Alleges No Facts to Support the Imposition of Tort Liability.

Kassa's Third Cause of Action is for fraud and deceit. The elements of a claim for fraud and deceit are as follows: (1) a misrepresentation or concealment of a material fact; (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *In re Napster, Inc. Copyright Litigation* (9th Cir. 2007) 479 F.3d 1078, 1096, quoting *Small v. Fritz Cos., Inc.* (2003) 30 Cal.4th 167, 132 (internal quotation marks omitted). Moreover, where there is a breach of contract alleged, the law will not find tort liability as well as contractual liability unless there is a breach of some independent duty imposed by law. *Erlich v. Mendezes* (1999) 21 Cal.4th 543, 553-4; *see also Bank of America v. Pendergrass* (1935) 4 Cal.2d 258, 48 P.2d 659, 661-662 (as a general proposition, a claim for fraud cannot be based upon promises which concern contractually negotiated obligations).

Here, Kassa's fraud claim is based upon the same facts which support the inadequately pled breach of contract claim. The sole allegation on which Kassa's fraud claim is based is the assertion that BPWCP failed to "deliver gasoline products after timely request were made; fail[ed] to charge Plaintiffs a reasonable costs [sic] for gasoline products as compared to other gasoline stations in the area; wrongfully deducting money from Kassa's bank account for money not owed." (FAC, ¶6, 3rd C/A). Kassa is essentially asserting that BPWCP has committed fraud by breaching the purported contracts; these facts alone are insufficient given the *Erlich* and *Pendergrass* decisions.

Moreover, the only additional allegations supporting his fraud claim are boilerplate assertions that BPWCP "made intentional misrepresentations of material facts to Plaintiffs, knowing such statements were untrue with the intent to induct [sic]

8

1198886.1

plaintiffs to entering [sic] into the contract, continuing with the contract and not terminating it all to their detriment." (FAC, ¶3, 3rd C/A). Such boilerplate statements, without more, are not sufficient to support a fraud claim; indeed, a fraud claim must be pled with particularity. Federal Rules of Civ. Pro., Rule 9(b); see also *Moore v. Brewster* (9th Cir. 1996) 96 F.3d 1240, 245-1246; and *Kiseskey v. Carpenter Trust for Southern California* (1983) 144 Cal.App.3d 222, 228. Therefore, the Court should grant BPWCP's motion to dismiss Kassa's third cause of action.

## 4. Kassa's Implied Covenant of Good Faith and Fair Dealing Claim is Improperly Duplicative of the Breach of Contract Claim.

Kassa's fourth cause of action is for breach of the covenant of good faith and fair dealing. Kassa's cause of action for breach of the implied covenant as against BPWCP is flawed in two respects: (1) the claim is duplicative of the breach of contract cause of action and thus the express provisions (rather than the implied covenant) govern; and (2) there is no recognized cause of action for tortuous breach of contract outside of the insurance context where a special relationship exists between the parties.

Kassa alleges that BPWCP breached the covenant of good faith and fair dealing by breaching the contract "in bad faith." (FAC, ¶6, 4th C/A). Every contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement. *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1393. However, where a claim for breach of the implied covenant does not go beyond the statement of a breach of express contractual terms and seeks the same relief sought in a breach of contract claim, it is simply superfluous to the contract claim. *Celador Int'l Ltd. V. Walt Disney Co.* (C.D. Cal., 2004) 347 F.Supp.2d 846, 852; *Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317, 353, n. 18. Furthermore, where there is an express agreement covering a certain subject, "the law cannot imply a contract in the face of such express agreement." *Benton v. Hofmann*

9

1    *Plastering Company* (1962) 207 Cal.App.2d 61, 24 Cal.Rptr. 268, 276.  The facts

2    upon which Kassa relies in alleging breach of the covenant are covered by express

3    terms in the Franchise Agreements, and therefore his claim for breach of the covenant

4    is duplicative of his claim for breach of contract and is improper.

5            In addition, Kassa essentially attempts to allege a tortuous breach of

6    contract claim by stating that BPWCP had a special relationship and "Plaintiffs were

7    in a vulnerable position because they were unsophisticated with the complexities of

8    the transaction." (FAC, ¶4, 4[th] C/A)  These facts, even if true, are insufficient to

9    elevate the relationship between Kassa and BPWCP to a "special relationship."  The

10   covenant of good faith and fair dealing is a contract term and compensation for its

11   breach has almost always been limited to contract rather than tort remedies.  *Foley v.*

12   *Interactive Data Corp.* (1988) 47 Cal.3d 654, 684.  An exception to this general rule

13   occurs in the insurance contract setting.  There, the contracting parties are held to be

14   in a special relationship, because the insured does not seek to obtain a commercial

15   advantage by entering into the contract, but instead seeks protection against calamity.

16   *Id* at 685.  Therefore, in the insurance setting, the obligations of good faith and fair

17   dealing are said to encompass qualities of decency and humanity inherent in the

18   responsibilities of a fiduciary, so that breach of these obligations justifies the

19   imposition of tort liability.  *Id.*  Kassa entered into the Franchise Agreements for his

20   own commercial advantage, and not for purposes of securing any sort of protection

21   from BPWCP.  Therefore, the "special relationship" does not apply to Kassa and

22   BPWCP and the fourth cause of action is improper.  BPWCP's motion to dismiss the

23   fourth cause of action should be granted without leave to amend.

24           **5.**   **<u>Kassa's Negligent Misrepresentation Claim Lacks the</u>**

25              **<u>Requisite Specificity.</u>**

26           Kassa's fifth cause of action is for negligent misrepresentation.  The

27   elements of a negligent misrepresentation claim are: (1) the defendant must have made

28   a representation as to a past or existing material fact; (2) the representation must have

10

been untrue; (3) regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true; (4) the representation must have been made with the intent to induce plaintiff to rely upon it; (5) the plaintiff must have been unaware of the falsity of the representation; he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation; and (6) as a result of his reliance upon the truth of the representation, the plaintiff must have sustained damage. *Walters v. Marler* (1978) 83 Cal.App.3d 1, 17, overruled on another ground in *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505-507. Furthermore, where there is a breach of contract alleged, the law will not find tort liability as well as contractual liability unless there is a breach of some independent duty imposed by law. *Erlich v. Mendezes* (1999) 21Cal.4th 543, 553-4.

In alleging the negligent misrepresentation cause of action, Kassa relies solely on purported representations that BPWCP made to him in connection with the Franchise Agreements. Indeed, there are no facts alleged which go beyond those supporting the breach of contract claim. Kassa's FAC alleges that BPWCP "made the promises and representations under the contract with no reasonable rounds for believing them to be true..." (FAC, ¶2; 5th C/A). However, Kassa fails to allege the precise misrepresentations at issue, as well as state any facts tending to show that these supposed misrepresentations were made with the intent of inducing reliance by Kassa. Furthermore, Kassa's FAC is also uncertain in that it cannot be ascertained from review of the fifth cause of action how, when, in what manner, or upon what basis Kassa can claim that BPWCP has engaged in negligent misrepresentation. Specifically, Kassa fails to identify when the purported misrepresentations took place, who made the misrepresentations, what the misrepresentations were, and by what authority those misrepresentations were made. Finally, there is no other independent duty pled or imposed by law in this fifth cause of action and BPWCP cannot recover tort damages for what are, in actuality, purported contract claims. Accordingly, the

11

1    Court should grant the motion to dismiss Kassa's fifth cause of action without leave to

2    amend.

### 6.    Kassa's Negligence Claim is Also Improperly Duplicative of His Claim for Breach of Contract.

Kassa's sixth cause of action is for negligence.  To properly allege a negligence cause of action, a plaintiff must plead the following four elements: (1) duty; (2) breach of the duty; (3) causation; and (4) damages.  *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673.  The negligent performance of a contract, however, will not ordinarily give rise to tort damages.  *Aas v. Superior Court* (2000) 24 Cal.App.4th 627, 643, superseded by statute on other grounds as stated in stated in *Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1079-1080.

Here, Kassa alleges that BPWCP owed him a duty under the contract, and that BPWCP "negligently, recklessly, or carelessly knew or should have known that the BPWCP never intended to proceed with the promises, terms and conditions of the contract..."  (FAC, ¶3, 6th C/A).  This is insufficient to state a cause of action for negligence in the absence of any facts that BPWCP breached some duty to Kassa that is independent of its duties to Kassa under the Franchise Agreements.  Furthermore, the negligence cause of action is also uncertain in that Kassa fails to identify when the purported breach of duty took place, which acts constituted the specific breach, or who was responsible for the breach.  BPWCP's motion to dismiss the sixth cause of action should be granted without leave to amend.

### 7.    Kassa's Negligent Hiring and Supervision Claim Lacks Required Elements.

Kassa's seventh cause of action is for negligent hiring and supervision. To state a claim for negligent supervision, the complaint must allege: (1) a duty of care owed to the plaintiff with respect to the supervision of the employee; (2) a breach of that duty with respect to the supervision of the employee; (3) that negligent supervision must be the cause of plaintiff's damages; and (4) resulting damages to the

12

plaintiff. *Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4[th] 790. Furthermore, claims for negligent hiring and supervision are limited to situations in which an employee has tortiously injured the plaintiff. *See Underwriters Ins. Co. v. Purdie* (1983) 145 Cal.App.3d 57, 69. A typical situation and widely cited example in which a claim for negligent hiring and supervision was deemed appropriate was in *Roman Catholic Bishop v. Superior Court* (1996) 42 Cal.App.4[th] 1556, where the plaintiff brought suit against the Roman Catholic Church for the negligent hiring and supervision of a priest who had allegedly sexually molested her.

Kassa's FAC lacks any facts to support the existence of any duty of care owed by BPWCP to Kassa with respect to the supervision of any particular employee. The FAC also lacks any allegation of the breach of that duty. In addition, Kassa fails to identify which of BPWCP's employees were negligently hired or supervised, or how the purported negligent hiring or supervision actually caused any injury to Kassa. Finally, as previously noted, Kassa has failed to adequately allege any facts supporting the notion that he has been tortiously injured by BPWCP's purported breach of contract. Therefore, Kassa's claim for negligent supervision is not only uncertain and insufficient, but also inapplicable in this setting. Accordingly, the Court should grant the motion to dismiss Kassa's seventh cause of action.

### 8.   Kassa's Intentional Infliction of Emotional Distress Claim Lacks Sufficient Facts to Support a Viable Cause of Action.

Kassa's eighth cause of action is for intentional infliction of emotional distress. To maintain such a cause of action, a plaintiff must allege that: (1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress. *Cervantez v. J.C. Penny Co.* (1979) 24 Cal.3d 578, 593. The nature of the wrongful conduct must be so extreme and outrageous as to exceed all bounds usually

13

1   tolerated in a civilized society, and it further must be especially calculated to cause,
2   and must actually cause, mental distress of a very serious kind. *Davidson v. City of*
3   *Westminster* (1982) 32 Cal.3d 197, 209. A person is entitled to receive emotional
4   distress damages. *Hailey v. California Physicians' Service*, 158 Cal.App.4th 452,
5   477. Not surprisingly, BPWCP has been unable to locate a single reported decision in
6   California in which a corporation has received emotional distress damages.

7   Notwithstanding the ridiculousness of H&O, Inc. asserting this claim
8   (and the dismissal motion as to H&O, Inc. on this claim should no doubt be sustained
9   without leave to amend), the intentional infliction of emotional distress cause of action
10  fails to assert the required element of extreme or outrageous conduct on the part of
11  BPWCP. Kassa alleges that "as a result of the wrongful, intentional and malicious
12  acts of BPWCP and each of them and the fright thereby caused to Plaintiffs, he have
13  [sic] suffered extreme and severe mental anguish, emotional distress and physical pain
14  and have been injured to their minds and bodies [sic]." (FAC, ¶2, 8th C/A). This type
15  of general and conclusive allegation is insufficient. Kassa also asserts states that
16  BPWCP engaged in "wrongful, intentional, and malicious acts," without explaining
17  the precise nature of those acts, or how they were so extreme as to exceed all bounds
18  usually tolerated in a civilized community. *See Canta v. Resolution Trust Corp.*
19  (1992) 4 Cal.App.4th 857, 888 (allegations that defendant's conduct is "outrageous" or
20  "malicious" is insufficient, as a matter of law, to provide a basis for the outrageous
21  conduct element of the facts). Furthermore, the claim is based on contract breach
22  allegations and tort liability based on these contentions is inappropriate. *Aas v.*
23  *Superior Court, supra,* 24 Cal.4th at 643. Accordingly, BPWCP's motion to dismiss
24  the eighth cause of action should be granted <u>without leave to amend</u>.

**9.   <u>Kassa's Claim for Injunctive Relief is Subject to Dismissal</u>**
**<u>Because it is Moot and Duplicative.</u>**

27  Kassa's ninth cause of action is for temporary restraining order,
28  preliminary injunction, and permanent injunction. The Court has already issued

14

1198886.1

1  rulings denying Kassa's requests for TRO and Preliminary Injunctive relief, Kassa's

2  remaining claim for permanent injunctive relief is also improper and should be

3  dismissed on grounds of Federal preemption as already discussed above.

4      **10.**    **Kassa's Conspiracy Claim Lacks the Necessary Elements**

5          **Required to State a Cause of Action.**

6      Kassa's tenth cause of action is for conspiracy.  To state a cause of action

7  for conspiracy, <u>facts</u> must be alleged showing the formation and operation of a

8  conspiracy and damage resulting from an act or acts done in furtherance of the plan.

9  *Orloff v. Metropolitan Trust Co.* (1941) 17 Cal.2d 484, 487.  The pleaded facts must

10  show <u>something was done</u> which, without the conspiracy, would give rise to a right of

11  action. *Lesperance v. North American Aviation, Inc.* (1963) 217 Cal.App.2d 336, 345.

12  Bare legal conclusions, inferences, generalities and presumptions are insufficient to

13  properly state a cause of action for conspiracy.  *117 Sales Corporation v. Olsen* (1978)

14  80 Cal.App.3d 645, 650.

15      Kassa's cause of action for conspiracy fails to allege the necessary facts

16  to support such a claim.  First, there is a complete absence of any facts showing that

17  BPWCP was involved in the formation and operation of any conspiracy.  In fact,

18  Kassa has failed to even allege any facts regarding the person(s) with whom BPWCP

19  supposedly entered into a conspiracy.  Next, Kassa fails to allege any facts showing

20  that damage resulted from an act or acts done in furtherance of the purported plan.

21  There is no allegation of any actual wrongful conduct on the part of BPWCP, and no

22  information concerning BPWCP's participation in the alleged conspiracy.

23      Assuming Kassa is claiming that agents or employees of BPWCP

24  conspired with one another, Kassa cannot maintain a conspiracy cause of action, as a

25  matter of law.  Agents and employees of a corporation cannot conspire with their

26  corporate principal and employer if they were acting in their official capacities on

27  behalf of the corporation. *Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.* (1994) 7

28

NOTICE OF MOTION AND MOTION TO DISMISS

1198886.1

1  Cal.4[th] 502, 512, n. 12.  Without more, Kassa's conspiracy cause of action against

2  BPWCP is defective.

3  **11.  Kassa's Claim for Unfair and Deceptive Business Practices is**

4  **Uncertain and Ambiguous.**

5  Kassa's eleventh cause of action is for "unfair and deceptive business

6  practices."  Unlike the other causes of action discussed above, BPWCP is unable to

7  present the Court with the requisite elements necessary to support this claim.  This is

8  because it is virtually impossible to decipher whether Kassa is stating a statutory claim

9  (i.e., under Business & Professions Code § 17200) or a common law claim (i.e., for

10  unfair competition).  Given such uncertainty, BPWCP has no way of responding to

11  this claim.

12  In the FAC, Kassa alleges that BPWCP engaged in unfair and deceptive

13  business practices by "misrepresent[ing] their authority, misrepresent[ing] the contract

14  provisions, and process [sic] for correcting problems by BPWCP, and engag[ing] in

15  an overall pattern and scheme of defrauding members of the public including

16  Plaintiffs, into relying upon their professional expertise..." (FAC, ¶2, 11[th] C/A).

17  Based on these allegations (which are duplicative of the breach of contract and other

18  tort claims), BPWCP cannot determine what exactly Kassa is pleading.  Further

19  specificity is required or else the claim should be dropped.

20  Furthermore, Kassa also alleges in this cause of action that BPWCP are

21  "fiduciaries and/or professionals with duties of due care and loyalty to Plaintiffs."

22  (*Id*).  To the extent that there is some recognized cause of action for "unfair and

23  deceptive business practices" and Kassa contends that this purported fiduciary

24  relationship creates some liability therefore, we note that to establish a fiduciary

25  relationship, there must be a "relation existing between parties to a transaction

26  wherein one of the parties is in duty bound to act with the utmost good faith for the

27  benefit of the other party." *Wolf v. Superior Court* (2003) 107 Cal.App.4[th] 25, 29.

28  There is generally no fiduciary owed duty in a purely commercial situation. *McCann*

16

1198886.1

1  *v. Lucky Money, Inc.* (2005) 129 Cal.App.4th 1382, 1398. BPWCP's relationship with
2  Kassa was purely commercial in nature and thus Kassa's conclusory assertion that
3  BPWCP was a fiduciary to Kassa is unsupported.

## IV.    CONCLUSION

5         This action is nothing more than a straightforward gasoline franchise
6  non-renewal and termination matter and the governing franchise agreements dictate
7  the available damages, if any. At best, Kassa can maintain claims under the PMPA
8  (but as the Court will eventually learn, those allegations are unfounded). As
9  evidenced by the inadequately pled causes of action in the FAC Kassa fails at the
10 attempts to create tort liability where none exists. For the reasons stated herein,
11 BPWCP respectfully requests that this Court grant its Motion, without leave to amend.

DATED: June 6, 2008                    Respectfully submitted,

                                       KURT OSENBAUGH
                                       DEBORAH YOON JONES
                                       MacKENZIE E. HUNT
                                       **WESTON, BENSHOOF, ROCHEFORT,
                                           RUBALCAVA & MacCUISH LLP**

                                       _____
                                            Deborah Yoon Jones
                                       Attorneys for Defendant
                                       BP WEST COAST PRODUCTS LLC

17

1198886.1

**PROOF OF SERVICE**

I, Heather Thai, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On June 6, 2008, I served the document(s) described as **NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT BP WEST COAST PRODUCTS LLC AS TO FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows: SEE ATTACHED SERVICE LIST

☒ BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

☐ BY FEDERAL EXPRESS    ☐ UPS NEXT DAY AIR    ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☐ FEDERAL EXPRESS    ☐ UPS    ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of    ☐ FEDERAL EXPRESS    ☐ UPS    ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐ BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☐ BY ELECTRONIC MAIL TRANSMISSION WITH ATTACHMENT: On this date, I transmitted the above-mentioned document by electronic mail transmission with attachment to the parties at the electronic mail transmission address set forth on the attached service list.

☐ [State]    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ [Federal]    I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 6, 2008, at Los Angeles, California.

_Heather Thai_
Heather Thai

1198886.1

**KASSA, et al. v. BP WEST COAST PRODUCTS LLC**
**United States District Court, Northern District of California**
**Case No. C08-02725 PVT**

### SERVICE LIST

George Holland, Esq.
LAW OFFICES OF GEORGE HOLLAND
1970 Broadway, Suite 1030
Oakland, CA  94612

Attorney for Plaintiffs, OMER KASSA,
OMER KASSA dba H & O, INC. and H
& O, INC.

Tel:  (510) 465-4100
Fax:  (510) 465-4747

1198886.1