**E-FILED on:** **8/12/2008**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OMER KASSA, individually; OMER KASSA dba H & O, INC., and H & O, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BP WEST COAST PRODUCTS, LLC, dba ARCO PRODUCTS COMPANY and DOES 1 to 50,<br><br>Defendants. | No. C-08-02725 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART BP WEST COAST'S MOTION TO DISMISS<br><br>**[Re Docket No. 10]** |

Defendant BP West Coast Products LLC ("BP West Coast") moves to dismiss each claim of the complaint. Mr. Kassa[1] opposes the motion. The court has reviewed the papers and considered the arguments of counsel. For the following reasons, the court grants in part and denies in part BP West Coast's motion to dismiss as follows:

1. With respect to claims 1 and 11, the motion is denied.
2. With respect to claims 2, 3, 4, 5, 6, 7, 8 and 10, the motion is granted.
3. With respect to claim 8 (as to H & O, Inc.) and 9, the motion is granted with prejudice.

---

[1] The first amended complaint alleges that H & O, Inc. is a California corporation. Docket No. 1, Ex. F ("FAC"). Omer Kassa is the president of H & O, Inc. *Id.* The complaint lists three plaintiffs: H & O, Inc., Mr. Kassa, and "Omer Kassa dba H & O, Inc." The complaint never distinguishes between the "plaintiffs" and it is unclear which entity did what from the allegations. It appears that the force behind this suit is Mr. Kassa, and the court therefore refers to the "plaintiffs" as Mr. Kassa.

Mr. Kassa may file an amended complaint within 30 days.

## I. FACTUAL ALLEGATIONS

Mr. Kassa owns and operates the ARCO AM/PM gas station and mini-mart at 2015 South Winchester Boulevard, Campbell, California. FAC ¶ 1-3.[2] Back on March 1, 2002, BP West Coast (which owns the ARCO brand) franchised Mr. Kassa and began to supply Mr. Kassa with gasoline and other merchandise. *Id.* ¶¶ 1-2, 1-3, 1-7. In exchange, Mr. Kassa paid an initial franchise fee of $35,000, leased the premises for $2,000 per month, and pays 15% of his gross sales to BP West Coast. *Id.* ¶ 1-7. The parties also appear to have agreed to allow BP West Coast to electronically withdraw funds from Mr. Kassa for charges like gasoline deliveries. *See id.* ¶¶ 1-9, 3-2. BP West Coast also "promised at that time not to discriminate in price between plaintiffs and different purchasers of vehicle motor fuels" and "to timely deliver vehicle motor fuels." *Id.* ¶ 1-7. The franchise agreement had a three-year term, and the parties renewed the franchise agreement on March 1, 2005. *Id.* ¶¶ 1-7, 1-9.

Despite the 2005 renewal, Mr. Kassa alleges that the franchise relationship began to suffer in March 2004. *Id.* ¶ 1-9. From March of 2004 through March of 2008, Mr. Kassa alleges that BP West Coast breached the franchise agreement by failing to deliver gasoline, electronically withdrawing funds from Mr. Kassa to pay for undelivered gasoline, and for discriminating against Mr. Kassa by charging him more than BP West Coast charged neighboring franchisees. *Id.* ¶¶ 1-9, 1-12(2).

The disputes came to a head in 2008 when the renewal date of the franchise approached. *Id.* ¶ 1-10. BP West Coast submitted a renewal to Mr. Kassa on January 19, 2008. *Id.* Mr. Kassa responded by complaining about the alleged breaches of contract, as well as by apparently raising questions regarding the renewal contract's provisions for an initial deposit fee, monthly rent increases and gross sales royalties. *Id.* BP West Coast "refused to answer" these questions and failed to resolve the pre-existing disputes, but it "insisted orally that after [Mr. Kassa] signed the contract renewal, these issues would be addressed." *Id.* On March 1, 2008, the franchise agreement

---

[2] Mr. Kassa's complaint defies convention and renumbers its paragraphs with each claim. Accordingly, the court cites first to the claim, then the paragraph within the claim.

ORDER GRANTING IN PART AND DENYING IN PART BP WEST COAST'S MOTION TO DISMISS
No. C-08-02725 RMW
TSF                                                                 2

1  expired. *Id.* ¶ 1-11. BP West Coast "demanded that [Mr. Kassa] renew the contract without
2  addressing any of the ongoing problems" and Mr. Kassa appears to have refused. *Id.*
3      It appears that BP West Coast has taken possession of the gas station and that it continues to
4  operate it. *See id.* ¶ 1-13. This allegation cannot be reconciled with respect to who owns the 2015
5  South Winchester premises. Mr. Kassa alleges that he is the "owner" of the gas station. *Id.* ¶ 1-3.
6  Mr. Kassa claims that BP West Coast has wrongfully converted the premises and that he should
7  "receive title to the property as promised [by] defendants." *Id.* ¶ 2-2. This might be factually
8  premised on Mr. Kassa's payment of $500,000 in March 2005, which was separate from his $20,000
9  renewal fee. *Id.* ¶ 4-3. But Mr. Kassa also alleges that he leased the premises from BP West Coast
10 in 2002, *id.* ¶ 1-7, and that he had questions about "monthly rent increases" in 2008, *id.* ¶ 1-10.
11 These allegations appear contradictory, and the court cannot accept them both.
12     Mr. Kassa alleges that he has since suffered "extreme and severe mental anguish, emotional
13 distress and physical pain" and that he has been injured to his "mind[] and bod[y]." *Id.* ¶ 8-2. Mr.
14 Kassa also notes that he is "of Ethiopian descent and a member of the black race." *Id.* ¶ 13-4.

## II.  ANALYSIS

16 From the above facts, Mr. Kassa asserts fourteen claims against BP West Coast. BP West
17 Coast moves to dismiss the first eleven claims.

**A.  Preemption by the Petroleum Marketing Practices Act**

19 BP West Coast moves to dismiss the first eleven claims as preempted by the Petroleum
20 Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq*. The Act explicitly preempts a subset of state
21 regulations. *See* 15 U.S.C. § 2806(a). Specifically, "no State or any political subdivision thereof
22 may adopt, enforce, or continue in effect any provision of any law or regulation . . . with respect to
23 termination (or the furnishing of notification with respect thereto) of any such franchise or to the
24 nonrenewal (of the furnishing of notification with respect thereto) of any such franchise
25 relationship[.]" 15 U.S.C. § 2806(a)(1). As its text reveals, this preemption clause "*is* limited" and
26 "it does not reach any state laws which only incidentally affect franchise termination or
27 nonrenewal." *Unocal Corp. v. Kaabipour*, 177 F.3d 755, 768 (9th Cir. 1999) (emphasis in original).
28

*United States District Court*
*For the Northern District of California*

1    Three Ninth Circuit cases illustrate the scope of this preemption provision. The most recent
2  case considered the scope of California Business & Professions Code section 20999.25(a), a law that
3  requires a franchisor seeking to sell leased premises to first offer the premises to the franchisee.
4  *Kaabipour*, 177 F.3d at 768-69 & fn. 9. The Ninth Circuit read the statute narrowly to harmonize it
5  with the Act, and held that the California law only applied where there is not a termination or
6  nonrenewal. *Id.* at 769. Thus, the California law did not regulate with respect to termination or
7  nonrenewal and was not preempted by section 2806(a)(1). *Id.*

8    In another case, a franchisee sued Exxon for fraud based on Exxon's alleged failure to inform
9  the franchisee that Exxon was planning to withdraw from the Oregon market when it entered into the
10 franchise agreement. *Pride v. Exxon Corp.*, 911 F.2d 251, 253 (9th Cir. 1990). The trial court held
11 that the fraud claim was preempted, but the Ninth Circuit reversed because the fraud claim was
12 based on "the actions of the parties in *forming* the contract." *Id.* at 257 (emphasis in original).
13 Because the franchisee's fraud claim did not touch on the process of terminating or not renewing a
14 franchise, the claim did not implicate the Act's preemption provision. *Id.* at 258. Therefore, the
15 fraud claim was not preempted. *Id.*

16    A more complex set of facts illustrates how the Act's preemption provision reaches some
17 aspects of a claim, but not others. *See Simmons v. Mobil Oil Corp.*, 29 F.3d 505, 511-12 (9th Cir.
18 1994). The franchisee asserted state law claims for breach of the covenant of good faith and fair
19 dealing in contract and in tort and a claim for constructive fraud. *Id.* The facts supporting the
20 covenant claims included changes to the structure of the rental agreement upon renewal, "the
21 opening of the Mobil-operated stations, predatory pricing, and failure to comply with the franchise
22 agreement." *Id.* at 512. The fraud claim was based on Mobil's failure to disclose "(1) that Mobil
23 intended to open five service stations within Simmons' marketing area; (2) that Mobil was going to
24 engage in predatory pricing; (3) that the volume of petroleum products would drop appreciably; and
25 (4) that Mobil would not adjust the rent." *Id.* The court held that any claim predicated on how
26 Mobil changed the rental terms in the franchise renewal agreement was preempted because it dealt
27 with the standards regarding renewal contained in the Act. *Id.* The court held that preemption did
28 not apply to claims based on "Mobil's opening of company-operated stores in Simmons' marketing

ORDER GRANTING IN PART AND DENYING IN PART BP WEST COAST'S MOTION TO DISMISS
No. C-08-02725 RMW
TSF                                          4

area, using those stores to drive Simmons out of business, and failing to maintain Simmons' facility" because those events all occurred after Simmons renewed his franchise. *Id.*

BP West Coast conclusorily asserts that the Act "clearly preempts Kassa's first through eleventh claims, all which pertain in some form or manner to the nonrenewal of his franchise." But the Act's preemption analysis requires more nuance and must be conducted on a "case-by-case basis." *Humboldt Oil Co., Inc. v. Exxon Co., U.S.A.*, 823 F.2d 373, 375 (9th Cir. 1987) (citing legislative history of the Act's preemption provision). As shown above, the analysis always turns heavily on each situation's facts.

To be sure, this dispute boiled over into litigation at the same time as Mr. Kassa's nonrenewal of the franchise agreement. Very few of his allegations, however, even relate to the procedure or standards for termination or nonrenewal. The gravamen of Mr. Kassa's complaint consists of two contractual disputes. The first is that BP West Coast allegedly charged Mr. Kassa for gasoline that it never delivered and will not reimburse him. The second is that BP West Coast breached the franchise agreement by charging him more for gasoline than it did for Mr. Kassa's neighboring BP West Coast franchisees. The claims premised on these facts bear no substantive relation to the nonrenewal of Mr. Kassa's franchise and are not preempted. *Accord Davidson v. ConocoPhillips Co.*, 2008 WL 2625873, *2 (N.D. Cal. Jul. 3, 2008) (Zimmerman, M.J.) (holding that preemption did not apply to a breach of contract claim based on the franchisor's failure to reimburse the franchisee for making improvements to the property).

It does not appear to the court that any of Mr. Kassa's claim touch on the procedure for terminating or nonrenewing a franchise agreement, especially since it was Mr. Kassa that declined to renew the franchise agreement. Mr. Kassa's complaint is far from clear, however, and as discussed below, it requires clarification. Accordingly, the court denies BP West Coast's motion to dismiss on preemption grounds, but BP West Coast may raise the issue later if warranted by Mr. Kassa's amended complaint.

**B.    Breach of Contract**

BP West Coast moves to dismiss Mr. Kassa's first claim for breach of contract because Mr. Kassa has failed to plead the breached terms of the contract verbatim, citing *Otworth v. Southern*

*Pacific Transportation Co.*, 166 Cal. App. 3d 452, 459 (1985) ("If the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference."). The court has already rejected this argument, noting that federal procedural law, not state law, governs in this court and that federal procedure requires only that the defendant have notice of the contract alleged to be breached. *Securimetrics, Inc. v. Hartford Cas. Ins. Co.*, 2005 WL 1712008, *2 (N.D. Cal. Jul. 21, 2005) (Wilken, J.); *cf. Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Of course, this case would be easier to understand had Mr. Kassa attached a copy of the 2005 franchise agreement. But if BP West Coast believed that this court needed to be able to review the contract to decide this motion, BP West Coast could have supplied the contract. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002); *In re Pac. Gateway Exchange, Inc. Secs. Litig.*, 169 F. Supp. 2d 1160, 1164 (N.D. Cal. 2001).

BP West Coast does not argue that it lacks notice of the substance of Mr. Kassa's breach of contract claim. Accordingly, its motion to dismiss the first claim is denied.

**C.    Conversion**

Mr. Kassa's second claim is for conversion. The complaint does not clearly indicate what property Mr. Kassa alleges that BP West Coast converted. Indeed, BP West Coast initially (and reasonably) inferred that Mr. Kassa's complaint alleged that BP West Coast converted the gas station. But in his opposition, Mr. Kassa intimates that the conversion claim is based on BP West Coast's alleged electronic withdrawal of Mr. Kassa's money for the gasoline deliveries that never took place. This suffices to provide notice of the substance of Mr. Kassa's claim.

BP West Coast next argues that Mr. Kassa cannot allege a claim for conversion because he does not allege "a specific sum capable of identification." The case BP West Coast cites does not support its argument. "While it is true that money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved, it is not necessary that each coin or bill be earmarked." *Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (1941) (citation omitted). Here, Mr. Kassa alleges that BP West Coast wrongfully withdrew money from his account for undelivered gasoline

shipments. Such discrete withdrawals seem eminently "capable of identification" based on bank records of the transactions. *Accord PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 397 (2007). Of course, Mr. Kassa will have to introduce proof of the specific amounts of the withdrawals, or else his claim for conversion will fail. *Id.* (affirming summary judgment on claim for conversion of duffel bag full of money because plaintiff failed to introduce evidence of a specific amount of money).

Finally, BP West Coast argues that a claim for conversion cannot exist based only on a breach of contract. "Conversion is the wrongful exercise of dominion over the personal property of another." *Taylor v. Forte Hotels International*, 235 Cal. App. 3d 1119, 1124 (1991). "The basic elements of the tort are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Fremont Indem. Co. v. Fremont General Corp.*, 148 Cal. App. 4th 97, 119 (2007). Based on dictum in *Taylor* that a breach of contract does not give to rise to a claim for conversion, BP West Coast argues that it did no more than breach its franchise agreement with Mr. Kassa, and thus did not convert the funds.

Based on the court's understanding of the allegations, it agrees. A party that breaches a contract normally does not commit conversion because the contract gives them a right to possess the property at issue. Perhaps they have failed to pay for that property under the contract (giving rise to the breach), but they still possess a right to the property. The situation as alleged here is that BP West Coast used the access it had to Mr. Kassa's funds (which it obtained pursuant to the contract) to extract money from Mr. Kassa's account that it was not entitled to withdraw because it had not delivered the gasoline ordered by Mr. Kassa. BP West Coast allegedly breached its obligation to deliver the gasoline, but it did not commit conversion under those facts because Mr. Kassa no longer had a right to the amount of money corresponding to the shipment he ordered. Thus, Mr. Kassa cannot establish the first element of the tort and fails to state a claim.

**D.     Fraud**

ORDER GRANTING IN PART AND DENYING IN PART BP WEST COAST'S MOTION TO DISMISS
No. C-08-02725 RMW
TSF                                                                7

Mr. Kassa's third claim is for fraud. It appears from his opposition that Mr. Kassa alleges that various promises made by BP West Coast that it would remedy Mr. Kassa's complaints were knowingly false. These alleged promises occurred in various years throughout 2005 to 2007.

While California law recognizes a theory of "promissory fraud," *see* 5 Witkin, Summary of California Law § 781 (10th ed. 2005), the elements of fraud must still be pled with particularity. Fed. R. Civ. P. 9(b). For example, Mr. Kassa's cursory allegation of a false promise that in 2007 "defendants would return all monies wrongfully taken from plaintiffs' banking account" fails to satisfy Rule 9(b). For example, if the promise was made directly to Mr. Kassa, it is reasonable that he should be able to aver who made the promise and not rely on "defendants" including "Does 1-50."

Mr. Kassa argues that less specificity is required because here "the defendants must possess full information concerning the facts of the controversy." Mr. Kassa's argument, based on a heavily criticized California state appellate case, has no bearing on the interpretation of Rule 9(b). Indeed, all defendants accused of fraud "must possess full information concerning the facts of the controversy" *if the allegations are true*. Rule 9(b) has many purposes, however, and one is to protect defendants from baseless accusations of fraud. *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (Posner, J.). Obviously, one that is wrongly accused of fraud will not possess "full information concerning the facts of the controversy." But if the unsupported suggestion that the defendant "must" possess such knowledge sufficed to vault past Rule 9(b), the rule would be meaningless. Because Mr. Kassa's argument cannot be reconciled with the purpose (or text) of Rule 9(b), the court rejects it. Accordingly, the court grants BP West Coast's motion to dismiss the third claim without prejudice.

**E.    The Implied Covenant of Good Faith and Fair Dealing**

BP West Coast moves to dismiss Mr. Kassa's fourth claim for breach of the implied covenant of good faith and fair dealing because the claim is duplicative of the contract claim. To begin, the covenant of good faith and fair dealing can give rise to both contract and tort claims. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 373 & nn. 12, 13 (1992). Mr. Kassa's complaint does clearly indicate which legal theory he seeks to invoke, but he

alleges that BP West Coast acted in "bad faith," FAC ¶ 4-6, and characterizes the breach as "tortious," FAC ¶ 4-8. Mr. Kassa also seeks punitive damages on the claim. FAC ¶ 4-10. These allegations strongly suggest that Mr. Kassa's claim is grounded in tort, not contract. Thus, BP West Coast's argument that the implied covenant claim duplicates the contract claim is misplaced.

BP West Coast also argues that Mr. Kassa cannot state a claim for a tortious breach of the implied covenant of good faith and fair dealing because the law does not recognize such a claim in this factual context. The California Supreme Court has been clear in limiting the scope of the tort of the implied covenant of good faith and fair dealing. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654 (1988). The tort exists within the special context of insurance law, but does not reach, for example, employment contracts. *Id.* at 692-93. The court considered, but did not hold, whether the proper test for determining which contractual contexts merit recognizing the tort is whether the parties share a "special relationship" akin to that of the insurer and insured. *Id.* at 692.

While the proper test for identifying which contexts merit extending tort remedies to breaches of the implied covenant of good faith remains unsettled, the results do not. California does not recognize tortious breach of the implied covenant of good faith outside of the insurance context. *Cates Construction, Inc. v. Talbot Partners*, 21 Cal. 4th 28, 44-45 & fn. 8 (1999) (listing numerous contexts where California courts rejected extending the tort). The court does not believe that California would extend this cabined doctrine to this context, and therefore dismisses Mr. Kassa's fourth claim.

Even if a "special relationship" test governed the extension of this tort, such a relationship cannot exist here. Mr. Kassa alleged that a "special relationship" existed because the franchise transaction was complex and that he was especially vulnerable. FAC ¶ 4-4. In considering a gas station franchise under Arizona law, the Ninth Circuit suggested that there was no "special relationship" between the franchisee and Mobil and affirmed summary judgment on a claim for tortious breach of the implied covenant of good faith because the franchisee failed to offer sufficient proof of such a relationship. *Simmons*, 29 F.3d at 512. That holding suggests that the franchise agreement alone was not sufficient evidence of a "special relationship" to withstand summary judgment. *Id.* While *Simmons* applied Arizona, not California, law, its reasoning is persuasive and

ORDER GRANTING IN PART AND DENYING IN PART BP WEST COAST'S MOTION TO DISMISS
No. C-08-02725 RMW
TSF                                    9

1  this court agrees. The mere "complexity" of the franchisee-franchisor relationship is not sufficient
2  to state a claim for tortious breach of the implied covenant of good faith.

### F.    Negligent Misrepresentation

Mr. Kassa's fifth claim is for negligent misrepresentation based on the alleged promises that BP West Coast made that it would deliver fuel, that it would not price discriminate, and that it would not improperly withdraw funds. BP West Coast moves to dismiss it, arguing that "where there is a breach of contract alleged, the law will not find tort liability as well as contractual liability." *See Erlich v. Mendezes*, 21 Cal. 4th 543, 551-54 (1999). Indeed, the *Ehrlich* court held that tort remedies for a breach of contract are only available where "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Id.* at 551. Thus, a fraudulent promise or inducement can support tort liability because it is an intentional and harmful act, but mere negligence cannot. *Id.*

As alleged by Mr. Kassa, the same allegedly false representations that BP West Coast made that support his claims for breach of contract and for fraud alternatively support his claim for negligent misrepresentation. *See* FAC ¶ 5-2. But Mr. Kassa also alleges that "these representations were made with the intent to defraud Plaintiffs in the manner here alleged." *Id.* ¶ 5-3. While Mr. Kassa labels his fifth claim as one for negligent misrepresentation, he nonetheless maintains that BP West Coast deliberately sought to defraud him. Obviously, Mr. Kassa may plead alternative theories of relief. Fed. R. Civ. P. 8(d)(2)-(3). But here, his allegations are that BP West Coast negligently made contractual promises that it failed to keep. In this context, California law does not recognize tort remedies based on negligence, and Mr. Kassa's only claim is for breach of those promises. *Erlich*, 21 Cal. 4th at 551.

Accordingly, the court grants BP West Coast's motion to dismiss the fifth claim.

### G.    Negligence

Mr. Kassa's sixth claim for negligence relies on the same allegations discussed above, generally, the promises by BP West Coast to timely deliver gasoline, only charge for gasoline actually delivered, and not to discriminate in gasoline pricing. In other words, the allegedly negligent acts remain the failure to abide by the terms of the contract. The reasoning of *Ehrlich*

discussed above precludes Mr. Kassa's negligence claim. The court therefore grants BP West Coast's motion to dismiss the sixth claim.

### H.  Negligent Hiring and Supervision

Mr. Kassa's seventh claim alleges that BP West Coast negligently hired and supervised Does 1-50. FAC ¶ 7-2. Mr. Kassa alleges that the Does 1-50's "aforementioned" acts caused him harm, and that BP West Coast breached a duty to Mr. Kassa to supervise these Does. To establish a claim for negligent hiring or negligent supervision, Mr. Kassa must show that BP West Coast owed him a duty. *Delfino v. Agilent Techs., Inc.*, 145 Cal. App.4th 790, 815 (2006). Whether such a duty exists is a nuanced question, *see id.*, especially given the intersection between the spheres of contract and tort presented by this case. And on the allegations presented by Mr. Kassa, it is simply impossible to understand what BP West Coast's employees did to wrong Mr. Kassa, who those employees were, or why BP West Coast was responsible for their activities. To be sure, one need only provide a short and plain statement of one's claim. Fed. R. Civ. P. 8(a)(2). But that short and plain statement must give fair notice of the claim, and Mr. Kassa's allegations with respect to this claim are inscrutable. The court therefore grants BP West Coast's motion to dismiss the seventh claim.

### I.  Intentional Infliction of Emotional Distress

Mr. Kassa's eighth claim is for intentional infliction of emotional distress. While initially unclear, Mr. Kassa's opposition clarifies that his claim is premised on BP West Coast's wrongful seizure of funds for undelivered gasoline. Only conduct that is "extreme and outrageous" can support a claim for intentional infliction of emotional distress. *Cervantez v. J.C. Penney Co.*, 24 Cal. 3d 579, 593 (1979). "Civilized community" does not tolerate theft, but Mr. Kassa's complaint is not based on theft, it is based on BP West Coast's alleged breaches of the franchise agreement. *See id.* For better or worse, "civilized community" tolerates run-of-the-mill breaches of contract; such conduct is not sufficiently "extreme and outrageous" for a claim of intentional infliction of emotional distress.

BP West Coast's motion to dismiss is especially well taken with respect to H & O, Inc. As a corporation, H & O cannot suffer "emotional distress," and Mr. Kassa does not rebut this argument

in his opposition. Accordingly, the court grants BP West Coast's motion to dismiss the eighth claim and grants the motion with prejudice as to H & O, Inc.

### J.  Temporary Injunctive Relief

Mr. Kassa's complaint includes a ninth claim for temporary injunctive relief. Prior to removal, this issue was dealt with in state court. BP West Coast contends that the claim is moot, and Mr. Kassa does not dispute this in his opposition. Accordingly, the ninth claim is dismissed with prejudice.

### K.  Conspiracy

Mr. Kassa's tenth claim for relief alleges that "Defendants and each of them" conspired to charge Mr. Kassa more for gasoline than they charged other gasoline retailers. FAC ¶ 10-2. Mr. Kassa's complaint only names one defendant – BP West Coast. In his opposition, Mr. Kassa argues that the conspiracy is between BP West Coast and its "employees and agents."

To begin, a civil conspiracy is not an independent wrong; but a mechanism for imposing joint and several liability on the tortfeasors that agreed to inflict the wrong on the plaintiff. *Mox, Inc., v. Woods*, 202 Cal. 675, 677-78 (1927). But an entity cannot "conspire" with its employees or agents. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 512 & fn. 12 (1994). This well-settled principle is known as the "agent's immunity rule," and it exists because an employee or agent acts on behalf of their principal, not on their individual behalf. *Id.* Because the agent does not act in its individual capacity, it cannot be said to have "conspired" with its principal. In Mr. Kassa's opposition, he concedes that the alleged conspirators "were acting within the course and scope of their employment." Mr. Kassa does not allege the existence of any other "conspirators." Accordingly, the tenth claim is dismissed.

### L.  Section 17200

Finally, BP West Coast moves to dismiss Mr. Kassa's eleventh claim for "unfair and deceptive business practices." The complaint fails to identify if Mr. Kassa seeks to invoke the common law or a statutory provision. In his opposition, Mr. Kassa notes that his claim is for unfair competition pursuant to Business & Professions Code section 17200.

BP West Coast maintains that section 17200 does not apply to the facts alleged by Mr. Kassa. To be sure, the California Supreme Court warns that "the UCL 'is not an all-purpose substitute for a tort or contract action.'" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003). For one, a section 17200 claim does not permit the recovery of damages. *Id.* The only remedies sought by Mr. Kassa in relation to his section 17200 are "damage[s] in an amount yet to be ascertained," "special damages," and "restitution from Defendants for all losses stemming from their unlawful conduct." FAC ¶¶ 11-3, 11-4. Restitution is a permissible and well-circumscribed remedy under section 17200. *See Korea Supply*, 29 Cal. 4th at 1151. Money damages are not. *Id.* Accordingly, the court strikes the portion of Mr. Kassa's complaint seeking damages, but denies BP West Coast's motion to dismiss the claim.

BP West Coast also argues that section 17200 does not reach breaches of contract because they are not violations of "law." *Accuimage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003). BP West Coast may be correct, but the argument is irrelevant because Mr. Kassa has alleged multiple violations of law, including three claims on which BP West Coast has not moved to dismiss. As he has alleged some violation of law, the section 17200 claim remains viable and cannot be dismissed.

### III. ORDER

For the foregoing reasons, the court grants in part and denies in part BP West Coast's motion to dismiss as follows:

1. With respect to claims 1 and 11, the motion is denied.
2. With respect to claims 2, 3, 4, 5, 6, 7, 8 and 10, the motion is granted.
3. With respect to claim 8 (as to H & O, Inc.) and 9, the motion is granted with prejudice.

Mr. Kassa may file an amended complaint within 30 days.

DATED:     8/11/2008

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART BP WEST COAST'S MOTION TO DISMISS
No. C-08-02725 RMW
TSF                                                      13

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

George Holland, Sr.          georgehollandattorney@yahoo.com

**Counsel for Defendants:**

Deborah Yoon Jones           djones@wbcounsel.com
Kurt Vandercook Osenbaugh    kosenbaugh@wbcounsel.com
MacKenzie Elizabeth Brigh Hunt   mhunt@wbcounsel.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 8/12/2008                                    TSF
                                              **Chambers of Judge Whyte**